LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Tyce R. Walters (*pro hac vice*)
*tyce.walters@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

GRACE LAU and CHRISTOPHER KARWOWSKI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GEN DIGITAL INC., a corporation, and JUMPSHOT INC., a corporation,

Defendants

Case No. 4:22-cv-08981-JST

**DEFENDANTS GEN DIGITAL INC. AND JUMPSHOT INC. NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing: June 1, 2023
Time: 2:00 p.m.
Location: Courtroom 6—2nd Floor
Judge: Hon. Jon S. Tigar

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on June 1, 2023 at 2 p.m, before the Honorable Jon S. Tigar, United States District Court, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California, Defendants Gen Digital Inc. ("Gen Digital") and Jumpshot Inc. ("Jumpshot," collectively "Defendants") will and hereby do move for an order dismissing Plaintiffs Grace Lau and Christopher Karwowski's Class Action Complaint (Dkt. 1) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; Defendants' Request for Judicial Notice; the Declaration of Michael H. Rubin; the [Proposed] Order; the pleadings, records, and papers on file; and any other matters properly before the Court.

## ISSUE TO BE DECIDED

Whether the Court should dismiss the Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: February 24, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Michael H. Rubin*

Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Tyce R. Walters (*pro hac vice*)
*tyce.walters@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Gen Digital, Avast, and the Avast Extensions ..... 2

B. Plaintiffs' Allegations Concerning Jumpshot ..... 4

C. Plaintiffs' Claims ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 6

A. Plaintiffs' Wiretapping Claims Fail ..... 6

1. Plaintiffs' Jumpshot Allegations Provide No Basis for Their Wiretapping Claims ..... 6

2. Plaintiffs Made Avast a Party to Their Browsing Communications and/or Consented to Their Acquisition by Avast ..... 8

3. Plaintiffs' CIPA Section 632(a) Claim Fails for Additional Reasons ..... 12

4. Plaintiffs' Wiretapping Claims Are Largely Time-Barred in Any Event ..... 14

B. Plaintiffs' Privacy Claims Fail ..... 14

1. Plaintiffs Do Not Plausibly Allege a Reasonable Privacy Expectation ..... 15

2. Plaintiffs Have Not Alleged Highly Offensive Conduct ..... 16

3. Plaintiffs' Privacy Claims Are Largely Time-Barred in Any Event ..... 17

C. Plaintiffs' Statutory Larceny Claim Fails ..... 17

1. Plaintiffs' Browsing Data Is Not "Property" ..... 18

2. Plaintiffs Cannot Allege Their Browsing Data Was Transferred from Their Possession ..... 19

3. Plaintiffs Have Not Adequately Alleged Their Data Was Transferred Under False Pretenses ..... 20

D. Plaintiffs' Equitable Claims Fail ..... 22

1. All of Plaintiffs' Equitable Claims Fail Because They Allege an Adequate Remedy at Law ........ 22

2. Plaintiffs Plead No Plausible UCL Claim........ 24

3. Plaintiffs Plead No Plausible Unjust Enrichment Claim ........ 25

V. CONCLUSION........ 25

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .......... 6

*Archer v. United Rentals, Inc.*,
195 Cal. App. 4th 807 (2011) .......... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Atkins v. Calypso Sys., Inc.*,
No. CV-14-02706-PHX-NVW, 2015 WL 5856881 (D. Ariz. Oct. 8, 2015) .......... 21

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Belluomini v. Citigroup Inc.*,
Case No. 3:13-cv-01743, 2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) .......... 15

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .......... 23

*Brodsky v. Apple Inc.*,
No. 19-CV-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .......... 6

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 18, 20

*Campbell v. Facebook*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 24

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
No. 14-cv-04809-HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) .......... 23

*ELT Sight, Inc. v. EyeLight, Inc.*,
No. LACV1905545JAKRAOX, 2021 WL 6618552 (C.D. Cal. Oct. 22, 2021) .......... 20

*Flanagan, v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 13

*Freedline v. O Organics LLC*,
445 F. Supp. 3d 85 (N.D. Cal. 2020) .......... 24

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 12

*Gardiner v. Walmart, Inc.*,
No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......... 23

*Gardiner v. Walmart, Inc.*,
No. 20-CV-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021) .......... 18

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022) .......... 11

*Guillen v. Bank of Am. Corp.*,
No. 5:10-CV-05825-EJD, 2011 WL 4071996 (N.D. Cal. Aug. 31, 2011) .......... 16

*Haddad v. Merck and Co., Inc.*,
No. 22-2151-DMG, 2022 WL 17357779 (C.D. Cal. Aug. 11, 2022) .......... 20

*Hammerling v. Google LLC*,
No. 21-cv-09004-CRB, 2022 WL 2812188 (N.D. Cal. July 18, 2022) .......... 14, 15, 16

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 18

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .......... 24

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 10, 11

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 18, 24

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 12

*In re Google Inc.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 13

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 15, 16

*In re Google, Inc. Privacy Policy Litig.*,
No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .......... 11

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) .......... 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 16, 18

*In re Macbook Keyboard Litig.*,
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)........................................................... 23

*Javier v. Assurance IQ, LLC*,
No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021)................................. 8

*Jones v. Corbis Corp.*,
815 F. Supp. 2d 1108 (C.D. Cal. 2011), *aff'd*, 489 F. App'x 155 (9th Cir. 2012) ................ 11

*Klaehn v. Cali Bamboo LLC*,
No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022).................................................... 22

*Lacagnina v. Comprehend Sys., Inc.*,
25 Cal. App. 5th 955 (2018), *as modified* (Aug. 14, 2018) .................................................. 22

*Loo v. Toyota Motor Sales, USA, Inc.*,
No. 8:19-cv-00750-VAP, 2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ............................. 23

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................... 18, 20

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ................................................................................ 20

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022), *review denied* (Dec. 14, 2022)................................................ 24

*People v. Ashley*
42 Cal. 2d 246 (1954) ............................................................................................................ 21

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ................................................................................................ 13

*People v. Kwok*,
63 Cal. App. 4th 1236 (1998) ................................................................................................ 20

*People v. Williams*,
57 Cal. 4th 776 (2013) ...................................................................................................... 17, 19

*People v. Wooten*,
44 Cal. App. 4th 1834 (1996) ................................................................................................ 19

*Price v. Apple, Inc.*,
No. 21-cv-02846-HSG, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .................................. 23

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ........................................................................................... 19

*Reilly v. Apple Inc.*,
No. 21-cv-04601-EMC, 2022 WL 74162 (N.D. Cal. Jan. 7, 2022)........................................ 22

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................ 12, 13

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................................... 7

*Rodriguez v. Google*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .................................. 23

*Rojas-Lozano v. Google, Inc*.,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ............................................................................ 25

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)............................ 12

*Siry Inv., L.P. v. Farkhondehpour*,
13 Cal. 5th 333 (2022) ........................................................................................... 17, 21

*Smith v. LG Elecs. U.S.A., Inc.*,
No. C-13-4361-PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ...................................... 24

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ............................................................................................ 22

*Thakur v. Betzig*,
No. 3:17-cv-06603-JD, 2019 WL 2211323 (N.D. Cal. May 22, 2019)................................ 25

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) ...................................................................................... 13

*United States v. Abouammo*,
No. 19-CR-00621-EMC-1, 2022 WL 17584238 (N.D. Cal. Dec. 12, 2022)......................... 20

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .............................................................................................. 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ............................................................................................ 15

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) ............................................................................................ 11

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ................................................................................................ 8

