Ekwan E. Rhow - State Bar No. 174604
erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
mmasters@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter - State Bar No. 234137
*jrotter@glancylaw.com*
David J. Stone - State Bar No. 208961
*dstone@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
Email: info@glancylaw.com

Korey A. Nelson (admitted *pro hac*)
*knelson@burnscharest.com*
Amanda K. Klevorn (admitted *pro hac*)
*aklevorn@burnscharest.com*
Claire E. Bosarge (admitted *pro hac*)
*cbosarge@burnscharest.com*
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845

Attorneys for Plaintiffs Grace Lau and Christopher Karwowski

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| GRACE LAU and CHRISTOPHER KARWOWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GEN DIGITAL INC. a corporation, and JUMPSHOT INC., a corporation,<br><br>Defendant. | CASE NO. 4:22-cv-08981-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: June 1, 2023<br>Time: 2:00 p.m.<br>Crtrm.: 6<br>Judge: Hon. Jon S. Tigar |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL ARGUMENT ..... 4

A. Standard of Review ..... 4

B. Plaintiffs' Wiretapping and Privacy Claims Are Timely Due to Defendants' Fraudulent Concealment ..... 4

C. Plaintiffs Sufficiently Allege Wiretapping Claims ..... 7

1. Defendants' Consent Defense Fails ..... 7

2. Defendants' Arguments Pertaining Exclusively to CIPA Section 632 Are Also Without Merit ..... 10

D. Plaintiffs Sufficiently Allege Privacy and Intrusion Upon Seclusion Claims ..... 12

1. Plaintiffs Sufficiently Allege a Reasonable Expectation of Privacy ..... 12

a. Amount of Data Collected ..... 12

b. Sensitivity of the Data ..... 13

c. Nature of the Data Collected ..... 14

d. Defendants' Representations About the Collected Data ..... 15

2. Plaintiffs Sufficiently Allege Highly Offensive Conduct ..... 15

E. Plaintiffs Sufficiently Allege Violation of California Penal Code § 496(a) ..... 17

1. Plaintiffs' Browsing Data Is "Property" Subject to Theft ..... 17

2. Defendants' Illicit Copying of Plaintiffs' Personal Information Constitutes Theft ..... 19

3. Plaintiffs Sufficiently Allege that Defendants Acted in a Manner Constituting Theft, as Defined in Cal. Penal Code § 484 ..... 19

F. Plaintiffs Sufficiently Allege Claims for Equitable Relief ..... 21

1. The Existence of an Adequate Legal Remedy Does Not Preclude Claims for Equitable Relief Under the UCL ..... 22

G. Plaintiffs Sufficiently Allege a Claim for a Violation of Section 17200 ..... 23

H. Plaintiffs Sufficiently Allege a Claim for Unjust Enrichment ..................... 24
IV. ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED ................ 24
V. CONCLUSION ........................................................................................ 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Anthem, Inc. Data Breach Litig.*,
162 F.Supp.3d 953 (N.D. Cal. 2016) .......... 18

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 24

*Ayala v. U.S. Xpress Enter's, Inc.*,
2022 WL 16859754 (C.D. Cal. July 22, 2022) .......... 22

*Brown v. Google, LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......... 9, 18

*Brown v. Google, LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) .......... 4, 15, 16

*Calhoun v. Google, LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) .......... *passim*

*U.S. v. City of Redwood City*,
640 F.2d 963 (9th Cir. 1981) .......... 4

*Conerly v. Westinghouse Elec. Corp.*,
623 F.2d 117 (9th Cir. 1980) .......... 6

*E.W. French & Sons, Inc. v. General Portland Inc.*,
885 F.2d 1392 (9th Cir. 1989) .......... 4, 5

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 24

*In re Facebook Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... *passim*

*Ferry v. Porsche Cars North Am., Inc.*,
2022 WL 1769120 (C.D. Cal. March 11, 2022) .......... 22, 23

*U.S. v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 13, 14

*Garner v. Amazon.com, Inc.*,
603 F.Supp.3d 985 (W.D. Wash. 2022) .......... 8

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sep. 26, 2013) .................................................... 10, 11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015)........................................................................ 11, 16

*In re Google Inc. Location History Litig.*,
428 F.Supp.3d 185 (N.D. Cal. 2019) ..................................................................... 8

*In re Google, Inc. Privacy Policy Litig.*,
58 F.Supp.3d 968 (N.D. Cal. 2014) ..................................................................... 16

*Grouse River Outfitters, Ltd. v. Oracle Corp.*,
2021 WL 754839 (9th Cir. Feb. 26, 2021)............................................................ 17

*Hammerling v. Google LLC*,
2022 WL 2812188 (N.D. Cal. July 18, 2022)................................................ 13, 16, 17

*Harris v. Garcia*,
734 F.Supp.2d 973 (N.D. Cal. 2010) .................................................................... 20

*Hillori Graham v. Central Garden & Pet Co.*,
2023 WL 2744391 (N.D. Cal. 2023) ..................................................................... 23

*Hrapoff v. Hisamitsu America, Inc.*,
2022 WL 2168076 (N.D. Cal. June 16, 2022) ......................................................... 3

*Innerline Engineering, Inc. v. Operating Engineers Health and Welfare Trust Fund for Northern California*,
2023 WL 2671373 (N.D. Cal. Mar. 28, 2023)......................................................... 24

*In re iPhone Application Litigation*
87 F. Supp. 3d 1018, 1032 (N.D. Cal. 2014) ......................................................... 16

*Johnson v. Trumpet Behavioral Health, LLC*,
2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .............................................................. 23

*In re Lithium Ion Batteries Antitrust Litig.*,
2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ............................................................. 6

*Luksch v. Latham*,
675 F.Supp. 1198 (N.D. Cal. 1987) ........................................................................ 6

*In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig.*,
440 F.Supp.3d 447 (D. Md. 2020) ........................................................................ 18

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008)........................................................................................ 4

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ................................................... 12, 14

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020)...................................................................................22, 23

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)...................................................................................7, 10

*Nguyen v. Stephens Institute*,
529 F.Supp.3d 1047 (N.D. Cal. 2021) ........................................................................ 24

*Opperman v. Path, Inc.*
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....................................................................... 16

*Opperman v. Path, Inc.*
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .................................................................8, 16

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708, 712 (9th Cir. 2001)..............................................................................4, 24

*Perez v. Mortg. Elec. Registration Sys., Inc.*
959 F.3d 334, 340 (9th Cir. 2020)..............................................................................4, 24

*Quan v. Smithkline Beecham Corp.*,
149 F. App'x 668 (9th Cir. 2005) .................................................................................. 4

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........................................................ 11, 12

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)................................................................ 8

*Smith v. Facebook, Inc.*,
745 Fed.Appx. 8 (9th Cir. 2018) ................................................................................7, 8

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020).............................................................................22, 23, 24

*Svenson v. Google, Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ............................................................... 18

*Thibodeaux v. Teamsters Local 853*,
263 F.Supp.3d 772 (N.D. Cal. 2017) ............................................................................ 5

