LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Tyce R. Walters (*pro hac vice*)
*tyce.walters@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GRACE LAU and CHRISTOPHER KARWOWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GEN DIGITAL INC. a corporation, and JUMPSHOT INC., a corporation,<br><br>Defendants. | Case No. 4:22-cv-08981-JST<br><br>**DEFENDANTS GEN DIGITAL INC. AND JUMPSHOT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE CLASS ACTION COMPLAINT**<br><br>Hearing: June 29, 2023<br>Time: 2:00 p.m.<br>Location: Courtroom 6—2nd Floor<br>Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Cannot Evade the Applicable Statutes of Limitations ..... 2

B. Plaintiffs Fail to Rescue Their Wiretap Claims ..... 4

1. Plaintiffs Still Conflate Acquisition with Downstream Use ..... 4

2. Plaintiffs Fail to Rebut the Party Exception ..... 5

3. Plaintiffs Fail to Rebut the Consent Exception ..... 6

4. Plaintiffs' CIPA Section 632 Arguments Miss the Mark ..... 8

C. Plaintiffs' Fail to Rescue Their Privacy Claims ..... 9

D. Plaintiffs Fail to Rescue Their Larceny Claim ..... 11

1. Plaintiffs Still Identify No "Property" That Was Stolen ..... 11

2. Plaintiffs Still Do Not Allege Their Data Left Their Possession ..... 12

3. Plaintiffs' New "Larceny by Trick" Theory Is Unavailing ..... 12

E. Plaintiffs Fail to Rescue Their Equitable Claims ..... 13

1. Plaintiffs' Equitable Claims Are Precluded by *Sonner* and Article III ..... 13

2. Plaintiffs' UCL Claim Also Fails on the Merits ..... 15

3. Plaintiffs' Unjust Enrichment Claim Also Fails on the Merits ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .......... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1

*New Mexico ex rel. Balderas v. Google, LLC*,
489 F. Supp. 3d 1254 (D.N.M. 2020) .......... 7

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 1

*Brown v. Google*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 9

*Bush v. Rewald*,
619 F. Supp. 585 (D. Haw. 1985) .......... 2

*Byars v. Hot Topic, Inc.*,
2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) .......... 5

*Campbell v. Arizona Beverages USA LLC*,
2023 WL 2764123 (N.D. Cal. Mar. 31, 2023) .......... 14, 15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 9

*Cho v. Hyundai Motor Co., Ltd.*,
2022 WL 16966537 (C.D. Cal. Oct. 21, 2022) .......... 14

*Clevenger v. Welch Foods Inc.*,
2022 WL 18228288 (C.D. Cal. Dec. 14, 2022) .......... 14

*CTC Real Estate Servs. v. Lepe*,
140 Cal. App. 4th 856 (Cal. Ct. App. 2006) .......... 12

*De Los Reyes v. Ruchman & Assocs., Inc.*,
2014 WL 4354238 (N.D. Cal. Sept. 2, 2014) .......... 3

*DeCrescenzo v. Church of Scientology Int'l*,
2009 WL 10672400 (C.D. Cal. Nov. 5, 2009) .......... 4

*Easton v. Wells Fargo & Co.*,
2022 WL 17886002 (C.D. Cal. Dec. 6, 2022) ....................................................................14

*Esparza v. Lenox Corp.*,
2023 WL 2541352 (N.D. Cal. Mar. 16, 2023)......................................................................5

*In re Facebook Internet Tracking*,
956 F.3d 589 (9th Cir. 2020) ...............................................................................7, 10, 12

*Flanagan v. Flanagan*,
27 Cal.4th 766 (Cal. 2002)..................................................................................................9

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044 (N.D. Cal. 2016) ...........................................................................2, 3

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .............................................................................5, 9

*In re Google*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ......................................................................9

*Graham v. Central Garden & Pet Co.*,
2023 WL 2744391 (N.D. Cal. Mar. 30, 2023)......................................................................15

*Guzman v. Polaris Indus., Inc.*,
49 F.4th 1308 (9th Cir. 2022), *petition for cert. pending*, No. 21-55520 ..............................14

*Haddad v. Merck and Co., Inc.*,
2022 WL 17357779 (C.D. Cal. Aug. 11, 2022)......................................................................13

*Hammerling v. Google, LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...............................................................................10

*Hart v. TWC Product and Tech. LLC*,
526 F. Supp. 3d 592 (2021) ...........................................................................................10, 11

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) ...............................................................................................5

*Innerline Eng'ring, Inc. v. Operating Eng'rs Health & Welfare Trust Fund*,
2023 WL 2671373 (N.D. Cal. Mar. 28, 2023).......................................................................14

*Integritymessageboards.com v. Facebook, Inc.*,
2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) .........................................................................14

*Javier v. Assurance IQ, LLC*,
2021 WL 3669343 (N.D. Cal. Aug. 6, 2021), *reversed on other grounds*, 2022 WL 1744107 (9th Cir. May 31, 2022) .......................................................................................................9

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ....................3

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................11

*Lukovsky v. City & Cnty. of San Francisco*,
535 F.3d 1044 (9th Cir. 2008) ....................3

*Luksch v. Latham*,
675 F. Supp. 1198 (N.D. Cal. 1987) ....................2

*McKesson HBOC, Inc. v. NY State Common Ret. Fund, Inc.*,
339 F.3d 1087 (9th Cir. 2003) ....................14

