United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GRACE LAU, et al.,

Plaintiffs,

v.

GEN DIGITAL INC., et al.,

Defendants.

Case No. 22-cv-08981-JST

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; ORDER TERMINATING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Re: ECF Nos. 25, 39

Before the Court is a motion to dismiss brought by Defendants Gen Digital Inc. and Jumpshot Inc. ECF No. 25. The Court will grant the motion in part and deny it in part. Additionally, the Court will terminate Plaintiffs' motion for leave to file an amended complaint, ECF No. 39—filed over three months after Defendants' motion to dismiss was fully briefed, and less than two weeks before argument on Defendants' motion was scheduled to be heard—with instructions to the parties to meet and confer regarding the impact of this order on Plaintiffs' intended amendments.

## I. BACKGROUND

On behalf of a putative nationwide class and California subclass, Plaintiffs Grace Lau and Christopher Karwowksi assert claims against Defendants based on two browser extensions for Google Chrome and Microsoft Internet Explorer: Avast Online Security and Privacy ("AOSP"), previously known as Avast Online Security ("AOS"), and Avast SafePrice. Plaintiffs allege that Defendant Gen Digital acquired the assets of Avast PLC in 2022, and that Defendant Jumpshot is a former subsidiary of Avast.

Plaintiffs further allege the following: "According to Avast, AOSP protects users' privacy, secures users' browsers against online threats and phishing scams, keeps users' online activities

United States District Court
Northern District of California

private and anonymous, disguises users' online profile, and prevents tracking on every website the user visits. SafePrice is marketed as providing the best prices, deals, and coupons while shopping online." ECF No. 1 ¶ 9. Both extensions "secretly collect and store the users' data in . . . a systematic way." *Id.* ¶ 10. They "intercept and collect their users' Internet search engine keyword searches, search results, and email inbox searches . . . without providing adequate disclosure of its data theft to users." *Id.* ¶ 13.

Avast previously licensed users' data to Jumpshot and "knew that Jumpshot was selling the data to third parties," including "information about consumers' personal web browsing history" and "search queries of specific locations, including GPS coordinates on Google maps." *Id.* ¶¶ 45, 56–57. "[W]hile Avast was promising its users that its data would be safe and secure from data harvesters, it was harvesting such highly granular and specific information that Jumpshot advertised to its customers, without exaggeration, as offering the 'most precise way to unlock human behavior online.'" *Id.* ¶ 59.

Defendants "continue to intercept and collect users' Internet and email search and browsing activities, without providing adequate notice," even after "Avast shuttered Jumpshot after its misuse of user data was exposed in late 2019 and early 2020." *Id.* ¶ 68.

> Here is how it works: The Avast software is designed to intercept all communications from a main channel (the web browser) between the user and the websites the user visits, and copy those communications to an Avast server.
>
> For example, when a user runs a search on Google's search engine, a main channel is established between the user and Google to transmit communications such as search queries. The main channel communications are intercepted by AOSP (or AOS) and a copy of the communication is immediately transmitted to Gen Digital and Avast servers, and Gen Digital and Avast store the intercepted data.
>
> Similarly, when a user runs a search within their Gmail or Yahoo! email inbox, a main channel is created between the email user and Google or Yahoo and any search conducted by the email user is immediately intercepted by AOSP (or AOS). A copy of the search is immediately transmitted to Gen Digital and Avast servers, and Gen Digital and Avast store the intercepted data.
>
> The SafePrice extension also captures Internet searches and searches within users' email inboxes.

*Id.* ¶¶ 69-72 (paragraph numbers omitted).

Plaintiffs assert seven claims for relief: (1) violation of the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act"), 18 U.S.C. § 2510 et seq.; (2) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 et seq.; (3) invasion of privacy under Article I, Section 1 of the California Constitution; (4) intrusion upon seclusion; (5) statutory larceny, Cal. Penal Code § 496; (6) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (7) unjust enrichment. The first two claims are asserted against Gen Digital only, with the remaining five claims asserted against both Defendants.

