LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

GRACE LAU and CHRISTOPHER KARWOWSKI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GEN DIGITAL INC., a corporation, and JUMPSHOT INC., a corporation,

Defendants

Case No. 3:22-cv-08981-RFL

**DEFENDANTS GEN DIGITAL INC. AND JUMPSHOT INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing: March 5, 2024
Time: 10:00 a.m.
Location: Courtroom 15—18th Floor
Judge: Hon. Rita F. Lin

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 5, 2024 at 10 a.m., before the Honorable Rita F. Lin, United States District Court, Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, California, Defendants Gen Digital Inc. ("Gen Digital") and Jumpshot Inc. ("Jumpshot") (collectively "Defendants") will and hereby do move for an order dismissing Plaintiffs Grace Lau, Christopher Karwowski, Melody Klein, Michael McBride, and Aimen Halim's First Amended Class Action Complaint (Dkt. 47) for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; Defendants' Request for Judicial Notice; the Declaration of Michael Rubin; the pleadings, records, and papers on file; and any other matters properly before the Court.

## ISSUE TO BE DECIDED

Whether the Court should dismiss the First Amended Class Action Complaint for lack of Article III standing under Rule 12(b)(1) and failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: December 4, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By <u>/s/ *Michael H. Rubin*</u>
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*

555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ... 1
II. BACKGROUND ... 2
A. Plaintiffs' Original Complaint and Judge Tigar's Dismissal Order ... 2
B. Plaintiffs' Amended Complaint ... 4
III. LEGAL STANDARD ... 5
IV. ARGUMENT ... 5
A. Plaintiffs' Wiretapping Claims Still Fail ... 5
1. Plaintiffs' Wiretapping Claims Still Fail Under the Party and Consent Exceptions ... 6
2. Plaintiffs' CIPA Section 632(a) Claim Still Fails for Additional Reasons ... 10
B. Plaintiffs' Privacy Claims Should Be Dismissed in Their Entirety ... 11
1. Plaintiffs' Privacy Claims Based on Interception Still Fail ... 12
2. Plaintiffs' Privacy Claims Based on Storage Should Also Be Dismissed ... 12
3. Plaintiffs' Nonsensical Cookie Allegations Cannot Support Their Privacy Claims ... 15
C. Plaintiffs' UCL Claim Still Fails ... 18
1. Plaintiffs Still Fail to Adequately Allege Economic Injury ... 18
2. Plaintiffs Cannot State a UCL Claim in Any Event ... 20
D. Plaintiffs' Larceny Claim Still Fails ... 20
E. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed in Its Entirety ... 22
F. The Statute of Limitations Still Bars the Jumpshot Allegations and Many of Plaintiff Lau and Karwowski's Claims ... 23
G. Further Amendment Would Be Futile ... 24
V. CONCLUSION ... 25

## TABLE OF AUTHORITIES

**Page**

### CASES

*Ables v. Brooks Bros. Grp.*,
2018 WL 8806667 (C.D. Cal. June 7, 2018) ... 20

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ... 5

*Apple Inc. v. Superior Ct.*,
56 Cal. 4th 128 (2013) ... 15

*Archer v. United Rentals, Inc.*,
195 Cal. App. 4th 807 (2011), *as modified on denial of reh'g* (June 13, 2011) ... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 5

*Braitberg v. Charter Commc'ns, Inc.*,
836 F.3d 925 (8th Cir. 2016) ... 13

*Cabezas v. Craigslist, Inc.*,
2023 WL 2484268 (N.D. Cal. Feb. 10, 2023) ... 14

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ... 24, 25

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ... 19

*De Los Reyes v. Ruchman & Assocs., Inc.*,
2014 WL 4354238 (N.D. Cal. Sept. 2, 2014) ... 24

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ... 18, 22

*ELT Sight, Inc. v. EyeLight, Inc.*,
2021 WL 6618552 (C.D. Cal. Oct. 22, 2021) ... 21

*Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 5, 12, 14

*Gardiner v. Walmart, Inc.*,
2021 WL 4992539 (N.D. Cal. July 28, 2021) ... 19

*Greenley v. Avis Budget Grp. Inc.*,
2020 WL 5230471 (S.D. Cal. Sept. 2, 2020) ........ 13, 14

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ........ 13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 11, 12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 11

*Huynh v. Quora, Inc.*,
2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ........ 19

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 18

*In re Google, Inc. Priv. Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 14

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........ 20

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016) ........ 25

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 17

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ........ 5, 8

*Kurowski v. Rush Sys. for Health*,
2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ........ 14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 21

*Lugo v. Amazon.com*,
2023 WL 6241200 (W.D. Wash. Sept. 26, 2023) ........ 13

*Moore v. Centrelake Med Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ........ 3, 18, 20

*New Mexico ex rel. Balderas v. Google, LLC*,
489 F. Supp. 3d 1254 (D.N.M. 2020) ........ 9

*Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Assn.*,
205 Cal. App. 3d 1415 (1988) ........ 23

*Oracle Corp. v. SAP AG*,
734 F. Supp. 2d 956 (N.D. Cal. 2010) ........ 23

*Park v. Webloyalty.com, Inc.*,
2014 WL 4829465 (S.D. Cal. Sept. 29, 2014), *aff'd*, 685 F. App'x 589 (9th Cir. 2017) ........ 9

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ........ 10

*People v. Whitmer*,
230 Cal. App. 4th 906 (2014) ........ 21

*People v. Williams*,
57 Cal. 4th 776 (2013) ........ 21

*Phillips v. U.S. Customs & Border Protection*,
74 F.4th 986 (9th Cir. 2023) ........ 13

*Price v. Apple, Inc.*,
2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ........ 20

*Regents of Univ. of Cal. v. LTI Flexible Prods., Inc.*,
2021 WL 4133869 (N.D. Cal. Sept. 10, 2021) ........ 23

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........ 17

*Russell v. Walmart, Inc.*,
2023 WL 4341460 (N.D. Cal. July 5, 2023) ........ 22

*Shah v. Cnty. of Los Angeles*,
2010 WL 1233562 (C.D. Cal. Mar. 26, 2010) ........ 17

*Siry Inv., L.P. v. Farkhondephour*,
13 Cal. 5th 333 (2022) ........ 22

*Smith v. Maryland*,
442 U.S. 735 (1979) ........ 14

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ........ 10, 19

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ........ 13

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 6

*United States v. Miller*,
425 U.S. 435 (1976) ........ 14

*United States v. Tuggle*,
4 F.4th 505 (7th Cir. 2021) ........ 15

*Wesch v. Yodlee, Inc.*,
2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ........ 19

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ........ 6, 8, 9

## STATUTES

18 U.S.C. § 2511(2)(c) ........ 5, 8

18 U.S.C. § 2511(2)(d) ........ 5

Cal. Civ. Code § 1798.100(c) ........ 15, 17

Cal. Civ. Code § 1798.100(d) ........ 17

Cal. Civ. Code § 1798.105 ........ 15

Cal. Civ. Code § 1798.115-21 ........ 17

Cal. Civ. Code § 1798.135 ........ 17

Cal. Civ. Code § 1798.150(c) ........ 15, 17

Cal. Civ. Code §§ 1798.100–199.90 ........ 17

Cal. Penal Code § 484 ........ 3, 20

Cal. Penal Code § 496 ........ 3

Cal. Penal Code § 496(a) ........ 20

Cal. Penal Code § 496(c) ........ 20

Cal. Penal Code §§ 630-638 ........ 3

## RULES

Fed. R. Civ. P. 8 ........ 2, 17

Fed. R. Civ. P. 12(b)(1) ........ 1

Fed. R. Civ. P. 12(b)(6) ........ 1, 5

## OTHER AUTHORITIES

Restatement (Second) of Torts § 652B(b) (1977) ........ 14

Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011).................................... 23

## I. INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") is an attempt to distract from—rather than cure—the fatal deficiencies Judge Tigar found in ruling on Defendants' first motion to dismiss. Judge Tigar dismissed Plaintiffs' core claims because Plaintiffs made Defendant Avast a party to their browsing activity when they voluntarily installed Avast's browser extension—Avast Online Security & Privacy ("AOSP")—to monitor their browsing activity for cybersecurity threats. As Judge Tigar made clear, for all Plaintiffs' talk of wiretapping, spying, and eavesdropping, Plaintiffs' allegations simply describe software, which they chose to install on their computers, accessing data that it obviously needs in order to function.

