Ekwan E. Rhow - State Bar No. 174604
*erhow@birdmarella.com*
Marc E. Masters - State Bar No. 208375
*mmasters@birdmarella.com*
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter - State Bar No. 234137
*jrotter@glancylaw.com*
David J. Stone - State Bar No. 208961
*dstone@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
Email: info@glancylaw.com

Korey A. Nelson (admitted *pro hac*)
*knelson@burnscharest.com*
Amanda K. Klevorn (admitted *pro hac*)
*aklevorn@burnscharest.com*
Claire E. Bosarge (admitted *pro hac*)
*cbosarge@burnscharest.com*
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

GRACE LAU, CHRISTOPHER KARWOWSKI, MELODY KLEIN, MICHAEL MCBRIDE, and AIMEN HALIM, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

CASE NO. 3:22-cv-08981-RFL

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

GEN DIGITAL INC. a corporation, and JUMPSHOT INC., a corporation,

Defendants.

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Relevant Facts ..... 2

B. Procedural History ..... 4

C. The First Amended Complaint ("FAC") ..... 4

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. Plaintiffs Sufficiently Allege Wiretapping Claims ..... 5

1. The FAC alleges new facts sufficient to defeat the party exception ..... 5

2. Defendants' consent defense based on the "privacy prompt" fails ..... 8

B. Plaintiffs Have Standing To Pursue And Sufficiently Allege Their Privacy And Intrusion Upon Seclusion Claims ..... 10

1. Plaintiffs have sufficiently alleged a concrete injury ..... 10

2. Plaintiffs sufficiently allege their privacy and intrusion claims ..... 11

3. Plaintiffs sufficiently allege a reasonable expectation of privacy ..... 12

a. Amount of data collected ..... 12

b. Sensitivity of the data collected ..... 13

c. Nature of Defendants' data collection practices ..... 14

d. Defendants' representations about data collection ..... 16

4. Plaintiffs sufficiently allege highly offensive conduct ..... 17

C. Plaintiffs Sufficiently Allege Fraudulent Concealment And Delayed Discovery ..... 17

D. Plaintiffs Sufficiently Allege Violation Of California Penal Code § 496(a) ..... 19

1. Plaintiffs' personal data constitutes property under § 496 ..... 19

2. Plaintiffs sufficiently allege asportation and intent ..... 20

3. Plaintiffs' larceny claim does not sound in fraud and is not subject to Rule 9(b)'s heightened pleading requirements ..... 22

4. Defendants' policy arguments regarding the scope of § 496 fail ..... 22

E. Plaintiffs Sufficiently Allege A Claim Under California's UCL ............................23

F. Plaintiffs Sufficiently Allege A Claim For Unjust Enrichment. ............................24

V. CONCLUSION ............................................................................................25

ATTESTATION ..............................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) .......... 20

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 25

*Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016) .......... 11

*Broidy Cap. Mgmt. LLC v. Muzin*, 1:19-cv-0150, 2020 WL 1536350 (D.D.C. Mar. 31, 2020) .......... 20

*Brown v. Google, LLC*, 4:20-cv-3664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......... 10, 17

*Calhoun v. Google, LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... *passim*

*ELT Sight, Inc. v. EyeLight, Inc.*, 2:19-cv-05545, 2021 WL 6618552 (C.D. Cal. Oct. 22, 2021) .......... 22

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) .......... 25

*In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053 (N.D. Cal. 2016) .......... 24

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... *passim*

*Fodor v. Blakey*, 2:11-cv-08496, 2012 WL 12893985 (C.D. Cal. Feb. 21, 2012) .......... 22

*U.S. v. Forrester*, 512 F.3d 500 (9th Cir. 2008) .......... 13

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) .......... 20

*In re Google Cookie Placement*, 806 F.3d 125 (3d Cir. 2015) .......... 7, 8

*Griffith v. TikTok, Inc.*, 5:23-cv-00964, 2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) .......... *passim*

*Grouse River Outfitters, Ltd. v. Oracle Corp.*,
848 Fed.Appx. 238 (9th Cir. 2021) ........ 19

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ........ 11

*Hammerling v. Google LLC*,
3: 21-cv-09004, 2022 WL 2812188 (N.D. Cal. July 18, 2022) ........ 13

*Hazel v. Prudential Financial, Inc.*,
3:22-cv-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ........ 6

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 6, 7

*Klein v. Facebook, Inc.*,
580 F. Supp.3d 743 (N.D. Cal. 2022) ........ 20

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012). ........ 19, 20

*Lyons v. Michael & Associates*,
824 F.3d 1169 (9th Cir. 2016) ........ 18

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ........ 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ........ 5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 11, 13, 17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 9

*Nguyen v. Stephens Institute*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ........ 25

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........ 10, 16, 17

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) ........ 5

*Perez v. Mortg. Elec. Registration Sys., Inc.*,
959 F.3d 334 (9th Cir. 2020) ........ 5, 25

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ........ 11

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017)....................5

*Quan v. Smithkline Beecham Corp.*,
149 F. App'x 668 (9th Cir. 2005)....................17

*Revitch v. New Moosejaw, LLC*,
3:18-cv-06827, 2019 WL 5485330 (C.D. Cal. Oct. 23, 2019)....................6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)....................6

*U.S. v. Silva*,
247 F.3d 1051 (9th Cir.2001)....................12

*Silver v. Stripe, Inc.*,
4:20-cv-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021)....................9

*Smith v. Facebook, Inc.*,
745 Fed. Appx. 8 (9th Cir. 2018)....................9

*Svenson v. Google, Inc.*,
5:13-cv-04080, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015)....................20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................10, 11

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................10

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
3:22-cv-1954, 2023 WL 5837492 (N.D. Cal. Sep. 8, 2023)....................6

*In re Yahoo!*,
16-md-02752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)....................20

*Zak v. Bose Corp.*,
1:17-cv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)....................7, 8

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................13

**State Cases**

*People v. Avery*,
27 Cal. 4th 49 (Cal. 2002)....................21

*Bell v. Feibush*,
212 Cal.App.4th 1041 (Cal. Ct. App. 2013)....................22, 23

*CTC Real Estate Servs. v. Lepe*,
140 Cal.App.4th 856 (Cal. Ct. App. 2006) ... 20

*Ion Equip. Corp. v. Nelson*,
110 Cal.App.3d 868 (Cal. Ct. App. 1980) ... 17

*People v. Kaufman*
17 Cal.App.5th 370 (Cal. Ct. App. 2017) ... 21

*Naftzger v. Am. Numismatic Soc'y*,
42 Cal.App.4th 421 (Cal. Ct. App. 1996) ... 21

*People v. Quiel*
68 Cal.App.2d 674 (Cal. Ct. App. 1945) ... 21

*Switzer v. Wood*,
35 Cal.App.5th 116 (Cal. Ct. App. 2019) ... 19, 22

**Federal Statutes**

18 U.S.C. § 2520(e) ... 18

Fed. R. Civ. P. 8 ... 15

Fed. R. Civ. P. 9 ... 22, 23

Fed. R. Civ. P. 12 ... 5

**State Statutes**

California Constitution Article I, Section 1 ... 4

California Penal Code § 496 ... 19, 21, 22, 23

## I. INTRODUCTION

Defendants Gen Digital Inc. and Jumpshot Inc. (collectively, "Defendants") own and distribute internet security software called Avast Online Security & Privacy ("AOSP"). Defendants market AOSP as a one-stop solution to protect users from online trackers, malicious websites, and "web spies." However, AOSP is itself one of the most problematic "web spies" and, instead of protecting security and privacy, AOSP harvests every click, every search, and every website the user visits. It simultaneously transmits this harvested data to Defendants, who sell it to third parties for profit. This mass-harvesting of data – including private health information ("PHI") – enriches Defendants at the expense of Plaintiffs and millions of other AOSP users, constituting a violation of their common law, statutory, and constitutional privacy rights.

