LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GRACE LAU, CHRISTOPHER KARWOWSKI, MELODY KLEIN, MICHAEL MCBRIDE, and AIMEN HALIM, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GEN DIGITAL INC. a corporation, and JUMPSHOT INC., a corporation,

Defendants.

Case No. 3:22-cv-08981-RFL

**DEFENDANTS GEN DIGITAL INC. AND JUMPSHOT INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

Hearing: March 5, 2024
Time: 10:00 a.m.
Location: Courtroom 15—18th Floor
Judge: Hon. Rita F. Lin

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Fail to Rescue Their Wiretap Claims ..... 1

1. Plaintiffs Fail to Rebut the Party Exception ..... 1

2. Plaintiffs Fail to Rebut the Consent Exception ..... 4

3. Plaintiffs Abandon Their CIPA Section 632 Claim ..... 5

B. Plaintiffs Fail to Rescue Their Privacy Claims ..... 5

1. Plaintiffs Abandon Any Storage-Based Claim ..... 5

2. Plaintiffs' Privacy Claims Otherwise Fail ..... 5

C. Plaintiffs Fail to Rescue Their UCL Claim ..... 8

D. Plaintiffs Fail to Rescue Their Larceny Claim ..... 9

E. Plaintiffs Fail to Rescue Their Unjust Enrichment Claim ..... 10

F. Plaintiffs Cannot Evade the Applicable Statutes of Limitations ..... 10

III. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 2

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .................... 8, 9

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................... 3

*Fernandez v. Citigroup Mortg. Loan Tr.*,
2020 WL 6162149 (C.D. Cal. Aug. 17, 2020) .................... 5

*Griffith v. TikTok*,
2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) .................... 7, 8

*Harris v. Garcia*,
734 F. Supp. 2d 973 (N.D. Cal. 2010) .................... 9

*In re Facebook Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .................... 3, 4

*In re Facebook Privacy Litigation*,
192 F. Supp. 3d 1053 (N.D. Cal. 2016) .................... 8

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .................... 4, 5

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .................... 8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................... 7

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .................... 8

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) .................... 9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .................... 1

*Moore v. Centrelake Med Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .......... 8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 5

*Pena v. GameStop, Inc.*,
2023 WL 3170047 (S.D. Cal. Apr. 27, 2023).......... 3

*People v. Avery*,
27 Cal. 4th 49 (2002) .......... 9

*People v. Kwok*,
63 Cal. App. 4th 1236 (1998) .......... 9

*People v. Quiel*,
68 Cal. App. 2d 674 (1945) .......... 9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).......... 4

*Rushing v. Williams-Sonoma, Inc.*,
2022 WL 2833980 (N.D. Cal. July 20, 2022).......... 10

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 4

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 5

*Van Buren v. United States*,
141 S. Ct. 1648 (2021).......... 3

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 7

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019).......... 3, 4

**STATUTES**

CIPA § 632 .......... 5

CIPA § 632(a) .......... 5

**RULES**

Fed. R. Civ. Proc. 8 .......... 6

Fed. R. Civ. Proc. 9(b) .......... 6, 7

# I. INTRODUCTION

Plaintiffs' Opposition provides no reason to upend Judge Tigar's well-reasoned dismissal of the bulk of their claims. And the Opposition abandons any standalone "storage-based" claims, which was the only sliver of their case that survived the dismissal. This Court should thus fully reject Plaintiffs' effort to manufacture a lawsuit based on their own choice to install software to monitor their browsing activity, and dismiss the case entirely—this time with prejudice.

# II. ARGUMENT

## A. Plaintiffs Fail to Rescue Their Wiretap Claims

### 1. Plaintiffs Fail to Rebut the Party Exception

Plaintiffs try to save their wiretapping claims by drawing a specious distinction between Avast and its own software: They contend that *Avast* is an "eavesdropper," even if Plaintiffs knew that its *software*, AOSP, could read all of their browser communications. Opp. 7. The distinction is meaningless because Avast *operates* AOSP, as Plaintiffs' own allegations acknowledge. *See* FAC ¶ 75 (asserting that Defendants "designed and operate AOSP"). That makes Avast a known party to the communications: Plaintiffs knowingly installed software operated by Avast to monitor their browser communications, and thus they knew that Avast had access to those communications. That is also what makes Plaintiffs' attempt to analogize AOSP to a "tape recorder held by [Plaintiffs]" inapt. Opp. 7. AOSP is not alleged to be some kind of standalone recording device that Plaintiffs themselves operate and decide what it collects; it is *software* operated *by Avast* and through which *Avast* "provide[s] … services" to Plaintiffs. FAC ¶ 13.