*Yunker v. Pandora Media, Inc.*,
No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)............................... 18

*Zak v. Bose Corp.*,
No. 17-CV-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)...................................... 8, 10

## STATUTES

18 U.S.C. § 2511(1)(a)....................................................................................................... 7

18 U.S.C. § 2511(1)(c)....................................................................................................... 7

18 U.S.C. § 2511(1)(d) ...................................................................................................... 7

18 U.S.C. § 2511(2)(c)....................................................................................................... 8

18 U.S.C. § 2520(e) .......................................................................................................... 6

18 U.S.C. §§ 2510 et seq.................................................................................................... 5

Cal. Bus. & Prof. Code § 17204 ...................................................................................... 23

Cal. Code Civ. Proc. § 335.1 ........................................................................................... 17

Cal. Penal Code § 496(a),(c)............................................................................................ 17

Cal. Penal Code § 631(a) ................................................................................................... 7

Cal. Penal Code §§ 630-638 .............................................................................................. 5

## RULES

Fed. R. Civ. P. 9(b) ........................................................................................................ 20

## I. INTRODUCTION

Plaintiffs' Complaint is all sideshow and no substance. There is no "wiretapping" or unlawful "interception" of data genuinely alleged here—Plaintiffs' allegations instead simply describe software, which they chose to install on their computers, accessing data that it obviously needs in order to function. No doubt recognizing this, Plaintiffs spend the bulk of the Complaint trying to shift the spotlight to other conduct: they dredge up old news stories alleging that Avast PLC—long before its acquisition by Defendant Gen Digital Inc.—once licensed user browsing data to Jumpshot Inc., its subsidiary, which in turn sought to anonymize the data and sell it to advertisers. Those stale accusations, however, lie well outside the statute of limitations period for Plaintiffs' core claims; and they are irrelevant in any event, since the allegations are about the allegedly improper *use* of data, not the purported *interception* of it. Plaintiffs' claims of ongoing harm ring even more hollow, as they do not and cannot allege that Gen Digital—a leading, publicly traded cybersecurity company, which acquired Avast long after Avast had voluntarily shuttered Jumpshot—has *ever* sold user data or intends to do so in the future.

Once one looks past the Jumpshot sideshow, it quickly becomes apparent that Plaintiffs have no cause of action, for wiretapping or any other claim. The key alleged facts are ultimately simple: Gen Digital offers free browser extensions—i.e., software that users can install on their web browsers to add desired functionality. Plaintiffs chose to install certain of these extensions on their browsers, at a time when the software was provided by Avast. The stated purposes of the two extensions at issue (the "Avast Extensions") are to protect users from security threats in the web pages they visit and to help users find better deals and prices when they are searching for products online. Naturally, the extensions must be able to obtain users' browsing data to provide these services. Yet that is the very conduct that Plaintiffs allege to be an unlawful "interception"—the Avast Extensions' accessing of their browsing activity. When stripped of all its fevered talk of "surreptitious electronic surveillance" or a "massive breach of privacy," that is all the Complaint is truly about: Plaintiffs claim that software they chose to install, whose very function is to scan and analyze users' browsing activity for security threats and overpriced goods, accessed their browsing activity in delivering these services.

It should go without saying that this does not amount to "wiretapping"—the lead claim and overarching theory asserted in the Complaint. Plaintiffs cannot claim that their browsers' communications with websites were unlawfully "intercepted" by Avast when, by choosing to install the Avast Extensions, Plaintiffs made Avast a party to those communications and/or consented to Avast accessing them. Given that the very purpose of the Avast Extensions involves scanning and analyzing a user's browsing activity, Plaintiffs had every reason to expect that Avast would need to access their browsing activity to perform those services. Indeed, users are expressly notified when they download the Avast Extensions that the extensions are able to "[r]ead . . . all your data on all websites"—a fact that the Complaint ignores but that this Court can judicially notice, and that further vitiates any claim of surreptitious interception.

The various other claims Plaintiffs assert likewise fail. Their claims for invasion of privacy and intrusion upon seclusion are based on the same theory as their wiretapping claims—that their browsing communications were surreptitiously intercepted—and fail for similar reasons; moreover, Plaintiffs cannot satisfy the additional element required by these claims that the conduct at issue be "highly offensive" or an "egregious breach of social norms." Plaintiffs' statutory claim for "receiving stolen property" fails for even more fundamental reasons: their browsing data does not constitute "property"; Defendants cannot be said to have "stolen" the data merely by copying it; and Plaintiffs fail to identify any fraudulent representation to support their theory that the data was taken through false pretenses. Finally, Plaintiffs' equitable claims brought under California's Unfair Competition Law and an unjust enrichment theory are barred because Plaintiffs do not allege an inadequate remedy at law, and they also fail for claim-specific reasons.

Accordingly, as further detailed below, the Complaint should be dismissed in its entirety.

## II. FACTUAL BACKGROUND[1]

### A. Gen Digital, Avast, and the Avast Extensions

Gen Digital is a well-established public company providing cybersecurity software and services, previously known as NortonLifeLock Inc., and, before that, Symantec Corporation. *See*

---

[1] Unless otherwise indicated, the facts recited herein are based on the allegations of the Complaint and are accepted as true only for purposes of this motion.

Compl. ¶ 4. In 2022, Gen Digital acquired the assets of Avast, which offers consumers a range of products designed to protect their security and privacy while browsing the Internet. *See id.* ¶¶ 4, 7-9, 33-36. Avast currently operates as a Gen Digital brand, although much of the Complaint concerns the time period before Avast's acquisition, when it operated as a separate company. *Id.* ¶¶ 4-5.

The Complaint concerns two Avast products: Avast Online Security & Privacy ("AOSP"), and Avast SafePrice ("SafePrice"). *Id.* ¶ 8. Both are browser extensions—i.e., software applications a user may choose to install on their web browser to enhance its functionality. Browser extensions commonly read and interact with content in the user's browser, and the Avast Extensions are no different in this regard. Specifically:

- **AOSP** scans and analyzes the websites that a user visits in order to provide "real-time threat protection" "every time [they] browse." Compl. ¶ 34 (citing https://www.avast.com/avast-online-security#mac, attached as Ex. A).[2] Among other things, AOSP checks for "malicious websites and phishing scams" and "online trackers" on the webpages users visit, analyzes their internet searches in order to provide "safer search engine results that show which sites are safe and which aren't," and gives users "real-time threat alerts when [they] come into contact with a suspicious webpage." *See* Ex. A at 1, 2, 4.

- **SafePrice** scans and analyzes the online stores and product pages a user visits in order to show the "best prices, deals, and coupons" that may be available for the products they're interested in. Compl. ¶ 9, 38; *see also* Ex. B at 4, https://www.avast.com/en-us/safeprice#pc ("[W]henever you visit an online shop or product site, we will show you better prices and deals at the top of your web browsers.").

In short, both of the Avast Extensions enable Avast to analyze the user's browsing activity in order to provide relevant services in the context of that activity—namely, threat protection (in the case of AOSP) or shopping recommendations (in the case of SafePrice).