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir. 1987) .......... 4

*Van Buskirk v. CNN, Inc.*,
284 F.3d 977 (9th Cir. 2002) .......... 4

*In re Yahoo!*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 18

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) .......... 9

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 13

**State Cases**

*People v. Ashley*
42 Cal.2d 246 (Cal. 1954) .......... 20

*People v. Avery*,
27 Cal.4th 49 (Cal. 2002) .......... 20

*Bell v. Feibush*,
212 Cal.App.4th 1041 (Cal. Ct. App. 2013) .......... 17, 21

*CTC Real Estate Servs. v. Lepe*,
140 Cal.App.4th 856 (Cal. Ct. App. 2006) .......... 17

*People v. Davis*,
19 Cal.4th 301 (Cal. 1998) .......... 20, 21

*People v. Drennan*,
84 Cal.App.4th 1349 (Cal. Ct. App. 2000) .......... 10

*Flanagan v. Flanagan*,
27 Cal.4th 766 (Cal. 2002) .......... 11

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal.App.4th 986 (Cal. Ct. App. 2011) .......... 16

*People v. Gonzales*,
2 Cal.5th 858 (Cal. 2017) .......... 20

*People v. Gopal*,
171 Cal.App.3d 524 (Cal. Ct. App. 1985) .......... 19

*Ion Equip. Corp. v. Nelson*,
110 Cal.App.3d 868 (Cal. Ct. App. 1980) .......... 4

*People v. Nakai*,
183 Cal.App.4th 499 (Cal. Ct. App. 2010) .......... 10

*People v. Parker*,
217 Cal.App.2d 422 (Cal. Ct. App. 1963) .......... 19

*People v. Vidana*
1 Cal.5th 632 (Cal. 2016) .......... 17

*Williams v. Superior Ct.*,
81 Cal.App.3d 330 (Cal. Ct. App. 1978) .......... 19

*People v. Williams*,
57 Cal.4th 776 (Cal. 2013) .......... 19, 20

**Federal Statutes**

18 U.S.C. § 2520 .......... 4

Fed R. Civ. P. 12 .......... 3

**State Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* .......... 21, 23

Cal. Penal Code § 484 .......... 17, 19, 21

Cal. Penal Code § 496 .......... *passim*

Cal. Penal Code § 532 .......... 21

Cal. Penal Code § 631 .......... 11

Cal. Penal Code § 632 .......... 10, 11

**Other Authorities**

California Constitution .......... 12, 23

## I. INTRODUCTION

Defendants tell the public that two internet browser extensions they offer, Avast Online Security & Privacy ("AOSP") and Avast SafePrice ("SafePrice") (collectively, the "Extensions") will protect users from online trackers and malicious websites, and will allow users to keep their online activity private and anonymous. The reality is the exact opposite: the Extensions are themselves highly-invasive trackers which acquire a real-time history of the users' browsing activity and store that information on Defendants' servers. This misconduct, along with other wrongful conduct detailed in the Complaint, violates wiretapping and other statutes, and constitutes various common law privacy torts.

Defendants do not deny that the Extensions track users' browsing activity *and* acquire and store user data. Instead, Defendants seek to avoid liability by asserting that somehow users *gave them permission to track their data* by downloading a program advertised as a tool to *prevent the tracking of data*. This makes no sense, and Defendants' efforts to avoid liability – almost all of which raise disputed fact issues – necessarily fail at the pleading stage.

For example, Defendants cannot rely upon their assertion, unsupported by factual allegations in the Complaint or otherwise, that AOSP and SafePrice *had* to intercept and steal user information in order to provide the offered services. In addition to lacking factual support, this assertion is illogical – there is no reason why users would expect or assume that Defendants were copying and acquiring their Internet and email mailbox searches and tracking their browsing activity along with other sensitive data. To fulfill its intended function, internet browser protection software like AOSP need only warn a user prior to visiting a malicious website. There is simply no reason that the Extensions must read, acquire, and store a user's searches, browsing history and other information in order to provide this service. Discovery will show that similar functionality provided by other companies operates without intercepting and stealing user information. Regardless, that disputed factual assertion cannot be resolved at the pleading stage.

Similarly, Defendants' assertion that users were warned about the privacy intrusion

is unavailing and, at most, raises factual issues for discovery. The purported *current* notification, that the Extensions can "Read and change all your data on all websites," is something that can occur locally on a user's computer without collection by Defendants. That statement is a far cry from disclosing that the Extensions will intercept and acquire a user's entire browsing history along with other information concerning the user's location and computer – exactly the type of highly offensive and egregious activity that the Extensions were supposed to prevent.[1]

Accordingly, Defendants' motion to dismiss should be denied in its entirety, and this case should move into the discovery phase.

## II. FACTUAL BACKGROUND

AOSP is a browser extension available for Google Chrome and Microsoft Edge. Dkt. 1 (hereinafter "Compl.") ¶ 33. Defendants' website states that AOSP helps consumers "[b]rowse with more privacy," "[e]asily avoid malicious websites and phishing scams," "[b]lock online trackers and browse anonymously," "[o]ptimize your privacy settings on your favorite platforms," and "[t]ake the hassle out of website cookie permissions." *Id.* AOSP purportedly gives consumers "an extra level of real-time threat protection, every time you browse." *Id.* SafePrice makes similar representations. *Id.* ¶¶ 37-38.

What the Extensions actually do is the exact opposite: they intercept and acquire users' search engine keyword searches, search results, and email inbox searches. For example, when an AOSP user runs a search on Google's search engine, a "main channel" is established between the user's computer and Google to transmit the user's search to Google. *Id.* ¶ 70. The Extensions intercept that transmission, sending a copy of the user's Google search to Defendants, who store that data. *Id.* ¶¶ 70, 72. If a user runs a search of his or her own email mailbox, the Extensions intercept the search and it is stored on Defendants' servers. *Id.* ¶¶ 71-72.

---

[1] Defendants do not, and in the context of a motion to dismiss cannot, present evidence as to when this disclosure began appearing on the download page. This fact, even apart from the substantive inadequacy of the disclosure, renders the disclosure irrelevant.

Users are not informed when they download the Extensions that AOSP or SafePrice will acquire their Internet searches and send those searches to be stored on Defendants' servers; will acquire and store a list of all of the websites returned in response to their Internet searches; will acquire and store the user's full browsing history, including visits to *non-malicious* websites; and will acquire and store information concerning the user's computer operating system, and other identifiable information. Nor are users informed that the Extensions will intercept user's searches of their own email mailboxes. *Id.* ¶¶ 68-73.

Gen Digital's predecessor, Avast, has a long history of improperly acquiring and distributing highly sensitive user data. *Id.* ¶ 41, *et seq*. Avast previously acquired real-time keystroke information from users of AOSP and AOSP's predecessor application, Avast Online Protection ("AOP"), and unbeknownst to users, licensed this illicitly-acquired data to its subsidiary, Defendant Jumpshot Inc. ("Jumpshot") *Id.* ¶ 44. With Avast's knowledge, Jumpshot sold this highly-sensitive information to its customers, representing that the information would allow its customers to "jump the garden wall," that is, to view the universe of websites that users visited. *Id.* ¶ 47. The user information sold to Jumpshot was so specific that it could allow someone to determine what browser tabs the user had opened; what websites the user visited, what was read on the sites and for how long; and what a user clicked on. *Id.* ¶ 52. One expert found that the information Jumpshot sold could easily be "deanonymized with high precision," so that the users' identities could be learned by Jumpshot's customers. *Id.* ¶ 53.