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ....................14

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ....................1

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................7

*Niantic, Inc. v. Global++*,
2020 WL 1548465 (N.D. Cal. Jan. 30, 2020) ....................1

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ....................15

*Park v. Webloyalty.com, Inc.*,
2014 WL 4829465 (S.D. Cal. Sept. 29, 2014), *aff'd*, 685 F. App'x 589 (9th Cir. 2017) ..........7

*Paulsen v. Teamsters Loc. No. 856*,
2009 WL 10696040 (N.D. Cal. Feb. 13, 2009) ....................4

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ....................8, 9

*People v. Gopal*,
171 Cal. App. 3d 524 (1985) ....................12

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) ....................8

*People v. Parker*,
217 Cal. App. 2d 422 (1963) ....................12

*People v. Whitmer*,
230 Cal. App. 4th 906 (2014) ....................13

*People v. Williams*,
57 Cal. 4th 776 (2013) ....................13

*Pinto v. Walt Disney Parks & Resorts U.S., Inc.*,
528 F. App'x 694 (9th Cir. 2013) ....................9

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ....................11

*Reveal Chat Holdco LLC*,
2021 WL 1615349 (N.D. Cal. Apr. 26, 2021) ....................3

*Rodriguez v. FCA US LLC*,
2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) ....................14

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................8

*Rushing v. Williams-Sonoma, Inc.*,
2022 WL 2833980 (N.D. Cal. July 20, 2022) ....................3

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................14

*Siry Invest., L.P. v. Farkhondephour*,
13 Cal. 5th 333 (2022) ....................13

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................6

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................13

*Spears v. First Am. eAppraiseIt*,
2013 WL 1748284 (N.D. Cal. Apr. 23, 2013) ....................3

*Williams v. Superior Court*,
81 Cal. App. 3d 330 (1978) ....................12

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................9

*Zak v. Bose Corporation*,
(quoting 2019 WL 1437909 (N.D. Ill., Mar. 31, 2019) ....................6

## STATUTES

Cal. Civ. Code § 1798.93 .......................................................................................................12

Cal. Penal Code § 499c, subd. (b) ..................................................................................................12

## I. INTRODUCTION

Plaintiffs' Opposition is as fundamentally flawed as their entire case. Tellingly, they err at the outset by relying on a pleading standard nearly two decades out-of-date, asserting their Complaint can be dismissed only if "it appears beyond doubt that plaintiff[s] can prove no set of facts…which would entitle [them] to relief." Opp. 4. The Supreme Court of course abolished that standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-680 (2009). *Twombly* and *Iqbal* raised the bar to require that a complaint "state a claim that is plausible on its face," "not merely possible." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970-72 (9th Cir. 2009); *see also Niantic, Inc. v. Global++*, 2020 WL 1548465, at *8 (N.D. Cal. Jan. 30, 2020) (Tigar, J.) (recognizing "heightened pleading standard of *Twombly* and *Iqbal*").

Plaintiffs neglect the plausibility standard because they cannot meet it. As Defendants have explained, it is inherently implausible that a browser extension designed to warn users about websites they visit could operate *without knowing what webpages they visit*—or that reasonable consumers could fail to understand that. This is not, as Plaintiffs assert, a fact issue requiring discovery. Opp. 1. It can be resolved based on "judicial experience and common sense"—which courts are "require[d]" to draw upon in "[d]etermining whether a complaint states a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

Nor do Plaintiffs' various other arguments survive scrutiny. They cannot invoke fraudulent concealment to avoid the statute of limitations for their wiretap and privacy claims, because they allege no affirmative acts to mislead on Defendants' part or any diligence in investigating the facts on their part. As to the merits of their wiretap claims, Plaintiffs continue to conflate the initial *acquisition* of communications with the subsequent *storage or use* of the communications. Once focus is returned to initial acquisition, Plaintiffs' claims fail because the Avast Extensions must acquire information about the webpages users visit to function—and thus both the party exception and the consent exception apply. Similarly, Plaintiffs' inability to plausibly plead lack of consent dooms their privacy claims. Finally, Plaintiffs' larceny claim and equitable claims fail for reasons explained in Defendants' opening brief, none of which Plaintiffs adequately answer.

Accordingly, as detailed below, the Complaint should be dismissed in its entirety.

## II. ARGUMENT

### A. Plaintiffs Cannot Evade the Applicable Statutes of Limitations

Plaintiffs do not dispute that their wiretapping and privacy claims "appear facially time-barred," Opp. 5, leading them to invoke the doctrine of "fraudulent concealment." *Id.* at 4. But that doctrine requires Plaintiffs to plead—with particularity, and against each Defendant—that "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to [its] claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Garrison v. Oracle Corp*., 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016); *see also id.* at 1074 (explaining that fraudulent concealment allegations must satisfy Rule 9(b)). Plaintiffs do not—and cannot—meet these requirements.