Defendants move to dismiss the complaint in its entirety.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Dismissal for failure to state a claim should be with leave to amend, "even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possibly be cured by the allegation of



United States District Court
Northern District of California

other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**IV. DISCUSSION**

**A. Statutes of Limitations**

Plaintiffs do not dispute that their non-statutory privacy and ECPA claims are subject to a two-year statute of limitations, and their CIPA claims are subject to a one-year statute of limitations. 18 U.S.C. § 2520(e) (ECPA); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 598–99 (N.D. Cal. 2021) (non-statutory privacy claims); *Quesada v. Banc of Am. Inv. Servs., Inc.*, No. C-11-1703 EMC, 2012 WL 34228, at *1 (N.D. Cal. Jan. 6, 2012) (citing Cal. Civ. Proc. Code § 340(a); *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (1987)) (CIPA). Lau alleges that she used AOSP and SafePrice "through mid-2021," and Karwowski alleges that he used both "from 2019-2020." ECF No. 1 ¶¶ 74, 76. The complaint was filed on December 19, 2022. ECF No. 1. Thus, as Plaintiffs acknowledge, some of their claims "appear facially time-barred." ECF No. 36 at 13.

Plaintiffs contend that their claims are nonetheless timely because they "plead facts showing (1) affirmatively misleading conduct by Defendants; which are (2) undiscovered despite reasonable diligence by Plaintiffs." *Id.* (citing *Thibodeaux v. Teamsters Local 853*, 263 F. Supp. 3d 772, 778 (N.D. Cal. 2017)). As the case relied on by Plaintiffs states, however, a plaintiff "must plead allegations of fraudulent concealment with particularity." *Thibodeaux*, 263 F. Supp. 3d at 772 (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988)). This includes pleading with particularity affirmative conduct by the defendant or a duty to disclose information:

> A plaintiff alleging fraudulent concealment must establish that its failure to have notice of its claim was the result of affirmative conduct by the defendant. Passive concealment of information is not enough to toll the statute of limitations, unless the defendant had a fiduciary duty to disclose information to the plaintiff. An affirmative act of denial, however, is enough if the circumstances make the plaintiff's reliance on the denial reasonable.

*Conmar*, 858 F.2d at 505 (citations omitted). A plaintiff must plead with particularity "facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor

constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Id.* at 502. "The second element requires the plaintiff to allege '(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'" *Garcia v. Gen. Motors LLC*, No. 1:18-cv-01313-LJO-BAM, 2018 WL 6460196, at *6 (E.D. Cal. Dec. 10, 2018) (quoting *Cmty. Case v. Boatwright*, 124 Cal. App. 3d 888, 899 (1981)).

Plaintiffs have not satisfied their burden here. The only alleged "misleading statement" identified with particularity is "the very titles of the extensions ('Online Security and Privacy' and 'SafePrice')."[1] ECF No. 1 ¶ 82. But, as discussed below, this is part of the same conduct on which Plaintiffs base their substantive claims, and fraudulent concealment requires conduct "above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *De Los Reyes v. Ruchman & Assocs., Inc.*, No. 14-cv-00534-WHO, 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014) (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)). Although Plaintiffs plead that Defendants "were under a duty to disclose the true character, quality, and nature of their activities to Plaintiffs," ECF No. 1 ¶ 84, this conclusory allegation is insufficient to satisfy their burden to plead fraudulent concealment with particularity. Plaintiffs also nowhere allege when the alleged fraud was discovered or how it was discovered. As to diligence, they make only the conclusory allegations that Plaintiffs "were ignorant of the information essential to pursue their claims, without any fault or lack of diligence on their own part," and that they "could not have learned through the exercise of reasonable diligence of Gen Digital, Avast, and Jumpshot's conduct as alleged herein." ECF No. 1 ¶¶ 82, 85. This is insufficient.