Plaintiffs now try to wriggle out of that holding by suggesting that AOSP somehow does not need to access browser information in order to work. But nothing they say undermines Judge Tigar's common-sense conclusion: AOSP plainly cannot warn users about websites they visit *without knowing what webpages they visit*; nor would a reasonable consumer fail to understand that. Plaintiffs cite an example of a different browser extension that allegedly *transmits* less data to the software operator's servers than AOSP does, but the point remains that any browser extension like AOSP has to *read* the web addresses users visit in the first instance—regardless of how the data is processed downstream. Plaintiffs' own allegations acknowledge that inconvenient truth—which dooms their wiretapping claims. The judicially noticeable fact that users seeking to download AOSP must expressly consent to a prompt advising that the extension can "[r]ead . . . all your data on all websites"—which Plaintiffs tellingly continue to ignore—only further confirms the vapidity of their claims.

Plaintiffs' other attempts to revive their wiretapping claims are likewise meritless. Plaintiffs spill a great deal of ink in the FAC on the *types* of browser information that AOSP might read in the course of scanning for malicious websites, but these hypothetical details are irrelevant: what matters is that Plaintiffs made AOSP a party to *all* their browser data, whatever kinds of websites they visit. And while Plaintiffs try to muddy the waters with confusing allegations that AOSP "transmits" data from Avast servers using "cookies," these allegations fail to plausibly describe any actionable conduct, let alone a wiretapping violation.

The rest of Plaintiffs' claims amount to grasping at straws. As Judge Tigar previously recognized, Plaintiffs' privacy claims based on access to their browsing data fail for the same reasons as their wiretapping claims. Nor can Plaintiffs adequately state any privacy claim based merely on *storage* of data—both the Supreme Court and the Ninth Circuit have held that retention of lawfully obtained data does not give rise to Article III standing, much less state an actionable privacy claim, as it does not involve any intrusion into a private domain. As for Plaintiffs' allegations that AOSP transmits data to third parties via "cookies," these convoluted assertions do not pass Rule 8's basic pleading threshold to begin with; and in any event, as with the storage-based allegations, they do not involve any intrusion into a private domain and so do not provide a basis for an invasion-of-privacy claim. Looking beyond their privacy claims, Plaintiffs' Unfair Competition Law and larceny claims fail because, notwithstanding Plaintiffs' new boilerplate allegations about markets for browsing data, they still fail to allege that they ever attempted to participate in any such market, much less that they were somehow unable to do so because of Defendants' conduct. Finally, Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs allege no unjust or wrongful conduct that could possibly support such a claim.

In short, even with guidance from the previous dismissal order, Plaintiffs have not fixed the fundamental flaws in their complaint. The FAC should be dismissed in its entirety—this time with prejudice.

## II. BACKGROUND[1]

### A. Plaintiffs' Original Complaint and Judge Tigar's Dismissal Order

Gen Digital is a well-established public company providing cybersecurity software and services, previously known as NortonLifeLock Inc., and, before that, Symantec Corporation. *See* First Am. Compl. ("FAC") ¶ 4, Dkt. 47. In 2022, Gen Digital acquired the assets of Avast PLC, which offers a range of products designed to protect consumers' security and privacy while browsing the internet. *See id*. ¶¶ 4, 7-9, 36-39.

In December 2022, Plaintiffs Lau and Karwowski filed suit against Gen Digital and a

[1] Unless otherwise indicated, the facts recited herein are based on the allegations of the FAC and are accepted as true only for purposes of this motion.

defunct Avast subsidiary called Jumpshot, Inc., which had been wound down nearly three years earlier. Plaintiffs alleged that two Avast browser extensions—AOSP and Avast SafePrice ("SafePrice")—impermissibly accessed the browsing data of users who chose to install these products. *See generally* Class Action Compl., Dkt. 1. Plaintiffs brought wiretapping claims under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 et seq., and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630-638; privacy claims based on an intrusion-upon-seclusion theory under common law and the California Constitution; a claim for statutory larceny under California Penal Code §§ 484, 496; a claim under the California Unfair Competition Law ("UCL"); and an unjust enrichment claim.

Defendants moved to dismiss all claims. Defs.' Mot. to Dismiss ("MTD I"), Dkt. 25. Less than two weeks before the motion was scheduled to be heard, Plaintiffs sought leave to amend the complaint. *See* Mot. for Leave to File Am. Compl., Dkt. 39. The same day, Judge Tigar found the motion to dismiss suitable for disposition without oral argument and vacated the scheduled hearing. *See* Clerk's Not. Vacating Mot. Hr'g, Dkt. 40. On September 13, 2023, Judge Tigar issued an order dismissing the bulk of Plaintiffs' claims, while allowing Plaintiffs' privacy and unjust enrichment claims to proceed to the extent those claims were premised on Defendants' *storage* of users' browser data—a theory that had not been addressed in the parties' briefing. *See* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("Order"), Dkt. 45.

Specifically, Judge Tigar dismissed Plaintiffs' wiretapping, UCL, and larceny claims in their entirety. First, he found that because Plaintiffs had voluntarily downloaded the browser extensions at issue, which needed to view browsing data in order to perform their stated functions, Plaintiffs made Avast a party to the communications at issue, and thus they could not sustain their wiretapping claims. Order at 6-7. He further held that Plaintiffs' UCL and larceny claims failed because Plaintiffs "fail[ed] 'to adequately plead that they lost money or property,'" as they had not "allege[d] that 'they ever attempted or intended to participate'" in any market for their information "'or otherwise . . . derive economic value from' that information." *Id.* at 11-13 (quoting *Moore v. Centrelake Med Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022), *review denied* (Dec. 14, 2022)).

Judge Tigar also dismissed Plaintiffs' privacy and unjust enrichment claims to the extent they were premised on "Defendants' access to Plaintiffs' browsing information." *Id.* at 8. He explained that Plaintiffs failed to plausibly allege that "a person who downloaded the extensions would have reasonably expected that their browsing information would not be shared with Defendants." *Id.* He concluded, however, that Plaintiffs' privacy and unjust enrichment claims could proceed as to the allegation that Defendants *stored* the lawfully obtained data, even though neither party had briefed whether this allegation could serve as a standalone basis for Plaintiffs' claims. *Id.* at 8-10.

In addition to the other deficiencies he identified, Judge Tigar held that Plaintiff Lau's CIPA claim, and Plaintiff Karwowski's ECPA, CIPA, and non-statutory privacy claims, were time-barred, and rejected their fraudulent concealment tolling allegations. Order at 4-5.