After Judge Tigar dismissed certain claims, Plaintiffs remedied each identified deficiency with new detailed allegations regarding: (1) how AOSP's mass data harvesting functions, and why such data harvesting is unnecessary and counterproductive for its purported internet security function; (2) specific misrepresentations made by Defendants in order to fraudulently conceal their conduct; (3) Defendants' harvesting of highly-sensitive private health information and video-viewing information; and (4) the economic injury Plaintiffs suffered due to Defendants' conduct.

In their renewed Motion to Dismiss, Defendants fail to address these specific allegations and instead rely on rhetorical protestations and claims of confusion. But the fundamental wrong here is not complicated: Defendants market and provide AOSP as a defender of online privacy, when in reality it is a trojan horse, vacuuming valuable and highly sensitive private data from unsuspecting users. Defendants argue that a client who hires a bodyguard to protect against physical threats cannot complain that the bodyguard sees their every move. But even a bodyguard does not follow the client into a doctor's office or bedroom, and instead waits outside the door. AOSP is more like a rogue bodyguard who betrays the client's confidence for money by wearing a hidden camera to secretly capture the client's every private move and share that video with third-parties.

Assume you have Gmail or Yahoo! Mail open in a Chrome web browser with the AOSP extension installed. You search your email for "abortion FAQs." That search is sent to Defendants

and then third parties – along with information from which the third parties can identify you. The same is true if you search "abortion providers near me" on Google.com. AOSP captures the results you click on and sends them to third parties. It also records the Google search itself, creating a personal health trail that can be snooped on. The issue with AOSP is not that it "reads" the user's web activity locally on their computers, but that it intercepts and "surreptitiously duplicates" that information and transmits it to Defendants – who misappropriate it for profit. Ninth Circuit precedent is clear: this conduct is actionable. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).

Accordingly, Defendants' motion to dismiss should be denied in its entirety.

## II. BACKGROUND

### A. Relevant Facts

Defendants own AOSP, a browser extension available for Google Chrome and Microsoft Edge. Dkt. 47 ("FAC") ¶ 36. Defendants tell consumers that AOSP will help them "[b]rowse with more privacy," "[e]asily avoid malicious websites and phishing scams," "[b]lock online trackers and browse anonymously," "[o]ptimize your privacy settings on your favorite platforms," "[t]ake the hassle out of website cookie permissions," and provide "an extra level of real-time threat protection, every time you browse." *Id.*

In reality, AOSP does the exact opposite. AOSP intercepts ***all*** communications – including full-string detailed URLs and search queries for every single webpage – between a user and the websites the user visits. FAC ¶ 71. For example, when an AOSP user visits a webpage on Google Chrome or runs a search on Google's search engine, a "main channel" is established between the user's computer and Google to transmit the user's query to Google. *Id.* ¶¶ 72-73. AOSP intercepts that transmission from the "main channel," and immediately sends a simultaneous copy of the user's search or page view to Defendants, who store that data. *Id.* If a user runs a search of their own email, AOSP intercepts the email search and sends it to Defendants' servers. *Id.* ¶ 74. AOSP's mass data harvesting includes highly sensitive information such as medical and banking records. *Id.* ¶ 74.

Critically, other browser extensions – including Norton Safe Search Enhanced ("Norton"),

a product also offered ***by Defendants*** – perform their security functions without mass-collection of data. *Id.* ¶¶ 75-83. Instead of a "persistent tracking" system, these extensions utilize a "local blacklist" system, which downloads a list of malicious websites to the user's computer, and relies on that local blacklist to provide the vast majority of security warnings. *Id.* ¶ 76. Even in limited cases where it's necessary to transmit information for an unidentified website in real-time, non-AOSP extensions send only the minimum amount of information necessary to verify the website's identity – not full-string URLs and full search queries. *Id.* ¶¶ 77-78. The local blacklist method provides security more efficiently because it does not require constant online communication, and is therefore less taxing on users' computers and Defendants' servers. *Id.* ¶ 79. Despite this fact, Defendants choose a less efficient persistent tracking method in AOSP, because they profit from collection of private data. *Id.* ¶ 80. Specifically, Defendants profit by channeling the collected data to third-parties for targeted advertising campaigns. *Id.* ¶¶ 80-82. This is accomplished through approximately forty-five third-party tracking cookies, which AOSP deceives users into installing by guiding them to a deceptive cookie banner. *Id.* ¶ 82.

Gen Digital's predecessor, Avast, has a long history of improperly acquiring and distributing highly sensitive user data. FAC ¶ 43, *et seq*. Avast previously acquired real-time keystroke information from users of AOSP and AOSP's predecessor, Avast Online Protection ("AOP"), and secretly licensed this illicitly-acquired data to its subsidiary, Jumpshot. *Id*. Jumpshot then sold this sensitive information to its customers, representing that the information would allow its customers to "jump the garden wall" (*i.e.*, view the entire universe of websites that users visited). *Id.* ¶ 49. The user data sold by Jumpshot was so specific that the purchaser could determine which browser tabs the user had opened; which websites the user visited, what was read on the sites, and for how long; and what a user clicked on. *Id.* ¶ 53. One expert concluded that the information Jumpshot sold could easily be "deanonymized with high precision," so that the users' identities could be learned by Jumpshot's customers. *Id.* ¶ 55.

Avast and Jumpshot's covert scheme to monetize user data was revealed in late 2019 and early 2020. *Id.* ¶ 53, *et seq*. Avast's security extensions were quickly removed from various browser services. *Id.* ¶¶ 56, 62. Avast promptly admitted its wrongful conduct, apologized, and

announced that it would wind down Jumpshot and cease its data collection practices. *Id.* ¶ 67. However, as alleged in the FAC, Defendants continue to harvest Plaintiffs' and the class members' highly sensitive private data.

**B. Procedural History**

On December 19, 2022, Plaintiffs filed a class action complaint against Defendants asserting claims for (1) violation of the Electronic Communications Privacy Act; (2) violation of the California Invasion of Privacy Act; (3) invasion of privacy under Article I, Section 1 of the California Constitution; (4) intrusion upon seclusion; (5) statutory larceny; (6) violation of the California Unfair Competition Law; and (7) unjust enrichment. Dkt. 1. On February 24, 2023, Defendants filed a Motion to Dismiss and, on September 13, 2023, Judge Tigar granted the motion in part and denied it in part. Dkt. 45. Judge Tigar dismissed (with leave to amend) Plaintiff Karwowski's claims, Plaintiffs' ECPA and CIPA claims, Plaintiffs' privacy claims (except those pertaining to storage of information), Plaintiffs' UCL claims, and Plaintiffs' statutory larceny claims. On October 18, 2023, Plaintiffs filed their FAC. Dkt. 47. On December 4, 2023, Defendants again moved to dismiss. Dkt. 52.