Plaintiffs cannot plausibly allege that they were unaware that Avast would have access to data processed by its own software. Any reasonable internet user understands that software apps commonly transmit user data to the operator of the software for processing. For example, a Google Maps user knows that when they open the app to view their location, it is not just "the app" that can see that data locally on their device; the app can transmit the data to Google servers to render the desired map. Similarly, a user of the song-recognition app Shazam knows that when they open the app to identify a song, it is not just "the app" that hears the song; the app can transmit data to servers to identify it. *Cf. Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) (a court "need

not presume that the [plaintiff] has never before encountered an app"). Particularly here, an AOSP user would understand the same, given that a user downloading AOSP is specifically warned it can "[re]ad and change all your data on all websites." Rubin Decl. Ex. A at 1; *id.* Ex. B at 1. Plaintiffs' contention that this Privacy Prompt only implies the "software" can access the user's data "locally" on their device, Opp. 9, makes no sense. The obvious point of the notice is that the *external operator* of the software will be able to "read" the user's browsing data; otherwise, there would be no reason for the notice in the first place. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that in evaluating plausibility a court should apply "common sense").

Plaintiffs' allegations about the Norton Extension do not support any different conclusion. Plaintiffs assert they "reasonably expected AOSP would conduct its monitoring locally on Plaintiffs' computers" because a *different* extension—the Norton Extension—typically uses a "local blacklist" method. Opp. 6. As an initial matter, Plaintiffs' allegations only confirm that the Norton Extension *does* intercept URLs, and *does* transmit some (albeit allegedly less) information back to Norton servers. *See* FAC ¶¶ 74-78; MTD II 7. In other words, the allegations confirm that the Norton Extension is not akin to a standalone "tape recorder" but rather is software operated by Norton—and that Norton can access data accessible to the software and ultimately controls which precise data it sends back to its own servers. Users of the Norton Extension thus make Norton a party to their browser communications just as AOSP users do with Avast.

In any event, Plaintiffs allege no factual basis to support their argument that they "reasonably expected AOSP" to work exactly like the Norton Extension. Opp. 6. Plaintiffs do not even allege that prior to using AOSP they knew anything about the Norton Extension or how it worked. Indeed, they elsewhere allege that they "could not have known" about their claims without "special expertise" in the "underlying html coding and the operation of AOSP," which they say they "lack," FAC ¶ 166-67—so it is unclear why or how they would have any similar expertise as to the Norton Extension from which to draw their alleged "reasonable expectation." But regardless, even if they did know how the Norton Extension worked, they have failed to allege why they could reasonably assume AOSP would work the exact same way—or why that would even matter.

Plaintiffs' theory not only lacks any plausible factual basis, but it would have sweeping—and dangerous—implications. Again, it is routine for an app to transmit user data to the software operator's servers for processing. If this kind of functioning were deemed "wiretapping"—even where users knowingly give the app access to the data—innumerable software providers would face crippling liability from a basic functionality of their products. Similarly, Plaintiffs' arguments based on the Norton Extension would transform the wiretapping laws into a coding micromanagement regime: Any time a software developer designed an app to transmit user data to its servers that somehow exceeded the scope of user data transmitted by a competitor app, a plaintiff could allege a "wiretapping" violation, based on the idea that the transmittals were "unnecessary" to the functioning of the app. Particularly given that they are criminal statutes, this is no way to construe the wiretapping laws. *Cf. Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021) (rejecting interpretation of federal hacking statute that would "attach criminal penalties to a breathtaking amount of commonplace computer activity"); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1266-69 (N.D. Cal. 2001) (rejecting wiretapping claim based on allegations that Amazon collected and shared "more information ... than is necessary" to process user purchases).

For all these reasons, Plaintiffs' argument that Avast was not a party to their browser communications fails. Just as the court in *Zak v. Bose Corp.* found no basis for a "distinction" between "the App" and "the corporation" there, 2019 WL 1437909 at *3 n.5 (N.D. Ill. Mar. 31, 2019), Judge Tigar properly made no such distinction here. *See* Order 7 (explaining that "communication of [Plaintiffs'] search information *to Defendants*" was not unknown, and following *Zak* (emphasis added)); *see also Pena v. GameStop, Inc.*, 2023 WL 3170047, at *3-4 (S.D. Cal. Apr. 27, 2023) (rejecting plaintiffs' "attempt to fracture Defendant into different sub-entities" for purposes of applying party exception).