As the Complaint alleges, the Avast Extensions were specifically for the Google Chrome and Microsoft Edge Internet browsers, and were freely available for download on the Google Chrome Web Store and the Microsoft Edge Web Store (collectively, the "Browser Stores"). Compl. ¶ 33. What Plaintiffs fail to mention, but which anyone can see from visiting either of the Browser Stores—and which this Court may therefore judicially notice—is that, before

[2] All exhibits are attached to the concurrently filed Declaration of Michael H. Rubin.

downloading AOSP or SafePrice from either store, the user is presented with a prompt advising that the extension "*can [r]ead and change all your data on all websites.*" Exs. C, D; *see* Request for Judicial Notice ("RJN") at 4-6.[3] The prompt gives the user the option to "Add extension" or "Cancel." Exs. C, D. Only if the user clicks on "Add extension" after being provided with this notice is the extension added to their browser. *Id.* Like any other users, Plaintiffs would have thus been told—in prominent, plain language—that the Avast Extensions would have access to their browsing data. Nowhere in the Complaint do Plaintiffs allege that they were able to download the Avast Extensions without being presented with, and having to accept, this prompt.

### B. Plaintiffs' Allegations Concerning Jumpshot

Plaintiffs make little effort in their Complaint to grapple with the details of the services provided through the Avast Extensions or the data needed to support those services. Instead, they devote most of the factual background to rehashing years-old news stories regarding Avast's alleged "history"—long before its acquisition by Gen Digital—of "collecting and selling its users' data" to third parties through its then-subsidiary, Jumpshot. *See* Compl. ¶¶ 41-67. According to Plaintiffs, Avast licensed user data collected from its products to Jumpshot, and Jumpshot in turn sold it to third-party customers for marketing insights. *Id.* ¶ 41. As Plaintiffs note, Avast had long maintained that the data it collected was "fully de-identified and aggregated and cannot be used to personally identify or target" a particular user. *Id.* ¶ 62. Nonetheless, relying on studies that did not involve Avast, Jumpshot, or the data at issue here, Plaintiffs argue that "it is impossible to truly 'anonymize' data," and that researchers in several studies have been able to re-identify individuals from anonymized data if they were given sufficient additional information. *Id.* ¶¶ 62, 64.

As Plaintiffs note, beginning on October 28, 2019, news outlets published reports on

---

[3] This prompt is not unique to the Avast Extensions; rather, the Browser Stores routinely provide such prompts to advise users of the permissions a browser extension needs in order to function. *See* Microsoft Edge Store, *Add, turn off, or remove extensions in Microsoft Edge*, https://support.microsoft.com/en-us/microsoft-edge/add-turn-off-or-remove-extensions-in-microsoft-edge-9c0ec68c-2fbc-2f2c-9ff0-bdc76f46b026 (listing as one of the steps for adding an extension: "At the prompt showing permissions required by the extension, carefully review the permissions, and then select Add extension if you wish to proceed."); Google Chrome Store, *Install and Manage Extensions*, https://support.google.com/chrome_webstore/answer/2664769?hl=en ("Some extensions will let you know if they need certain permissions or data. To approve, click Add extension.").

Avast's licensing of data to Jumpshot and Jumpshot's data sales to third parties. *Id.* ¶ 51. Following those reports, on January 30, 2020, Avast "announced its plan to cease the provision of its users' data to Jumpshot and wind down Jumpshot's operations." *Id.* ¶¶ 65-66. Plaintiffs do not allege that Avast failed to carry out that plan. *See id.* ¶ 68 ("Avast shuttered Jumpshot after its misuse of user data was exposed in late 2019 and early 2020."). Nor do they otherwise allege that, at any time since January 2020, Avast sold user data in any form to third-parties for marketing purposes. They certainly do not allege that Gen Digital, after acquiring Avast in 2022, has ever done so or intends to do so. Instead, Plaintiffs allege only that "Gen Digital and Avast continue to intercept and collect users' Internet and email search and browsing activities, without providing adequate notice." *Id.*

**C. Plaintiffs' Claims**

Plaintiffs allege that they each previously used both of the Avast Extensions on the Chrome browser. *Id*. ¶¶ 74-76. Plaintiff Grace Lau alleges that she did so "for years, through mid-2021," and Plaintiff Christopher Karwowski alleges that he used the products "from 2019-2020." *Id*.

Despite all the ink they spill about data sales by long-defunct Jumpshot, Plaintiffs' asserted causes of action have little to do with this alleged "history." Rather, they assert wiretapping claims under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 et seq., and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630-638, based on allegations that the Avast Extensions "intercept all communications . . . between the user and the websites the user visits, and copy those communications to an Avast server." Compl. ¶ 69. In other words, Plaintiffs contend that the Avast Extensions' accessing of user browsing activity from the browser constitutes an unlawful "interception" of communications, *id.* ¶¶ 104-08, 120-24—even though they offer no explanation of why the extensions should be expected to operate without such access.

Plaintiffs reformulate these same allegations in their claims for invasion of privacy and intrusion upon seclusion (collectively, the "privacy claims"), asserting that the "surreptitious and unauthorized interception" of these communications violated a reasonable expectation of privacy and was "an egregious breach of social norms that is highly offensive." *Id.* ¶ 135; *see also id.* ¶ 145. They repurpose this same theory in their statutory claim under California Penal Code Section 496 for "receiving stolen property," alleging that the acquisition of their browsing data by

the Avast Extensions was a form of "theft," accomplished through "misleading and false product names and advertising claims"—even though Plaintiffs do not specify any advertising claims they have in mind. *Id.* ¶¶ 157-60. Finally, Plaintiffs bring equitable claims for violations of California's Unfair Competition Law and unjust enrichment, seeking disgorgement of profits and benefits that Defendants allegedly obtained from the use of Plaintiffs' data. *Id.* ¶¶ 158-89.

## III. Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV. ARGUMENT

### A. Plaintiffs' Wiretapping Claims Fail

#### 1. Plaintiffs' Jumpshot Allegations Provide No Basis for Their Wiretapping Claims

At the outset, this Court can set aside Plaintiffs' allegations relating to Jumpshot, as they are nothing more than a distraction from the narrow conduct and legal issues genuinely relevant to their wiretapping claims.

First, the Jumpshot-related allegations fall outside the statute of limitations for both CIPA and ECPA. CIPA is subject to a one-year statute of limitations, *see, e.g.*, *Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *11 (N.D. Cal. Aug. 30, 2019), while ECPA is subject to a two-year statute of limitations, 18 U.S.C. § 2520(e). Given that the Complaint was filed on December 19, 2022, any conduct prior to December 19, 2020 thus falls outside the limitations period for either of the claims. That means that all of the alleged Jumpshot conduct falls outside the limitations period, as Plaintiffs concede that Avast shuttered Jumpshot in January 2020—nearly a full year before the limitations period began. *See* Compl. ¶¶ 65-67 & nn.46-47.

Plaintiffs do not allege that any further sale of data occurred after January 2020. *See id.* ¶¶ 68-73 (alleging continued collection of information but no sale or transfer of information). Plaintiffs' breathless retelling of these pre-2020 news articles is nothing more than a baseless attempt to tarnish Gen Digital's reputation with outdated accusations against Avast and Jumpshot.

Presumably recognizing the facial untimeliness of Plaintiffs' claims, the Complaint name-checks the doctrines of "tolling, concealment, and estoppel," *see id.* ¶¶ 81-86, but it alleges no facts that would support the application of these doctrines. Rather, Plaintiffs offer only conclusory statements that Gen Digital, Avast, and Jumpshot somehow concealed their conduct, and that Plaintiffs "could not have learned through the exercise of reasonable diligence" of Defendants' "conduct as alleged herein." *Id.* ¶ 85. Yet those boilerplate assertions directly contradict the specific allegations in the Complaint that, by mid-2020, the details of Avast's data collection and sales of the data by Jumpshot had been widely discussed in media reports and company statements. *Id.* ¶¶ 51-67. How could it be, then, that Plaintiffs "could not have learned through the exercise of reasonable diligence" about any of this, or that it was somehow concealed from them, during the applicable limitations period?