Avast and Jumpshot's covert scheme to monetize user data was revealed in late 2019. *Id.* ¶ 51. Avast's security extensions were quickly removed from various browser services. *Id.* ¶¶ 54, 60. Avast promptly admitted its wrongful conduct and apologized. *Id.* ¶ 65. In an attempt to ease the fallout, Avast announced that it would cease licensing user data to Jumpshot and wind down Jumpshot's operations. *Id.* ¶ 66. However, as alleged in the Complaint, Defendants continue to harvest Plaintiffs' and the class members' sensitive data to this day, without adequate notice.

## III. LEGAL ARGUMENT

### A. Standard of Review

In considering a Rule 12(b)(6) motion to dismiss contesting the legal sufficiency of the claims stated in a complaint, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). A complaint may only be dismissed where "it appears beyond doubt that plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (quoting *Rabang v. INS*, 35 F.3d 1449, 1451 (9th Cir.1994)). "Under this rule it is only the extraordinary case in which dismissal is proper." *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Thus, the Court must deny Defendants' Motion if the Complaint contains "a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Ninth Circuit has a liberal policy favoring amendment, so long as the pleading is not so inadequate that it "could not possibly be cured by the allegation of other facts." *Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 340 (9th Cir. 2020). This policy is applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

### B. Plaintiffs' Wiretapping and Privacy Claims Are Timely Due to Defendants' Fraudulent Concealment

Plaintiffs' wiretapping and privacy claims are subject to either a one-year or two-year statute of limitations. *See Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021); *Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 670 (9th Cir. 2005) (two-year statute for privacy claims); 18 U.S.C. § 2520(e) (two-year statute for ECPA); *Ion Equip. Corp. v. Nelson*, 110 Cal.App.3d 868, 880 (Cal. Ct. App. 1980) (one-year statute for CIPA). However, tolling is available under the equitable doctrine of fraudulent concealment where Defendants "[f]raudulently concealed the existence of the cause of action so that plaintiff, acting as a reasonable person, did not know of its existence." *E.W.*

*French & Sons, Inc. v. General Portland Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989). Thus, allegations or claims that appear facially time-barred may nevertheless survive a motion to dismiss where Plaintiffs plead facts showing (1) affirmatively misleading conduct by Defendants; which are (2) undiscovered despite reasonable diligence by Plaintiffs. *Thibodeaux v. Teamsters Local 853*, 263 F.Supp.3d 772, 778 (N.D. Cal. 2017).

It is difficult to imagine more blatantly misleading conduct than what Defendants have done here. Defendants marketed their software under the names "Avast Online ***Security & Privacy***" and "Avast ***Safe***Price." Compl. ¶ 82. AOSP, in particular, was aggressively touted as allowing consumers to "[b]rowse with more privacy," "[b]lock online trackers," and "keep . . . online activities private and anonymous." *Id.* ¶¶ 33-35. SafePrice made similar representations. *Id.* ¶ 37-38. Indeed, Defendants went as far as to claim that AOSP would "stop web companies from collecting and selling your personal data," *id.* ¶ 35, which is exactly what Defendants themselves were doing unbeknownst to Plaintiffs: "harvesting . . . highly granular and specific information" in real time, and marketing that information to third parties as "the most precise way to unlock human behavior online." *Id.* ¶ 59.

When Defendants' conduct began to attract media scrutiny in January 2020, they took their misinformation campaign to the next level: on one hand apologizing and claiming that they would change their behavior and shut Jumpshot down, while on the other hand continuing surreptitiously to intercept and acquire consumers' data. *Id.* ¶¶ 65-68. In the face of these repeated misrepresentations, it would be plainly unreasonable to expect that ordinary users should have been on notice that software named "Security & Privacy" and marketed as a solution for preventing online tracking was itself secretly harvesting their data.

Defendants try to brush away their misleading conduct by arguing that Plaintiffs were not "reasonably diligent," *Thibodeaux*, 263 F.Supp.3d at 778, because Defendants' harvesting and sale of data was already being discussed in the media by mid-2020. Dkt. 25 ("Mot. to Dismiss") at 7:10-15. Defendants' argument, however, lacks merit.

First, Defendants' argument ignores Defendants' further concealment in the context of Jumpshot. Compl. ¶¶ 65-68. Second, a statute of limitations defense must be "apparent from the face of the complaint" when raised in a motion to dismiss. *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980) ("dismissal should be granted *only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled*") (cleaned up; emphasis added). Whether the media coverage of Defendants' data harvesting and sale was sufficiently widespread as to provide a reasonable consumer with notice – particularly when Defendants continued to secretly harvest data even after shuttering Jumpshot and issuing apologetic statements – is an issue of fact, which cannot be resolved on the face of the pleadings. *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) ("[t]he fact-intensive nature of fraudulent concealment makes disposition of that issue generally inappropriate on the pleadings"); *Luksch v. Latham*, 675 F.Supp. 1198, 1202 (N.D. Cal. 1987) ("The Ninth Circuit generally views the question of when a reasonably diligent [plaintiff] should have discovered a claim as one appropriate for the factfinder to determine after trial rather than one for a judge to decide as a matter of law").

*Luksch* involves analogous facts, albeit in the context of a motion for partial summary judgment. There, defendants argued that plaintiffs had been on constructive notice of their securities fraud claim because they had received an investor prospectus containing information that contradicted Defendants' fraudulent representations. 675 F.Supp. at 1203-4. The *Luksch* court squarely rejected this argument, reasoning that summary judgment could only be granted based on individualized proof that each plaintiff had read the prospectus and that the knowledge of one plaintiff could not be imputed upon another. *Id.* at 1202. Further, the *Luksch* court noted that a multi-factor factual analysis was required to determine reasonable diligence, including the plaintiffs': (1) "knowledge and sophistication"; (2) "access to relevant information"; (3) and "opportunity to detect fraud." *Id.* at 1203-4. Defendants' statute of limitations defense here must fail because none of these complex factual issues are amenable to resolution at the pleading stage based on the

face of the Complaint: there are no allegations or facts subject to judicial notice that would allow the Court to determine the knowledge or sophistication of the Plaintiffs, whether they had access to the relevant media reports, and whether the content of those reports provided them with an adequate opportunity to detect fraud.

### C. Plaintiffs Sufficiently Allege Wiretapping Claims

#### 1. Defendants' Consent Defense Fails

In the Ninth Circuit, defendants may establish a consent defense to wiretapping claims if they can prove that plaintiffs assented to online contracts – such as terms of use or privacy policies – that are both sufficiently conspicuous *and* sufficiently detailed to constitute actual or inquiry notice of the relevant conduct. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Smith v. Facebook, Inc.*, 745 Fed.Appx. 8 (9th Cir. 2018) ("in determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.").