As an initial matter, Plaintiffs do not even attempt to argue fraudulent concealment with respect to their Jumpshot allegations. Nor could they, given that Jumpshot's sale of Avast user data was widely reported in the media and publicly acknowledged by Avast in January 2020—well before the applicable limitations periods even started. Thus, they cannot possibly assert that this conduct was concealed from them—let alone fraudulently—during the limitations periods.[1]

As to their post-January 2020 allegations, which assert only that Defendants "continue to intercept and collect users' Internet and email search and browsing activities," Compl. ¶ 68—without any allegation that the data is sold to third parties or otherwise used improperly—Plaintiffs do not allege any facts constituting fraudulent concealment. They merely point to references to safety and privacy in the names of and marketing for the Avast Extensions. Opp. 5.[2] But these generic references do not imply *anything* specific about Avast's own data collection practices,

[1] Plaintiffs cite *Luksch v. Latham*, which required discovery to determine if plaintiffs had constructive notice of information in an investor prospectus. 675 F. Supp. 1198, 1202 (N.D. Cal. 1987)). Putting aside that *Luksch* did not involve media reports or other easily discoverable information, *cf. Bush v. Rewald*, 619 F. Supp. 585, 602 (D. Haw. 1985) (finding that "constructive knowledge of the [alleged misconduct]" began "from the time that the news of it was publicly disseminated"), the point remains that Plaintiffs cannot argue that Avast affirmatively concealed the Jumpshot conduct, or that they could not have learned of it through reasonable diligence, given that Avast publicly "admitted" and "apologized" for it. Compl. ¶ 65. Thus, regardless of whether they had constructive notice, Plaintiffs cannot meet the other elements of fraudulent concealment.

[2] Plaintiffs also point to a representation that AOSP would "stop web companies from collecting and selling your personal data," and assert that this "is exactly what Defendants themselves were doing." Opp. 5. However, this assertion ignores that the alleged sale of personal data had ceased before any of the applicable limitations periods.

much less promise that Avast would never acquire browsing or search activity in the course of providing the Extensions. *See Garrison*, 159 F. Supp. 3d at 1078 (general statements "alone [do not] suffice to show fraudulent concealment"); *Ahern v. Apple Inc*., 411 F. Supp. 3d 541, 556 (N.D. Cal. 2019) (rejecting fraudulent concealment claims based on "generalized advertisements" that "do not say anything about specific characteristics or components" of the product at issue).

Moreover, Plaintiffs cannot rely on the naming or marketing of the Avast Extensions to ground their fraudulent concealment theory because they rely on the same facts to claim that the collection of their data was non-consensual—the substantive basis for their wiretapping and privacy claims. "Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *De Los Reyes v. Ruchman & Assocs., Inc.*, 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014); *see also Rushing v. Williams-Sonoma, Inc.*, 2022 WL 2833980, at *7 (N.D. Cal. July 20, 2022) ("[T]he factual basis for fraudulent concealment must be distinct from a cause of action."). Otherwise, fraudulent concealment "would eliminate the statute of limitations" for deception-based claims. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008); *Spears v. First Am. eAppraiseIt*, 2013 WL 1748284, at *5 (N.D. Cal. Apr. 23, 2013) (rejecting fraudulent concealment allegations that were "part and parcel" of plaintiffs' claims).

Finally, Plaintiffs fail to allege their own diligence in discovering the facts. *See Reveal Chat Holdco LLC*, 2021 WL 1615349, at *9 (N.D. Cal. Apr. 26, 2021) ("[D]iligence must be pled with particularity."). According to the Complaint, when Avast apologized for the Jumpshot controversy in January 2020, its data practices were the subject of "widespread…media criticism." Compl. ¶ 65. If Plaintiffs still had concern at that point about Defendants' use of their data, that was the time to investigate. *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 823 (N.D. Cal. 2022) ("'Where a plaintiff's suspicions have been or should have been excited, there can be no fraudulent concealment where he [or she] could have then confirmed his [or her] earlier suspicion by a diligent pursuit of further information.'") (citation omitted).[3] Yet they do not allege they did *anything* to

[3] While unnecessary for the Court to consider, it is notable that Plaintiffs could have easily done such investigation—*simply by consulting Avast's product privacy policy*, which transparently

investigate their claims. In particular, they do not allege any new facts they discovered after the start of the limitations period that they were somehow unable to discover before. It is plain they simply sat on their rights—and therefore have no basis to plead fraudulent concealment. *DeCrescenzo v. Church of Scientology Int'l*, 2009 WL 10672400, at *2 (C.D. Cal. Nov. 5, 2009) (rejecting fraudulent concealment argument where plaintiff did "not allege that any new facts were discovered" between the commencement of the limitations period and the filing of her complaint); *Paulsen v. Teamsters Loc. No. 856*, 2009 WL 10696040, at *5 (N.D. Cal. Feb. 13, 2009) (same).

### B. Plaintiffs Fail to Rescue Their Wiretap Claims

#### 1. Plaintiffs Still Conflate Acquisition with Downstream Use

Plaintiffs continue to conflate the initial *acquisition* of communications with the subsequent *storage or use* of the communications. As Defendants have explained, wiretapping claims turn on whether there has been unlawful acquisition; absent that, there can be no violation. MTD 7-8. Plaintiffs nonetheless continue to focus on alleged processing of their browsing data *after* acquisition, asserting that Defendants "store" (or "harvest") user data and "sell that data to third parties." Opp. 8-9. These allegations are irrelevant to whether the data was unlawfully acquired in the first instance. (And their allegations about data sales are doubly improper because, again, they fall outside the limitations periods for their wiretapping and privacy claims.)