Accordingly, Lau's CIPA claim and all of Karwowski's claims are dismissed as untimely.

[1] Plaintiffs' opposition cites to paragraphs 65 to 68 of the complaint. ECF No. 36. But the only affirmative statement alleged in those paragraphs is the allegation that "Avast also announced its plan to cease the provision of its users' data to Jumpshot and wind down Jumpshot's operations." ECF No. 1 ¶ 66. This says nothing about changing the way in which the browser extensions operate, nor do Plaintiffs allege that Defendants did not, in fact, stop providing data to Jumpshot and wind down Jumpshot's operations.

The Court grants leave to amend so that Plaintiffs can attempt to plead fraudulent concealment with particularity or allege that Karwowski used either product within the two-year limitations period.

**B. Wiretapping Claims**

Defendants argue that Plaintiffs' wiretapping claims fail because Defendants were a party to the alleged communications. As the Ninth Circuit has explained:

> The Wiretap Act prohibits the unauthorized "interception" of an "electronic communication." 18 U.S.C. § 2511(1)(a)–(e). Similarly, CIPA prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." Cal. Pen. Code § 631(a). Both statutes contain an exemption from liability for a person who is a "party" to the communication, whether acting under the color of law or not. 18 U.S.C. § 2511(2)(c), (d); *see Warden v. Kahn*, 99 Cal. App. 3d 805, 160 Cal. Rptr. 471, 475 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption. *See, e.g.*, [*In re Google Inc. Cookie Placement Consumer Privacy Litig*., 806 F.3d 125, 152 (3rd Cir. 2015)] (holding that CIPA claims could be dismissed because the parties were exempted from liability under the Wiretap Act's party exception).

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020) ("*Facebook Tracking*").

The *Facebook Tracking* court held, however, that "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception." *Id.* at 608; *see also id.* at 607 ("When an individual internet user visits a web page, his or her browser sends a message called a 'GET request' to the web page's server. The GET request serves two purposes: it first tells the website what information is being requested and then instructs the website to send the information back to the user. The GET request also transmits a referer header containing the personally-identifiable URL information. Typically, this communication occurs only between the user's web browser and the third-party website."). It based this holding on its conclusion that "entities that surreptitiously duplicate transmissions between two parties are not parties to communications within the meaning of the [Wiretap] Act." *Id.* at 607.

Plaintiffs' allegations do not disqualify Defendants from the party exception because Plaintiffs fail to allege that the communication of their search information to Defendants was "unknown." In *Facebook Tracking*, the information was tracked through the "embedding [of] third-party plus-ins on third-party web pages" that could "replicate and send the user data to Facebook through a separate, but simultaneous, channel in a manner undetectable by the user." *Id.* at 596. Here, by contrast, Plaintiffs allege that they knowingly downloaded Defendants' browser extensions to, among other things, "prevent[] tracking on every website" they visited, "provide[] instant ratings for searches [and] warnings for phishing scams, malicious links and malware," and "provid[e] the best prices, deals, and coupons while shopping online." ECF No. 1 ¶¶ 9, 36. This case is similar to *Zak v. Bose Corp.*, where the court found that "receiving and displaying the Media Information [regarding what music a user played on Spotify or Apple Music] is a primary function of the App" at issue, thereby rendering the defendant "a fully-acknowledged participant" in—i.e., a party to—the communications. No. 17-cv-02928, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019). Plaintiffs downloaded the extensions to monitor their browsing activity and have not alleged how the extensions could function without Defendants' participation in the communications. Plaintiffs rely on the names of the extensions, which include the words "Security and Privacy" and "*Safe*Price," ECF No. 1 ¶ 82 (emphasis added), but it is implausible to conclude that any program containing such language must not itself view users' browsing data. To the contrary, it is not clear, for example, how a program could "provide[] instant ratings searches," *id.* ¶ 36, without accessing data about those searches, or warn about "malicious links," *id.*, without knowing what links a user was trying to access. In opposing Defendants' motion to dismiss, Plaintiffs argue that, "[a]s discovery will show, it is not necessary for the Extensions to intercept data to the extent occurring here in order to function," but they point to no allegations in the complaint to support that statement, nor do they explain why they need discovery to allege what is technologically possible. ECF No. 36 at 17. Moreover, without more, such an allegation would be too conclusory to move Plaintiffs' claims across the line from possibility to plausibility. *See Iqbal*, 556 U.S. at 678–79.