**B. Plaintiffs' Amended Complaint**

In response to Judge Tigar's order, Plaintiffs filed their First Amended Complaint on October 18, 2023. The FAC adds no new causes of action, and it abandons Plaintiffs' challenge to SafePrice, leaving only AOSP at issue. The FAC otherwise remains substantively similar to the original complaint, but it includes five sets of additional allegations.

*First*, the FAC asserts that AOSP's "interception, collection, and storage" of full-string URLs is "unnecessary for the function of a browser security extension[]." FAC ¶ 84. As the basis for this assertion, the FAC points to a different browser extension that allegedly transmits less data to the software operator's servers than AOSP does. *Id.* ¶¶ 76-79.

*Second*, the FAC adds vague, unsourced, and unexplained allegations that AOSP uses "third-party advertising cookies designed to transmit" data "on its servers" to "third-party advertising partners." *Id.* ¶¶ 80-82, 97, 102.

*Third*, the FAC provides specific examples of certain types of information—namely, health information and video-viewing information—that could be viewed by AOSP; but it alleges no new causes of action based on these alleged facts. *Id.* ¶¶ 85-99, 100-103.

*Fourth*, in an attempt to bolster Plaintiffs' theory of economic injury, the FAC alleges that a market exists for user data in general. Yet it still does not specifically allege that Plaintiffs ever

sought to participate in this market or explain why Defendants' alleged conduct would prevent them from doing so. *Id.* ¶¶ 104-134.

*Finally*, the FAC names three new Plaintiffs—specifically, Melody Klein, Michael McBride, and Aimen Halim—who each allege they used AOSP in 2023. *See id.* ¶¶ 143, 150, 156.

More notable than what has been added to the FAC is what has *not* been added: Plaintiffs continue to ignore that, before downloading AOSP from the browser stores where it is offered, users are shown a prompt clearly notifying them that the extension can "[r]ead . . . *all* your data on *all* websites," which the user must accept before downloading the software. Rubin Decl., Exs. A at 1, B at 1 ("Privacy Prompt") (emphasis added). Defendants already pointed to the Privacy Prompt in their motion to dismiss the original complaint—and the Court can take judicial notice of it here—yet Plaintiffs make no effort to address it in the FAC. Instead they merely recycle conclusory statements from their original complaint that their browsing data was collected without their consent. *See, e.g.*, FAC ¶¶ 14, 99, 103, 130.

## III. Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV. ARGUMENT

### A. Plaintiffs' Wiretapping Claims Still Fail

ECPA and CIPA both "contain an exemption from liability for a person who is a 'party' to the communication." Order at 6 (citing *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020) ("*Facebook Tracking*")); *see* 18 U.S.C. § 2511(2)(c), (d); *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021). Judge Tigar properly dismissed Plaintiffs' wiretapping claims because Avast, whose product Plaintiffs voluntarily downloaded to

analyze their browsing activity, was a party to the communications at issue. Plaintiffs' new allegations add nothing that would alter this result. The Court should thus dismiss these claims on the same grounds as before. Plaintiffs' wiretapping claims also suffer from additional defects, although the Court need not reach these secondary issues (as Judge Tigar did not).

**1. Plaintiffs' Wiretapping Claims Still Fail Under the Party and Consent Exceptions**

Judge Tigar correctly dismissed Plaintiffs' wiretapping claims under the party exception because "Plaintiffs allege[d] that they knowingly downloaded Defendants' extensions" to perform tasks that required reading users' browsing data—including providing 'warnings for phishing scams, malicious links, and malware.'" Order at 7 (comparing case to *Zak v. Bose Corp.*, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)); *see also* MTD I at 8-11. Judge Tigar reasoned that "Plaintiffs downloaded the extensions to monitor their browsing activity and have not alleged how the extensions could function without Defendants' participation in the communications," because "it is not clear, for example, how a program could . . . warn about 'malicious links' without knowing what links a user was trying to access." Order at 7 (internal citations omitted). In other words, just as someone who hires a bodyguard to protect against physical security threats cannot complain that the bodyguard can see inside the rooms the person visits, Plaintiffs, having chosen to receive security protection from AOSP while they are online, cannot be heard to complain that AOSP unlawfully "intercepted" their online activity. They inherently made AOSP a party to those communications.

Plaintiffs attempt to cure these fundamental deficiencies by (1) alleging that AOSP does *not* need to access browser information in order to function; (2) adding inscrutable allegations that AOSP transmits data to third parties via cookies; and (3) detailing types of browser information AOSP might view. None of these new allegations saves their wiretapping claims.

**Plaintiffs' Attempt to Allege that Browser Extensions Do Not Need to Access Browser Information Fails.** As Defendants previously explained, ECPA and CIPA are concerned with the moment of *interception*, rather than any downstream processing of the information. *See, e.g.*, *United States v. Christensen*, 828 F.3d 763, 796 (9th Cir. 2015) (finding that "[a]ny subsequent

use of [a] recorded conversation" is not governed "by the prohibition on interception" in the Wiretap Act); MTD I at 7 (collecting cases). And as Plaintiffs continue to recognize, the "interception" alleged here occurs when AOSP reads the URLs that a user visits on their browser. *See* FAC ¶ 71. As Judge Tigar held, AOSP obviously *must* read that data in order to function.

In response, Plaintiffs now attempt to muddy the waters by asserting that the "interception, collection, and storage of full-string URLs" is "unnecessary for [AOSP's] stated function as a browser security extension." *Id.* ¶¶ 74-76. Specifically, Plaintiffs allege that another browser security extension operated by a Gen Digital subsidiary, Norton Safe Search Enhanced (the "Norton Extension"), operates by comparing URLs against a "blacklist" of malicious sites that is stored locally on the device, typically without communicating with Norton servers. *Id.* ¶ 76. When it is necessary to communicate with a server, Plaintiffs allege, the Norton Extension sends only a domain name, rather than the full-string URL. *Id.* ¶¶ 77-78. Plaintiffs suggest these allegations somehow show that AOSP's access to browsing data was "completely unknown to users." *Id.* ¶ 84.

In fact, Plaintiffs' new allegations just confirm that browser extensions—including the Norton Extension—must read URLs to perform their function, and that no reasonable user would expect otherwise. For example, Plaintiffs allege that "[w]henever a Norton user navigates to a particular website, that website is checked against the blacklist." *Id.* ¶ 76. In order for the Norton Extension to check that website against a blacklist, it necessarily reads the URL, just as AOSP does. Plaintiffs further allege that "where a website does not appear on the local blacklist, [the Norton Extension] . . . transmits only the domain name of the website the user visited," *id.* ¶ 77; but again, that allegation does not establish that the Norton Extension does not read—i.e., *intercept*—the full URL before taking additional steps to transmit the information. Indeed, the extension must access the full URL if only to determine what domain name it contains. Plaintiffs thus still do not allege "how the extensions could function without Defendants' participation in the communications." Order at 7. To the contrary, their new allegations confirm that a program *cannot* "warn about 'malicious links' without knowing what links a user was trying to access." *Id.* Plaintiffs' claims thus fail under the party exception.