**C. The First Amended Complaint ("FAC")**

In addition to adding three class representatives – Melody Klein, Michael McBride, and Aimen Halim (all of whom have claims that are unbarred by the applicable statute of limitations even without fraudulent concealment or delayed discovery) – the FAC includes the following amendments to cure deficiencies identified in Judge Tigar's order:

- Plaintiffs remove all allegations relating to the SafePrice software. Plaintiffs' claims are now focused exclusively on AOSP.
- Plaintiffs add allegations pertaining to Defendants' fraudulent concealment and Plaintiffs' delayed discovery. FAC ¶¶ 14, 166-181.
- Plaintiffs add allegations explaining why AOSP's collection of private data is unnecessary for its advertised security function. FAC ¶¶ 13, 73-84, 208, 229.
- Plaintiffs add allegations regarding Defendants' interception of (1) highly-sensitive PHI from users' communications with the Kaiser Permanente website, FAC ¶¶ 1, 14, 41, 85-99,

and (2) highly-sensitive video viewing information from users' communications with the Hulu website. FAC ¶¶ 100-103.

- Plaintiffs add allegations regarding the economic injury suffered from Defendants' conduct, including allegations pertaining to the class representatives' participation in the market for private data. FAC ¶¶ 104-134, 136-138, 140-142, 146-149, 152-155, 159-161.

## III. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss contesting the legal sufficiency of the claims stated in a complaint, courts "take as true the complaint's plausible and properly pleaded allegations . . . ." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1136 (9th Cir. 2017). The Court must deny Defendants' Motion if the FAC contains "a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Ninth Circuit's policy favors amendment where the pleading is not so inadequate that it "could not possibly be cured by the allegation of other facts." *Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 340 (9th Cir. 2020). This policy is applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

## IV. ARGUMENT

### A. Plaintiffs Sufficiently Allege Wiretapping Claims

#### 1. The FAC alleges new facts sufficient to defeat the party exception

Judge Tigar dismissed Plaintiffs' wiretapping claims in the original complaint based on the party exception. Parties to electronic communications are generally exempt from liability under both ECPA and CIPA.[1] *Facebook Tracking*, 956 F.3d at 606-607; *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023). But Courts have long recognized that an "unannounced second auditor" who listens to a conversation without knowledge of both participants cannot escape liability through the party exception. *Facebook Tracking*, 956 F.3d at 606-607 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 361-62 (1985)). Based on this principle, the Ninth

---

[1] In evaluating the party exception "[c]ourts perform the same analysis" for both ECPA and CIPA. *Facebook Tracking*, 956 F.3d at 607.

Circuit and numerous district courts thereafter have recognized the party exception does ***not*** apply where a third-party utilizes tracking software to "surreptitiously duplicate" information in connection with an individual's use of a website. *Facebook Tracking*, 956 F.3d at 607; *Javier*, 649 F. Supp. 3d at 900-901; *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021); *Revitch v. New Moosejaw, LLC*, 3:18-cv-06827 2019 WL 5485330, at *1 (C.D. Cal. Oct. 23, 2019); *Hazel v. Prudential Financial, Inc.*, 3:22-cv-07465, 2023 WL 3933073, at *4 (N.D. Cal. June 9, 2023); *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 3:22-cv-1954, 2023 WL 5837492, at *6 (N.D. Cal. Sep. 8, 2023).

Here, Judge Tigar found that Defendants' use of AOSP to track Plaintiffs' internet usage was shielded by the party exception because Plaintiffs had not yet alleged this activity was "unknown." MTD Order at 7:1-27. Specifically, Judge Tigar noted that Plaintiffs had not alleged how internet security software such as AOSP "could function without ***Defendants'*** participation in the communications." *Id.* (emphasis added). As such, Judge Tigar concluded that Plaintiffs must have known that Defendants would be participating in their internet communications when they installed AOSP. *Id.*

The FAC corrects this deficiency with detailed allegations regarding how AOSP could function without Defendants' participation in Plaintiffs' communications, which support Plaintiffs' lack of knowledge of the misconduct. The FAC explains how the "persistent tracking" method employed by AOSP – which sends to Defendants "every click, every search, and every website," FAC ¶71 – is both unnecessary and counterproductive for internet security. Specifically, the FAC explains how Defendants could operate AOSP through the less resource-intensive "local blacklist" method, which they already utilize in another one of their browser security extensions. FAC ¶¶ 76-80. Thus, even if Plaintiffs installed AOSP in order to "prevent[] tracking on every website . . . [and] provide[] instant ratings for searches [and] warnings for phishing scams, malicious links and malware," *id.* ¶¶9, 36, it would not follow that Plaintiffs knew or should have known Defendants would be intercepting, transmitting, and storing "every click, every search, and every website." Instead, Plaintiffs reasonably expected AOSP would conduct its monitoring locally on Plaintiffs' computers, and would not intercept private data, "surreptitiously duplicate"

it, and transmit it to Defendants. *Id.* ¶¶76-80.

Defendants do not dispute that Plaintiffs have sufficiently alleged that AOSP can function without Defendants' participation in Plaintiffs' internet communications. Instead, Defendants try to downplay these allegations by collapsing the distinction between the AOSP software and Defendants themselves. In doing so, Defendants ignore the fact that applicability of the party exception turns on whether AOSP merely functioned as a "tape recorder" for a party to the communication (party exception applies) or whether AOSP was enabling a third-party (Defendants) to eavesdrop (party exception does not apply). *See Javier*, 649 F. Supp. 3d at 898 ("[t]he question thus becomes . . . is [the software] a tape recorder held by [a party], or is it an eavesdropper standing outside the door?") (quoting *Yoon v. Lululemon USA, Inc.*, 549 F. Supp.3d 1073, 1081 (C.D. Cal. 2021)). If AOSP employed the "local blacklist" method, it would be akin to "a tape recorder held by [Plaintiffs]" and Defendants would not be liable for eavesdropping. But because AOSP unnecessarily and simultaneously transmits information to Defendants without Plaintiffs' knowledge, Defendants become "an eavesdropper standing outside the door." Just as the law does not allow the manufacturer of a tape recorder to secretly listen in on taped conversations just because it manufactured the device, the law similarly forbids Defendants from eavesdropping on Plaintiffs' communications with websites through AOSP because AOSP, like the Norton software and the tape recorder, could have performed its function without intercepting and "surreptitiously duplicating" Plaintiffs' communications with websites and transmitting such communications to Defendants.

Defendants' sole legal authority in support of applying the party exception here is *Zak v. Bose Corp.*, 1:17-cv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019), an unpublished case from the Northern District of Illinois. *Zak* dealt with a mobile app created by headphone and speaker manufacturer Bose, which allegedly tracked the music and audio files users chose to play on third-party websites through their headphones and speakers. *Id.* at 1-2. There, the court found that Plaintiff had failed to allege that Bose was not a party to their communications with the third-party websites, because installation of the Bose App made Bose itself a recipient of any communications accessible by that App. *Id.* at 3-4. But the *Zak* court reached this conclusion by

relying on *In re Google Cookie Placement*, 806 F.3d 125, 143 (3d Cir. 2015), which held that the party exception ***always*** applied whenever a defendant was a direct recipient of the communications at issue, "even if the defendant was not an intended participant, and even if the defendant became a participant through a fraud in the inducement." *Zak v. Bose Corp.*, 2019 WL 1437909, at *3. The Third Circuit's broad approach to the party exception in *Google Cookie Placement*, in turn, was squarely rejected by the Ninth Circuit in *Facebook Tracking*, 956 F.3d at 608 (holding that simultaneous, ***unknown*** duplication and transmission of browser activity was not subject to party exception), which is the controlling authority here.[2] This Court should follow *Facebook Tracking* – and not *Zak* – and decline to apply the party exception.