Nor do Plaintiffs' cases suggest any such distinction. Plaintiffs argue *Zak* conflicts with *In re Facebook Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), because *Zak* discussed a broader conception of the "party" exception applicable even to parties unknown to the plaintiff, which *Facebook Tracking* later rejected. Opp. 8. But *Zak* did not apply that broader conception. Instead, it found Bose was "in fact a known participant in" the plaintiffs' communications, as they

had knowingly installed Bose's app to process those communications—just as Plaintiffs did with Avast's software. 2019 WL 1437909, at *4. By contrast, *Facebook Tracking* concerned allegations that Facebook code *embedded in third-party websites* duplicated users' browsing requests "in a manner undetectable by the user," even after users had logged out of Facebook. Order 7 (quoting *Facebook Tracking*, 956 F.3d at 596). Judge Tigar recognized that the facts here are different, because Plaintiffs "knowingly downloaded Defendants' browser extension[]" precisely to analyze their browsing data. *Id.* Plaintiffs' other cases likewise involved third-party code embedded in websites without users' knowledge, and are likewise inapposite. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899-900 (N.D. Cal. 2023) (declining to dismiss wiretapping claim based on third-party software embedded in website that recorded user interactions without their knowledge); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) (same); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (same).

### 2. Plaintiffs Fail to Rebut the Consent Exception

Plaintiffs' arguments on consent are equally flawed. Plaintiffs try to brush aside the Privacy Prompt, asserting that Judge Tigar found it was "too vague to give Plaintiffs[] notice of Defendants' practices." Opp. 8. Judge Tigar held no such thing. He merely noted, in discussing Plaintiffs' "privacy claims *about storage*," that the prompt did not give notice that Avast would *store* Plaintiffs' data. Order 9 n.3. That observation is irrelevant to Plaintiffs' wiretapping claims, because it relates only to downstream use of the information and has nothing to do with consent to *reading* the data—the "interception" relevant for wiretapping liability. *See* MTD II 6. As to that, there is nothing "vague" or "ambiguous" about the Privacy Prompt's statement that AOSP can "read" "all your data on all websites." Rubin Decl. Ex. A at 1; *id.* Ex. B. at 1. And as for Plaintiffs' contention that the reference to "reading" only refers to the software accessing the data locally, again, the contention makes no sense, as there would then be no reason for the warning.

Plaintiffs also try to create their own consent test by suggesting that assent to a detailed online contract is required. Opp. 8-9. There is no such requirement. As Plaintiffs' own cited case explains, "in determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that

their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018).[1] Under that standard, the consent exception clearly applies. *See, e.g.*, *Javier*, 649 F. Supp. 3d at 896-97 (plaintiff's entry of data into web form supported argument that he impliedly consented to website operator collecting his data). Finally, Plaintiffs' passing reference to "pervasive and misleading statements regarding safety and privacy," Opp. 10, is not backed by any factual allegations that would defeat the consent exception. *See* Order 5 n.1, 7 (rejecting argument that names of the extensions or statements about Jumpshot winddown were misleading).

#### 3. Plaintiffs Abandon Their CIPA Section 632 Claim

Because Plaintiffs do not defend, or even mention, their CIPA § 632(a) claim, they have conceded it. *See Fernandez v. Citigroup Mortg. Loan Tr.*, 2020 WL 6162149, at *5 (C.D. Cal. Aug. 17, 2020) ("[A] failure to address an argument in opposition briefing constitutes a concession of that argument."); MTD II at 10-11 (identifying additional substantive defects in § 632(a) claim).

### B. Plaintiffs Fail to Rescue Their Privacy Claims

#### 1. Plaintiffs Abandon Any Storage-Based Claim

Plaintiffs make no effort to defend any standalone storage-based privacy claim—the sole portion of their privacy claims Judge Tigar initially declined to dismiss (but that the parties did not previously brief). *See* Order 8-9. That is no surprise, because binding precedent confirms that mere retention of lawfully obtained data does not impose a cognizable injury sufficient for standing. MTD II 12-13. Plaintiffs try to distinguish those cases by blending all of their theories together, asserting that "Defendants invaded their privacy by surreptitiously intercepting, collecting, storing, using, and sharing their private data." Opp. 10; *see also id.* at 11 (emphasizing that they allege "storage ***and*** transmission" of their data). But this only confirms they are not even trying to bring a claim based on storage alone—which the case law precludes.