Second, even if they were timely, which they are not, Plaintiffs' allegations relating to the sale of user data through Jumpshot are irrelevant to the issue of wiretapping. Whether wiretapping has occurred turns on whether communications have been unlawfully *intercepted* while in transit—not on how data is *used* after it has been acquired. Specifically, ECPA makes it unlawful to "intentionally intercept[] . . . any wire, oral, or electronic communication," and expressly defines "intercept" to mean the "*acquisition of* certain content." 18 U.S.C. § 2511(1)(a) (emphasis added). Similarly, CIPA prohibits the learning of the contents of a communication "while the same is in transit." Cal. Penal Code § 631(a). Neither statute purports to govern what can be done with data after it has been acquired, if the initial acquisition was not in violation of the statute.[4] *See, e.g.*, *United States v. Christensen*, 828 F.3d 763, 796 (9th Cir. 2015) (finding that "[a]ny subsequent use of [a] recorded conversation" is not governed "by the prohibition on interception"

[4] ECPA does restrict further dissemination of unlawfully intercepted recordings, but those restrictions apply only where the initial interception was itself procured "in violation of" ECPA. *Id.* § 2511(1)(c), (d).

in the Wiretap Act); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 625 (7th Cir. 2000) (where "interception in [a] case was not obtained in violation of the [Wiretap] Act, its subsequent use and disclosure was not a violation of the Act"); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("What is nowhere to be found is a specific description of how Google is secretly intercepting Plaintiffs' data. When Plaintiffs do describe the process, they describe misuse of a recording, not interception . . . .").

Plaintiffs' Jumpshot allegations concern the alleged selling of user data *after* being acquired by Avast and thus do not support a wiretapping claim, as this alleged conduct does not itself involve the "acquisition" of data or learning its contents while "in transit." An instructive case in this regard is found in *Zak v. Bose Corp.*, No. 17-CV-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019). There, the plaintiff alleged that, after the defendant's mobile app "intercepted" the communications between a user's device and the Spotify music service, it then automatically disclosed those communications "to third party companies, including a . . . sophisticated data mining and analysis company." *Id.* at *2. The court found the allegations regarding post-acquisition use of the communications to be irrelevant: "To the extent Zak's real issue is with the fact that Bose allegedly collects and discloses the Media Information that it legitimately receives, this complaint falls outside the purview of the Wiretap Act." *Id.* at *4. So too here.

Accordingly, the proper focus of the Court's analysis is simply on whether Avast's acquisition of browser data as a result of the operation of the Avast Extensions constitutes an unauthorized interception. As explained below, it does not.

### 2. Plaintiffs Made Avast a Party to Their Browsing Communications and/or Consented to Their Acquisition by Avast

ECPA and CIPA prohibit only *unauthorized third parties* from intercepting communications. Thus, ECPA does not apply where the alleged "interception" was conducted by "a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). CIPA likewise is subject to a party exception and a consent exception. *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a

conversation."); *Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) (explaining that "CIPA expressly requires 'unauthorized' conduct or conduct 'without the consent of all parties'"). Both exceptions apply here.

**Party Exception.** Plaintiffs themselves made Avast a party to their browser communications by intentionally installing Avast software on their browsers, for the specific purpose of *scanning and analyzing their browser activity* to block security threats or make shopping recommendations. In essence, by installing the Avast Extensions on their browsers, Plaintiffs caused the Avast Extensions to be cc'd on all of their browser communications—as had to occur in order for the extensions to perform their functions. Plaintiffs fail to explain how the Avast Extensions could possibly work if they were not able to access the browser activity that it was their very purpose to analyze. Just as someone who hires a bodyguard to protect against physical security threats cannot complain that the bodyguard can see inside the rooms the person visits, or just as someone who hires a personal shopper cannot complain that the personal shopper can see what items they are interested in buying, Plaintiffs, having chosen to receive security protection and shopping recommendations from Avast while they are online, cannot be heard to complain that Avast "intercepted" their online activity.

Nor does the alleged transmission of Plaintiffs' browsing data to Avast servers, *see* Compl. ¶¶ 69-71, alter the analysis. The "interception" that Plaintiffs allege occurs at the point at which the Avast Extensions access their website communications as they are being sent by the browser; the transmission of a copy of the communications to Avast servers necessarily follows separately. As Plaintiffs state: "The Avast software is designed to *intercept* all communications from a main channel (the web browser) between the user and the websites the user visits, *and copy* those communications to an Avast server." *Id.* ¶ 69 (emphasis added). Because the initial "interception" cannot possibly be considered unauthorized—again, the Avast Extensions obviously must access the user's browsing data in order to function—any subsequent copying of the "intercepted" communication cannot be considered unauthorized either. *See supra* at 7-8 (collecting cases holding that subsequent use of a validly intercepted communication is not governed by wiretapping laws). More fundamentally, any legal distinction Plaintiffs may seek to draw between Avast's

software and Avast's servers is untenable: they both are controlled by Avast and are part of the relevant Avast services.

*Zak v. Bose Corporation*, *supra*, again provides a useful comparator case. There, the software at issue was an app offered by Bose, an audio equipment manufacturer, that worked in conjunction with the company's Bluetooth headphones. The app included functionality that displayed information about the songs the user was playing on their mobile phone through the Spotify music service, such as the song title, artist, and album. The *Zak* plaintiff claimed that, in collecting this information about a user's music selections, the app was unlawfully "'intercept[ing]' contents of the communication between the user and Spotify," which it would then automatically "transmit" to a third-party data miner. 2019 WL 1437909, at *1, 2. The court rejected the allegation that any unauthorized interception was occurring. Notwithstanding "Zak's conclusory allegation that Bose is not a party to the communication," the court found the plaintiff had made Bose a party to the communications by *installing Bose's app* on their phone, knowing that the app had access to the user's Spotify selections. *Id.* at *4. As the court stated: "the App is a fully-acknowledged participant in the communication of the Media Information—indeed, receiving and displaying the Media Information is a primary function of the App." *Id.* at *3. Likewise, here, notwithstanding Plaintiffs' conclusory allegations that Avast was not a party to their browsing communications, the Complaint makes clear that the Avast Extensions' purpose was to scan and analyze those very communications. By installing the extensions, Plaintiffs made Avast, as the provider of the extensions, a party to those communications.

These facts render this case readily distinguishable from *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) which, based on their repeated conclusory allegations that Avast intercepted their communications "surreptitiously," *e.g.,* Compl. ¶¶ 135, 139, Plaintiffs evidently intend to rely upon. *In re Facebook* concerned Facebook code that had been installed *on third-party websites* without the plaintiffs' knowledge. The plaintiffs alleged that this code enabled Facebook to collect their communications with those websites, including while they were logged out of Facebook—even though Facebook's terms allegedly represented that it could collect users' activity on third-party websites only while logged *in* to Facebook. On those

facts, the Ninth Circuit held that the plaintiffs had sufficiently alleged that their communications were unlawfully intercepted by Facebook, reasoning that because the collection of their logged-out activity was done "surreptitiously," Facebook could not be considered an intended party to those communications. *See* 956 F.3d at 607-08. Here, the allegations are fundamentally different: the code alleged to have resulted in the interception of their browser communications was voluntarily installed *by Plaintiffs themselves on their own browsers*, in the form of software whose very purpose required that it scan and analyze their browsing communications. Plaintiffs therefore have no basis here to claim that Avast acquired their data "surreptitiously."