Importantly, Defendants do not rely on written terms of use or a privacy policy to establish a consent defense here. This omission demonstrates Defendants' awareness that users – including Plaintiffs – did not have adequate notice of any such terms of use or privacy policy. Rather, they rely on a one-sentence "Privacy Prompt" that they contend appears when a user attempts to download the Extensions from the Google Chrome or Microsoft Edge Web Stores (the "Web Stores"). Dkt. 25-4; 25-5 (Exs. C and D to Mot. to Dismiss). The following is the entire text of the Privacy Prompt: "[the Extensions] can: Read and change all your data on all websites."

This Privacy Prompt is insufficient to establish consent for three separate reasons. First, Defendants fail to demonstrate that Plaintiffs had notice of the Privacy Prompt, given that Exhibits C and D are screenshots of the Web Stores as they exist today, and not in prior years when Plaintiffs and other class members downloaded AOSP and SafePrice.

Second, the Privacy Prompt's disclosure that AOSP and SafePrice can "[r]ead and change all your data on all websites" is fatally vague and inadequate. It conveys, at most,

that software, which is installed and runs locally on the user's computer, has access to user data on websites. But no reasonable person reading this bare-bones disclosure would be on notice that Defendants can or do use AOSP or SafePrice to intercept "search engine keyword searches, search results, and email inbox searches," Compl. ¶ 13, and then sell that data to third parties. *Id.* ¶¶ 44-46. Reading a user's data input on a website is a far cry from intercepting, acquiring, and storing data.

Cases where courts have found a valid consent defense against wiretapping claims have almost uniformly relied on far more detailed disclosures, which include the precise nature of the information acquired and its ultimate use. *See, e.g.*, *Smith*, 745 Fed.Appx. at 8-9 (disclosing that information regarding website and app usage is acquired and used to provide personalized ads); *Silver v. Stripe, Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (disclosing that "identifiers, demographic information, commercial information, relevant order information, internet activity, geolocation data, sensory information, and inferences" were collected and tracked by third parties); *Garner v. Amazon.com, Inc.*, 603 F.Supp.3d 985, 997 (W.D. Wash. 2022) (disclosing that voice assistant stored user voice inputs and used that information to improve services).

Critically, the Privacy Prompt does not warn that Defendants would acquire and store user data, nor does it contain ***any*** information as to what Defendants would do once they have acquired "all your data on all websites" – much less information that the data would be sold to third parties so that they could track "[e]very search. Every click. Every buy. On every site." Compl. ¶ 55.[2] Simply put, this is not sufficient to establish consent. If

[2] Defendants argue that the allegations pertaining to the undisclosed sale of data by Defendant Jumpshot are irrelevant to the wiretapping claims because they have no bearing on whether a communication was unlawfully intercepted. Mot. to Dismiss at 7:16-8:6. But as discussed above, these facts go not to interception, but to lack of consent regarding the third-party sale of the intercepted data – which would make the underlying interception unlawful even if, contrary to the facts, some interception had been disclosed, because "[c]onsent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." *In re Google Inc. Location History Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) (citing *Opperman v. Path, Inc.,* 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016)).

it were, there would be no need for the lengthy and detailed terms of use and privacy policies that have become fixtures of modern internet usage: they could all be replaced with one sentence that says "we read and change all your data on all websites."

Third, even if the bare-bones Privacy Prompt were sufficient on its own merits (it is not), it would nevertheless be rendered insufficient by the pervasive and misleading statements regarding safety and privacy that dominate every other aspect of the AOSP and SafePrice user experience. As discussed in more detail above, Defendants repeatedly touted that their software provided users with enhanced safety and privacy, and would specifically prevent third-parties from tracking their internet usage. Having been exposed to these numerous false and misleading statements – starting from the very name of the software – no reasonable user could be expected to rely on the isolated statement in a Privacy Prompt to conclude that their data was being acquired by Defendants and sold to third parties. *Brown v. Google, LLC*, 2021 WL 6064009, at *12 (N.D. Cal. Dec. 22, 2021) (holding that disclosures regarding data collection contained in Google web browser's privacy policy were rendered inadequate due to other statements from Google that touted browser as "a way that users can manage their privacy" and "prevent Google [itself] from collecting [the plaintiffs'] data.").

Defendants also argue that Plaintiffs' wiretapping claims fail because Plaintiffs "made [Defendants] a party to their browser communications by intentionally installing [Defendants'] software on their browsers[.]" Mot. to Dismiss at 18:4-7. This is the same consent defense, by another name, in that Defendants are arguing that Plaintiffs somehow *must have known* that Defendants would acquire their data in order for the Extensions to work, and it fails for the same reasons as the consent defense above. As discovery will show, it is not necessary for the Extensions to intercept data to the extent occurring here in order to function. Further, the facts here are distinguishable from *Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019), where the allegations of the complaint made it clear that the Bose App was "a fully-acknowledged participant in the communication" that was "supposed to function as a leg in the . . . communication pathway[.]" *Id.* In

contrast, Defendants here make no reference to any allegations in the Complaint to support their baseless assertion that Defendants were intended or necessary parties to the communications between Plaintiffs and the websites they visited. Indeed, the Complaint alleges precisely the opposite: that AOSP and SafePrice were "designed to *intercept* all communications from a main channel . . . between the user and the websites[.]" Compl. ¶¶ 69-72 (emphasis added).

To establish a consent defense, Defendants were required to demonstrate that Plaintiffs assented to a sufficiently conspicuous *and* sufficiently detailed online contract. *Nguyen*, 763 F.3d at 1177 (9th Cir. 2014). The Privacy Prompt is neither. Thus, Defendants' consent defense fails.

### 2. Defendants' Arguments Pertaining Exclusively to CIPA Section 632 Are Also Without Merit

Defendants argue that Plaintiffs have failed to allege a valid claim under CIPA Section 632 because that section pertains only to "sound-based or telegraphic" communications intercepted by "electronic amplifying or recording device." Mot. to Dismiss at 13:1-10. That is simply not the law. California courts have interpreted Section 632 to apply to all "sound-based *or symbol-based* communications" that are "carried on by telegraph, telephone, *or other device*." *People v. Drennan*, 84 Cal.App.4th 1349, 1355 (Cal. Ct. App. 2000) (cleaned up; emphasis added); *see also In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sep. 26, 2013) (noting that alleging "electronic recording" of communications was sufficient to state a claim under Section 632); *People v. Nakai*, 183 Cal.App.4th 499, 418 (Cal. Ct. App. 2010) (citing to series of cases holding that actionable communications under Section 632 are *not "limited to oral or written dialogues*") (emphasis added). In the face of this well-established authority, Defendants' assertion that electronic communications are categorically excluded from protection under Section 632 is utterly unsupported by the law.