Plaintiffs attempt to brush this point under the rug, arguing in a footnote that their allegations about storage and sale "go not to interception, but to lack of consent…which would make the underlying interception unlawful." Opp. 8 n.2. That makes no sense: whether Plaintiffs consented to certain processing *after* interception has no bearing on whether the interception itself was consensual or otherwise lawful. Plaintiffs' contrary theory would convert the narrow prohibitions of the Wiretap Act and CIPA into omnibus restrictions indefinitely governing the use of electronic data, allowing a plaintiff to claim a "wiretap" whenever they felt someone was using their data in some way they had not approved. Unsurprisingly, Plaintiffs cite no law supporting

---

disclosed throughout the limitations period that Avast processes the "URLs" (i.e., addresses) of the webpages users visit in providing both AOSP and SafePrice. *See Avast User Products Policy*, dated Feb. 2020, *available at* https://web.archive.org/web/20200216050341/https:/www.avast.com/en-us/products-policy (explaining that Avast does so "to check if URLs…are malicious or not" and "[t]o display discount coupons and price comparison offers relevant to the website").

such a construction, which would contravene the bedrock principle that where "the interception …was not obtained in violation of the [Wiretap] Act, its subsequent use and disclosure was not a violation of the Act." *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 625 (7th Cir. 2000) (citation omitted). Indeed, the one case they cite found that, even though the plaintiffs there allegedly had never consented to the storage of their location information, their CIPA claim still "fail[ed] as a matter of law because CIPA, by its plain terms, is not concerned with data *storage*." *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (emphasis added).

Once focus is properly returned to the initial *acquisition* of content, it is clear that Plaintiffs' claims must fail, because the Avast Extensions must acquire information about the webpages users visit in order to function. As a result, both the party exception and the consent exception apply.

**2. Plaintiffs Fail to Rebut the Party Exception**

Plaintiffs barely address the party exception, instead conflating it with the consent exception. *See* Opp. 9. But "[c]onsent…has nothing to do with the fact that by definition, parties to a conversation cannot eavesdrop on their own conversation." *Esparza v. Lenox Corp.*, 2023 WL 2541352 (N.D. Cal. Mar. 16, 2023); *see also Byars v. Hot Topic, Inc*., 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023) (explaining the difference between the two exceptions).

Considered on its own terms, Plaintiffs have no meaningful answer to the party exception. As previously explained, Plaintiffs made Avast a party to their browser communications by intentionally installing Avast software on their browsers, for the specific purpose of scanning and analyzing their browser activity for security threats or overpriced goods. MTD 8-11. Plaintiffs assert that "it is not necessary for the [Avast] Extensions to intercept data to the extent occurring here in order to function," Opp. 9, but they fail to plausibly allege how it could *not* be necessary. They state that "internet browser protection software like AOSP need only warn a user prior to visiting a malicious website." *Id.* at 1. But how could AOSP warn a user about the website they are visiting without *knowing what website they are visiting*? Similarly, how could SafePrice check whether a product on a webpage is overpriced without *seeing that webpage*? Plaintiffs have no answer; instead, they try to distract by asserting that "[t]here is simply no reason that the Extensions must read, acquire, *and store*" such data. *Id.* (emphasis added). But, again, storage is

not the issue under the wiretapping analysis. The issue is whether the Avast Extensions must "read"—i.e., "acquire" or "intercept"—data about what webpages users are visiting. And, as a matter of common sense, they must indeed.[4]

This is the point of *Zak v. Bose Corporation*, where the nature of the app required it to read users' communications with Spotify, a third-party service. Plaintiffs try to distinguish *Zak* on the basis that it found the app was "a fully-acknowledged participant in the communication," whereas Plaintiffs stubbornly pretend otherwise here. Opp. 9 (quoting 2019 WL 1437909, at *3 (N.D. Ill., Mar. 31, 2019)). But in *Zak*, too, the plaintiffs made "conclusory" allegations "that Bose is not a party to the communication." *Id.* at *3. Yet the court found that it "need not give legal effect to conclusory allegations that are contradicted by the pleader's actual description of what happened," which made clear that "receiving and displaying the [user's] Media Information is a primary function of the App." *Id.* Similarly, here, Plaintiffs allege the operation of software whose "primary function" involves *checking the webpages they visit* for security threats and overpriced goods. Given that function, the software must be able to read, at a minimum, the addresses of those webpages. Thus, as in *Zak*, "[i]t is clear from the facts alleged…that the [software] is in fact a known participant in—and intended recipient of—the communication[s]" at issue. *Id.* at *4.

**3. Plaintiffs Fail to Rebut the Consent Exception**

Plaintiffs create their own consent test, asserting that a consent defense is available only if a defendant "can prove that plaintiffs assented to online contracts—such as terms of use or privacy policies—that are both sufficiently conspicuous and sufficiently detailed." Opp. 7 (emphasis omitted). But neither case they cite contains such a test. To the contrary, *Smith v. Facebook, Inc.* correctly describes the test simply as whether "the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their

---

[4] Plaintiffs also try to muddy the waters by alleging that Avast acquired "Internet and email mailbox searches," as if this browser-based activity is somehow distinct from browsing information, i.e., the URLs of the webpages users visit. *E.g.,* Opp. 1. But searching your email at Gmail.com or running a search at Bing.com results in new URLs being loaded in the browser. Thus, these are merely allegations that the Avast Extensions collect browser data by another name.

acquiescence demonstrates knowing authorization." 745 F. App'x 8 (9th Cir. 2018).[5] As Defendants have explained, it is clear from the circumstances here that a reasonable user would understand that the Avast Extensions could read their browsing data. MTD 11.