Plaintiffs' ECPA and CIPA claims are dismissed for failure to state a claim based on the

United States District Court
Northern District of California

party exception. The Court does not reach Defendants' remaining arguments regarding these claims. Dismissal is with leave to amend.

**C. Privacy Claims**

Claims for intrusion upon seclusion and invasion of privacy under the California Constitution have "similar elements," and courts therefore "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). When evaluating whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)). The question is "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Id.* (quoting *Hernandez*, 47 Cal. 4th at 286). When evaluating "whether defendant's actions were 'highly offensive to a reasonable person,'" courts engage in "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* (quoting *Hernandez*, 47 Cal. 4th at 287, and citing *Hill*, 7 Cal. 4th at 25–26).

For the same reasons that Plaintiffs have failed to allege violations of the wiretapping statutes, they have also failed to allege either a reasonable expectation of privacy or that any intrusion was highly offensive as to Defendants' access to Plaintiffs' browsing information. The complaint's allegations do not plausibly allege that a person who downloaded the extensions would have reasonably expected that their browsing information would not be shared with Defendants.

However, Plaintiffs allege that Defendants not only access their search data, but also that they "store the users' data in such a systematic way that they effectively create a 'live feed' of millions of users' Internet browsing data."[2] ECF No. 1 ¶ 10; *see also, e.g., id.* ¶ 37 (alleging that

[2] Plaintiffs allege that Defendants previously sold data to third parties, but they do not allege that such activity is ongoing.

"AOSP continues to intercept, collect, and store users' Internet browsing activity, search engine keyword searches and search results," as well as "users' email inbox searches," and that SafePrice does the same). Plaintiffs allege that this allows Defendants to "recreate a user's entire web browsing history, in addition to reviewing all of their search queries," and that users' searches "can disclose such personal information as sexual preferences, political leanings, medical conditions or symptoms or illnesses (including abortion services), financial data, and much more." *Id.* ¶¶ 39, 40. Defendants correctly observe that "Plaintiffs do not specify anything that Avast allegedly does with browsing data post-Jumpshot." ECF No. 37 at 17 (emphasis omitted). But, as the Ninth Circuit held in *Facebook Tracking*, "viewing the allegations in the light most favorable to Plaintiffs, as we must at this stage, the allegations that [a defendant] allegedly compiled highly personalized profiles from sensitive browsing histories and habits prevent [the court] from concluding that the Plaintiffs have no reasonable expectation of privacy." 956 F.3d at 604. Defendants attempt to distinguish *Facebook Tracking* on grounds that Plaintiffs here downloaded the tracking software themselves, as opposed to third-party software of which the plaintiffs were not aware, but this distinction matters only for the initial *collection* of data. Viewing the allegations in a light most favorable to Plaintiffs, the Court cannot conclude that a user would reasonably expect Defendants to *store* Plaintiffs' information so that the extensions could function.[3]

Nor will the Court dismiss Plaintiffs' privacy claims about storage on grounds that the alleged conduct was not highly offensive. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("*Facebook User Profile*"). At least at this stage of the proceedings, the Court cannot conclude as a matter of law that storing the vast amounts of information Plaintiffs allege

[3] This is true even if the Court were to consider the privacy prompts for which Defendants request judicial notice. Plaintiffs dispute whether those prompts were the ones that appeared when they downloaded the extensions, but the language of the prompts—that "[t]he extension can: Read and change all your data on all websites," ECF No. 25-4 at 3, 5; ECF No. 25-5 at 3, 5—does not indicate that the extensions or Defendants would store all of Plaintiffs' data. Defendants' attempted reliance on the prompts is therefore not persuasive.