The rest of Plaintiffs' allegations related to the Norton Extension suggest, at most, that it *transmits* less information to external servers than AOSP. *See, e.g.*, FAC ¶ 77. This contention does nothing to undermine Judge Tigar's prior holding. As an initial matter, Plaintiffs provide no basis for the idea that a reasonable user would expect a browser extension to transfer as little data as possible to the software operator's servers. Indeed, it is unclear why a reasonable user would have any expectation at all about how an extension works on the back end (i.e., what steps it takes to analyze a URL after scanning it). But regardless, these allegations merely concern what AOSP does with a URL *after* "intercepting" it; they hardly show the software can function without intercepting the URL in the first place. As Plaintiffs' own allegations tacitly acknowledge, the "interception" of the URL occurs when AOSP reads it from the browser; any transmission of a copy of the data to Avast servers is a distinct act that necessarily follows separately. *See id.* ¶ 71 ("AOSP is designed to *intercept* all communications from a main channel (the web browser) between the user and the websites the user visits, *and copy* those communications to an Avast server." (emphasis added)). Because any reasonable user would understand that Avast's software must read the URLs of the pages the user visits in order to work, the user necessarily made Avast a party to those communications. *See* Order at 7; *Zak*, 2019 WL 1437909, at *3-4 (dismissing wiretapping claims where the app in question would "transmit" the intercepted data off the device, because initial interception on the user's device was not unlawful); *see also id.* at *3 n.5 (rejecting argument that defendant's *app* was an intended party to the communication, but that the defendant itself was not, finding nothing "to support such a distinction").

By the same token, Plaintiffs' wiretapping claims fail under the consent exception because a reasonable user would necessarily understand that by voluntarily installing AOSP, they were consenting to it reading their browsing data. *See* 18 U.S.C. § 2511(2)(c); *Javier*, 2021 WL 940319, at *2; MTD I at 11-12. Not only would Plaintiffs have implicitly consented to this collection, but, as Defendants previously explained, Plaintiffs would have *expressly* consented, because in order to download AOSP users must accept the Privacy Prompt, which categorically warns that AOSP can "[r]ead and change all your data on all websites." Rubin Decl., Exs. A at 1, B at 1. The Privacy Prompt is judicially noticeable, *see* Request for Judicial Notice, and even though Defendants raised

the prompt in their first motion to dismiss, Plaintiffs continue to ignore it in the FAC.

If necessary, Defendants are prepared to offer a declaration to show that the Privacy Prompt existed throughout the relevant time period and immediately move for summary judgment on this issue.[2] But there is no need for that, because the FAC fails to sufficiently *allege* lack of consent in the first place; its silence about the Privacy Prompt only highlights the deficiency. Plaintiffs do not *deny* that they had to consent to such a prompt before downloading AOSP, and they make *no* specific factual allegations about how they downloaded the software or why the process was purportedly deficient. They merely make the bald allegation that their information was collected "without adequate notice," FAC ¶¶ 14-15, 70—which is not enough. *See New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1263 (D.N.M. 2020) (dismissing privacy claims because plaintiffs' "conclusory" allegation of "inadequate notice" was insufficient under *Twombly*). Particularly given the judicially noticeable evidence that users are advised that AOSP can read their browsing data—as Plaintiffs specifically knew from the prior round of briefing when they were drafting the FAC—their repeated conclusory allegations of lack of notice should not be credited. *See Park v. Webloyalty.com, Inc.*, 2014 WL 4829465, at *5 (S.D. Cal. Sept. 29, 2014), *aff'd*, 685 F. App'x 589 (9th Cir. 2017) (finding, on motion to dismiss, that exhibit of a signup page revealed "how spotty and conclusory" plaintiff's allegations were because they failed to "foreclose th[e] possibility" that plaintiff had seen warnings that would defeat his claim).

**The New Cookie Allegations Are Irrelevant.** The FAC also alleges that AOSP somehow uses "cookies" to "transmit the intercepted, collected, and stored data on its servers to numerous third-party advertising partners." FAC ¶¶ 80-84. Those allegations about transmission have no bearing on Plaintiffs' wiretapping claims because, again, to the extent they are intelligible, they could only relate to downstream use of the information and have nothing to do with *interception*. *See supra* at 6-8; *see also* Order at 7 (focusing only on interception); *Zak*, 2019 WL 1437909, at *4 ("To the extent Zak's real issue is with the fact that Bose allegedly collects and discloses the

---

[2] While not necessary for the Court to consider, the longstanding use of the Privacy Prompt is also evident from public sources. See *How to Install Avast Extension to Google Chrome*, YouTube (Apr. 2, 2018), https://www.youtube.com/watch?v=t8aMmJzoTgk&t=30s (demonstrating installation of AOSP and showing the Privacy Prompt at the 30-second mark).

Media Information that it legitimately receives, this complaint falls outside the purview of the Wiretap Act."). More importantly, Plaintiffs' cookie allegations are far too convoluted to afford Defendants fair notice of the conduct Plaintiffs purport to challenge and should not be credited at all. *See infra* at 15-17.

**The New PHI and Video Watching Allegations Are Irrelevant.** Finally, a large portion of Plaintiffs' new allegations merely specify examples of certain *types* of data AOSP is capable of reading, namely, URLs that allegedly divulge medical information and video-viewing information. *See* FAC ¶¶ 85-103. Those allegations are irrelevant to the deficiencies identified in the initial complaint, as they do nothing to rebut Judge Tigar's conclusion that Plaintiffs made AOSP a party to their browsing communications *generally*. Plaintiffs already alleged in their original complaint that AOSP intercepts *all* browsing data, including sensitive information. *See* Compl., Dkt. 1 ¶¶ 37, 161. Regardless of what examples Plaintiffs might conjure up of sensitive information someone's browsing data may contain, the point remains that they installed AOSP for the very purpose of monitoring their browsing to alert them of unsafe sites, and in doing so made Avast a party to their browsing activity, whatever websites they may choose to visit. *See* MTD I at 7. For that reason, Judge Tigar correctly held that no unlawful interception occurred.

### 2. Plaintiffs' CIPA Section 632(a) Claim Still Fails for Additional Reasons

Plaintiffs' CIPA Section 632(a) claim also fails for additional reasons, which Judge Tigar had no occasion to reach in the first dismissal order. The provision prohibits "eavesdropping" and thus applies only to capturing conversations between human parties. MTD I at 13; MTD I Reply at 8; *see People v. Drennan*, 84 Cal. App. 4th 1349, 1357 (2000) (explaining that "'[e]avesdropping' is notably a term that refers to the surreptitious overhearing of conversations"). Indeed, "[a] plain reading of the text itself makes clear that the statute only applies to communications transmitted by telephone, not internet." *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023). Plaintiffs have not alleged any conversation they had with other human beings that was somehow recorded by AOSP.

Even if their browsing communications were within Section 632(a)'s scope, Plaintiffs cannot establish the communications were "confidential," as they had no reason to expect that the addresses of the webpages they visited were not being recorded by someone in some fashion. Indeed, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632," and "'have developed a presumption' that such communications do not give rise to the requisite expectation." *Id.* (citations omitted); MTD I at 9; Defs.' Reply in Supp. of Mot. to Dismiss ("MTD I Reply"), Dkt. 37, at 9. That general rule is especially apposite here, where Plaintiffs voluntarily installed AOSP to analyze their browsing activity.

### B. Plaintiffs' Privacy Claims Should Be Dismissed in Their Entirety

Plaintiffs' privacy claims—brought under common law and the California Constitution—should also be dismissed, in all respects. "A claim for intrusion upon seclusion under California common law requires (1) intrusion into a private place, conversation, or matter to which Plaintiffs have a reasonable expectation of privacy (2) in a manner highly offensive to a reasonable person." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Similarly, "[t]o state a claim for invasion of privacy under the California Constitution, Plaintiffs must show (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) the intrusion is so serious as to amount to an egregious breach of the social norms." *Id*. The two claims are essentially equivalent. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (noting "[t]he right to privacy in the California Constitution sets standards similar to the common law tort of intrusion").