**2. Defendants' consent defense based on the "privacy prompt" fails**

Defendants repeat their argument from their first Motion to Dismiss that Plaintiffs consented to any wiretapping because they accepted a one-sentence "privacy prompt" which states, in its entirety, that AOSP "can: Read and change all your data on all websites." Rubin Decl., Exs. A at 1, B at 1. Unsurprisingly, Judge Tigar did not rely on this argument in his Order. To the contrary, in the context of evaluating Plaintiffs' privacy claims relating to the storage of their data, Judge Tigar held that "Defendants' attempted reliance on the prompts is . . . not persuasive" because the language of the privacy prompt was too vague to give Plaintiffs' notice of Defendants' practices. Dkt. 45 at 9 n.3.

The vague and ambiguous nature of this single-sentence privacy prompt is fatal to Defendants' consent defense. In the Ninth Circuit, the consent defense requires judicially-

---

[2] Defendants also argue that whether the intercepted and duplicated data is transmitted to them is irrelevant. But *Facebook Tracking*, 956 F.3d at 608, makes it clear that "simultaneous, unknown duplication and communication" place Defendants outside the protections of the party exception. Beyond alleging unknown duplication and communication, Plaintiffs also have alleged that the transmission of data to Defendants occurs "immediately," FAC ¶¶ 72-74, and "simultaneous to," *id.* ¶ 205, their communications with websites.

noticeable proof that plaintiffs assented to online contracts that are both sufficiently conspicuous[3] and sufficiently detailed as to the relevant conduct. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Smith v. Facebook, Inc.*, 745 Fed. Appx. 8 (9th Cir. 2018). Thus, cases dismissing a complaint based on the consent defense almost uniformly rely on detailed disclosures such as written user agreements or privacy policies which disclose the specific conduct at issue. *See, e.g.*, *Smith*, 745 F. App'x at 8-9 (disclosing that information regarding website and app usage is acquired and used to provide personalized ads); *Silver v. Stripe, Inc.*, 4:20-cv-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (disclosing that "identifiers, demographic information, commercial information, relevant order information, internet activity, geolocation data, sensory information, and inferences" were collected and tracked by third parties).[4]

Relative to these more detailed disclosures, the Privacy Prompt is fatally inadequate. It conveys, at most, that software, which is installed and runs locally on the user's computer, has access to certain web browsing information. No reasonable person reading a single sentence that AOSP would "read and change all your data on all websites" would be on notice that Defendants would use AOSP to intercept and transmit to Defendants "search engine keyword searches, search results, and email inbox searches," FAC ¶ 13, and then sell that data to third parties. *Id.* ¶¶ 43-69. As discussed above, locally "reading and changing" data on the user's computer is a far cry from intercepting, acquiring, storing, and selling that same data. If this were sufficient to establish consent, there would be no need for the lengthy and detailed terms of use and privacy policies that

---

[3] Defendants concede they have no judicially-noticeable evidence the Privacy Prompt existed and was sufficiently conspicuous throughout the relevant time period. Mot. at 9:2-4. Defendants request judicial notice only for screenshots of the privacy prompt as it exists today – and not in prior years when Plaintiffs and other class members downloaded AOSP.

[4] That Defendants rely on this privacy prompt and not AOSP's user agreement or privacy policies is telling. It demonstrates Defendants' awareness that users such as Plaintiffs were not on notice of such agreements and policies. *See* Mot. at 23 n.6 (quoting Avast's February 2020 privacy policy but not requesting that it be judicially noticed).

have become fixtures of modern internet usage: they could all be replaced with one sentence that says "we read and change all your data on all websites."

Finally, even if the bare-bones privacy prompt were sufficient on its own merits (it is not), it is rendered insufficient by the pervasive and misleading statements regarding safety and privacy dominating every other aspect of the AOSP user experience, as discussed above. *See, e.g., Brown v. Google, LLC*, 4:20-cv-3664, 2021 WL 6064009, at *12 (N.D. Cal. Dec. 22, 2021) (holding various disclosures inadequate where other statements touted browser as "a way that users can manage their privacy" and "prevent Google [itself] from collecting [the plaintiffs'] data.")

### B. Plaintiffs Have Standing To Pursue And Sufficiently Allege Their Privacy And Intrusion Upon Seclusion Claims

#### 1. Plaintiffs have sufficiently alleged a concrete injury

Plaintiffs have Article III standing because they suffered a concrete injury as a result of Defendants' unlawful conduct. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1214–15 (C.D. Cal. 2017). Both tangible and intangible injuries are concrete injuries for standing purposes, and chief among historically recognized concrete, intangible injuries are disclosure of plaintiffs' private information and intrusion upon their seclusion. *Id.* at 1215-16 (internal citations omitted); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Indeed, this Court has admonished that "[i]t is beyond meaningful dispute that a plaintiff alleging invasion of privacy […] presents a dispute the Court is permitted to adjudicate." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1057 (N.D. Cal. 2014) (collecting cases).

Plaintiffs' allegations that Defendants invaded their privacy by surreptitiously intercepting, collecting, storing, using, and sharing their private data, including their PHI, medical history, and sensitive video viewing history, mirror allegations that this Court previously has held satisfy Article III's standing requirements. *See, e.g.*, *Opperman*, 87 F. Supp. 3d at 1057-58 (holding that plaintiffs established standing on their invasion of privacy claims where they alleged that "[b]y surreptitiously obtaining, improperly gaining knowledge, reviewing and retaining Plaintiffs' private mobile address books[,] […] the [] Defendants intentionally intruded on and into each respective Plaintiff's solitude, seclusion or private affairs.").

The cases on which Defendants rely to argue Plaintiffs have failed to establish standing are inapposite. In *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017), the plaintiff had given his information to Time Warner, and failed to allege that Time Warner would lose or sell it or what it might be used for *Id*. at 910. *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016) is the same: the plaintiff failed to "allege that Charter has disclosed the information to a third party, that any outside party has accessed the data, or that Charter has used the information in any way during the disputed period." *Id*. at 930. Here, Plaintiffs have alleged both use and disclosure to third parties.

And *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023), which addressed information collected unconstitutionally, distinguished the "many . . . cases in which we held that the plaintiffs had standing to challenge the retention of illegally obtained records because the retention amounted to an invasion of their privacy interests," as Plaintiffs allege here. *Id*. at 993. Further, *Phillips* addressed a situation, unlike here, in which the plaintiffs did not allege use of the data, which, in contrast to the sensitive and illegally-collected information here, was "'open source information available to the public,' like media reports and social media pages, as well as information already collected and retained in other law enforcement databases (which plaintiffs do not challenge)." *Id*. at 995-96.

Finally, as to *TransUnion*, the plaintiffs who alleged injury from both storage ***and*** transmission of their data—as do Plaintiffs here—were held by the Supreme Court to have established standing. *See* 594 U.S. at 417. Thus, Plaintiffs have standing to pursue their privacy / intrusion claims.

**2. Plaintiffs sufficiently allege their privacy and intrusion claims**

To prevail on claims for invasion of privacy and intrusion upon seclusion, "[P]laintiffs must show that they had an objectively reasonable expectation of privacy in their [personal browsing communications] and [Defendants'] conduct was highly offensive." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Because privacy claims typically involve factual questions that are best left to a jury, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *Id*. As explained above in the context of Plaintiffs' wiretapping claim,

Plaintiffs sufficiently allege that Defendants employed AOSP to unlawfully intercept and intrude on their communications, as Plaintiffs neither consented to nor were aware of Defendants' participation in their communications. Plaintiffs' lack of knowledge and consent, *inter alia*, makes Plaintiffs' privacy expectations reasonable and Defendants' conduct highly offensive.