#### 2. Plaintiffs' Privacy Claims Otherwise Fail

To the extent Plaintiffs try to resuscitate the portion of their privacy claims that Judge Tigar dismissed, their arguments are futile. As Judge Tigar previously held, "[f]or the same reasons that

---

[1] Plaintiffs' other cited case, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014), is an arbitration dispute that does not concern consent under the wiretapping laws at all.

Plaintiffs have failed to allege violations of the wiretapping statutes," they cannot allege an intrusion of a reasonable expectation of privacy—let alone a highly offensive one. Order 8. Plaintiffs themselves acknowledge that the hallmark of such an intrusion is "where Defendants gain '*unwanted access* to data by electronic or other covert means, in violation of the law or social norms.'" Opp. 12 (emphasis added) (citation omitted). As already explained, Plaintiffs cannot plausibly claim that they did not want Avast to access their browsing data given that they installed Avast's software specifically to monitor their browsing for online safety threats.

Plaintiffs attempt to distract from this point by detailing the types or amounts of information allegedly collected by AOSP, *id.* at 11-16, but those factors are irrelevant given that Plaintiffs permitted access to their browsing data generally. Nor can Plaintiffs establish a reasonable expectation of privacy by arguing that Defendants made "representations" that they would not view or collect browsing data. *See* Opp. 16. Plaintiffs point to Avast's apology for the Jumpshot conduct, *see id.*, but as Judge Tigar found, any promise to wind down Jumpshot "says nothing about changing the way in which the browser extensions operate." Order 5 n.1. Plaintiffs' other cited "representations" include AOSP's name and various marketing statements, none of which say anything about how AOSP works or what data it will or will not collect, as Judge Tigar again already held. *See* Order 7.

Plaintiffs try to escape Judge Tigar's holding by pointing to their new "cookie" allegations, but the only thing Plaintiffs' arguments make clear about these allegations is that they are meant to advance a theory of fraud. Thus, beyond failing Rule 8, *see* MTD II 16-17, the allegations are also subject to the heightened pleading requirements of Rule 9(b), which they do not come close to meeting. Plaintiffs contend that Defendants "affirmatively conceal their transmission of private data … by guiding users to a deceptive cookie banner," Opp. 18, 3, and that their "cookie allegations … show how Defendants intercepted, collected, and transmitted Plaintiffs' private data to third parties without Plaintiffs' knowledge" in a manner that is "surreptitious," *id.* at 14; *see also* FAC ¶ 82 (alleging that "Defendants employ deceptive practices" using cookies). In essence, Plaintiffs' theory seems to be that Defendants somehow fraudulently induced them to install cookies on their computers and then somehow secretly used those cookies to collect and transmit

data about them to third parties. Because it sounds in fraud, the theory falls squarely within Rule 9(b). *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1052 (N.D. Cal. 2018) (applying Rule 9(b) to claim that Facebook used fraudulent prompt to gain access to plaintiffs' data).

Plaintiffs' "cookie" allegations utterly fail to specify the "who, what, when, where, and how" of the scheme being alleged, as Rule 9(b) requires. *Id.*at 1047. For example, their allegations about a "deceptive cookie banner" consist of a mere two sentences, FAC ¶ 82, which fail to identify where (*i.e.*, on what website) the banner supposedly exists, what it looks like, or how "AOSP guides its users" to it. The "how" issue is particularly mysterious given that the FAC otherwise describes AOSP merely as software that reads and analyzes information about the websites that users choose to visit, *id.* ¶ 75; there is no allegation that it can somehow "guide" users to a particular site. Similarly, Plaintiffs' allegation that AOSP "utilizes" the cookies supposedly installed through this (unspecified) banner "to transmit the intercepted, collected, and stored data to third-party advertising partners," *id.* ¶ 97, lacks specifics—again most importantly as to the "how." As Plaintiffs' own case law explains, cookies do not *transmit* anything; they are simply "small computer files" consisting of a "string of text" that can be *read* by a website or its third-party advertising partners *when the user visits the website*. *See Griffith v. TikTok*, 2023 WL 7107262, at *1 (C.D. Cal. Oct. 6, 2023); Opp. 15 (noting that *Griffith* "describ[es] third-party cookie functionality"). So how is AOSP—which, again, is otherwise merely alleged to read the URLs a user types in their browser—supposed to read a user's *cookies* and "utilize" them to "transmit" users' data? Defendants can only guess at what supposed conduct of theirs is at issue—precisely the lack of clarity Rule 9(b) is meant to avoid. *See Williams*, 384 F. Supp. 3d at 1052 (Rule 9(b) requires that allegations "be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong" (quoting *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009)).[2]