**Consent Exception.** Irrespective of whether Avast should be considered a "party" to Plaintiffs' browsing communications, Plaintiffs consented to Avast acquiring those communications. "Consent is determined from the reasonable viewpoint of another person, not from Plaintiff's unexpressed subjective beliefs." *Jones v. Corbis Corp*., 815 F. Supp. 2d 1108, 1112 n.2 (C.D. Cal. 2011), *aff'd*, 489 F. App'x 155, 156 (9th Cir. 2012). And here, the reasonable user installing the Avast Extensions would understand that they were consenting to giving Avast access to their browsing activity. Again, the reasonable user would understand that the software necessarily requires access to the web pages users visit, in order to scan and analyze those web pages for security threats or overpriced goods. That alone suffices to establish implied consent. *See United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) (stating that "consent may be implied where there are surrounding circumstances indicating that the defendant knowingly agreed to the surveillance" (citation and quotation marks omitted)).

Beyond what is implied by the inherent functionality of the software as alleged, the Court may also take judicial notice of the fact that any users seeking to download the Avast Extensions must *expressly* consent to the potential collection of their browsing data. In both the Browser Stores, users seeking to download either of the Avast Extensions are presented with a conspicuous prompt stating in no uncertain terms that the extension "can [r]ead and change all your data on all websites"—which the user must accept in order for the download to be completed. Exs. C, D; *see* RJN at 4. Acceptance of such a prompt easily suffices to establish consent. *See, e.g.*, *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 998 (W.D. Wash. 2022) (finding consent where,

"[t]hrough its registration process, Amazon announced that if the user chose to activate the Alexa device, it would record any conversation the device thought was directed at it"); *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *13 (N.D. Cal. Dec. 3, 2013) (finding consent as a matter of law where website "clearly disclosed how the [challenged] feature worked" and user "voluntarily clicked on the . . . feature"); *see generally Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) ("Courts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims."). Nowhere in the Complaint do Plaintiffs assert that they were able to download the Avast Extensions without being shown and required to accept this prompt.

Plaintiffs cannot stave off these arguments merely through their conclusory allegations that they "did not consent to any of Gen Digital and Avast's actions in intercepting, reading, and/or learning the contents of their communications," Compl. ¶ 122, or that "Gen Digital and Avast continue to intercept and collect users' Internet and email search and browsing activities, without providing adequate notice," *id.* ¶ 68. Such allegations cannot satisfy the *Twombly/Iqbal* plausibility standard, where they contradict common sense, as well as judicially noticeable facts. *See, e.g.*, *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (explaining that courts need not accept as true allegations contradicted by "matters properly subject to judicial notice or by exhibit" or "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" (citation omitted)); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA claim where a plaintiff's denial of consent was contradicted by defendant's privacy policy, which was subject to judicial notice). Given the stated functionality of the Avast Extensions, as well as the express disclosures made to users seeking to download the products, Plaintiffs' allegations of lack of consent are implausible.

### 3. Plaintiffs' CIPA Section 632(a) Claim Fails for Additional Reasons

In addition to invoking section 631 of CIPA, Plaintiffs invoke the "eavesdropping" provision found in section 632 of CIPA. *See* Compl. ¶ 118. The provision is inapplicable for reasons beyond those above.

Section 632 "does not prohibit eavesdropping in general; it applies only to the use of 'any electronic amplifying or recording device' to eavesdrop upon or record a confidential communication." *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (citation omitted). Plaintiffs make no effort to explain how the Avast Extensions could constitute "amplifying or recording" devices—terms clearly meant to apply to devices for capturing live conversations between human parties. *See Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008) ("California courts interpret 'eavesdrop,' as used in § 632, to refer to a third party secretly listening to a conversation between two other parties."); *People v. Drennan*, 84 Cal. App. 4th 1349, 1358-59 (2000) (holding that communication must be "sound-based" or telegraphic to fall within scope of section 632).

Plaintiffs also cannot meet the element requiring the eavesdropped communication to be "confidential." A communication is confidential under section 632 only if the plaintiff "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan, v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002). Courts have found this expectation to be unreasonable for internet communications *generally*—because they are in textual form and are naturally susceptible to being logged, preserved, or otherwise "recorded" once they are sent. *See Revitch*, 2019 WL 5485330, at *3 ("[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to [the] expectation" that they will not be "recorded.") (citing cases); *see also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) ("Unlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient."). That proposition applies to browsing data in particular, which is naturally "recorded" by the websites that receive the data. *See Revitch*, 2019 WL 5485330, at *3 (finding that the plaintiff "cannot allege that his browsing activity and form field entries fall within the scope of confidential communications protected by section 632"). Thus, Plaintiffs cannot claim to have had any reasonable expectation that their browsing data would never be "recorded" by anyone.

**4. Plaintiffs' Wiretapping Claims Are Largely Time-Barred in Any Event**

Finally, Plaintiffs' wiretapping claims independently fail to the extent that they are barred by the applicable statutes of limitations. Again, CIPA is subject to a one-year statute of limitations, while ECPA is subject to a two-year statute of limitations. *See supra* at 6. According to the Complaint, Plaintiff Karwowski used the Avast Extensions only "from 2019-2020," Compl. ¶ 76, while Plaintiff Lau ceased using them in "mid-2021." *Id.* ¶ 74. The Complaint, however, was not filed until December 19, 2022—over a year after Lau alleges that she ceased using the Avast Extensions, and two years after Karwoski ceased to do so.

In the absence of any alleged use of the Avast Extensions by the Plaintiffs within the year preceding the filing of the complaint, both Plaintiffs' CIPA claims are time-barred. Plaintiff Karwowski's ECPA claims are also time-barred, given that he alleges he ceased using the Avast products in "2020" and does not specifically allege any use of the products in 2020 after December 19 of that year—which is the only portion of the year that would fall within ECPA's limitations period.

The only wiretapping claim that is timely on its face is Plaintiff Lau's ECPA claim to the extent that it concerns conduct in early 2021—i.e., conduct after the commencement of the limitations period on December 19, 2020 but before she stopped using the Avast Extensions in "mid-2021." However, for all the reasons set forth above, the claim fails on its merits.

**B. Plaintiffs' Privacy Claims Fail**

Plaintiffs' privacy claims merely reformulate their wiretapping claims: they allege that Defendants' "surreptitious and unauthorized interception of Internet communications . . . constitutes an egregious breach of social norms that is highly offensive." Compl. ¶ 135; *see also id.* ¶ 146 ("Defendants *intercept* these Internet communications without authority or consent." (emphasis added)); *id.* ¶ 150 ("Wiretapping and surreptitious recording of communications is highly offensive behavior."). These claims should be dismissed for the same reasons as Plaintiffs' wiretapping claims, as well as for failure to satisfy additional elements of these privacy torts.

Intrusion upon seclusion under California common law requires "(1) intrusion into a

private place, conversation, or matter to which Plaintiffs have a reasonable expectation of privacy (2) in a manner highly offensive to a reasonable person." *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 2812188, *10 (N.D. Cal. July 18, 2022). Similarly, to state a claim for invasion of privacy under the California Constitution, "Plaintiffs must show that (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) the intrusion is so serious as to amount to an egregious breach of the social norms." *Id.* "Given the similarity of the two tests, courts consider them together and ask (1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive." *Id.* Here, neither prong is met.