Defendants' argument that Plaintiffs have failed to allege their intercepted

communications were "confidential" for purposes of Section 632[3] is similarly unpersuasive. A communication is confidential under Section 632 if the plaintiff "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan,* 27 Cal.4th 766, 776-77 (Cal. 2002). Some California courts have held that there is no reasonable expectation of confidentiality in emails or instant messages. *In re Google Inc.*, 2013 WL 5423918, at *22. However, there is no authority addressing whether this same presumption applies to browsing history or search terms. To the contrary, the court in *Brown* specifically distinguished "private browsing session[s]" from communications to another person – such as emails or instant messages. 525 F. Supp.3d at 1073 (holding, in the context of private browsing, that browsing histories were confidential, because they can reveal "a user's dating history, a user's sexual interests and/or orientation, a user's political or religious views, a user's travel plans, a user's private plans for the future").

Further, as discussed in more detail *infra*, there is ample authority relating to invasion of privacy claims which holds that a "reasonable expectation of privacy" *does* exist in browsing history and search terms. *See, e.g., In re Facebook Internet Tracking Litigation*, 956 F.3d 589, 603-04 (9th Cir. 2020) (concluding that Plaintiffs had adequately pled that collection of browsing histories and search terms by Facebook plug-in was "sensitive and confidential"); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 129, 151 (3d Cir. 2015) (interpreting California Law, holding that users had reasonable expectation of privacy in their browsing histories). Given this well-established rule, it would be irrational to find that individuals *do* have a reasonable expectation of *privacy* in browsing history and search terms, yet somehow *do not* have a reasonable expectation of *confidentiality* in the same.

Defendants' arguments to the contrary rely solely on a single unreported decision, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). In

[3] Section 631 contains no analogous requirement of confidentiality. Cal. Pen. Code § 631(a).

*Revitch*, the court found that the plaintiff did not have a reasonable expectation of confidentiality in his "browsing activity" on a retail website because that activity was narrowly limited to "inquiring about items of clothing." *Id.* Even if this deviation from the general rule regarding browsing history were justified based on the specific facts of *Revitch*, that cannot be the case here, where Defendants were acquiring and selling *all* search terms and browser history from its users, including extremely private information. Compl. ¶ 56.

### D. Plaintiffs Sufficiently Allege Privacy and Intrusion Upon Seclusion Claims

Plaintiffs plausibly allege violation of their privacy rights under the common law and the California Constitution. To prevail on claims for invasion of privacy and intrusion upon seclusion, "[P]laintiffs must show that they had an objectively reasonable expectation of privacy in their [personal browsing communications] and [Defendants'] conduct was highly offensive." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *15 (N.D. Cal. Dec. 22, 2022). Because privacy claims typically involve factual questions that are best left to a jury, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *Id*. Here, Plaintiffs adequately pled both elements of their privacy claims.

#### 1. Plaintiffs Sufficiently Allege a Reasonable Expectation of Privacy

A reasonable expectation of privacy exists where Defendants gain "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d at 601-02 (quoting *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072-73 (2009)). In evaluating whether data collection is actionable due to a reasonable expectation of privacy, courts consider "the amount of data collected, the sensitivity of the data collected, the nature of the data collection, and [defendant's] representations to users." *Calhoun v. Google, LLC*, 526 F. Supp. 3d 605, 621 (N.D. Cal. 2021) (citing *Facebook Tracking*, 956 F.3d at 602). These factors support Plaintiffs' reasonable privacy expectations here.

##### a. Amount of Data Collected

The amount of data collected by Defendants here is at least as much as, if not greater than, the amount of data found to satisfy this factor in analogous cases. *See, e.g., Facebook Tracking*, 956 F.3d at 603 ("the referral URL . . . along with the cookies that precisely identify the [logged-out] user" . . . on the countless websites that incorporate Facebook plug-ins."); *Calhoun*, 526 F. Supp. 3d at 621 (data allegedly collected encompassed 86% of browsing data from popular websites). Here, Defendants collect ***all*** data exchanged between Plaintiffs and the websites to which they navigate, including detailed URL requests, webpage browsing histories and search queries, URLs containing the specific search term(s) communicated to the search engine, and email inbox search queries. Defendants collect this data from tens of millions of people who reportedly installed the Extensions. Compl. ¶ 92 ("Reports indicate that AOSP and SafePrice have each been installed more than 10 million times from the Chrome Web Store. Reports indicate that AOSP has been installed more than 1 million times from the Edge Add-ons store and SafePrice has been installed more than 600,000 times from the Edge Add-ons store.").

**b. Sensitivity of the Data**

In *Facebook Tracking*, the Ninth Circuit distinguished the collection of "full-string detailed URLs" from the data collection at issue in two prior Ninth Circuit decisions where the sensitivity factor was not satisfied. 956 F.3d at 604–05 (distinguishing *U.S. v. Forrester*, 512 F.3d 500 (9th Cir. 2008), which is relied upon by Defendants here, and *In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)). Unlike the IP addresses of visited websites (*Forrester*), and URLs disclosing a user's Facebook ID and the address of the Facebook webpage the user was viewing when the user clicked on a link to play a game (*Zynga*), the URLs at issue in *Facebook Tracking* disclosed the unique "search term" entered in a third-party search engine and the "particular document within a website that a person views." *Id.* at 604-05. This data was sufficiently sensitive in nature because the "URLs could divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform." *Id.* at 605; *see also Hammerling v. Google*

*LLC*, 2022 WL 2812188, at *11 (N.D. Cal. July 18, 2022) (discussing distinction between search term data in *Facebook Tracking* and non-actionable data in *Forrester* and *Zynga*, which was "within users' common-sense expectation.").

The data at issue here is analogous to the detailed URLs in *Facebook Tracking* containing Internet search engine keyword searches that "could divulge a user's personal interests, queries, and habits on third-party websites." *Facebook Tracking* 956 F.3d at 605. The sensitive nature of the data collected here is substantiated by investigations that revealed Avast users' personal web browsing histories are susceptible to deanonymization, which makes it possible to determine whether, for instance, an Avast user had a different sexual preference than what he or she has disclosed to the public (*i.e.*, whether someone was gay or straight, whether out or closeted). Compl. ¶ 56. Lastly, this Court recently recognized that case law supports the "position that individuals maintain a reasonable expectation of privacy in detailed URLs." *In re Meta Pixel*, 2022 WL 17869218 at *15. For the same reasons the URLs in *Facebook Tracking* are distinct from the IP addresses in *Forrester*, the data Defendants collect here is more than sufficiently sensitive and in no way qualifies as data a common-sense user would expect Defendants to collect.