Plaintiffs focus their consent arguments on the prompt that users must accept in order to download the Avast Extensions ("Privacy Prompt"), Opp. 7-9; but the Court does not even need to address the Privacy Prompt to find consent. Again, Plaintiffs fail to explain how browser extensions purposefully installed for the purpose of monitoring browsing activity could function *without* monitoring browsing activity—or how a reasonable user could fail to understand that. The Privacy Prompt only confirms this point.

In any event, Plaintiffs' arguments concerning the Privacy Prompt are meritless. Plaintiffs attempt to dismiss the screenshots of the Privacy Prompt as merely depictions "as they exist today." Opp. 7. To be clear, the same prompt existed *throughout* the time period relevant to the Complaint—and Defendants are prepared to immediately offer a declaration and move for summary judgment on this issue were it to stand in the way of dismissal.[6] But there is no need for that, because the Complaint fails to sufficiently *allege* lack of notice in the first place. Plaintiffs do not *deny* that they had to consent to such a prompt before downloading the Avast Extensions, and they make *no* specific factual allegations about how they downloaded the software or why the process was purportedly deficient. They merely make the bald allegation that their information was collected "without adequate notice," Compl. ¶ 14-15, 68—which is not enough. *See New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1263 (D.N.M. 2020) (dismissing privacy claims because plaintiffs' "conclusory" allegation of "inadequate notice" was insufficient under *Twombly*). Particularly given the judicially noticeable evidence that users today are clearly advised that the Avast Extensions can read their browsing data, Plaintiffs' conclusory allegation of lack of notice should not be credited. *See Park v. Webloyalty.com, Inc*., 2014 WL 4829465, at

---

[5] The other case cited, *Nguyen v. Barnes & Noble Inc.*, does not involve a privacy claim or consent defense at all. 763 F.3d 1171 (9th Cir. 2014).

[6] While not necessary for the Court to consider, the longstanding use of the Privacy Prompt is also evident from public sources. *See How to Install Avast Extension to Google Chrome*, YouTube (Apr. 2, 2018), https://www.youtube.com/watch?v=t8aMmJzoTgk&t=30s (demonstrating installation of AOSP and showing the Privacy Prompt at the 30-second mark).

*5 (S.D. Cal. Sept. 29, 2014), *aff'd*, 685 F. App'x 589 (9th Cir. 2017) (finding that exhibit of a signup page revealed "how spotty and conclusory" plaintiff's allegations were because they failed to "foreclose th[e] possibility" that plaintiff had seen warnings that would defeat his claim).

Plaintiffs' criticisms of the Privacy Prompt's contents also ring hollow. Plaintiffs contend that the Privacy Prompt is "fatally vague," Opp. 7-8; but it states in plain English that the Avast Extensions "can [r]ead and change all your data on all websites," *id.* at 9. Just because the language is broad does not make it "vague": it makes it categorical. The language clearly states the Avast Extensions can "read"—i.e., "acquire" or "intercept"—*all* of a user's data on *all* websites. That is more than enough. Plaintiffs' only retort is that "the Privacy Prompt does not warn that Defendants would acquire *and store* user data,…much less…that the data would be *sold to third parties.*" Opp. 8 (emphasis added); *see also id.* at 9 (referencing sales). But this is another attempt to change the subject. Whether Plaintiffs consented to any sale or other downstream use is irrelevant to whether they consented to acquisition in the first instance. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (criticizing plaintiffs for conflating "misuse" with "interception").

Finally, Plaintiffs reprise their argument that the naming and marketing of the Extensions misled users to believe the software would "prevent third-parties from tracking their internet usage," such that "no reasonable user could be expected to rely on the isolated statement in a Privacy Prompt." Opp. 9. But nothing about the naming and marketing of the Extensions suggested that Avast itself could not access data about the webpages in users' browsers; to the contrary, that is necessary for the software to perform its marketed functions. Thus, nothing conflicts with—let alone trumps—the Privacy Prompt's clear notice that the software can read such information.

**4. Plaintiffs' CIPA Section 632 Arguments Miss the Mark**

Plaintiffs misunderstand the (additional) arguments necessitating dismissal of their Section 632 claim: the provision prohibits "eavesdropping" and thus applies only to capturing conversations between human parties. MTD 13; *see People v. Drennan*, 84 Cal. App. 4th 1349, 1357 (2000) (explaining that "'[e]avesdropping' is notably a term that refers to the surreptitious overhearing of conversations"). Plaintiffs' own cases confirm this: *People v. Nakai* concerned a live chat communication, 183 Cal. App. 4th 499, 517 (2010), and *Drennan* held that a hidden video

recording, without sound, could *not* support a Section 632 claim because no "conversation" was involved. 84 Cal. App. 4th at 1358.[7] Here, Plaintiffs have not alleged any conversation they had with other human beings that was somehow recorded by the Extensions.