Defendants store, when the fact of such storage has not been disclosed to or accepted by Plaintiffs, is not highly offensive. "The ultimate question of whether . . . [Defendants'] practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Facebook Tracking*, 956 F.3d at 606.

Defendants' motion to dismiss Plaintiffs' privacy claims as to Defendants' alleged storage of information is denied.

**D. Equitable Claims**

**1. Pleading Inadequate Remedy at Law**

Defendants move to dismiss Plaintiffs' equitable claims—under the UCL and for unjust enrichment—on grounds that, under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), plaintiffs cannot recover on equitable claims unless they lack an adequate remedy at law, and Plaintiffs do not meet that standard because they plead a claim for money damages.

The Court disagrees with Plaintiffs that *Sonner* is not good law because of a footnote in an earlier case, *Moore v. Mars Petcare US, Inc.*, where the Ninth Circuit concluded, "Defendants' argument that Plaintiffs cannot seek equitable relief under the UCL or FAL, given an adequate legal remedy under the CLRA, is foreclosed by statute. The UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other." 966 F.3d 1007, 1021 n.13 (9th Cir. 2020). First, "*Moore* appears to reject the argument, much like the one addressed by the district court in *Sonner*, that *California law* prohibits plaintiffs from pursuing equitable remedies under the UCL or CLRA if an adequate legal remedy exists." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) (emphasis in original). But the court "did not . . . engage in any analysis of what is necessary to plead standing to seek equitable relief in federal court." *Norman v. Gerber Prods. Co.*, No. 21-cv-09940-JSW, 2023 WL 2633220, at *1 (N.D. Cal. Mar. 24, 2023). Second, the Ninth Circuit has recently reaffirmed *Sonner*'s conclusion that, "to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023). The Court is not persuaded by Plaintiffs' reliance on a case

pre-dating *Guzman*, in which a district court found *Moore* to control over *Sonner* at a time when "neither the Ninth Circuit nor the Supreme Court have revisited [the] apparent conflict." *Ferry v. Porsche Cars N. Am., Inc.*, No. CV 21-5715-GW-ASx, 2022 WL 1769120, at *5 (C.D. Cal. Mar. 11, 2022), *tentative ruling adopted*, 2022 WL 1769123 (C.D. Cal. Mar. 14, 2022).

To survive a motion to dismiss under *Sonner*, plaintiffs need only "plead the absence of an adequate remedy at law." *Milstead v. Gen. Motors LLC*, No. 21-cv-06338-JST, 2023 WL 4410502, at *8 (N.D. Cal. July 6, 2023). This requirement was not modified by *Guzman*. *Id.* Plaintiffs have satisfied that pleading obligation here. ECF No. 1 ¶ 183.

**2. UCL Claim**

To bring a UCL claim, a person must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Although one court has held that "plaintiffs who suffered a loss of their personal information suffered economic injury and [have] standing" to sue under the UCL, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021), the court rested that conclusion "on four cases that address Article III standing, which is different from UCL standing," *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 n.8 (N.D. Cal. 2021) (distinguishing *Calhoun*). As this Court has recently explained:

> Numerous courts [including the court that decided *Calhoun*] have held that disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing, unless the plaintiff provides specific allegations regarding the value of the information. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *22 (N.D. Cal. Aug. 30, 2017) (rejecting UCL standing to victims of data breach who had failed to allege specific benefit-of-the-bargain losses or out-of-pocket expenses); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) ("A plaintiff's personal information does not constitute property under the UCL.").