Judge Tigar properly dismissed Plaintiffs' privacy claims based on Defendants' accessing of their data, because those claims merely reformulate their failed wiretapping claims. Order at 8. The same goes here. While Judge Tigar allowed Plaintiffs' privacy claims to go forward to the extent they are based on the alleged non-consensual *storage* of their data, this theory was not previously briefed and does not provide a viable basis for Plaintiffs' privacy claims. And to the extent Plaintiffs now allege that AOSP somehow uses "cookies" to "transmit" browsing data to third parties, these allegations too fail to provide a viable basis for their privacy claims.

### 1. Plaintiffs' Privacy Claims Based on Interception Still Fail

Judge Tigar correctly dismissed Plaintiffs' privacy claim premised on "Defendants' access to Plaintiffs' browsing information" for the same reason that he dismissed their wiretapping claims—Plaintiffs "do not plausibly allege that a person who downloaded the extensions would have reasonably expected that their browsing information would not be shared with Defendants." Order at 8. As explained above, Plaintiffs' new allegations fail to show any unlawful interception, and their privacy claims based on the same conduct thus likewise fail. When "data collection is within users' common-sense expectation," as here, "there is no reasonable expectation of privacy." *Hammerling*, 615 F. Supp. at 1089.

### 2. Plaintiffs' Privacy Claims Based on Storage Should Also Be Dismissed

To the extent Plaintiffs' privacy claims are based on Defendants' mere storage of information, those claims should also be dismissed. Plaintiffs' original complaint—and thus the parties' briefing on the first motion to dismiss—focused on the allegedly unlawful *interception* of data, and tied allegations about downstream collection, storage, and use of the information to that initial act. Judge Tigar properly rejected Plaintiffs' interception theory, but allowed the privacy claims to go forward to the extent they were based on storage of information alone. Order at 8-9. Judge Tigar based this conclusion on the Ninth Circuit's *Facebook Tracking* decision. *See id*.

*Facebook Tracking*, however, did not involve storage of *lawfully obtained* information, but rather involved storage of information alleged to have been *surreptitiously and unlawfully intercepted*. *See* 956 F.3d at 603 (emphasizing that privacy inquiry turned on "the manner [the information] was collected," and affording great weight to fact that information was collected without notice to users when they were logged out of Facebook); *id.* at 606 (focusing on alleged "tracking and collection practices," rather than retention or storage practices). *Facebook Tracking* does not hold that a privacy claim can be adequately stated based solely on storage of information that was lawfully obtained. To the contrary, courts—including the Supreme Court and the Ninth Circuit—have held that mere retention of lawfully obtained data does not inflict a cognizable Article III injury, much less state a claim for invasion of privacy.

**Standing.** In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court considered whether "the mere existence" (i.e., storage) of misleading information in a consumer's credit file could constitute a concrete injury, and held that it did not. The Court explained that the "retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts." *Id.* at 2209 (quoting *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016)). The Ninth Circuit recently reiterated that rule in *Phillips v. U.S. Customs & Border Protection*, 74 F.4th 986 (9th Cir. 2023), holding that "the retention of records alone does not constitute a concrete injury." *Id.* at 992-93. Indeed, the Court went further, holding that even "retention of *unlawfully* obtained or created information" does not constitute a concrete injury absent separate harm. *Id.* (emphasis added). Other circuits have reached similar conclusions. *See Braitberg*, 836 F.3d at 930 (finding no standing where plaintiffs alleged a violation of statutory data deletion requirements, because "[a]lthough there is a common law tradition of lawsuits for invasion of privacy, the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts"); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017) (finding no standing where plaintiff's "only allegation is that the retention of the information, on its own, has somehow violated a privacy right or entailed a financial loss").

Accordingly, Plaintiffs do not have standing to bring any privacy claim based merely on allegations that their data was stored longer than they anticipated. *See Lugo v. Amazon.com*, 2023 WL 6241200, at *3 (W.D. Wash. Sept. 26, 2023) (finding that plaintiffs lacked standing to sue Amazon for retaining "sensitive information" because the retention of "voluntarily provided" personal information could not establish an injury in fact); *Greenley v. Avis Budget Grp. Inc.*, 2020 WL 5230471, at *7 (S.D. Cal. Sept. 2, 2020) (finding that plaintiff lacked standing based on failure to delete sensitive information collected by rental vehicles, because the retention of "lawfully obtained confidential information" does not by itself constitute an invasion of privacy).

**Failure to State a Claim.** For similar reasons, Plaintiffs' privacy claims fail on their merits to the extent they are based on the mere retention of data, as Plaintiffs cannot establish the requisite "intrusion" required for such claims. "To show intrusion, a plaintiff must have 'an objectively

reasonable expectation of seclusion or solitude in the place, conversation or data source,' and the defendant must have 'penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff.'" *Cabezas v. Craigslist, Inc.*, 2023 WL 2484268, at *4 (N.D. Cal. Feb. 10, 2023) (quoting *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014)). In other words, a defendant must intrude into a private domain to render its conduct actionable—and in the context of personal data, that intrusion occurs when the data is improperly *accessed*. *See, e.g.*, *Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *8-9 (N.D. Ill. Mar. 3, 2023) (dismissing intrusion upon seclusion claim where plaintiff alleged that software disclosed private medical information, because "the core of this tort is the offensive prying into the private domain of another" and there was no "unauthorized intrusion" alleged (citation omitted)); *see generally* Restatement (Second) of Torts § 652B(b) (1977) (explaining that it is "[t]he intrusion itself" that "makes a defendant subject to liability," and providing as examples "oversee[ing] or overhear[ing] plaintiff's private affairs," such as by looking through a window, tapping a phone line, or opening mail).

Here, Defendants lawfully obtained the information at issue through a browser extension that Plaintiffs chose to install in order to analyze that information. Defendants' subsequent retention of that information does not somehow constitute an "intrusion" of privacy—as there was no private space that was penetrated to obtain the data. *Compare Greenley*, 2020 WL 5230471, at *7 (finding no invasion of privacy where defendant allegedly failed to delete sensitive information lawfully collected from rental vehicles upon return), *with Facebook Tracking*, 956 F.3d at 606 (finding claim adequately stated where "tracking and collection practices" invaded privacy).

Additionally, Plaintiffs' privacy claims require facts sufficient to show a reasonable expectation of privacy, as well as highly offensive conduct. Plaintiffs cannot satisfy those requirements, as they had no reasonable expectation that Avast would not retain data received through AOSP. Indeed, it has long been settled that one generally has no reasonable expectation of privacy in data knowingly provided to a third party. *See, e.g.*, *United States v. Miller*, 425 U.S. 435, 442-43 (1976) (no reasonable expectation of privacy in bank records collected by one's bank); *Smith v. Maryland*, 442 U.S. 735, 742-44 (1979) (no reasonable expectation of privacy in phone

records collected by one's phone service provider). *A fortiori*, there is no legal support for any reasonable expectation that such a third party cannot *store* such data or must delete it after a certain period of time. A bank customer, for example, cannot sue the bank for "invasion of privacy" based on its retention of the customer's payment records, nor can a cellphone user sue the cell service provider for "invasion of privacy" based on its retention of the user's call records—regardless of whether these records reflect details of the individual's private life.