**3. Plaintiffs sufficiently allege a reasonable expectation of privacy**

A reasonable expectation of privacy exists where Defendants gain "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d at 601-02 (quoting *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072-73 (2009)). In evaluating whether data collection is actionable due to a reasonable expectation of privacy, courts consider "the amount of data collected, the sensitivity of the data collected, the nature of the data collection, and [defendant's] representations to users." *Calhoun v. Google, LLC*, 526 F. Supp. 3d 605, 621 (N.D. Cal. 2021) (citing *Facebook Tracking*, 956 F.3d at 602). These factors support Plaintiffs' reasonable privacy expectations here.[5]

**a. Amount of data collected**

The amount of data collected by Defendants here is ***more*** than the amount of data found to satisfy this factor in analogous cases. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 603 ("the referral URL . . . along with the cookies that precisely identify the [logged-out] user" . . . on the countless websites that incorporate Facebook plug-ins."); *Calhoun*, 526 F. Supp. 3d at 621 (data allegedly collected encompassed 86% of browsing data from popular websites). Here, Defendants collect ***all*** data exchanged between Plaintiffs and the websites they navigate: full-string URLs containing the specific search term(s) communicated to the search engine; webpage browsing histories and search queries; email inbox search queries; medical history and PHI, including prescribed medications, diagnosed medical conditions, immunization records, and allergies; and sensitive video viewing

[5] Although Plaintiffs have done so here, it is not necessary to prevail on all of these factors to demonstrate a reasonable expectation of privacy. Courts consider the "totality of the circumstances" when determining whether an individual has a constitutionally-protected reasonable expectation of privacy. *U.S. v. Silva*, 247 F.3d 1051, 1055 (9th Cir.2001)

history. Defendants collect this data from tens of millions of people who reportedly installed AOSP. FAC ¶ 188.

**b. Sensitivity of the data collected**

Plaintiffs' information that Defendants intercepted, collected, stored, used, and shared is highly sensitive. The full-string URLs Defendants collected from Plaintiffs are but one example of highly sensitive data the Ninth Circuit has held invasive of one's privacy when collected in the manner Defendants did here. In *Facebook Tracking*, the Ninth Circuit distinguished the collection of "full-string detailed URLs" from the data collection at issue in two prior Ninth Circuit decisions where the sensitivity factor was not satisfied. 956 F.3d at 604–05 (distinguishing *U.S. v. Forrester*, 512 F.3d 500 (9th Cir. 2008), and *In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)). Unlike the IP addresses of visited websites (*Forrester*), and URLs disclosing a user's Facebook ID and the address of the Facebook webpage the user was viewing when the user clicked on a link to play a game (*Zynga*), the URLs at issue in *Facebook Tracking* disclosed the unique "search term" entered in a third-party search engine and the "particular document within a website that a person views." *Id.* at 604-05. This data was sufficiently sensitive in nature because the "URLs could divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform." *Id.* at 605; *see also Hammerling v. Google LLC*, 3:21-cv-09004, 2022 WL 2812188, at *11 (N.D. Cal. July 18, 2022) (discussing distinction between actionable data in *Facebook Tracking* and non-actionable data in *Forrester* and *Zynga*). This Court also recently recognized that case law supports the "position that individuals maintain a reasonable expectation of privacy in detailed URLs." *In re Meta Pixel*, 647 F. Supp. 3d at 800.

Plaintiffs' data here is analogous to and, in some cases, even exceeds the sensitivity of the full-string, detailed URLs in *Facebook Tracking*, 956 F.3d at 605. The sensitive nature of the full-string URLs collected here is substantiated by investigations that revealed the data at issue makes it possible to determine whether, for instance, an AOSP user had a different sexual preference than what he or she has disclosed to the public. FAC ¶ 58. And, in fact, AOSP streamlines deanonymization by using the third-party Adalyser cookie to assign unique, persistent identifier Device IDs, allowing Defendants and third parties to link together users' private data across virtually

all of their online activity. FAC ¶ 97.

Moreover, AOSP unlawfully intercepted, collected, stored, used, and shared Plaintiffs' PHI, medical history, and video viewing history. This data is even more sensitive than full-string URLs. For the same reasons the URLs in *Facebook Tracking* are distinct from the IP addresses in *Forrester*, the data Defendants collect here is more than sufficiently sensitive and is not data a common-sense user would expect Defendants to collect.

**c. Nature of Defendants' data collection practices**

Data collection that is surreptitious and without users' knowledge, as here, is typically actionable. *See, e.g., Facebook Tracking*, 956 F.3d at 602 (emphasizing the significance of the "amount of information [that] can be easily collected without user knowledge"); *Calhoun*, 526 F. Supp. 3d at 630 (considering the volume and secretive nature of data collection in concluding plaintiffs sufficiently alleged a reasonable expectation of privacy). Defendants did not disclose their data collection practices, their data collection methods, or the quality and extent of the information they collected. This allowed Defendants, through the use of third-party cookies and other means, to intercept, collect, store, use, and share Plaintiffs' detailed, full-string URLs, browsing and search history, email inbox search queries, medical history and PHI, and sensitive video viewing history in a manner undetectable by Plaintiffs. Defendants' practices here are very similar to those the *Facebook Tracking* plaintiffs alleged regarding Facebook's "surreptitious and unseen" method of collecting individualized data, which was held to violate social norms. *Facebook Tracking*, 956 F.3d at 603, 608 (Facebook's embedded code caused the users' browsers to generate copies of the user-website GET requests and transmit them to Facebook "through a separate, but simultaneous, channel in a manner undetectable by the user.") Thus, Plaintiffs have sufficiently alleged data collection that violates social norms.

Contrary to Defendants' false claims of confusion ("what in the world are Plaintiffs talking about"), Plaintiffs' cookie allegations comply with Rule 8's pleading requirements and show how Defendants intercepted, collected, and transmitted Plaintiffs' private data to third parties without Plaintiffs' knowledge or consent. This Court has denied motions to dismiss directed at allegations like Plaintiffs' cookie allegations. *See, e.g.*, *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1028-

29, 1034, 1036-37 (N.D. Cal. 2019) (finding plaintiffs stated a claim by alleging that "defendants embedded the SDK[s] […] into [] games to gather and transmit […] 'persistent identifiers' and personal data for tracking, profiling and ad targeting" and that the defendants used the data gathered by the SDKs to target advertisements to plaintiffs).

Plaintiffs allege, *inter alia*, that, like the SDKs embedded in defendants' apps in *McDonald*, Defendants configured AOSP to combine third party cookies, like Adalyser, with Plaintiffs' private data in order to transmit such data in a manner that allows the third parties to use it in targeted advertising. FAC ¶ 80. The cookies Defendants used with AOSP transmit Plaintiffs' private data to third parties because such cookies belong to those third parties. *See Griffith v. TikTok, Inc.*, 5:23-cv-00964, 2023 WL 7107262, at *2 (C.D. Cal. Oct. 6, 2023) (describing third-party cookie functionality). The FAC explains that "[t]he third-party cookies […] allow Defendants to transmit the data to those third parties" associated with the cookies. FAC ¶ 102. That Defendants pled ignorance about how third-party cookies function does not entitle them to dismissal. Because Plaintiffs' allegations clearly satisfy the liberal pleading standard in Rule 8, they are sufficient. *See McDonald*, 385 F. Supp. 3d at 1034, 1036-37; *Griffith*, 2023 WL 7107262, at *5.[6]

Defendants also created unique, persistent identifiers that they used to link together all of Plaintiffs' private data that Defendants surreptitiously intercept. FAC ¶¶ 97-98. This allowed Defendants, unbeknownst to Plaintiffs, to create "digital dossiers" containing vast amounts of Plaintiffs' data, including detailed, full-string URLs, PHI and medical history, and sensitive video viewing history, which Defendants sold to third parties. FAC ¶ 133.