[2] Plaintiffs' convoluted allegations also differentiate this case from both *Griffith* and *McDonald v. Kiloo ApS*, notwithstanding their assertion that those cases are "like" this one, Opp. 14-15. The complaints in those cases clearly explained how the defendants' software was *embedded in third-party websites or apps* and thereby enabled them to surreptitiously collect data *from users of those websites or apps*. *See Griffith*, 2023 WL 7107262, at *2 (website developers embedded defendants' software in their websites, which gave defendants access to the cookies installed by

### C. Plaintiffs Fail to Rescue Their UCL Claim

Plaintiffs cannot fix their lack of economic injury needed for a UCL claim. They cite *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 621 (N.D. Cal. 2021) for the proposition that misappropriation of data alone is enough for such injury, *see* Opp. 23, but *Calhoun* has specifically been rejected by more recent California authority. *See Moore v. Centrelake Med Grp., Inc.*, 83 Cal. App. 5th 515, 538 & n.13 (2022) (concluding that "appellants' lost-value-of-PII theory" was "insufficient to support UCL standing" and rejecting *Calhoun* as unpersuasive). Judge Tigar correctly declined to apply *Calhoun* here, *see* Order 11, and other courts have also recognized that the "weight of the authority" cuts against *Calhoun*. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023).[3]

Plaintiffs also claim they "participated in … markets" for their data, Opp. 23-24, but, putting aside the insufficiency of those allegations, they plead no facts that could show their ability to participate in any supposed market has been impaired. Nor do they explain how their alleged intent to participate in a market for their data can be squared with their allegations that their data is private and they do not want anyone to access it. *See* MTD II 18. Plaintiffs' benefit of the bargain theory also fails, as they cannot invoke this theory based on their use of Avast's *free* service. Plaintiffs' citation to *In re Facebook Privacy Litigation*, 192 F. Supp. 3d 1053, 1059 (N.D. Cal. 2016)—which relied on a breach of contract theory to establish *Article III standing*, not economic harm[4]—is inapposite. Opp. 24. Defendants did not breach any promises here, and the generic marketing statements Plaintiffs point to did not create a contract (nor do they argue otherwise).

Finally, Plaintiffs cannot state a UCL claim because their "unlawful" allegations fail, and their "unfair" allegations are duplicative of their substantive claims. *See* MTD II 20.

---

those websites); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1028-30 (N.D. Cal. 2019) (app developers embedded defendants' software in their apps, giving defendants access to user data accessible to the apps). The FAC makes no such allegations—AOSP is not alleged to be embedded in any websites or apps—and it provides no coherent explanation of how AOSP is supposed to install, access, or utilize cookies belonging to third parties.

[3] *Griffith v. TikTok*, on which Defendants rely, *see* Opp. 23, expressly declined to apply *Calhoun* to a UCL claim and dismissed that claim. *See* 2023 WL 7107262, at *10-11.

[4] The court explicitly did not find economic harm and indicated its "skepti[cism] about plaintiffs' ability to establish the value of the benefit allegedly denied." *Facebook Priv. Litig.*, 192 F. Supp. 3d at 1059.

### D. Plaintiffs Fail to Rescue Their Larceny Claim

As Judge Tigar previously held, Plaintiffs' larceny claim fails because, as with their UCL claim, they "have not sufficiently alleged that they lost any property." *See* Order 12. Plaintiffs contend they have fixed that defect in their UCL claim, but they have not, *see supra* at 8, so their larceny claim remains fundamentally flawed too.