**1. Plaintiffs Do Not Plausibly Allege a Reasonable Privacy Expectation**

Plaintiffs allege that, "[b]ased on the names of the products . . . Plaintiffs . . . had a reasonable expectation of privacy in the personally identifiable information Defendants collect without adequately notifying users." Compl. ¶ 133. However, the names of the Avast Extensions did not give Plaintiffs any reason to expect that their browsing data would not be accessed by Avast. The names merely indicate the objective of the services provided by the products— "Avast Online Security & Privacy" protects against security and privacy threats from the websites users visit, while "SafePrice" helps protect users against paying more than they need to make an online purchase. As to the *means* by which the Avast Extensions deliver these services, Plaintiffs had no reason to expect that the means would not involve Avast accessing their browsing data. To the contrary, given that the services involve scanning and analyzing a user's browsing data, they had every reason to expect that Avast would need to access the data in order to scan and analyze it.

"[T]here is no reasonable expectation of privacy when the data collection is within users' common-sense expectation." *Hammerling*, 2022 WL 2812188, at *11. Courts have thus found no reasonable expectation of privacy with respect to a party's acquisition of website addresses where the plaintiff had reason to know it was necessary for the party to deliver service to the plaintiff. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (no reasonable expectation of privacy where ordinary internet users "should know that [website address] information is provided to and used by Internet service providers for the specific purpose of directing the routing of information"). The same is true here.

**2. Plaintiffs Have Not Alleged Highly Offensive Conduct**

Plaintiffs also have not alleged facts that could support a finding of conduct that was "highly offensive." The Northern District of California "'set[s] a high bar' for the requisite 'intrusion [that is] highly offensive to a reasonable person.'" *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (alterations in original) (quoting *Belluomini v. Citigroup Inc.*, Case No. 3:13-cv-01743, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013)). In keeping with that high bar, courts in this District "have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 2022 WL 2812188, at *12.

So, for instance, Google's collection and disclosure of users' browsing histories—precisely the sort of allegation present here—was held not to be highly offensive at the motion-to-dismiss stage. *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d at 988. Even Google's alleged collection of information that could reveal a "user's sleep cycle, menstrual cycle, sexual preferences, religion, and political affiliations" was held on a motion to dismiss not to be highly offensive, where that collection was "not blatantly deceitful," and where it was not clearly alleged that Google actually tracked the particularly private information (as opposed to allegations that it was possible to ascertain the private information through deduction). *Hammerling*, 2022 WL 2812188, at *12; *see also In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (holding on motion to dismiss that disclosure of "personal data, and geolocation information" was not highly offensive) .

Plaintiffs' allegations regarding the Avast products' ongoing data collection are certainly no worse than the allegations in those cases, and in fact involve significantly *less* invasive conduct. Indeed, at least as of early 2020 (and thus since the beginning of the applicable limitations periods, *see infra* at 17), Plaintiffs do not even allege that Avast shared user browsing information with any third party; they merely allege that it was collected by Avast. Compl. ¶¶ 68-73. That alone renders the alleged conduct here significantly less intrusive than the disclosures alleged in *In re Google, Inc. Privacy Policy Litigation* and *In re iPhone Application Litigation*, in which the courts found that the "highly offensive" test was not met.

### 3. Plaintiffs' Privacy Claims Are Largely Time-Barred in Any Event

As with Plaintiffs' wiretapping claims, their privacy claims independently fail to the extent that they are barred by the applicable statutes of limitations.

The statute of limitations for Plaintiffs' invasion of privacy claims is one year, *see, e.g.*, *Guillen v. Bank of Am. Corp.*, No. 5:10-CV-05825-EJD, 2011 WL 4071996, at *10 (N.D. Cal. Aug. 31, 2011), while the statute of limitations for their statutory intrusion upon seclusion claims is two years, *see* Cal. Code Civ. Proc. § 335.1. Given that only Plaintiff Lau alleges using the Avast Extensions within the past two years, that means that both Plaintiffs' invasion of privacy claims are time-barred, and that Plaintiff Karwoski's intrusion upon seclusion claim is time-barred. Plaintiff Lau's intrusion upon seclusion claim is also time-barred with respect to any conduct predating December 19, 2021—which would include the alleged conduct relating to Jumpshot.

To the extent Plaintiff Lau brings an intrusion upon seclusion claim with respect to conduct after December 19, 2021, the claim fails for all of the merits reasons set forth above.

## C. Plaintiffs' Statutory Larceny Claim Fails[5]

Plaintiffs bring a claim under California Penal Code 496, *see* Compl. ¶ 159, which permits a private action for treble damages against a person who has received, bought, sold, concealed, or withheld "property" that has been "stolen"—a criminal offense also punishable by up to one year's imprisonment. Cal. Penal Code § 496(a),(c); *see Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 346-47 (2022) (explaining that "[Section 496(a)] defines the criminal offense of what is commonly referred to as receiving stolen property" and "Section 496(c), similar to some provisions in other statutory schemes, articulates a right to special civil remedies when a violation of section 496(a) has occurred"). Plaintiffs assert that their browsing data constitutes "property" that was "stolen" by Defendants by means of theft by false pretenses. Compl. ¶¶ 157-61. They appear to allege that Gen Digital and Avast's storage of the data constitutes concealing or

---

[5] While Plaintiffs caption their claim as one for "statutory larceny," the actual cause of action asserted is one for receipt of stolen property under Section 496. *See* Compl. ¶ 159. Moreover, their theory of "stealing" is theft by false pretenses, *see id.*, which is distinct from larceny, as larceny involves the non-consensual taking of data through trespass, whereas theft by false pretenses involves the consensual transfer of property by the owner to the alleged wrongdoer. *See infra* at 19-20 & n.6 (discussing *People v. Williams,* 57 Cal. 4th 776, 788 (2013)).

withholding "stolen property," and that the alleged sale of the information through Jumpshot involved the buying and selling of "stolen property." *Id.* ¶¶ 164-66.

However, the notion that the Complaint alleges any conduct involving "stolen property" is absurd. First, Plaintiffs' browsing data is not "property" to begin with. Second, Plaintiffs' allegations do not imply that their data was transferred from their possession; they merely allege it was copied. Third, the Complaint does not come close to alleging the sort of intentional fraudulent statements necessary to establish theft by false pretenses. Applying Section 496 here would stretch this criminal statute far beyond its intended reach and turn it into a weapon for litigating ordinary business and consumer disputes—a danger that courts have specifically warned against.

**1. Plaintiffs' Browsing Data Is Not "Property"**

As an initial matter, Plaintiffs' browsing data does not qualify as "property" that can be stolen. Courts in this District have repeatedly found that personal information does not constitute property *at all*. *See, e.g.*, *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *17 (N.D. Cal. Mar. 26, 2013) (noting that "courts have [been] reluctant to find that [personally identifiable information] is a form of personal property"); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1075 ("[T]he weight of authority holds that a plaintiff's 'personal information' does not constitute property."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028, 1030 (N.D. Cal. 2012) (dismissing a conversion claim for defendant's alleged collection and sharing of Plaintiffs' "personally identifiable browsing history" because "personal information does not constitute property").