**c. Nature of the Data Collected**

The collection of data secretly and without the users' knowledge is typically considered actionable. *See, e.g., Facebook Tracking*, 956 F.3d at 602 (emphasizing the significance of the "amount of information [that] can be easily collected without user knowledge."); *Calhoun*, 526 F. Supp. 3d at 630 (considering the volume of data allegedly collected and the secretive nature of the alleged collection to conclude plaintiffs adequately alleged a reasonable expectation of privacy). Defendants do not disclose the true nature of their ongoing user data collection practices or the extent of the information collected, allowing Defendants to collect user information, browsing history, search history, and/or web activity in a manner undetectable by users. Defendants' practices at issue here are very similar to the *Facebook Tracking* plaintiffs' allegations regarding Facebook's "surreptitious and unseen" method of collecting individualized data, which was held to

violate social norms. *Facebook Tracking*, 956 F.3d at 603, 608 (Facebook's embedded code caused the users' browsers to generate copies of the user-website GET requests and transmit them to Facebook "through a separate, but simultaneous, channel in a manner undetectable by the user"). Thus, Plaintiffs have sufficiently alleged data collection that violates social norms.

**d. Defendants' Representations About the Collected Data**

Finally, in deciding whether a reasonable privacy expectation exists, courts consider Defendants' representations and resulting user expectations regarding data collection. *Facebook Tracking* 956 F.3d at 603 (observing that, in analogous data privacy cases, "the critical fact was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway"). The very names of the Avast Online Security & Privacy and SafePrice products, as well as Gen Digital and Avast's repeated representations as to how these products purportedly protect users' personal information, sets an expectation with users, including Plaintiffs, that their private Internet search engine keyword searches, search results, and email inbox searches would not be collected by Defendants. Furthermore, Defendants represented to the public that they would stop intercepting browsing history, search history, and web activity after the 2020 Jumpshot investigation, but then proceeded to collect it anyway.[4] This conduct supports a reasonable expectation of privacy for users of the Extensions.

**2. Plaintiffs Sufficiently Allege Highly Offensive Conduct**

An intrusion of privacy is highly offensive to reasonable persons where their data is "surreptitiously" collected and the defendant's representations "led users to assume that [defendant] would not receive the personal information at issue." *Calhoun*, 526 F. Supp.

[4] In the January 2020 blog post announcing the shutdown of Jumpshot, cited at Compl. ¶ 64, Avast's CEO stated: "When I took on the role as CEO of Avast seven months ago, I spent a lot of time re-evaluating every portion of our business. During this process, I came to the conclusion that the data collection business is not in line with our privacy priorities as a company in 2020 and beyond." https://blog.avast.com/a-message-from-ceo.

3d at 631; *see also Brown,* 525 F. Supp. 3d at 1080 (finding collection of browsing data in private browsing mode highly offensive); *Facebook Tracking*, 956 F.3d at 606 (finding collection of duplicate copies of GET requests from signed-out users highly offensive). Here, Plaintiffs allege that Defendants surreptitiously collected the same type of data at issue in *Calhoun*, *Brown* and *Facebook Tracking*, and, as described above, Defendants made various representations that led users to assume that Defendants would not collect their web browsing data. Accordingly, Plaintiffs have sufficiently alleged highly offensive conduct.

Defendants' contention that the "highly offensive" test is not met because their products' ongoing data collection is "routine commercial behavior" is an argument that has been repeatedly rejected by courts considering whether similar intrusions were highly offensive. *See, e.g., In re Google Inc. Cookie Placement Consumer Privacy Litig*., 806 F.3d 125, 150 (3d Cir. 2015); *Facebook Tracking*, 956 F.3d at 606; *Calhoun*, 526 F. Supp. 3d at 631; *Brown*, 525 F. Supp. 3d at 1079-80. This Court also rejected the same argument in *Opperman v. Path, Inc.*, wherein "[p]laintiffs allege[d] that each of the App [d]efendants developed an app that copied iDevice users' contact information without the user's consent." 87 F. Supp. 3d 1018, 1032 (N.D. Cal. 2014) (Tigar, J.) (rejecting argument that surreptitiously acquiring personal information is "routine commercial behavior," and concluding that whether this was "highly offensive" was a factual dispute "best left for a jury."). Despite this clear precedent, Defendants rely on *In re iPhone Application Litigation*, 844 F.Supp.2d 1040 (N.D. Cal. 2012) and *In re Google, Inc. Privacy Policy Litigation*, 58 F.Supp.3d 968 (N.D. Cal. 2014), two cases that this Court criticized in *Opperman*, 205 F. Supp. 3d at 1078 (Tigar, J.) as "cases that have mechanically applied [*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986 (Cal. Ct. App. 2011)] to invasion of privacy claims."

Defendants' reliance on *Hammerling* is equally misplaced. The court in *Hammerling* found the data disclosure was not highly offensive because the plaintiffs did not allege that the data collected by Google is sufficiently specific or personal. 2022 WL

2812188 at *12. The data at issue in *Hammerling* involved "usage and engagement" data—*i.e.*, "'the average number of days users were active on any particular app,' and a users' total time spent on a non-Google app" *Id.* at *1—and did not include "the specific information (*i.e.*, content) that a user inputs." *Id.* at *14. In stark contrast, the data here encompasses personal internet browsing history that includes specific information such as which search terms the users enter, which websites they visit, and how long they stay on the websites.

### E. Plaintiffs Sufficiently Allege Violation of California Penal Code § 496(a)

While California Penal Code § 496(a) covers a spectrum of impermissible activity relating to stolen property, "the elements required to show a violation of § 496(a) are simply that (i) property was stolen or obtained in a manner constituting theft,[5] (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property.'" *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 2021 WL 754839, at *1 (9th Cir. Feb. 26, 2021). In addition to "receiving" stolen property, a defendant who knowingly "withholds" or "conceals" stolen property is also in violation of § 496(a).

#### 1. Plaintiffs' Browsing Data Is "Property" Subject to Theft

"California courts have . . . acknowledged that users have a property interest in their personal information." *Calhoun*, 526 F. Supp. 3d at 635; *see also CTC Real Estate Servs. v. Lepe*, 140 Cal.App.4th 856, 860 (Cal. Ct. App. 2006) (personal information "is a valuable asset" and can be the object of theft). The Ninth Circuit recently agreed. *Facebook Tracking*, 956 F.3d at 600 (citing *CTC Real Estate* and finding economic injury after misappropriation of web-browsing history and related personal information).

[5] *See* Cal. Penal Code § 484(a) (describing acts constituting theft); *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048 (Cal. Ct. App. 2013) (explaining how the 1927 statutory amendment to § 484 consolidated all common law forms of theft—i.e. larceny, embezzlement, and theft by false pretense—into a unified "theft" crime); *see also People v. Vidana* 1 Cal.5th 632, 640–641(Cal. 2016) (recognizing that after 1927, the distinctive substantive elements of each offense remained the same, but each constituted the crime of "theft").

In arguing Plaintiffs' browsing data is not "property," Defendants ignore this binding authority, and the many other cases recognizing property rights in personal information. *See, e.g. In re Yahoo!*, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) (concluding "[p]laintiffs' allegations that their PII is a valuable commodity, that a market exists for [p]laintiffs' PII, that [p]laintiffs' PII is being sold by hackers on the dark web, and that [p]laintiffs have lost the value of their PII as a result, are sufficient to plausibly allege injury arising from the Data Breaches."); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 995 (N.D. Cal. 2016) (loss of value of personal identification information "represents a cognizable form of economic injury"); *Svenson v. Google, Inc.*, 2015 WL 1503429, *5 (N.D. Cal. Apr. 1, 2015) ("allegations of diminution in value of [plaintiff's] personal information are sufficient to show contract damages for pleading purposes."); *In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) (recognizing a "growing trend across courts . . . to recognize the lost property value" of personal information).