Even if their browsing communications were within Section 632's scope, Plaintiffs cannot establish the communications were "confidential." MTD 13. Plaintiffs misconstrue this element, arguing there is a "reasonable expectation of privacy" in browsing history. Opp. 11. But "confidentiality" under Section 632 is not the same as a reasonable privacy expectation; rather, it requires "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.4th 766, 776-77 (Cal. 2002). And Plaintiffs had no reason to expect that the addresses of the webpages they visited were not being recorded in some way—including by the websites at issue. That is why California courts have held "that internet-based communication cannot be confidential" for purposes of Section 632—because "individuals cannot have a reasonable expectation that their online communications will not be recorded." *In re Google*, 2013 WL 5423918, at *22; *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications.").[8]

**C. Plaintiffs' Fail to Rescue Their Privacy Claims**

Plaintiffs go on at length about various factors that can be relevant to an invasion of privacy claim, but none trumps consent to the alleged "invasion"—which precludes any claim of a reasonable expectation of privacy. *See Pinto v. Walt Disney Parks & Resorts U.S., Inc.*, 528 F. App'x 694, 696 (9th Cir. 2013) ("Consent is a complete bar to their common law and constitutional privacy claims."); *see also Javier v. Assurance IQ, LLC*, 2021 WL 3669343, at *2 (N.D. Cal. Aug. 6, 2021), *reversed on other grounds*, 2022 WL 1744107 (9th Cir. May 31, 2022) (same); *In re*

---

[7] *In re Google Inc.* did not expressly address whether emails could be "conversations" under Section 632, instead holding that emails are not "confidential" because they "are by their very nature recorded on the computer of at least the recipient." 2013 WL 5423918, *23 (N.D. Cal. Sept. 26, 2013).

[8] While *Brown v. Google* held that the browsing communications there were confidential, that was because they occurred in a "private browsing" session using "Incognito mode," allegedly creating an expectation that they would not be recorded. 525 F. Supp. 3d 1049, 1077-78 (N.D. Cal. 2021).

*Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (same). As explained above, Plaintiffs necessarily consented to Avast reading their browsing data and cannot plausibly allege otherwise, as the Avast Extensions have to read such data in order to function. *See Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) ("[T]here is no reasonable expectation of privacy when the data collection is within users' common-sense expectation.").

While Plaintiffs attempt to analogize to *In re Facebook Internet Tracking*, 956 F.3d 589 (9th Cir. 2020), *cited in* Opp. 14-15, they ignore the fundamental distinction between that case and this one. There, Facebook allegedly tracked users through software installed *by third parties on their websites*, unbeknownst to users, whereas here, the software at issue was installed *by Plaintiffs themselves*, for the very purpose of monitoring their browsing activity. Thus, Plaintiffs have no plausible basis to allege that Avast's data collection was "surreptitious and unseen." *Id.* at 603.[9]

Nor can Plaintiffs plausibly point to any downstream use of their data to which their consent did not extend. *Cf. Hart v. TWC Product and Tech. LLC*, 526 F. Supp. 3d 592, 600 (2021) (Tigar, J.) (finding reasonable privacy expectation against app's practices of monitoring location data when app was closed and selling data to third parties, even though plaintiff had consented to data collection for other purposes). As with their wiretapping claims, the alleged sale of Avast user data through Jumpshot is outside the limitations periods for Plaintiffs' privacy claims, MTD 17; so they cannot base their privacy claims on alleged lack of consent to that conduct. As for the mere *retention* of browsing data by Avast, Plaintiffs do not allege that, after the shuttering of Jumpshot, data was (or is) retained by Avast for any purpose beyond the operation of the Extensions. Indeed, Plaintiffs do not specify *anything* that Avast allegedly *does* with browsing data post-Jumpshot—let alone anything improper. Their complaint simply alleges that the data is stored. Compl. ¶¶ 68-

---

[9] Plaintiffs argue they reasonably expected that Avast would not collect their browsing data based on a January 2020 statement from Avast's then-CEO, stating he had concluded "that the data collection business is not in line with our privacy priorities as a company in 2020 and beyond." Opp. 15 & n.4. But the statement clearly referred to *Jumpshot's* data collection from Avast *for purposes of selling the data to third parties*—not the mere acquisition of data by the Avast Extensions. *See A Message from Avast's CEO, Avast Blog* (Jan. 30, 2020), https://blog.avast.com/a-message-from-ceo ("I...have decided to terminate *the Jumpshot data collection* and wind down *Jumpshot's* operations.") (emphasis added). The quotation only underscores that Plaintiffs' Jumpshot allegations are untimely; it does not somehow support the inference that Defendants' post-Jumpshot conduct was surreptitious.

73. Thus, there is no "wide discrepancy" here between the "expectations for [Defendant's] use of [Plaintiffs'] data and its actual alleged use" that could give rise to a reasonable privacy expectation. *Hart*, 526 F. Supp. 3d at 600. Certainly, Plaintiffs cannot claim any "highly offensive intrusion" upon any such expectation, as their privacy claims require.

### D. Plaintiffs Fail to Rescue Their Larceny Claim

#### 1. Plaintiffs Still Identify No "Property" That Was Stolen

As previously explained, Plaintiffs' "larceny" claim fails at the threshold: they identify no "property" that could have been stolen. MTD 18-19. Faced with case law holding that "personal information does not constitute property," *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028-30 (N.D. Cal. 2012), Plaintiffs fall back on cases holding that where a plaintiff has plausibly alleged a market for their personal data, *cognizable injury* can arise where they lose the opportunity to sell the data in that market. Opp. 18-19. But Plaintiffs never explain why such an alleged injury equates to "property" under Section 496. Many forms of cognizable injury—ranging from emotional damage, to dignitary harms, to economic injuries such as lost opportunity—are not "property."

Moreover, even if an economic interest in selling data *were* "property," numerous courts have held that pleading such an interest requires plausible allegations that the data *actually* had economic value *to the plaintiff*. As this Court explained in dismissing such a claim: "[Plaintiff] has not shown how this information has economic value to him. That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property." *Hart*, 526 F. Supp. 3d at 603 (quoting *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019)). Plaintiffs have not plausibly alleged they actually would, or could, have sold their data absent Defendants' conduct. Without such allegations, Plaintiffs cannot claim to have suffered economic injury—and *a fortiori* cannot claim to have lost any property. Nor do Plaintiffs explain how their theory can be reconciled with the Ninth Circuit's recent statement that "mere misappropriation of personal information does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021).