*Swarts v. The Home Depot, Inc.*, No. 23-cv-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023); *see also Katz-Lacabe v. Oracle Am., Inc.*, ___ F. Supp. 3d ___, No. 22-cv-04792-RS, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023) (concluding that "[t]he weight of the authority in the district and the state" indicates "that the mere misappropriation of personal information does not establish compensable damages" sufficient to confer standing under the UCL (quotation marks

and citations omitted)). Plaintiffs fail "to adequately plead that they lost money or property" because they do not allege that "they ever attempted or intended to participate" in the market for the information allegedly collected and stored by Defendants, "or otherwise to derive economic value from" that information. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022); *see also Hart*, 526 F. Supp. 3d at 603–04. Plaintiffs' UCL claims are therefore dismissed for lack of statutory standing.

**3. Unjust Enrichment Claim**

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). As explained above, although the Court does not find plausible claims regarding Defendants' mere access of Plaintiffs' information, Plaintiffs have stated plausible claims regarding Defendants' alleged storage of that information. Even if Plaintiffs "suffered no economic loss from the disclosure of their information, they may proceed at this stage on a claim for unjust enrichment to recover the gains that [Defendants] realized from [their] allegedly improper conduct." *Facebook User Profile*, 402 F. Supp. 3d at 803; *see also Hart*, 526 F. Supp. 3d at 604–05. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' unjust enrichment claims.

**E. Statutory Larceny Claim**

California Penal Code section 496 allows a person to bring an action for treble damages against any person "who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." Cal. Penal Code §§ 496(a), (c); *see* Cal. Penal Code § 484 (defining "theft"). As discussed above, Plaintiffs have not sufficiently alleged that they lost any property for purposes of UCL standing. Although the *Calhoun* court concluded that the plaintiffs "adequately alleged that they were deprived of a property interest" for purposes of a statutory larceny claim based on theft of personal information, 526 F. Supp. 3d at 635, the Court is not persuaded by *Calhoun* because that court also held that the

plaintiffs had statutory standing to sue under the UCL, *id.* at 636–37—a conclusion with which this Court disagrees for the reasons discussed above. Plaintiffs also rely on *Facebook Tracking*, where the Ninth Circuit held that a plaintiff alleging use of personal data, "regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable," has standing to sue for statutory larceny. 956 F.3d at 600–01. But, similar to the cases Plaintiffs rely on regarding UCL statutory standing, *Facebook Tracking* addresses Article III standing, not whether a plaintiff's personal data constitutes property under Section 496. Plaintiffs have cited no authority, and this Court is aware of none, for the proposition that a plaintiff may bring an action for statutory larceny without alleging loss of property, or that a statutory larceny claim can survive when a plaintiff lacks standing to sue under the UCL because they have failed to allege loss of money or property. The Court therefore dismisses Plaintiffs' statutory larceny claims for the same reasons it dismisses their UCL claims. It does not reach Defendants' remaining arguments.

**CONCLUSION**

Consistent with the above discussion, Defendants' motion to dismiss is granted in part and denied in part. The motion is granted except as to Plaintiff Lau's claims for unjust enrichment and her privacy claims to the extent they are based on allegations that data is stored. It is denied in all other respects, with leave to amend.

Plaintiffs' motion for leave to file an amended complaint is terminated. The parties shall meet and confer regarding the impact of this order on Plaintiffs' proposed amendments.

Within 35 days of the date of this order, one of the following shall occur: (1) Plaintiffs shall file an amended complaint, solely to cure the deficiencies identified in this order; (2) the parties shall file a stipulation for Plaintiffs to file an amended complaint that goes beyond the deficiencies identified in this order, including, for example, the addition of other named plaintiffs, as contemplated by the motion filed at ECF No. 39; or (3) Plaintiffs shall file a revised motion for leave to file an amended complaint that indicates to which, if any, of the proposed amendments

/ / /

/ / /

Defendants agree. If none of these filings is timely made, the claims dismissed by this order will be dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: September 13, 2023

JON S. TIGAR
United States District Judge