Any contrary rule would convert common-law privacy causes of action into free-floating—and unbounded—data-retention regulations. It would also usurp the role of the legislature, which is better positioned to decide how to regulate retention of data—and whether to recognize any private right of action in relation to the issue. After all, the legislature "has significant institutional advantages over the courts in trying to regulate privacy in new technologies." *United States v. Tuggle*, 4 F.4th 505, 528 (7th Cir. 2021) (citation omitted). And the California legislature has *already* exercised its judgment on that question in the California Consumer Privacy Act, which includes comprehensive regulations regarding retention of certain consumer personal information, *see* Cal. Civ. Code §§ 1798.100(c), 1798.105—but expressly does *not* authorize a private cause of action for violation of these regulations, *see id.* § 1798.150(c) (authorizing private cause of action only for certain types data breaches and not for any other aspect of the statute). To allow Plaintiffs to proceed here on a data-retention theory would amount to judicial enactment of precisely the private cause of action that the legislature saw fit not to create. *Cf. Apple Inc. v. Superior Ct.*, 56 Cal. 4th 128, 147 (2013) (enactment of privacy statute "shows that the Legislature knows how to make clear that it is regulating online privacy and that it does so by carefully balancing concerns unique to online commerce").

### 3. Plaintiffs' Nonsensical Cookie Allegations Cannot Support Their Privacy Claims

Finally, Plaintiffs attempt to bolster their privacy claims by including various allegations related to "cookies," in an attempt to claim that Avast shares their browsing data with third parties. *See* FAC ¶¶ 80-82, 97-98. But Plaintiffs' allegations make little sense on their face, and they are insufficient to state a claim in any event.

First, Plaintiffs' "cookie" allegations fail to plainly and plausibly allege any facts supporting the notion that Avast disseminated information to third parties. Plaintiffs claim that "AOSP uses approximately forty-five third-party advertising cookies designed to transmit the intercepted, collected, and stored data on its servers to numerous third-party advertising partners." FAC ¶ 80. As an "example," Plaintiffs allege as follows:

> AOSP also intercepts, collects, and stores the unique Device ID generated by the Adalyser Cookie. This identifier allows Gen Digital and Avast to link the private data—including but not limited to PHI—intercepted and collected from Kaiser Website users' and Kaiser Members' communications with the Kaiser Website—including but not limited to the above communications concerning medications, medical conditions, immunizations, and allergies—across multiple sessions to the specific Kaiser Website user.

*Id.* ¶¶ 97-98. No further explanation is provided.

Quite simply, it is unclear what in the world Plaintiffs are talking about. Plaintiffs fail to provide any factual allegations explaining how AOSP, a browser extension, supposedly uses "cookies" to "transmit" data "stored . . . on its servers" to third-party advertisers. *Id.* ¶ 80. As Plaintiffs indicate, cookies are pieces of data installed by websites on a user's browser that contain a unique identifier. *See id*. ¶ 97. If Avast did transmit user browsing data allegedly collected on its servers to "third-party advertising partners," *id.*—and to be clear, it does not—it could simply transmit the data; the FAC fails to explain how or why it would use "cookies" to do so.[3] Indeed, Plaintiffs' explanatory "example" does not even appear to involve using "cookies" to "transmit" data; instead Plaintiffs allege that Avast somehow "intercepts" the identifier contained in a third-party cookie, and somehow uses it to "link" a user's activity on a website "across multiple sessions." *Id*. ¶¶ 97-98. But if Avast did seek to "link" a user's activity on a website across multiple sessions, it would not need a third-party cookie to do so; it could simply use an identifier assigned by AOSP. None of this makes any sense.

---

[3] Plaintiffs do not identify the source of their allegation that AOSP uses "approximately forty-five third-party advertising cookies" to "transmit" data, but it is possible they are referring to the roughly 45 cookies listed in Avast's Cookie Policy. *See Cookies Policy*, Avast, https://www.avast.com/en-us/cookies-policy#pc. However, as the policy makes clear, these are cookies used on Avast's *website*; they have nothing to do with the functioning of the AOSP extension. The fact that Defendants are left to guess at the source of this allegation underscores that the "cookie" allegations fail to provide fair notice of the conduct at issue.

Plaintiffs' "cookie" allegations thus stumble at the Rule 8 threshold because they fail to provide Defendants with fair notice of what conduct Plaintiffs are attempting to challenge: they cannot merely mumble something about "cookies" and call it a day. Plaintiffs must allege sufficient facts with enough clarity to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (rejecting allegations where plaintiffs did not articulate "with sufficient clarity" when and how data collection occurred, thus failing to "provide fair notice to Defendants"); *cf. Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Shah v. Cnty. of Los Angeles*, 2010 WL 1233562, at *6 (C.D. Cal. Mar. 26, 2010) (agreeing with defendant's argument that plaintiff "has not met Rule 8 pleading requirements because he 'offers nothing but vague references to violations of civil rights while interspersing them [with] catch phrases and buzz words'").

In any event, even if Plaintiffs had plausibly alleged that Avast *somehow* used "cookies" to share user browsing data with third parties, their privacy claims would still fail because they would still not involve any "intrusion" into a private domain, as their privacy claims require. *See supra* at 13-15. Again, Plaintiffs fail to adequately allege that their browsing data was improperly collected to begin with; and any alleged downstream use of properly collected data cannot be considered an "intrusion," as it would not involve any penetration of a private space to obtain their data. As with data retention, the common-law tort of intrusion upon seclusion, or its parallel in the California Constitution, does not provide some kind of *tabula rasa* on which courts are free to write new rules regulating data-sharing with advertising partners. That, too, is an issue properly left to the legislature. *Cf.* California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100-199.90 (regulating selling or sharing of consumer personal information, *see id.* §§ 1798.100(c)&(d), 1798.115-21, 1798.135, but declining to provide a private cause of action as to such restrictions, *see id.* § 1798.150(c)).

### C. Plaintiffs' UCL Claim Still Fails

Judge Tigar dismissed Plaintiffs' UCL claim because Plaintiffs failed to adequately allege "lost money or property"—i.e., an economic injury—sufficient for statutory standing. *See* Order at 11-12. In particular, Judge Tigar rejected Plaintiffs' diminution-in-value theory, explaining that Plaintiffs "d[id] not allege that 'they ever attempted or intended to participate' in the market for the information allegedly collected and stored by Defendants, 'or otherwise to derive economic value from' that information." Order at 12 (quoting *Moore*, 83 Cal. App. 5th at 538). Plaintiffs add various allegations in an attempt to remedy this problem, but none suffice.

#### 1. Plaintiffs Still Fail to Adequately Allege Economic Injury

**Diminution in Value.** To show diminution in the value of their data, plaintiffs would need to plausibly allege *both* that there is a market for their data and that their ability to participate in that market has been impaired. *See Moore*, 83 Cal. App. at 538; *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1054 & n.16 (N.D. Cal. 2022). Plaintiffs' allegations fall well short of this standard: they still do not allege they ever attempted or intended to sell their browsing data in any market. In fact, Plaintiffs repeatedly characterize their browsing data as highly sensitive information that they wished to keep "completely secure and private." FAC ¶¶ 144, 151; *see also, e.g.*, *id.* ¶¶ 1, 222. It is therefore implausible that Plaintiffs "could *and* would participate in a legitimate market" for their information. *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *17 (N.D. Cal. Sept. 7, 2023) (dismissing UCL claim for lack of economic injury where plaintiffs advanced "inconsistent allegations" regarding their intention to participate in a market for sensitive medical information).