---

[6] Despite Defendants' feigned ignorance concerning how cookies work, they themselves have published descriptions of the technology, including privacy concerns with third party cookies. *See, e.g.,* https://us.norton.com/blog/privacy/internet-privacy-third-party-cookies. Additionally, Defendants have not submitted any judicially-noticeable evidence to dispute these cookie allegations either. In any event, to the extent this Court would like additional allegations concerning any particular aspect of how these cookies function, Plaintiffs are able and willing to provide additional details regarding such aspects identified by this Court.

**d. Defendants' representations about data collection**

Finally, in deciding whether a reasonable privacy expectation exists, courts consider Defendants' representations and resulting user expectations regarding data collection. *Facebook Tracking* 956 F.3d at 603 (observing that "the critical fact" in data privacy cases is often "that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway"). AOSP's very ***name***–Avast Online Security & Privacy–as well as Defendants' ***repeated representations*** above that their products purportedly protected users' personal information established a reasonable expectation with users, including Plaintiffs, that Defendants would not collect detailed, full-string URLs, email inbox search queries, medical history and PHI, and sensitive video viewing history. After the public learned that Defendants were intercepting and collecting this data, Defendants (albeit falsely) promised to stop and begin securing and protecting users' personal information. FAC ¶ 67. Plaintiffs' privacy expectations were reasonable.

Plaintiffs' privacy expectations are made all the more reasonable by the fact that Defendants' invasive practices were not technologically necessary for AOSP's stated functionality, as discussed above. Norton prevents Defendants from accessing the private user data that Defendants access through AOSP. It is this critical difference between these two extensions that further renders Defendants' conduct invasive of Plaintiffs' privacy. Norton's existence as a popular alternative—one owned and operated by Defendants no less—also makes Plaintiffs' privacy expectations reasonable.

Like Defendants' other arguments contesting Plaintiffs' reasonable expectation of privacy, Defendants' argument under the third-party doctrine is likewise unavailing. Even assuming Plaintiffs consented to some of Defendants' conduct (which they did not), that does not *per se* make Plaintiffs' privacy expectations unreasonable. *See, e.g.*, *Opperman*, 87 F. Supp. 3d at 1059-60. In *Opperman*, the defendants' social media app privacy prompts stated they would only scan the plaintiffs' address books to connect them with friends, but, in reality, the apps uploaded the scanned information to the defendants' servers for other purposes too. *Id*. at 1060. This Court found that the plaintiffs had a reasonable expectation of privacy because the defendants did not disclose that they

uploaded plaintiffs' address books to their servers and because plaintiffs alleged they would not have consented had they known this. Likewise, here, because Defendants failed to disclose their conduct to Plaintiffs and because Plaintiffs have alleged they would not have used AOSP had they known about Defendants' conduct, FAC ¶¶ 135, 139, 143, 150, 156. Plaintiffs had a reasonable expectation of privacy in their data. *See also Griffith*, 2023 WL 7107262, at *6 (C.D. Cal. Oct. 6, 2023) (finding general disclosure insufficient to undermine privacy expectations).

**4. Plaintiffs sufficiently allege highly offensive conduct**

An intrusion of privacy is highly offensive to reasonable persons where their data is "surreptitiously" collected and the defendant's representations "led users to assume that [defendant] would not receive the personal information at issue." *Calhoun*, 526 F. Supp. 3d at 631; *see also Brown*, 525 F. Supp. 3d at 1080 (finding collection of browsing data in private browsing mode highly offensive); *Facebook Tracking*, 956 F.3d at 606 (finding collection of duplicate copies of GET requests from signed-out users highly offensive). Here, Plaintiffs allege Defendants surreptitiously collected the same type of data at issue in *Calhoun*, *Brown* and *Facebook Tracking*, and, as described above, Defendants made various representations that led users to assume Defendants would not collect such data. Further, Defendants rely only on their unavailing arguments as to the reasonableness of Plaintiffs' privacy expectations and fail to dispute the highly offensive nature of Defendants' conduct. In any event, whether a defendant's conduct is highly offensive is a fact-intensive issue not suited for resolution on a motion to dismiss and is, instead, best left to the jury. *Opperman*, 87 F. Supp. 3d at 1061; *In re Meta Pixel*, 647 F. Supp. 3d at 799 (collecting cases). Thus, Plaintiffs have sufficiently alleged highly offensive conduct.

**C. Plaintiffs Sufficiently Allege Fraudulent Concealment And Delayed Discovery**

Plaintiffs' wiretapping and non-statutory privacy claims are subject to either a one-year or two-year statute of limitations. *See Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 670 (9th Cir. 2005) (two-year statute for privacy claims); 18 U.S.C. § 2520(e) (two-year statute for ECPA); *Ion Equip. Corp. v. Nelson*, 110 Cal.App.3d 868, 880 (Cal. Ct. App. 1980) (one-year statute for CIPA). Judge Tigar dismissed a subset of these claims as untimely because Plaintiffs had insufficiently pled fraudulent concealment. Dkt. 45 at 5:8-23. Specifically, Judge Tigar noted

that Plaintiffs were required to plead: (1) affirmatively misleading conduct by the defendant that was distinct from the conduct underlying Plaintiffs' substantive claims; and (2) allegations regarding Plaintiffs' diligence, including when and how the fraud was discovered.

Fraudulent concealment is adequately pled in the FAC. In addition to the false and misleading statements described in the original complaint and FAC – such as the very name "Avast Online ***Security & Privacy***" (FAC ¶ 84) and marketing statements regarding various privacy features (*id.* ¶¶36-39) – the FAC provides additional detail on specific misrepresentations made by Defendants (*id.* ¶¶ 173-182) and alleges that Defendants affirmatively conceal their transmission of private data to third-party advertising partners by guiding users to a deceptive cookie banner. *Id.* ¶ 82. These allegations are more than sufficient to establish fraudulent concealment and are not the basis of Defendants' violations described in the specific causes of action.

Further, in addition to fraudulent concealment, the applicable statutes of limitations are tolled by the discovery rule, which states that limitations periods only begin to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lyons v. Michael & Associates*, 824 F.3d 1169, 1171 (9th Cir. 2016). The discovery rule is adequately alleged where a plaintiff pleads "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Here, Plaintiffs have pled that they did not discover the basis for their claims until September 2022 or January 2023 when they began consulting with counsel. FAC ¶ 167. Plaintiffs also pled that they could not have discovered the relevant facts earlier, for the same reasons they could not have discovered Defendants' fraudulent concealment. Specifically, the FAC alleges that Plaintiffs could not have known that AOSP was secretly harvesting data given Defendants' misleading marketing, *id.* ¶ 177, and the fact that persistent collection of full-string URLs is entirely unnecessary for AOSP's stated function of internet security, as discussed above. *Id.* ¶ 180. The FAC clarifies that Plaintiffs are not bringing any claims on the basis of Defendants' misrepresentations or deceptive conduct. *Id.* ¶ 171. Thus, none of Plaintiffs' wiretapping or privacy claims are time-barred.