The claim also fails for additional reasons. Plaintiffs once again swap in a new larceny theory: having run into trouble with theft by false pretenses (Compl. ¶ 157) and larceny by trick (MTD I Opp. 20), they now try basic larceny (Opp. 20-21); but they cannot meet the elements of that theory either. First, Plaintiffs cannot show that Defendants ever "remov[ed] property from the possession or control of the owner." Opp. 21 (quoting *People v. v. Quiel*, 68 Cal. App. 2d 674, 679 (1945)). At most, Plaintiffs allege mere *copying* of data they continued to independently possess, as their browsing data remained on their own computers. *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1022 (C.D. Cal. 2020) (recognizing in conversion context that "possession of copies of documents" does not deprive the owner of use of property "if the rightful owner retains possession of the original" (citation omitted)); MTD I 20; MTD I Reply 12.[5] Second, Plaintiffs cannot show that Defendants "inten[ded] to steal" their data by "depriv[ing] [them] of a major portion of its value or enjoyment." Opp. 21-22 (quoting *People v. Avery*, 27 Cal. 4th 49, 58 (2002)). Again, Plaintiffs have not plausibly alleged they ever sought value from their browsing data by selling it; but regardless, they fail to plausibly allege how Defendants' conduct deprived them of that value, let alone a "major portion" of it. *See supra* at 8. Third, Plaintiffs cannot show that their data was obtained "by means of trespass"—a larceny element they neglect to mention, *see, e.g.*, *Harris v. Garcia*, 734 F. Supp. 2d 973, 999 (N.D. Cal. 2010)—given that they voluntarily installed AOSP on their computers knowing it could access their browsing data.[6]

---

[5] Although one court has found that copying can give rise to a larceny claim, that holding was based on a case that involved copying of a house key, which deprived the owner of exclusive control of the home. *See Calhoun*, 526 F. Supp. 3d at 635 (citing *People v. Kwok*, 63 Cal. App. 4th 1236, 1249-50 (1998)). Here, Plaintiffs never had exclusive control over their browsing data, as such data is constantly shared with websites, internet service providers, and others.

[6] Plaintiffs also do not deny their theory would turn every privacy dispute into a "theft" claim for treble damages. Plaintiffs' cited cases involved stolen money, *see* Opp. at 22-23, and do not in any way suggest that Section 496 should be extended to the type of claim at issue here.

### E. Plaintiffs Fail to Rescue Their Unjust Enrichment Claim

Plaintiffs fail to meaningfully respond to the unjust enrichment arguments in Defendants' opening brief. *See* Opp. 24-25. They vaguely suggest that Defendants have somehow engaged in "wrongful conduct" as to storage of their data even if Defendants have not misrepresented their storage practices, Opp. 24, but they make no effort to explain what that wrongful conduct was. *See* MTD II 22-23. Likewise, they continue to have no explanation for how any alleged enrichment of Defendants was "at [Plaintiffs'] expense," Opp. 25, as they have not identified any loss they suffered or rights they had infringed in using Avast's free product. MTD II 23.

### F. Plaintiffs Cannot Evade the Applicable Statutes of Limitations

Plaintiffs' attempt to evade the applicable statutes of limitations by invoking fraudulent concealment fails. First, as Judge Tigar held, Plaintiffs' fraudulent concealment allegations assert the same wrong as their substantive claims, which is impermissible. *See* Order 5; *Rushing v. Williams-Sonoma, Inc.*, 2022 WL 2833980, at *8 (N.D. Cal. July 20, 2022) (rejecting fraudulent concealment allegations because claim that company "actively misled" plaintiff was the basis for the lawsuit). Plaintiffs cannot get around this by stating that they are "not bringing any claims on the basis of Defendants' misrepresentations or deceptive conduct." Opp. 18. To the contrary, *all* of Plaintiffs' claims rely on the idea that Defendants supposedly deceived them into believing that Avast would not collect their data. *See, e.g.*, FAC ¶¶ 8-14.

Second, the supposedly fraudulent statements to which Plaintiffs point—the name of AOSP, certain marketing statements, and generic statements about Avast's commitment to privacy—do not imply anything specific about Avast's data collection practices or promise not to collect browsing data. *See* Order 5 n.1; *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 556 (N.D. Cal. 2019) (advertising statements did not constitute affirmative misrepresentations); *see also* MTD I Reply 2-3. For the same reason, Plaintiffs cannot rely on these statements to excuse their failure to investigate their claims with reasonable diligence. *See* Opp. 18.

Accordingly, all of the Jumpshot allegations are untimely and cannot supply the basis for Plaintiffs' substantive claims. Plaintiffs Lau and Karkowski's ECPA, CIPA, and non-statutory privacy claims are subject to dismissal on timeliness grounds as well.

## III. CONCLUSION

Defendants respectfully request that the FAC be dismissed in its entirety, with prejudice.

Dated: February 20, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Serrin Turner*

Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendants Gen Digital Inc. and Jumpshot Inc.*