While one court has held otherwise in connection with a Section 496 claim, *see Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021), the holding rests on the flawed premise that users enjoy "property value" in their data based on the potential that they could sell it to others. Courts have repeatedly rejected such contentions absent any plausible allegations that the plaintiffs *actually* were in the practice of selling their information. *See, e.g.*, *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (rejecting allegation that plaintiff "lost property" as a result of defendant collecting his geolocation data, given that he had "not shown how this

information has economic value to *him*" (emphasis in original) (citation omitted)); *Gardiner v. Walmart, Inc.*, No. 20-CV-04618-JSW, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) (rejecting lost value allegations where plaintiff did not "allege that he has been unable to sell, profit from, or monetize his personal information"); *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (rejecting lost value theory given that plaintiffs "[did] not plausibly allege that they intended to sell their non-disclosed personal information to someone else"); *Bass v. Facebook, Inc*., 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property."). The Ninth Circuit has recently voiced agreement with these holdings. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) (rejecting lost value theory: "Several courts in this Circuit have found, and we agree, that the 'mere misappropriation of personal information' does not establish compensable damages."). Plaintiffs do not allege, let alone plausibly, that they actually had any intention of selling their data to anyone, or that anyone was prepared to buy it from them—nor could they, as the idea that any market exists in which individual users could sell their browsing data is simply fanciful.

#### 2. Plaintiffs Cannot Allege Their Browsing Data Was Transferred from Their Possession

Plaintiffs also cannot claim that their browsing data was ever "stolen," because they do not allege that it was ever *transferred* from their possession; they allege only that it was *copied* to Avast. The crime of theft by false pretenses—which Plaintiffs' Section 496 claim is based on—requires that "(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner *transferred the property* to the defendant in reliance on the representation." *People v. Wooten,* 44 Cal. App. 4th 1834, 1842 (1996) (emphasis added). The transfer element requires transfer of possession, as well as title, of the property. *People v. Williams*, 57 Cal. 4th 776, 788 (2013) ("[T]heft by false pretenses involves

the *consensual* transfer of possession as well as *title* of property.") (emphasis in original).[6]

Plaintiffs do not allege any facts implying that they somehow lost possession—let alone title—over their browsing data. Regardless of whether the data was ever copied to Avast, Plaintiffs continued to possess it themselves: e.g., the data would have been stored in the browsing histories on Plaintiffs' own computers, where Plaintiffs could have continued to access it as they wished. As courts have recognized in the conversion context, "[w]here property is capable of being copied, wrongful possession of copies does not typically give rise to a conversion claim if the rightful owner retains possession of the original or retains access to other copies." *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1022 (C.D. Cal. 2020) (citations omitted). The same is true here: because Plaintiffs never lost possession of their browsing data, Defendants cannot be said to have "stolen" it. *See United States v. Abouammo*, No. 19-CR-00621-EMC-1, 2022 WL 17584238, at *12 (N.D. Cal. Dec. 12, 2022) (explaining that "a business's collection of users' personal information" does not constitute conversion "because that information is not, and cannot, be under the user's exclusive control," e.g., "when a website records a user's email address, the user does not lose exclusive control of the email address"); *LinkedIn Corp.*, 900 F. Supp. 2d at 1030 (rejecting conversion claim given that "information such as what LinkedIn profile pages are viewed by a user is not 'capable of exclusive possession or control'").[7]

### 3. Plaintiffs Have Not Adequately Alleged Their Data Was Transferred Under False Pretenses

Finally, Plaintiffs fail to allege any specific intentional misrepresentations of fact that they

---

[6] Notably, because theft by false pretenses involves *consensual* transfer of data, *see Williams,* 57 Cal. 4th at 788, Plaintiffs' invocation of this theory amounts to a concession that they consented to Avast's collection of their data—thus confirming that their wiretapping and privacy claims are subject to dismissal on this ground.

[7] One district court has found that copying data can give rise to a larceny claim, apparently believing that "California courts have held that copying is theft." *Calhoun*, 526 F. Supp. 3d at 635. But the case cited for that proposition, *People v. Kwok*, 63 Cal. App. 4th 1236, 1249-50 (1998), concerned the copying of a house key as part of a burglary conviction, and emphasized that the copying was theft "because it deprives the owner of the right of exclusive control" of her own home. *Id.* Here, by contrast, no computer user has exclusive control of their own browsing data, which is constantly being shared with websites, internet service providers, and others. Moreover, *Calhoun* does not address California law holding that theft by false pretenses requires the transfer of both possession and title to property.

relied upon in purportedly transferring their data, as necessary to support a claim of theft by false pretenses. Claims brought pursuant to Section 496 "are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) to the extent they involve allegations of fraudulent conduct." *ELT Sight, Inc. v. EyeLight, Inc.*, No. LACV1905545JAKRAOX, 2021 WL 6618552, at *7 (C.D. Cal. Oct. 22, 2021). Thus, Plaintiffs must identify "the specific statements alleged to be false, . . . when the statements were made and when Plaintiffs . . . encountered them." *Haddad v. Merck and Co., Inc.*, No. 22-2151-DMG, 2022 WL 17357779, *8 (C.D. Cal. Aug. 11, 2022). Moreover, given the criminal nature of a violation of Section 496, the allegations must support an inference of "criminal intent on the part of the defendant beyond 'mere proof of nonperformance or actual falsity.'" *Siry Inv.,*, 13 Cal. 5th at 361-62 (quoting *People v. Ashley* 42 Cal. 2d 246, 264 (1954)).

Here, Plaintiffs have failed to point to any particular "false or fraudulent representation or pretense" that allegedly led to them transferring their data to Avast. They vaguely allege that "Gen Digital and Avast use misleading and false product names and advertising claims to (i) intentionally misrepresent that their products make it safer and more secure to browse the Internet and (ii) promise to keep Plaintiffs' and Class and Subclass members' online communications safe and secure from data harvesters." Compl. ¶ 160. But the product names are not statements, let alone false ones—they simply highlight, for AOSP, that it provides security and privacy services to online users, and for SafePrice, that it helps users avoid overpaying for goods. All that is true, and uncontradicted by Plaintiffs. As for their reference to "advertising claims," Plaintiffs fail to identify what particular claims they are referring to—making it impossible to analyze them based on their actual language and full context.[8] Regardless, even in the generic way that Plaintiffs paraphrase them, Plaintiffs fail to sufficiently explain how they are false. The statements are not incompatible with the Avast Extensions' alleged accessing of browser data—again, any reasonable user would assume that access to be necessary for the Avast Extensions to perform their functions. Nor are the statements even inconsistent with the allegation that Avast and Jumpshot previously *anonymized* user data and sold it to third parties for advertising purposes. While Plaintiffs may

[8] *See Atkins v. Calypso Sys., Inc.*, No. CV-14-02706-PHX-NVW, 2015 WL 5856881, *12 (D. Ariz. Oct. 8, 2015) ("Without knowing the specific content and context of the alleged fraudulent statements, Defendants cannot easily raise particular defenses against [plaintiff's] allegations.")

dispute that anonymization is sufficiently effective to keep user data "safe and secure," that hardly implies that there was any *intentional* misrepresentation of fact by Defendants in this regard.

Courts have specifically warned against the risk of Section 496 turning into a routine litigation vehicle if applied expansively. As one court has stated: "If every plaintiff in an employment or contract dispute could also seek treble damages and attorneys' fees on the ground that the defendant received 'stolen property,' such claims would become the rule rather than the exception, parties would more frequently assert claims for 'theft' in run-of-the-mill commercial disputes, and cases would be harder to settle." *Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 972 (2018), *as modified* (Aug. 14, 2018). That, however, would be precisely the effect of allowing Plaintiffs' Section 496 claim to go forward: Under their theory, every claim of false advertising or insufficient privacy disclosure against a service that somehow accesses some type of user data would provide a basis not only for a civil suit for treble damages, but *criminal prosecution*, on the theory that the service provider "stole" user information under "false pretenses." This Court should reject Plaintiffs' efforts to weaponize the extraordinary remedies of the criminal theft provisions for ordinary consumer litigation.