Defendants' argument that plaintiffs must "*actually* [be] in the practice of selling their information" to establish economic injury to bring a statutory larceny claim, Mot. to Dismiss at 18, already has been rejected by the Ninth Circuit in *Facebook Tracking*. There, the defendant argued "that unjust enrichment is not sufficient to confer standing, and that Plaintiffs must instead demonstrate that they either planned to sell their data, or that their data was made less valuable through Facebook's use." *Facebook Tracking*, 956 F.3d at 494, 599. The Ninth Circuit disagreed, holding that "California law, which recognizes a right to disgorgement of profits resulting from unjust enrichment, requires disgorgement regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Facebook Tracking*, 956 F.3d at 494, 599; *see also Brown,* 2021 WL 6064009, at *17 (upholding the *Calhoun* court's holding that "plaintiffs who suffered a loss of their personal information suffered economic injury").

### 2. Defendants' Illicit Copying of Plaintiffs' Personal Information Constitutes Theft

It is well established under California law that the unlawful copying of an individual's property is larceny even where the victim retains the original. Defendants admit that "California courts have held that copying is theft because 'although the owner may retain possession of the original property, there has been nevertheless a deprivation of property when a copy is made.'" *Calhoun*, 526 F. Supp. 3d at 635 (quoting *People v. Kwok*, 63 Cal. App. 4th 1236, 1249–50 (Cal. Ct. App. 1998)). Countless other California courts have also held that unlawful copying of customer lists, files, telephone directories, trade secrets, and more, is larceny even where the victim retains the original. *People v. Gopal*, 171 Cal. App. 3d 524, 541 (Cal. Ct. App. 1985) (finding that "receipt of a copy of stolen trade secrets is a crime in violation of section 496"); *People v. Parker*, 217 Cal.App.2d 422, 427-8 (Cal. Ct. App. 1963) (recognizing photocopies of telephone directory supplement were property and were properly the subject of theft even though they were being returned after they were copied); *Williams v. Superior Ct.*, 81 Cal. App. 3d 330, 341 (Cal. Ct. App. 1978) (holding "[t]he original documents . . . and any photocopies thereof . . . were property subject to theft.").

### 3. Plaintiffs Sufficiently Allege that Defendants Acted in a Manner Constituting Theft, as Defined in Cal. Penal Code § 484

Defendants mischaracterize Plaintiffs' fifth cause of action as being limited to "theft by false pretenses," Mot. to Dismiss at 17, which carries a greater burden of proof than theft by larceny.[6] Relying on their mistaken theory of theft by false pretenses, Defendants contend that "Plaintiffs' invocation of this theory amounts to a concession that they *consented* to Avast's collection of their data . . . ." *Id.* at 20, n.6 (emphasis added).

Plaintiffs need not identify the exact type of theft committed by Defendants. *People*

[6] *People v. Williams*, 57 Cal.4th 776, 788 (Cal. 2013) ("[T]heft by false pretenses involves the *consensual* transfer of *possession* as well as *title* of property; therefore, it cannot be committed by trespass." (emphasis added)).

*v. Ashley* 42 Cal.2d 246, 258 (Cal. 1954) ("Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved"). In any event, Defendants' attempt to mischaracterize the claim as theft by false pretenses is unavailing. Larceny by trick involves improper possession of the property in question, whereas theft by false pretenses involves not only possession, but also improper acquisition of title to the property. *Id.* at 258. Here, Plaintiffs do not allege theft by false pretenses, because the allegations in the Complaint pertain exclusively to improper *possession* of the property – *not title*. The allegations underlying Plaintiffs' fifth cause of action for violation of § 496(a) constitute larceny by trick, for which consent is *not* required. *Williams*, 57 Cal.4th at 788 (distinguishing theft by false pretenses from larceny on the grounds that "larceny requires a 'trespassory taking,' which is a taking without the property owner's consent"). That is why Plaintiffs' Fifth Cause of Action is titled "Statutory *Larceny*" and not "Theft By False Pretenses," and Plaintiffs adequately allege the elements of larceny by trick here.

In sum, the offense of "[l]arceny includes larceny by trick, which involves fraudulently acquiring possession, but not title, of property." *People v. Gonzales*, 2 Cal.5th 858, 864 n.6 (Cal. 2017). "[T]he offense [of larceny] is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away." *Harris v. Garcia*, 734 F. Supp. 2d 973, 999 (N.D. Cal. 2010) (quoting *People v. Davis*, 19 Cal. 4th 301, 305 (Cal. 1998)). "The act of taking personal property from the possession of another is always a trespass [or nonconsensual] unless the owner consents to the taking freely and unconditionally" (theft by false pretenses), but "[w]hen the consent is procured by fraud it is invalid and the resulting offense is commonly called larceny by trick and device." *Davis*, 19 Cal. 4th at 305, n.3. The "intent requirement . . . is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment." *People v. Avery*, 27 Cal. 4th 49, 58 (Cal. 2002).

Here, as alleged throughout the Complaint, users of the Extensions do not consent to the extraction and sale of their sensitive and valuable Internet browsing data, and any such consent would be "invalid" under *Davis* and procured by fraudulent means: *i.e.*, the use of misleading and false product names and advertising claims to intentionally misrepresent that their products make it safer and more secure to browse the Internet, and their false promise to keep users' online communications safe and secure from data harvesters. Defendants exhibit the requisite intent for larceny by trick because Defendants unauthorized acquisition of users' sensitive and valuable browsing data results in users' loss of control over the use of such data to produce revenue, and thus deprives users of a major portion of the data's value and enjoyment. For these reasons, Defendants' violation of § 496(a) as alleged in the Complaint qualifies as larceny by trick.

Lastly, Defendants' contention that Plaintiffs' fifth cause of action stretches § 496 beyond its intended reach is false. The court in *Bell* addressed a similar argument, namely, that awarding damages under Section 496(c) would "open[] the door to any collecting creditor to claim that a breach of contract action constitutes a fraud, and in turn constitutes a theft, under the California Penal Code for purposes of [section] 496(a)." 212 Cal. App. 4th at 1047. Interpreting the plain language of §§ 484(a), 496, and 532, the court held that Section 496(a) provides a cause of action regarding property "that has been obtained in any manner constituting theft," which includes larceny. *Id*. at 1048. The *Bell* court acknowledged the defendant's "policy concerns about the potential consequences of [its] interpretation of section 496(c)," but dismissed them, stating "it is the task of the Legislature to address those policy concerns[.]" *Id.* at 1049. Defendants' concerns here are similarly unavailing.

### F. Plaintiffs Sufficiently Allege Claims for Equitable Relief

Plaintiffs have adequately pleaded claims under the California Unfair Competition law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and for Unjust Enrichment. As such, Plaintiffs are entitled to the equitable relief of restitution and disgorgement, in addition to injunctive relief to prevent future harm.