Plaintiffs instead cling to a misreading of *Internet Tracking*, claiming the decision held that copied personal information qualifies as property. Opp. 18. It did not. Plaintiffs cite language from

the case addressing *standing*, which merely held that because California law "recognizes a right to disgorgement of profits resulting from unjust enrichment," plaintiffs there had established standing via "a stake in the profits garnered from their personal browsing histories." 956 F.3d at 600. That says nothing about whether browsing history information itself constitutes property.[10]

**2. Plaintiffs Still Do Not Allege Their Data Left Their Possession**

Plaintiffs also still cannot allege their data was ever *transferred* from their possession; at most, it was *copied*. Lacking an answer to that commonsense point, Plaintiffs try to rehabilitate *Calhoun*—which is unpersuasive as Defendants have already explained, MTD 20 n.7—by arguing that "[c]ountless other California courts have also held" that mere information copying can support larceny convictions. Opp. 19. But the cases cited are even more inapposite. In *People v. Gopal*, the court relied on a statutory provision specifically making it "theft" to abuse a position of trust to make unauthorized copies of trade secrets. 171 Cal. App. 3d 524, 540 (1985) (quoting Cal. Penal Code § 499c, subdivision (b)). No such provision exists here. In *People v. Parker*, the crime did not involve copying at all. Rather, the defendant had received a phonebook stolen from the printer in advance of publication, which he *later* intended to copy and then return—but the crime was receipt of the stolen book, not the intended copying. 217 Cal. App. 2d 422, 426-28 (1963). And far from supporting Plaintiffs, *Williams v. Superior Court* noted that prior decisions "raise[d] doubts that mere information, as distinguished from the paper on which it is printed, can be the subject of theft," and expressly *declined* to resolve the question. 81 Cal. App. 3d 330, 341 (1978).

**3. Plaintiffs' New "Larceny by Trick" Theory Is Unavailing**

Recognizing they cannot satisfy the elements of theft by false pretenses—and that the consent element of that offense dooms their wiretap and privacy claims, *see* MTD 20 n.6—Plaintiffs assert for the first time a new theory of "larceny by trick." This theory, which nowhere appears in the Complaint,[11] cannot save their claim.

---

[10] Plaintiffs also cite *CTC Real Estate Servs. v. Lepe* for the proposition that personal information "'is a valuable asset' and can be the object of theft." Opp. 17 (quoting 140 Cal. App. 4th 856, 860 (Cal. Ct. App. 2006)). But that case was a criminal prosecution for *identity theft*, Cal. Civ. Code § 1798.93, and says nothing about whether personal information qualifies as "property."

[11] Plaintiffs suggest they never asserted a theft-by-false-pretenses claim, Opp. 19, but the Complaint itself alleges that Defendants "act[ed] in a manner constituting theft…by making false or fraudulent representations or pretenses." Compl. ¶ 159; *see also id.* ¶ 157.

To meet the elements of theft by trick, "(1) there must be a taking; (2) there must be an asportation of the thing taken; (3) the thing taken must be the property of another; and (4) the taking and carrying away must be with an intent…to deprive the owner of his property wholly and permanently." *People v. Whitmer*, 230 Cal. App. 4th 906, 923 (2014) (citation omitted). Plaintiffs cannot meet the "asportation" element, as their information was never carried away. *Supra*, at 12. Plaintiffs also still fail to explain how Defendants intended to deprive them "wholly and permanently" of their browsing information, given that Plaintiffs never ceased to possess their browsing histories on their own computers. *See Whitmer,* 230 Cal. App. 4th at 923; MTD 20. Further, however characterized, Plaintiffs' claim clearly sounds in fraud—and must meet Rule 9(b)'s heightened standards. *See* MTD 20-22; *People v. Williams*, 57 Cal. 4th 776, 783 (2013) (discussing larceny by trick's "fraudulent nature"). Yet Plaintiffs still fail to identify '"the specific statements alleged to be false, when the statements were made and when Plaintiffs encountered them.'" MTD 21 (ellipses omitted) (quoting *Haddad v. Merck and Co., Inc*., 2022 WL 17357779, *8 (C.D. Cal. Aug. 11, 2022)). Nor can they plausibly allege to have been tricked into providing their data in any event, given the plain need for the Avast Extensions to access it.

Finally, Plaintiffs do not deny that their theory's logical consequence would be to turn every false advertising or privacy dispute into a "theft" claim (not to mention a basis for criminal prosecution). MTD 22. Instead, they assert that a California appeals court has "dismissed" these "policy concerns." Opp. 21. But as Justice Kruger emphasized in the later-decided *Siry Invest., L.P. v. Farkhondephour*, it is imperative for courts to enforce the "important limitations on the scope of section 496" in light of these very concerns. 13 Cal. 5th 333, 368-70 (2022) (Kruger, J., concurring). Otherwise, "most consumer or commercial transactions could now be transformed into a 'theft' case seeking treble damages—including…false advertising laws." *Id.* at 370. That is precisely the result that Plaintiffs seek, and the result that this Court should not endorse.