Plaintiffs also fail to plausibly allege that anyone would "refuse to enter into a transaction with them, or insist on less favorable terms" as a result of Defendants' alleged conduct. *Moore*, 83 Cal. App. 5th at 538. Plaintiffs say they have exchanged "information" about their "consumer preferences" for value through, *e.g.*, consumer surveys and rewards programs in order to receive discounts or "the chance to win cash prizes." FAC ¶ 153; *id.* ¶¶ 136, 140, 159. But they do not allege any facts suggesting they can no longer do so due to Defendants' conduct; nor is it plausible that such surveys and discount offers would somehow become unavailable simply because

Defendants have supposedly collected certain data about them.[4] Indeed, Plaintiffs fail even to specify when the alleged participation in consumer surveys or rewards programs occurred. *See id.* To the extent those transactions took place during or after the challenged conduct, they confirm that Plaintiffs *can* still participate in the alleged market for their data.

**Other Allegations Regarding Economic Harm.** Plaintiffs attempt to assert several additional economic injuries, but each fails. *First*, Plaintiffs assert that the value of "keeping their private data private"—i.e., their privacy interest—suffices to show economic harm. FAC ¶ 120. But courts have squarely held that a privacy injury does not constitute "lost money or property" for UCL standing. *See, e.g., Swarts*, 2023 WL 5615453, at *9 (rejecting argument that loss of privacy from "loss of personal information" can confer UCL standing); *Archer v. United Rentals, Inc*., 195 Cal. App. 4th 807, 816, (2011), *as modified on denial of reh'g* (June 13, 2011) (holding that alleged "privacy violation" from "collection and recordation of [plaintiffs'] personal identification information" did not constitute lost money or property for UCL standing).

*Second*, Plaintiffs' benefit-of-the-bargain allegations largely repackage their other theories—asserting, for example, that they lost "control" of data with "marketable value," FAC ¶ 123, and may have to "accept[] less privacy" or stop using Avast's free products, *id.* ¶ 124. But Plaintiffs cannot plead any plausible loss of the benefit of a "bargain" from having used a *free* browser extension. *See, e.g.*, *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (rejecting benefit-of-the-bargain theory for purposes of UCL claim where plaintiffs did not allege they "paid" defendant "any money for use of its service"); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 (N.D. Cal. 2021) (same); *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *7 (N.D. Cal. Dec. 19, 2019) (same). Moreover, Plaintiffs do not (and cannot) identify any facts suggesting that Avast promised that the browser extension would *not* access browsing data, or that Avast would provide "value" for Plaintiffs' data beyond the product itself—which also precludes any plausible benefit-of-the-bargain theory. *See Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *5 (N.D. Cal. July 28, 2021) (rejecting benefit-of-the-bargain theory where plaintiff failed to plausibly allege a

---

[4] Plaintiffs suggest that the "value of [their] participation" in consumer surveys and rewards programs has decreased as a result of Defendants' conduct, *see, e.g.*, FAC ¶ 153, but at most, that allegation would show loss of value *to a third party*, not to Plaintiffs.

reasonable expectation that "a portion of [defendant's] sales revenue would go to maintaining data security infrastructure"); *Moore*, 83 Cal. App. 5th at 539-40 (rejecting injury theory where plaintiffs "had no reason to expect that they would be compensated for the 'value' of their personal information" (citing *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005)).

*Third*, Plaintiffs' single reference to unspecified out-of-pocket costs and an unspecified inability to "mitigate" unspecified harms, FAC ¶¶ 123, 125, also falls far short of plausibly alleging economic harm as required under the UCL. *See, e.g.*, *Ables v. Brooks Bros. Grp.*, 2018 WL 8806667, at *4 (C.D. Cal. June 7, 2018) (rejecting as insufficient allegations of "unspecified expenses to mitigate, in an unspecified manner, unspecified effects" of a data breach).

**2. Plaintiffs Cannot State a UCL Claim in Any Event**

In addition to their failure to allege statutory standing, Plaintiffs cannot state a UCL claim under either the "unlawful" or "unfair" prong, *see* MTD I at 24, and Plaintiffs' "unlawful" claim is derivative of Plaintiffs' other insufficiently stated claims, FAC ¶ 273. In particular, Plaintiffs' "unfair" claim relies on the premise that they "would have no reason to know that [browsing] information was being intercepted," *id.* ¶ 275, which contravenes common sense and Judge Tigar's previous decision, as explained above. Moreover, Plaintiffs' bare recitation of the tests for UCL unfairness, without more, is insufficient to state a claim. *See, e.g.*, *Price v. Apple, Inc.*, 2022 WL 1032472, at *4-5 (N.D. Cal. Apr. 6, 2022) (dismissing UCL claim where the "allegations simply parrot[ed] the legal standard for 'unfair business practice' under both balancing tests" and plaintiff failed to plead enough facts to support inference of wrongful conduct); *see also* MTD I at 24-25.

**D. Plaintiffs' Larceny Claim Still Fails**

Plaintiffs again assert a claim for treble damages under California Penal Code Section 496, alleging that Defendants received "property that has been stolen" or "obtained in any manner constituting theft." Cal. Penal Code §§ 496(a), (c); *id.* § 484; *see* FAC ¶¶ 253-270. Judge Tigar correctly held that, because Plaintiffs failed to allege that they "lost money or property," their larceny claim, which requires loss of property, failed for the same reason as their UCL claim. *See* Order at 12-13. The Court should reach the same holding here: as in the original complaint,

"Plaintiffs have not sufficiently alleged that they lost any property for purposes of UCL standing." *Id.*; *supra* at 18-19. Indeed, Plaintiffs' "personal information does not constitute property" in the first place. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028-30 (N.D. Cal. 2012); MTD I at 18-19.

Plaintiffs' larceny claim also fails for additional reasons. The crime of larceny is committed when someone "(1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away." *People v. Whitmer*, 230 Cal. App. 4th 906, 923 (2014) (citation omitted). But Plaintiffs do not explain how their browsing history was carried away. The bare statement that Defendants "move[d]" their data, FAC ¶ 256, is wholly conclusory and does not show that Plaintiffs lost possession of their data. The same failing dooms any theory of larceny by trick, which similarly requires "an asportation of the thing taken," *Whitmer*, 230 Cal. App. at 923, as well as any theory of theft by false pretenses, which requires a "transfer of possession," *People v. Williams*, 57 Cal. 4th 776, 788 (2013); *see* MTD I at 19-20; MTD I Reply at 12-13.

Nor can Plaintiffs establish the fraudulent elements of theft by false pretenses or theft by trick. As Defendants previously explained, both of those theories sound in fraud and must meet Rule 9(b)'s heightened pleading standards. *See ELT Sight, Inc. v. EyeLight, Inc.*, 2021 WL 6618552, at *7 (C.D. Cal. Oct. 22, 2021); *Williams*, 57 Cal. 4th at 783 (discussing larceny by trick's "fraudulent nature"); MTD I at 20-22; MTD I Reply at 13. Theft by false pretenses requires that "(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation." *Williams*, 57 Cal. 4th at 788 (citation omitted). And theft by trick similarly requires a showing of fraud or misrepresentation. *See id.* at 784 (explaining that in larceny by trick, "the fraud vitiates the transaction" (citation omitted)). But Plaintiffs do not allege any factual misrepresentations. They identify two statements, one about winding down Jumpshot and the other acknowledging that the Jumpshot conduct "raised . . . questions,"

FAC ¶¶ 260, 263, but never explain why either one was false.[5] Nor do Plaintiffs allege that they relied on those representations in transferring data to Avast. *See id.* ¶¶ 253-270; MTD I at 20-21; *Doe*, 2023 WL 5837443, at *17 (dismissing larceny claim based on false pretenses theory because plaintiffs did not identify specific representations that induced them to provide their information).