### D. Plaintiffs Sufficiently Allege Violation Of California Penal Code § 496(a)

Liability attaches under California Penal Code § 496(a) when a defendant knowingly receives, possesses, withholds or conceals "property [that] was stolen or obtained in a manner constituting theft." *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 Fed.Appx. 238, 242 (9th Cir. 2021) (quoting *Switzer v. Wood*, 35 Cal.App.5th 116, 126 (Cal. Ct. App. 2019), *as modified* (May 10, 2019)). Defendants' central argument for dismissal of this claim is that Plaintiffs' personal information does not constitute property. For the reasons below, this argument and Defendants' other arguments for dismissal of this claim, are unavailing.

#### 1. Plaintiffs' personal data constitutes property under § 496

Plaintiffs have a property interest in their personal data. Defendants' assertions to the contrary are outdated and incorrect. Defendants rely exclusively on *Low v. LinkedIn Corp.*, in which Judge Koh dismissed a conversion claim based on the defendant's alleged disclosure of the plaintiffs' personal browsing history and other PII because "the weight of authority [in 2012 held] that a plaintiff's 'personal information' does not constitute property." 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012). Nearly a decade after deciding *Low*, Judge Koh decided *Calhoun v. Google*, in which she rejected Google's reliance on *Low*, finding that—consistent with a "growing trend across courts"—the taking of Chrome browser users' personal information was adequate to allege deprivation of a property interest for purposes of a statutory larceny claim. 526 F. Supp. 3d at 635 (quoting *In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020)); *see also Griffith*, 2023 WL 7107262, at *11 (appreciating the evolving case law recognizing property interests in plaintiffs' browsing history and search information, as required for their statutory larceny claim); *Broidy Cap. Mgmt. LLC v. Muzin*, 1:19-cv-0150, 2020 WL 1536350, at *16 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021) (applying California law and holding that electronically stored information was "property" subject to theft for purposes of statutory larceny claim). In *Calhoun*, Judge Koh allowed plaintiffs' statutory larceny claim to proceed over the motion to dismiss and chastised defendant Google for doing exactly what Defendants have done here: relying on *Low* to the exclusion of "this Court's other rulings, both before and after *Low*," that recognize the lost property value of personal information. *Id.* (collecting

cases).[7] The same outcome is warranted here.

Separately, Defendants petition the Court to adopt Judge Tigar's holding in the previous Order (Dkt. 45), specifically, that deficiencies in Plaintiffs' loss of property allegation preclude their § 496 claim. However, as discussed below, Plaintiffs have amended their pleadings in response to the Order to sufficiently allege loss of property and to resolve Judge Tigar's concern that Plaintiffs' allegations were insufficient to confer UCL standing. Accordingly, Defendants can no longer dispute that Plaintiffs sufficiently allege loss of property subject to theft by larceny under § 496(a).

**2. Plaintiffs sufficiently allege asportation and intent**

As an initial matter, whether or not Plaintiffs establish "transfer of possession" is irrelevant because Plaintiffs do not allege theft by false pretenses. The asportation element "may be fulfilled

---

[7] See, e.g. *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 798–99 (N.D. Cal. 2011) (plaintiffs' names were misappropriated and thus lost value which constituted an injury to plaintiffs); *Klein v. Facebook, Inc.*, 580 F. Supp.3d 743, 803 (N.D. Cal. 2022) ("by providing [defendant] with their information and attention," plaintiffs had alleged they "lost money or property"); *In re Yahoo!,* 16-md-02752, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) (concluding "[p]laintiffs' allegations that their PII is a valuable commodity, that a market exists for [p]laintiffs' PII, that [p]laintiffs' PII is being sold by hackers on the dark web, and that [p]laintiffs have lost the value of their PII as a result, are sufficient to plausibly allege injury arising from the Data Breaches."); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 995 (N.D. Cal. 2016) (loss of value of personal identification information "represents a cognizable form of economic injury"); *Svenson v. Google, Inc.*, 5:13-cv-04080, 2015 WL 1503429, *5 (N.D. Cal. Apr. 1, 2015) ("allegations of diminution in value of [plaintiff's] personal information are sufficient to show contract damages for pleading purposes."); *CTC Real Estate Servs. v. Lepe*, 140 Cal.App.4th 856, 860 (Cal. Ct. App. 2006) (personal information "is a valuable asset" and can be the object of theft).

by wrongfully and unlawfully removing property from the possession or control of the owner, against his will with the intent to steal it, even though the property may be retained by the thief but a moment." *People v. Quiel* 68 Cal.App.2d 674, 679 (Cal. Ct. App. 1945). California courts have found that "[t]he slightest movement may constitute asportation." *People v. Kaufman* 17 Cal.App.5th 370, 387 (Cal. Ct. App. 2017) (quoting *People v. Gomez* (2008) 43 Cal.4th 249, 255). Here, Plaintiffs sufficiently plead asportation by alleging Defendants unlawfully take possession of Plaintiffs' personal information by using AOSP to intercept, copy, transmit, and store on Defendants' servers Plaintiffs' detailed URL requests, webpage browsing histories and search queries, full string URLs, email inbox search queries, video viewing histories, and PHI—without Plaintiffs' consent and with the intent to deprive them of such personal information permanently or to deprive them of a major portion of the value or enjoyment of such property. FAC ¶¶ 256-60. The copying and movement of Plaintiffs' sensitive browsing data to Defendants' servers, followed by Defendants' indefinite storage and/or aid in selling, concealing, or withholding of Plaintiffs' data, amounts to asportation when Defendants harbor the intent to steal, which they have been alleged to do.

The "[i]ntent requirement . . . is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment." *People v. Avery*, 27 Cal. 4th 49, 58 (Cal. 2002). Defendants demonstrated the intent to permanently deprive Plaintiffs of their personal browsing data by agreeing to wind down Jumpshot but never committing to delete the personal data they intercepted, collected, stored, used, and shared without the consent of their users or disgorge the profits they garnered by virtue of such unauthorized conduct. FAC ¶ 260. Even a full year after the formal notice via this lawsuit in December 2022, Defendants still withhold Plaintiffs' property, despite the "law impos[ing] a continuing affirmative duty to restore stolen property to its rightful owner." *Naftzger v. Am. Numismatic Soc'y*, 42 Cal.App.4th 421, 432 (1996), *as modified on denial of reh'g* (Mar. 4, 1996) (collecting cases) (even "an innocent purchaser cannot withhold or sell the stolen property after learning of the theft without risk of violating Penal Code section 496.").

Plaintiffs also adequately allege Defendants harbored the intent to deprive Plaintiffs of their

personal browsing data temporarily, but for an unreasonable time so as to deprive them of a major portion of the property's value or enjoyment. There is a market for Plaintiffs' private data, which has economic value. FAC ¶¶ 104-18. Defendants' unauthorized receipt, possession and withholding of users' browsing data deprives Plaintiffs of a major portion of their data's value or enjoyment because Defendants already have intercepted, collected, stored, used, and shared that private data for particular advertising purposes; therefore, data purchasers no longer have any need to acquire such data from Plaintiffs.

**3. Plaintiffs' larceny claim does not sound in fraud and is not subject to Rule 9(b)'s heightened pleading requirements**

Contrary to Defendants' allegation that all types of larceny claims contain a fraudulent element, "[a] claim under Penal Code § 496(c) does not inherently sound in fraud." *Fodor v. Blakey*, 2:11-cv-08496, 2012 WL 12893985, at *13 (C.D. Cal. Feb. 21, 2012). As Defendants themselves conceded in their previous motion to dismiss the original complaint, § 496 claims are only "subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) to the extent they involve allegations of fraudulent conduct." *ELT Sight, Inc. v. EyeLight, Inc.*, No. 2:19-cv-05545, 2021 WL 6618552, at *7 (C.D. Cal. Oct. 22, 2021). Plaintiffs allege Defendants violated § 496 by taking possession of their property, without their consent and intending to deprive them of a major portion of its value or enjoyment, moving their property, however slightly, and keeping it for any duration, however brief. Plaintiffs' statutory larceny allegations do not rely on fraudulent conduct and thus are not subject to Rule 9(b)'s heightened pleading requirements.