**D. Plaintiffs' Equitable Claims Fail**

Finally, Plaintiffs' two equitable claims—under the UCL and a putative claim for "unjust enrichment"—fail too. Plaintiffs are entirely precluded from bringing equitable claims because they allege an adequate remedy at law; and their claims are also flawed for claim-specific reasons.

**1. All of Plaintiffs' Equitable Claims Fail Because They Allege an Adequate Remedy at Law**

As the Ninth Circuit reaffirmed in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), claims for equitable relief, such as restitution, disgorgement, and injunctions under the UCL, *see* Compl. ¶¶ 181-82, are proper only where a plaintiff lacks an adequate legal remedy. Here, Plaintiffs plead that a legal remedy—monetary damages—is available if they prevail. Compl. at 35. They cannot have it both ways: having alleged an adequate remedy at law, their equitable claims under the UCL and for unjust enrichment must be dismissed, as well as any other claims for equitable remedies. *See Sonner*, 971 F.3d at 844 (plaintiff "must establish that she lacks

an adequate remedy at law before securing equitable restitution for past harm under the UCL").

Plaintiffs' conclusory assertion as part of their UCL claim (they do not even attempt a similar allegation for their unjust enrichment claim) that they "lack an adequate remedy at law," ¶ 183, does not suffice to cure this fundamental deficiency. *Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (affirming dismissal of UCL claim where "Plaintiffs failed to make any plausible allegation that they lacked an adequate remedy at law"); *Reilly v. Apple Inc.*, No. 21-cv-04601-EMC, 2022 WL 74162, at *10 (N.D. Cal. Jan. 7, 2022) (dismissing claims for equitable relief under *Sonner* where plaintiff "merely assert[ed] that he lack[ed] adequate remedies at law, but fail[ed] to allege facts or reasons why that is the case"). Indeed, while Plaintiffs suggest they need forward-looking injunctive relief to prevent "ongoing harms from Defendants' taking, possession, and use of data," Compl. ¶ 183, they expressly allege that they no longer use the Avast products. *See id.* ¶¶ 74, 76. Nor do Plaintiffs allege that Defendants have engaged in any sale, transfer, or improper use of their data since at least 2020. *See id.* ¶ 68. Plaintiffs leave it a mystery as to how any ongoing harm could possibly befall them, much less harm that could not be adequately remedied by money damages.[9]

Further, because Plaintiffs' "legal and equitable claims [are] based on the same factual predicates," the problem with their equitable claims is incurable, and the claims should be dismissed with prejudice. *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750-VAP, 2019 WL 7753448, at *13-14 (C.D. Cal. Dec. 20, 2019); *Gardiner v. Walmart, Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *7 (N.D. Cal. Mar. 5, 2021); *In re Macbook Keyboard Litig.*, 2020 WL 6047253, at *3-4 (N.D. Cal. Oct. 13, 2020). Plaintiffs seek both legal and equitable relief for "the exact same conduct"—the alleged taking of their browsing data—which is precisely what *Sonner* precludes. *Price v. Apple, Inc.*, No. 21-cv-02846-HSG, 2022 WL 1032472, at *7 (N.D. Cal. Apr. 6, 2022); *see also Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015) (dismissing UCL and False Advertising Law claims "for the exact same conduct" as Consumer Legal Remedies Act claim).

---

[9] Plaintiffs' purported need for an injunction is further undermined by their own allegations that Gen Digital acquired Avast only in 2022, long after the alleged improper use of data (its sale through Jumpshot) had ceased.

### 2. Plaintiffs Plead No Plausible UCL Claim

Plaintiffs' UCL claim also suffers from multiple claim-specific defects. Initially, the UCL limits statutory standing to those who have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Birdsong v. Apple, Inc*., 590 F.3d 955, 959 (9th Cir. 2009). Plaintiffs allege "the loss of money and/or property" based on "the unauthorized collection of their personal information," Compl. ¶ 178, but "[c]ourts have widely held that 'personal information' does not constitute [such lost] money or property under the UCL." *Gardiner*, 2021 WL 2520103, at *8; *Rodriguez v. Google*, No. 20-cv-04688-RS, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (individual digital data is not considered "money or property"); *Campbell v. Facebook*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (misappropriation of private messages not lost "money or property"); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (same).

Nor can Plaintiffs' bare allegations of "harm in the form of diminution of the value of their private and personally-identifiable data and content," Compl. ¶ 178, rescue their UCL claim, because they "do not plausibly allege that they intended to sell their . . . personal information . . . nor . . . that someone else would have bought it[.]" *Facebook Consumer Priv. Litig*., 402 F. Supp. 3d at 784. Indeed, just months ago a California appellate court reaffirmed that a "lost-value-of-[personal information] theory" is "insufficient to support" standing under California's UCL where the plaintiffs "did not allege they ever attempted or intended to participate in [a] market [for their information], or otherwise to derive economic value from their" data. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022), *review denied* (Dec. 14, 2022).

Plaintiffs also cannot support a UCL claim under either the "unlawful" or "unfair" prong of the statute. Compl. ¶¶ 174-75 (unlawful); *id.* ¶ 176 (unfair). Their unlawful claim is derivative of their other claims (*id.* ¶ 174) and fails for the same reasons. Plaintiffs' "unfair" claim is based on allegations that they had "no reason to know that [browsing] information was being intercepted because it was never disclosed or otherwise made known to them by Defendants," but, again, that statement is contradicted by common sense and other allegations in the Complaint, as well as by judicially noticeable facts. And Plaintiffs' assertion that Defendants' "acts and practices are

immoral, unethical, oppressive, unscrupulous, and/or substantially injurious," *id.* ¶ 177, merely recites the "*South Bay* test" for UCL unfairness, without any factual support. *Hodsdon v. Mars, Inc*., 891 F.3d 857, 866 (9th Cir. 2018) (citation omitted). Such bare legal conclusions "devoid of factual support" are not enough to state a claim. *See Smith v. LG Elecs. U.S.A., Inc.,* No. C-13-4361-PJH, 2014 WL 989742, at *9-10 (N.D. Cal. Mar. 11, 2014).

### 3. Plaintiffs Plead No Plausible Unjust Enrichment Claim

As for Plaintiffs' "unjust enrichment" claim, there is no such standalone cause of action in California. *See Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 92 (N.D. Cal. 2020) ("California treats unjust enrichment as a remedy and not an independent claim."); *Thakur v. Betzig*, No. 3:17-cv-06603-JD, 2019 WL 2211323, at *2 (N.D. Cal. May 22, 2019) (unjust enrichment is "better viewed as a remedy and not a freestanding cause of action"). Additionally, while "[r]estitution may be available where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct," where, as here, "a plaintiff fails to sufficiently plead an actionable misrepresentation or omission, his or her restitution claim must be dismissed." *Rojas-Lozano v. Google, Inc*., 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (quotation marks omitted). Plaintiffs fail to point to any particular omission or misrepresentation by Defendants, particularly in light of the basic nature of the Avast products and the express consent that users must give to allow the products to read their web data, as discussed above. This claim too must therefore be dismissed.

## V. CONCLUSION

Defendants respectfully request dismissal of the Complaint with prejudice.

Dated: February 24, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By <u>/s/ *Michael H. Rubin*</u>

Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Tyce R. Walters (*pro hac vice*)
*tyce.walters@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*