**1. The Existence of an Adequate Legal Remedy Does Not Preclude Claims for Equitable Relief Under the UCL**

Plaintiffs are entitled to seek equitable relief under the UCL, including disgorgement, restitution, and prospective injunctive relief, *in addition to* legal remedies. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020) (rejecting argument that Plaintiffs cannot seek equitable relief under the UCL, given an adequate legal remedy under the CLRA, because remedies under each act are cumulative).

Defendants rely on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and similar decisions, for the proposition that a federal court cannot award equitable relief if there exists an adequate remedy at law. Mot. to Dismiss at 22-23. However, *Sonner* is not controlling law in the Ninth Circuit. As discussed in *Ferry v. Porsche Cars North Am., Inc.*, 2022 WL 1769120, at *5-6 (C.D. Cal. March 11, 2022), the Ninth Circuit's amended opinion in *Sonner* was not issued until August 20, 2020, a month after a panel of the Ninth Circuit issued the *Moore* decision in July 2020. In *Moore*, the Ninth Circuit expressly rejected defendant's argument that the federal court could not issue equitable relief "under the UCL or FAL, given an adequate legal remedy under the CLRA" exists. *Id.* at 1021, n.3. The court held that "[t]he UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other." *Id.* As explained in *Ferry*, this language was not mere *dicta*: "It is unclear how this rejection of an argument seeking the elimination of a particular type of relief could be considered *dicta*, as at least some courts have concluded (without explanation on the *dicta* point)."[7] *See also Ayala v. U.S. Xpress Enter's, Inc.*, 2022 WL 16859754, at *3 (C.D. Cal. July 22, 2022).

The *Ferry* court further explained that although the subsequent *Sonner* opinion reached a different conclusion as to the availability in federal court of equitable relief for

[7] Some courts have asserted that *Moore* merely addressed the scope of remedies available under California law and did not decide the issue of whether a federal court could award equitable relief under such statutes where an adequate legal remedy exists. *See Ferry*, 2022 WL 1769120, at *5 n.6. However, *Moore* expressly rejected the argument that an adequate remedy at law precludes equitable relief in federal court. *Id.*

violations of the UCL, the three-judge panel deciding *Sonner* could not overturn the decision of a prior three-judge panel that decided *Moore*. *Ferry*, 2022 WL 1769120, at *5. The *Sonner* court did not discuss or purport to overturn *Moore*, which had been issued one month earlier (nor did *Moore* discuss the original decision in *Sonner*). Thus, the *Moore* decision is and remains controlling on this question. Under binding Ninth Circuit law, the existence of an adequate remedy at law does not prevent this Court from awarding equitable relief under the UCL or CLRA.

Further, *Sonner* does not bar claims for prospective injunctive relief where a plaintiff pleads that it lacks an adequate remedy at law. *See, e.g., Hillori Graham v. Central Garden & Pet Co.*, 2023 WL 2744391, at *4 (N.D. Cal. 2023); *Hrapoff v. Hisamitsu America, Inc.*, 2022 WL 2168076, at *6 (N.D. Cal. June 16, 2022) (Tigar, J.) (recognizing that *Sonner* does not preclude claims for injunctive relief where plaintiff has alleged the lack of an adequate remedy at law). As the court noted in *Johnson v. Trumpet Behavioral Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022), "if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more [at the pleading stage]." Plaintiffs lack an adequate remedy at law to require Defendants to delete any class members' highly-sensitive information and prohibit Defendants from improperly using or disseminating the information. That is enough to satisfy *Sonner*.

### G. Plaintiffs Sufficiently Allege a Claim for a Violation of Section 17200

Plaintiffs have alleged all required elements of a Section 17200 claim. As explained above, Plaintiffs have alleged that their property, consisting of personally-identifiable information, was obtained in a manner constituting theft, that Defendants knew the property was the subject of theft, and that Defendants also received, sold, or aided in selling, concealing, or withholding their property with knowledge of the theft. Further, Plaintiffs state a claim under the unlawful or unfair prongs of the UCL. As noted above, Defendants' conduct constitutes an invasion of privacy in violation of the California Constitution and Intrusion Upon Seclusion. Plaintiffs have also adequately alleged a claim under California Penal Code § 496(a). Also, as discussed in detail above, Defendants'

assertion that Plaintiffs consented to having the Extensions intercept their personal information is contrary to the pleaded facts and reasonable inferences drawn therefrom.

**H. Plaintiffs Sufficiently Allege a Claim for Unjust Enrichment**

First, *Sonner* does not bar Plaintiffs' claim for unjust enrichment. As Defendants recognize, courts in this Circuit have held that under California law, claims for unjust enrichment are treated as restitution claims under a quasi-contract theory. *See Innerline Engineering, Inc. v. Operating Engineers Health and Welfare Trust Fund for Northern California*, 2023 WL 2671373 at *11 n.4 (N.D. Cal. Mar. 28, 2023). When a plaintiff alleges unjust enrichment, "a court may construe the cause of action as a quasi-contract claim seeking retribution." *Astiana v. Hain Celestial Group, Inc*., 783 F.3d 753, 762 (9th Cir. 2015).

Second, Plaintiffs pleaded an independent claim for unjust enrichment by alleging that Defendants' received and unjustly retained a benefit at Plaintiffs' expense. *See, e.g., ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016); *Astiana*, 783 F.3d at 762; *Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021). Plaintiffs allege that Defendants wrongfully intercepted and stole valuable personal information concerning Plaintiffs' internet browsing history, searches, location, and computer configuration. These allegations are sufficient to state an independent cause of action for unjust enrichment under California law.

## IV. ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

Should the Court disagree and grant the Motion to Dismiss in whole or in part, Plaintiffs request leave to amend, in accordance with the policy of liberal amendment. *Perez*, 959 F.3d at 340; *Owens*, 244 F.3d at 712.

## V. CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss should be denied in its entirety. Alternatively, in the event the Court disagrees, Plaintiffs request leave to amend.

DATED: April 17, 2023

Ekwan E. Rhow
Marc E. Masters
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By: /s/ Ekwan E. Rhow
Ekwan E. Rhow
Attorneys for Plaintiffs Grace Lau and Christopher Karwowski

DATED: April 17, 2023

Jonathan M. Rotter
David J. Stone
GLANCY PRONGAY & MURRAY LLP

By: /s/ Jonathan M. Rotter
Jonathan M. Rotter
Attorneys for Plaintiffs Grace Lau and Christopher Karwowski

DATED: April 17, 2023

Korey A. Nelson
Amanda K. Klevorn
Claire E. Bosarge
BURNS CHAREST LLP

By: /s/ Korey A. Nelson
Korey A. Nelson
Attorneys for Plaintiffs Grace Lau and Christopher Karwowski

Pursuant to Civil L.R. 5-1(h)(3), the filer attests that all signatories listed and on whose behalf this filing is submitted, concur in its content and have authorized the filing.

DATED: April 17, 2023

By: /s/ Ekwan E. Rhow
Ekwan E. Rhow