### E. Plaintiffs Fail to Rescue Their Equitable Claims

#### 1. Plaintiffs' Equitable Claims Are Precluded by *Sonner* and Article III

Plaintiffs' claims for equitable relief—including their UCL and unjust enrichment claims—are barred by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). Plaintiffs

argue that this Court should disregard *Sonner* because it purportedly conflicts with a footnote in *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020). But "nearly all district courts to consider the question"—including this Court—"have found that '[t]he *Moore* footnote did not hold that federal courts were no longer required to apply the equitable principles as prescribed by the *Sonner* Court for the exercise of diversity jurisdiction.'" *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *4 (C.D. Cal. Dec. 14, 2022) (quoting *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) (Tigar, J.)). Rather, "the *Moore* footnote addresses only the scope of remedies available under California state law." *Integritymessageboards.com v. Facebook, Inc.*, 2020 WL 6544411, at *4 (N.D. Cal. Nov. 6, 2020). Indeed, the Ninth Circuit recently reaffirmed *Sonner,* holding that even where a plaintiff's legal claims are time-barred, they constitute an adequate legal remedy that precludes equitable relief. *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022), *petition for cert. pending*, No. 21-55520.[12]

Plaintiffs fare no better with their argument that *Sonner* does not bar unjust enrichment claims. Opp. 24.[13] It is well-established that "[u]njust enrichment is an equitable rather than a legal claim." *McKesson HBOC, Inc. v. NY State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003). This Court and others thus routinely dismiss such claims under *Sonner*. *See Campbell v. Arizona Beverages USA LLC*, 2023 WL 2764123, at *7 (N.D. Cal. Mar. 31, 2023) (Tigar, J.); *Sharma*, 524 F. Supp. 3d at 909; *Cho v. Hyundai Motor Co., Ltd.*, 2022 WL 16966537, at *13 (C.D. Cal. Oct. 21, 2022). *Sonner* thus bars Plaintiffs' restitution and disgorgement claims.

Plaintiffs' injunctive relief claims also fail, not only under *Sonner* but as a matter of Article III standing. MTD 23. Plaintiffs lack a "real and immediate threat of repeated injury," as required for injunctive relief, because they concededly no longer use the Extensions and do not allege any

---

[12] The two outlier cases Plaintiffs cite (at 22) predate *Guzman*, contradict the weight of authority, and should not be followed. *See Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *4 (C.D. Cal. Mar. 21, 2023) (rejecting *Moore* argument in light of *Guzman*); *Easton v. Wells Fargo & Co.*, 2022 WL 17886002, at *2 (C.D. Cal. Dec. 6, 2022) (similar).

[13] Plaintiffs' cases (at 24) only confirm that unjust enrichment is equitable and subject to *Sonner*. *Astiana v. Hain Celestial Group, Inc.* explained "there is not a standalone cause of action for 'unjust enrichment,'" though courts may sometimes construe such claims as quasi-contract claims. 783 F.3d 753, 762 (9th Cir. 2015). And *Innerline* expressly conducted a *Sonner* analysis for an unjust enrichment claim, confirming that *Sonner* applies. *Innerline Eng'ring, Inc. v. Operating Eng'rs Health & Welfare Trust Fund*, 2023 WL 2671373, at *4-5 (N.D. Cal. Mar. 28, 2023).

future plan to use them. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); Compl. ¶¶ 74-76. Plaintiffs' own case recognizes that plaintiffs cannot pursue injunctive relief where they fail to allege they will purchase or use the challenged product again. *See Graham v. Central Garden & Pet Co.*, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023); *see also Campbell*, 2023 WL 2764123, at *7 n.6. Nor do Plaintiffs explain how they could be harmed by continued storage of their data, as they fail to allege any imminent risk of future dissemination or sale of the data. *See* MTD 23; Compl. ¶ 66.

### 2. Plaintiffs' UCL Claim Also Fails on the Merits

Plaintiffs' UCL claim also fails on the merits. They do not even attempt to explain how their allegations satisfy the UCL's "lost money or property" requirement. Mot. 24; Opp. 23-24. In a separate section of their brief, Plaintiffs argue that their browsing data is "property," Opp. 17-18, but they ignore the wall of cases holding that the alleged "diminution of the value" of personal data does not suffice for UCL standing. Compl. ¶178; MTD 18-19, 24 (citing cases); *supra* at 11. Moreover, Plaintiffs do not deny that their claims for "unlawful" and "unfair" conduct necessarily fail if their predicate claims fail, Opp. 23-24, which they do for the reasons explained.

### 3. Plaintiffs' Unjust Enrichment Claim Also Fails on the Merits

Plaintiffs' unjust enrichment claim also fails on the merits. Plaintiffs repeat their assertions that Defendants "wrongfully intercepted" their data, Opp. 24, but they allege no facts showing that Defendants' access to their browsing data was wrongful or inequitable—understandably, as the Avast Extensions need access to browsing data in order to function. *See* MTD 25. Moreover, as Plaintiffs themselves acknowledge, unjust enrichment requires "that Defendants' received and unjustly retained a benefit *at Plaintiffs' expense*." Opp. 24 (emphasis added). Plaintiffs offer no plausible explanation of how Avast's alleged access to or storage of their data imposes any "expense" on them, as the Avast Extensions are free to download and there is no allegation of any other cost they have incurred as a result of the conduct alleged.

## III. CONCLUSION

Defendants respectfully request dismissal of the Complaint with prejudice.

Dated: May 17, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Michael H. Rubin*

Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Tyce R. Walters (*pro hac vice*)
*tyce.walters@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*