Finally, all of the above larceny theories fail because Plaintiffs cannot show that Defendants had any intent to steal. "To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond 'mere proof of nonperformance or actual falsity.'" *Siry Inv., L.P. v. Farkhondephour*, 13 Cal. 5th 333, 361-62 (2022) (citation omitted); *see also id.* at 368 (Groban, J., concurring) ("[T]o establish a theft, a plaintiff must show an intent to steal."). Plaintiffs appear to allege that criminal intent can be gleaned from: (1) Avast's stating that it would wind down Jumpshot but "never committing to delete the personal data [it] intercepted," and (2) a statement from Avast's CEO that the Jumpshot conduct "raised . . . questions." FAC ¶¶ 260, 263. These allegations fall far short of demonstrating an intent to "steal" data. As Defendants previously explained, Plaintiffs' larceny theory would turn every false advertising or privacy dispute into a "theft" claim carrying treble damages—and potential criminal prosecution. *See* MTD I at 22; *Siry*, 13 Cal. 5th at 368-70 (Groban, J., concurring) (urging the need to enforce "important limitations on the scope of section 496").

**E. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed in Its Entirety**

As Judge Tigar held, Plaintiffs' unjust enrichment claim premised on Defendants' access to Plaintiffs' data fails for the same reason as Plaintiffs' wiretapping claims. Order at 12. Nothing in the FAC alters that conclusion. *See supra* at 5-11.

Plaintiffs' claim should also be dismissed to the extent it is based on *storage* of user data. While Judge Tigar (without the benefit of briefing by the parties) declined to dismiss that theory, Order at 12, the theory is untenable. Defendants' storage of lawfully obtained data was not the result of "mistake, fraud, coercion, or request," and there was thus no "injustice." *Russell v.*

---

[5] As Judge Tigar recognized, Avast's statement about its plan to wind down Jumpshot "says nothing about changing the way in which the browser extensions operate, nor do Plaintiffs allege that Defendants did not, in fact, stop providing data to Jumpshot and wind down Jumpshot's operations." Order at 5 n.1.

*Walmart, Inc.*, 2023 WL 4341460, at *2 (N.D. Cal. July 5, 2023) (citing *Regents of Univ. of Cal. v. LTI Flexible Prods., Inc.*, 2021 WL 4133869, at *10 (N.D. Cal. Sept. 10, 2021)) (rejecting claim that Walmart was unjustly enriched through self-checkouts by plaintiffs' uncompensated labor).

Plaintiffs identify no misrepresentation with respect to Defendants' storage practices.[6] And Plaintiffs do not identify any other source of injustice in retaining that information. Retaining lawfully collected information for basic business purposes like product improvement is not unjust. *See Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Assn.*, 205 Cal. App. 3d 1415, 1422 (1988) (rejecting unjust enrichment claim where certain statements were not fraudulent and explaining that a claim cannot lie where, even if "there is enrichment, it is not unjust"). Plaintiffs also cannot show that Defendants' alleged enrichment was "at the[ir] expense"—*i.e.*, "in violation of [their] legally protected rights"—because Plaintiffs did not have any standalone right for their lawfully collected data not to be stored, nor did they experience any other loss in the course of using Defendants' free product. *See* Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011); *cf. Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 969-70 (N.D. Cal. 2010) (holding it would "not be equitable, logical, or legally permissible" to award plaintiffs "the full replacement value of property they never lost or gave away").

### F. The Statute of Limitations Still Bars the Jumpshot Allegations and Many of Plaintiff Lau and Karwowski's Claims

As Judge Tigar correctly recognized, Plaintiffs' "non-statutory privacy and ECPA claims are subject to a two-year statute of limitations, and their CIPA claims are subject to a one-year statute of limitations." Order at 4 (citing cases). Accordingly, because the original complaint was filed on December 19, 2022, any conduct prior to December 19, 2020 falls outside the limitations period for these claims.

As Defendants explained in their first motion to dismiss, that precludes Plaintiffs from bringing any claims related to the alleged Jumpshot conduct, because Jumpshot was shuttered in

---

[6] Nor can Plaintiffs identify any such misrepresentation, as Avast's privacy policy transparently disclosed throughout the limitations period that AOSP processes the URLs of the webpages users visit in order "to check if URLs and the preceding referral domains . . . are malicious or not" and "to identify its source for threat analysis," and that it could store such data for up to 24 months for this purpose. *See Avast User Products Policy*, Avast (Feb. 2020), available at https://web.archive.org/web/20200216050341/https:/www.avast.com/en-us/products-policy.

January 2020, and Plaintiffs again concede that the conduct was publicly known by late 2019 or early 2020. *See* MTD I at 6-7; FAC ¶¶ 53-57, 173-74.[7] Further, as Judge Tigar previously held, the applicable statutes of limitation also bar Plaintiff Lau's CIPA claim, and Plaintiff Karwowski's ECPA, CIPA, and non-statutory privacy claims. Order at 4-5.

Plaintiffs attempt to bolster their tolling allegations under the discovery and fraudulent concealment doctrines, but those attempts simply confirm the deficiencies Judge Tigar identified in the original complaint. Plaintiffs' allegations still impermissibly rely on "the same conduct on which [they] base[d] their substantive claims." Order at 4-5 (citing *De Los Reyes v. Ruchman & Assocs., Inc.*, 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014)); *compare, e.g.*, FAC ¶ 84 (alleging in support of wiretap claim that AOSP is "eavesdropping on the contents of their search and browsing histories, and is duplicating and communicating such histories to Defendants"), *with* FAC ¶ 176 (alleging that marketing statement about AOSP was fraudulent concealment for purposes of tolling, because "AOSP itself is an insidious 'web spy' that is illicitly intercepting" user data). And Plaintiffs' citation to statements regarding the winddown of Jumpshot, FAC ¶¶ 174-175, again are of no avail, because Plaintiffs make no allegations "that Defendants did not, in fact, stop providing data to Jumpshot." Order at 5 n.1.[8] Further, Plaintiffs' allegations still fail to establish that they pursued their claims with reasonable diligence, because they still do not allege how "the alleged fraud was discovered." *Id.* at 5.

### G. Further Amendment Would Be Futile

Plaintiffs cannot overcome the fundamental flaw in their case—they challenge the necessary and basic functioning of a browser extension they voluntarily installed on their own browsers. Plaintiffs' new allegations merely "add further detail"—they do not "cure the pleading deficiencies" that doom their claims. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041-42 (9th Cir. 2011). Leave to amend would therefore be futile and should be denied. *See, e.g.*,

---

[7] In any event, as Defendants previously explained, the Jumpshot allegations regarding sale of information are irrelevant to the wiretapping claims because they have nothing to do with *interception* of the data. *See* MTD I at 7-8.

[8] Plaintiffs' "cookie" allegations do not change the analysis, not only because they have no apparent relation to Jumpshot, but also because "a plaintiff must plead allegations of fraudulent concealment with particularity," *id.* at 4 (citation omitted), whereas the "cookie" allegations are unintelligible.

*In re Tracht Gut, LLC*, 836 F.3d 1146, 1155 (9th Cir. 2016) ("Leave to amend was properly denied because [plaintiff's] proposed amendment would have been futile."); *Cervantes*, 656 F.3d at 1041-42.

## V. CONCLUSION

Defendants respectfully request dismissal of the First Amended Complaint with prejudice.

Dated: December 4, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Michael H. Rubin*
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*