**4. Defendants' policy arguments regarding the scope of § 496 fail**

Lastly, the Court should reject Defendants' proposed narrowing of section 496 and apply the plain language of the statute, just as the courts did in *Switzer*, 35 Cal.App.5th at 129, 132 (2019), *as modified* (May 10, 2019) and *Bell v. Feibush*, 212 Cal.App.4th 1041, 1047 (Cal. Ct. App. 2013). Applying the fundamental rules of statutory construction to ascertain the meaning of § 496(c), the *Switzer* court concluded "the language of section 496(c) is clear and unambiguous," and the court must not "rewrite the law or give the words an effect different from the plain and direct import of the terms used." *Id.* The *Bell* defendant, like Defendants here, argued that awarding damages under

Section 496(c) would "open[] the door to any collecting creditor to claim that a breach of contract action constitutes a fraud, and in turn constitutes a theft, under" §496(a). 212 Cal.App.4th 1041, 1047 (Cal. Ct. App. 2013). Interpreting the plain language of § 496, the *Bell* court held that the statute provides a cause of action regarding property "that has been obtained in any manner constituting theft," including larceny. *Id.* at 1048. The *Bell* court acknowledged the defendant's "policy concerns about the potential consequences of [its] interpretation of section 496(c)," but dismissed them, stating "it is the task of the Legislature to address those policy concerns[.]" *Id.* at 1049. Defendants' concerns here are similarly unavailing.

**E. Plaintiffs Sufficiently Allege A Claim Under California's UCL**

Judge Tigar found that Plaintiffs failed to plead a claim under the UCL because "disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing, unless the plaintiff provides specific allegations regarding the value of the information." MTD Order at 11. In doing so, Judge Tigar rejected the analysis of *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021). Plaintiffs submit that the analysis of *Calhoun*, expressly examining California Supreme Court precedent, is correct and should be followed. *Calhoun*, 526 F. Supp. 3d at 636-37. As recently explained, the *Calhoun* decision follows a "growing trend across courts" finding that "the taking of personal information was adequate to allege deprivation of a property interest." *Griffith v. Tik-Tok, Inc.*, 2023 WL 7107262, at *9-10 (C.D. Cal. Oct. 6, 2023). In *Griffith*, the court rejected the argument that "browsing history and search information is not property," noting allegations that such information has market value. *Id.* at 10.

Even if this Court were to agree with Judge Tigar's prior ruling on this issue, the Amended Complaint cures any purported deficiency. Plaintiffs now allege in detail the existence of a private market for the data stolen by Defendants. FAC ¶¶ 104-118. Plaintiffs further allege that they participated in such markets by exchanging personal information for discounts in a rewards program. FAC ¶¶ 136, 140, 146, 153, 159.

Moreover, Plaintiffs have alleged that Defendants' actions diminished the value of their data in this market and explained that "Plaintiffs and Class and Sub-class members cannot bring their private data to market because Defendants already have intercepted, collected, stored, used and

shared that private data for particular advertising purposes." FAC ¶ 130. Thus, data purchasers "have no need to acquire the data from Plaintiffs and Class and Subclass members." *Id.* In essence, Plaintiffs, Class and Subclass members have been shut out of the market for their private data by the actions of entities, like Defendants, who wrongfully collect and distribute the data. Basic concepts of supply and demand lead to the reasonable inference that Defendants' actions increase the "supply" of Plaintiffs' data on the market, which must result in a decrease, if not outright elimination, of the value of that data in the Plaintiffs' hands.

Further, Plaintiffs alleged that they suffered benefit of the bargain damages because they gave up something they would not have – their personal data – and received less than they bargained for – the promise of a secure, safe browsing session. FAC ¶123. As explained in *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1059 (N.D. Cal. 2016), it does not matter that Plaintiffs received a free service or did not expect payment. What matters is that Defendants breached their promise of providing a safe, secure browsing session by surreptitiously intercepting, collecting and disclosing Plaintiffs' private data.

Finally, as explained above, because Plaintiffs have pled claims for wiretapping, violation of CIPA and other wrongdoing, they have pled claims under the UCL.

**F. Plaintiffs Sufficiently Allege A Claim For Unjust Enrichment.**

Judge Tigar properly denied Defendants' motion to dismiss the unjust enrichment claim as to allegations that Defendants stored and retained Plaintiffs' information, holding that Plaintiffs "may proceed at this stage on a claim for unjust enrichment to recover the gains that [Defendants] realized from [their] allegedly improper conduct." MTD Order at 12. Whether Plaintiffs have alleged misrepresentation as to Defendants' storage practices (Def. Mem. at 23) is irrelevant. Judge Tigar correctly found that Plaintiffs alleged wrongful conduct supporting unjust enrichment.

At the same time, Judge Tigar dismissed Plaintiffs' unjust enrichment claim to the extent it relied upon allegations that Defendants improperly accessed Plaintiffs' information, which allegations Judge Tigar found insufficient to state a cause of action. MTD Order at 12. As explained above, the Amended Complaint cures any defect with respect to Plaintiffs' claims for wiretapping

or invasion of privacy. Therefore, the Court should sustain Plaintiffs' claims for unjust enrichment based upon such actionable conduct.

Additionally, Plaintiffs pleaded an independent claim for unjust enrichment by alleging that the defendant received and unjustly retained a benefit at the plaintiff's expense. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016); *Astiana v. Hain Celestial Group*, 783 F.3d 753, 762 (9th Cir. 2015); *Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021). Here, Plaintiffs have adequately alleged the necessary elements of unjust enrichment (or quasi contract). Plaintiffs allege that Defendants wrongfully intercepted and stole valuable personal information concerning Plaintiffs' internet browsing history, searches, location and computer configuration. By doing so, Defendants converted Plaintiffs' valuable information. Defendants failed to disclose to Plaintiffs that they were intercepting and collecting this data.

## V. CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss should be denied in its entirety. Should the Court disagree, Plaintiffs respectfully request leave to amend pursuant to the policy of liberal amendment. *Perez*, 959 F.3d at 340.

DATED: January 19, 2024

Ekwan E. Rhow
Marc E. Masters
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By: /s/ Ekwan E. Rhow
Ekwan E. Rhow
Attorneys for Plaintiffs Grace Lau and Christopher Karwowski

DATED: January 19, 2024

Jonathan M. Rotter
David J. Stone
GLANCY PRONGAY & MURRAY LLP

By: /s/ Jonathan M. Rotter
Jonathan M. Rotter
Attorneys for Plaintiffs Grace Lau and Christopher Karwowski

DATED: January 19, 2024

Korey A. Nelson
Amanda K. Klevorn
Claire E. Bosarge
BURNS CHAREST LLP

By: /s/ Korey A. Nelson
Korey A. Nelson
Attorneys for Plaintiffs Grace Lau and Christopher Karwowski

**ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), the filer attests that all signatories listed and on whose behalf this filing is submitted, concur in its content and have authorized the filing.

DATED: January 19, 2024

By: /s/ Ekwan E. Rhow
Ekwan E. Rhow