Ekwan E. Rhow - State Bar No. 174604
erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
mmasters@birdmarella.com
Christopher Jumin Lee - State Bar No. 322140
clee@birdmarella.com
BIRD, MARELLA, RHOW, LINCENBERG. DROOKS. & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter - State Bar No. 234137
jrotter@glancylaw.com
David J. Stone - State Bar No. 208961
dstone@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
Email: info@glancylaw.com

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Amanda K. Klevorn (admitted *pro hac vice*)
aklevorn@burnscharest.com
Claire E. Bosarge (admitted *pro hac vice*)
cbosarge@burnscharest.com
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Telephone: (504) 799-2845

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

GRACE LAU, CHRISTOPHER KARWOWSKI, MELODY KLEIN, MICHAEL MCBRIDE, and AIMEN HALIM, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

GEN DIGITAL INC. a corporation, and JUMPSHOT INC., a corporation,

Defendants.

CASE NO. 3:22-cv-08981-RFL

**MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45**

Judge: Hon. Rita F. Lin
Date: October 1, 2024
Time: 10:00 am

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 45(d)(2)(b)(i), Plaintiffs Grace Lau, Christopher Karwowski, Melody Klein, Michael McBride, and Aimen Halim respectfully move this Court for an order compelling Adobe, Inc. ("Adobe") and META Platforms Inc. ("Meta," and together with Adobe, the "Non-Parties") to comply with the Subpoenas to Produce Documents (the "Subpoenas").

The motion is made on the grounds that (1) the data and documents sought by the Subpoena are highly relevant to Plaintiffs' claims in the instant case, as their existence would confirm that Non-Parties received the data from Defendant, contrary to Defendant's ever-changing position(s) during the discovery process; and (2) Non-Parties' refusal to comply with the Subpoena necessitates an order compelling each of the Non-Parties to produce the requested data and documents.

The Motion is based upon this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities, the Declaration of Jonathan Rotter, the Declaration of Claire Curwick, the Declaration of Atif Hashmi, the Declaration of Zubair Shafiq, accompanying exhibits, all of the papers on file in this action, and upon such other and further evidence or argument that the Court may consider.

DATED: August 26, 2024

Ekwan E. Rhow
Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP

By: */s/ Ekwan E. Rhow*
Ekwan E. Rhow
Attorneys for Movants Grace Lau, Christopher Karwowski, Melody Klein, Michael McBride, and Aimen Halim

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 7

A. The Non-Parties' Objections are Without Merit ........ 7

1. The Subpoenas seek information that is not only relevant and proportional, but also critical, to the needs of the case ........ 7

2. Subpoenas should be enforced where the likely benefit outweighs the burden on the Non-Parties ........ 8

B. The Protective Order is sufficient to address Non-Party concerns ........ 13

C. Defendant lacks standing to object to the Subpoenas directed to the Non-Parties ........ 14

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-02865-EMC (PHK), 2023 WL 8714880 (N.D. Cal. Dec. 17, 2023) ........ 14

*Erickson v. Builder Advisory Group LLC*, No. 22-mc-80094-TSH, 2022 WL 1265823 (N.D. Cal. Apr. 28, 2022) ........ 6

*Foshee v. Mastec Network Solutions, Inc.*, 1:20-cv-00890-AWI-SAB, 2021 WL 5529891 (E.D. Cal. Nov. 24, 2021) ........ 7

*Gonzalez v. Google, Inc.*, 234 F.R.D. 674 (2006) ........ 12, 13

*Gonzalez-Tzita v. City of Los Angeles*, No. CV 16-0194 FMO (Ex), 2018 WL 10111333 (C.D. Cal. Sep. 30, 2018) ........ 10

*Handloser v. HCL Am., Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 4700989 (N.D. Cal. Aug. 13, 2020) ........ 13, 14

*Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007) ........ 9, 10

*Software Rights Archive, LLC v. Google Inc.*, No. 09–017–JJF, 2009 WL 1438249 (D. Del. May 21, 2009) ........ 2, 10

*In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 23-md-03084-CRB (LJC), 2024 WL 3416644 (N.D. Cal. July 14, 2024) ........ *passim*

*Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ........ 1, 2

**Other Authorities**

Fed. R. Civ. P. 26 ........ 6, 7, 13

Fed. R. Civ. P. 45 ........ *passim*

Fed. R. Evid. 401 ........ 5, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

Plaintiffs Grace Lau, Christopher Karwowski, Melody Klein, Michael McBride, and Aimen Halim (together, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion to Compel Compliance with Subpoenas Pursuant to Federal Rule of Civil Procedure 45 (the "Subpoenas") directed to non-parties Adobe, Inc. ("Adobe") and META Platforms Inc. ("Meta," together with Adobe, the "Non-Parties") served on July 12, 2024. The Subpoenas are attached as Exhibits A and B to the Declaration of Claire Curwick ("Curwick Decl."), filed concurrently herewith.

Plaintiffs require prompt compliance with the Subpoenas in order to obtain necessary documents within the remaining schedule. Plaintiffs served Defendant with their First Set of Requests for Production of Documents ("First RFPs") on May 10, 2024. From that point forward, Defendant has been uncooperative and has repeatedly presented Plaintiffs with inaccurate information concerning the collection and transmission of "cookies" by and to Defendant's servers. Plaintiffs will be addressing Defendant's discovery noncompliance through the joint discovery letter process.

Given that the October 7, 2024, deadline to complete fact discovery relating to summary judgement is fast approaching, Plaintiffs need to pursue all avenues of discovery. Through Plaintiffs' written discovery propounded to Defendant and related meet-and-confer efforts and Plaintiffs' own technical work, it remains clear that Defendant has collected user data that is unnecessary to Defendant's products' overall functionality and that the logical purpose of such collection is to send such data to the Non-Parties.

In this context, Plaintiffs are entitled to seek reasonable discovery from the non-parties where Defendant disclaims any transmission whatsoever of the data sought, and where the very existence of such data in the possession, custody, or control of any of the Non-Parties would disprove Defendant's claim. Where, as here, "there is reason to believe that the files of the third party may contain" relevant information, Plaintiffs are entitled to pursue discovery from the Non-Parties. *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-

80129 SI, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008). The Non-Parties argue that this data should first and foremost be sought from Defendant. However, under the circumstances described herein, "completeness of discovery is more likely to be achieved" by "allowing for discovery from both the party and the non-party." *Software Rights Archive, LLC v. Google Inc.*, No. 09–017–JJF, 2009 WL 1438249 at *2 (D. Del. May 21, 2009). Understanding the limitations of Rule 45, Plaintiffs have made every effort to reduce the possible burden on the Non-Parties.[1] But "Rule 45 does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty." *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 23-md-03084-CRB (LJC), 2024 WL 3416644 at *3 (N.D. Cal. July 14, 2024). Particularly because Plaintiffs have reason to believe that Defendant has provided incorrect, misleading, and incomplete information, the Court should order production from the Non-Parties at this time. *See Viacom Int'l, Inc.*, 2008 WL 3876142, at *3.

## II. FACTUAL BACKGROUND

Defendant Gen Digital Inc. offers the internet browser extension Avast Online Security & Privacy ("AOSP"), which tracks, acquires, and stores users' browsing activity along with cookies from Adobe, Meta, Google, Microsoft, and Reddit. *See* ECF No. 47, First Amended Compl. ("FAC"), ¶¶ 6,7, 80; Declaration of Atif Hashmi ("Hashmi Decl."), ¶¶ 6-9. "Cookies" are small data files that websites send to a user's browser to then identify and track that user's browsing activity. A primary question being addressed in this phase of discovery is whether Defendant then transmits those cookies, and associated browsing data, to those third parties.

[1] While the Court was under no obligation to accept it, the parties had worked out a stipulation to provide additional time for discovery without changing the summary judgment briefing deadline. Under that schedule, Plaintiffs would have had additional time to attempt to obtain subpoena compliance without the Court's involvement. However, on August 22, 2024, Defendant withdrew its agreement to that stipulation. *See* Declaration of Jonathan Rotter ("Rotter Decl.") ¶ 7, Ex. C. Plaintiffs also offered to stipulate with each subpoena recipient to stipulate to use of the Court's discovery letter brief process to provide additional time to the subpoena recipients. Google and Reddit accepted that offer. ECF 93, 94. The other subpoena recipients did not, so Plaintiffs are proceeding, as they must, to enforce the subpoenas as to those non-parties at this time. *See* Curwick Decl. ¶ 8, Exs. F, G.

After the Court's ruling on the First Amended Complaint, Defendant first accused Plaintiffs of advancing a nonsensical theory, and threatened Rule 11 sanctions. Declaration of Jonathan Rotter ("Rotter Decl.") ¶ 2. Plaintiffs then showed Defendant the Adobe, Meta, Google, Microsoft, and Reddit cookies. Rotter Decl. ¶ 3. Defendant's next layer of excuse was to claim that, notwithstanding that those cookies in fact existed and had been placed on Plaintiffs' browsers by avast.com servers, they were not transmitted to AOSP at all, and that the only cookies transmitted by AOSP were those embedded in URLs by websites or read from supported websites to provide AOSP's cookie opt-out feature. Rotter Decl. ¶ 4, Ex. A. Plaintiffs then demonstrated that the Adobe, Meta, Google, Microsoft, and Reddit cookies ***were in fact transmitted*** by AOSP back to Defendant's server along with each webpage AOSP visits. Rotter Decl. ¶ 5. Defendant then tried another excuse: that the cookies are automatically appended by the browser, not as a result of anything Defendant did, and again threatened sanctions. Rotter Decl. ¶ 6, Ex. B. But that third layer of excuse is dead wrong: Defendant easily could have configured the cookies using the "domain" attribute during cookie setting such that AOSP would not have sent the cookies back to Defendant along with the user's browsing data. Hashmi Decl. ¶¶ 8-10. And despite Defendant's efforts to lead Plaintiffs to believe otherwise, *see id.* at ¶ 12, Ex. B, Defendant is aware that it could do so, because Defendant ***did modify their cookie configuration in the last few months to do exactly that***. *Id.* at ¶¶ 9-10.

Plaintiffs have independently analyzed the network traffic comprising the cookies exchanged between a user's device that has the AOSP browser extension installed on it (an "AOSP Client Device"), Defendant's servers, and various websites. Plaintiffs' independent network traffic analysis reveals that when an AOSP Client Device visits a website, that device transmits that user's browsing data, including the URL of the accessed website and until very recently various cookie identifiers, to Defendant's servers. *Id.* at ¶¶ 8-10. Before visiting a website, an AOSP Client Device sends a request to the server hosting that website; AOSP intercepts that request and sent the URL of the website and various cookies identifiers to Defendant's servers. *Id.* at ¶ 6. These cookies follow AOSP

users around to all websites they visit, and were sent back to Defendant's servers along with the AOSP user's browsing data. *Id.*

Defendant made a deliberate choice to have these cookies transmitted, and has recently made the deliberate choice to halt transmission of these cookies from Defendant's various subdomains. *Id.* at ¶¶ 7-8. Defendant knows that its servers can be configured to set up or install a cookie on a user's device. The Domain and Path attributes within that configuration define the scope of the cookie, *i.e.* what server those cookies are sent to. *Id.* at ¶ 8. Plaintiffs' testing revealed that Defendant affirmatively set the Domain attribute on its servers to "avast.com," causing the cookies, along with an AOSP Client Device's browsing data, to be sent to Defendant's servers via any subdomain of avast.com including urlite.ff.avast.com. *Id.* at ¶ 9. Defendant acknowledged that their servers were configured this way, although they incorrectly assert that such configuration occurs without any input on their part. *See id.* at ¶ 12, Ex. B. Now, it appears that Defendants have modified their system within the last few months to remove this functionality. *See id.* at ¶¶ 9-10.

Plaintiffs' August 23, 2024 testing revealed that Defendant reconfigured its servers ***in the middle of the discovery phase of this action*** to remove the Domain attribute parameter. *See id.* at ¶¶ 9-10. As a result, Defendant still collects cookie data, but the cookie data is no longer sent to Defendant's servers via its various subdomains, including urlite.ff.avast.com; Defendant's servers **only** receive cookies that are set to be sent to www.avast.com. *Id.* at ¶ 10. Contrary to Defendant's assertion that the browser, not AOSP, embeds the cookies in the network traffic, this comparison confirms that Defendant always had the ability to exclude the cookies at issue from AOSP's transmissions to urlite.ff.avast.com. *Id.* Defendant apparently implemented this configuration within the last few months. *Id.* at ¶ 9. In light of these recent changes, which Defendant not only intentionally omitted, but also expressly contradicted in its most recent correspondence to Plaintiffs, *see id.* at ¶ 12, Ex. B, it is clear that discovery from Defendant alone will be insufficient, and Plaintiffs need discovery from the third parties whose cookies are at issue.

All of the facts set forth herein have a "tendency to make a fact"—Defendant

sending the cookies to Adobe, Meta, Google, Microsoft, and Reddit—"more or less probable than it would be without the evidence." Fed. R. Evid. 401. Defendant's multiple attempts to hide verifiable facts that are part of the chain of proof of Plaintiffs' allegations make Plaintiffs' allegations more probable. And the fact that Defendant has made a series of deliberate and affirmative programming choices that allow it to collect the cookies along with the web browsing data makes it more probable that they are using those cookies and data as Plaintiff has alleged. Companies do not typically incur the costs of collecting, processing, and storing data that they do not use.

Further, the fact that Defendant recently modified its servers to use the "domain" attribute is strong evidence that Defendant was collecting that data intentionally and for a specific purpose, as alleged. Indeed, in the ordinary course, browsing data is not only packaged together and collected with a website's cookies, but can also be collected by servers like Defendant's, and then sent on to another party's server. *See* Declaration of Zubair Shafiq, Ph.D. ("Shafiq Decl.") ¶¶ 7-10. This commonplace arrangement is known in the industry as "server-to-server communication." *Id.* at ¶ 10. While cookies function vis-à-vis transmissions with a specific user's browser, server-to-server communication is meant to share browsing data on the back end between the website's server and another server, like Defendant's. *Id.* at ¶ 10. Plaintiffs' testing suggests that like many companies in this industry, Defendant's servers communicate directly with websites' servers. *Id.* at ¶¶ 16-19. The Non-Parties subpoena recipients are in a position to provide what was actually sent by Defendant.

On July 12, 2024, Plaintiffs served the Subpoenas on the Non-Parties seeking documents evidencing that Defendant in fact transmitted to the Non-Parties user data collected by the Extensions. Curwick Decl. ¶ 2. The existence of such documents in the possession, custody, and control of Non-Parties would demonstrate that Defendant has in fact sent such data to the Non-Parties. Plaintiffs carefully limited the scope of the Subpoenas to avoid unnecessary burden on the Non-Parties. The Subpoenas contain only five Requests for Production of Documents ("Requests"). These Requests seek only

relevant, proportional documents so as to minimize the burden on Non-Parties.

The Requests seek (1) data that Non-Parties received from Avast, other than web browsing information from the avast.com website; (2) documents and communications relating to such data received from Avast; (3) documents sufficient to show Non-Parties' representations to and agreements with Avast relating to Non-Parties' receipt of such data; (4) documents sufficient to show Non-Parties' past and present policy(ies) or practice(s) relating to the use, retention, and/or destruction of such data; and (5) documents sufficient to show Non-Parties' purposes for its cookies in this context. *See* Curwick Decl., Exs. A, B. In other words, the Subpoenas seek the data that the Complaint alleges, but Defendant denies: that Defendant sends to third parties user browsing data from sites other than avast.com.

## III. LEGAL STANDARD

Pursuant to FRCP 45, parties may issue subpoenas to command the production of document from non-parties. Fed. R. Civ. P. 45(a)(1)(A)(iii). FRCP 26(b) and 34 define the scope of discovery pursuant to FRCP 45. *See* Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970). FRCP 26(b)(1) provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "The appropriate forum for a motion to enforce a third-party subpoena is in the district where compliance is required." *Erickson v. Builder Advisory Group LLC*, No. 22-mc-80094-TSH, 2022 WL 1265823 at *2 (N.D. Cal. Apr. 28, 2022) (citing *Music Grp. Macao Comm. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015)).

Importantly, "[t]here is . . .'no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession.'" *In re Uber Technologies, Inc.,* 2024 WL 3416644, *3 (citing *Viacom*, 2008 WL 3876142, at *3). FRCP 45 requires that Plaintiffs take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* Plaintiffs have taken such steps by propounding a mere five Requests to the Non-Parties, severely limiting their scope, providing additional

time to respond, and meeting and conferring.

## IV. ARGUMENT

### A. The Non-Parties' Objections are Meritless

There is significant overlap in Non-Parties objections to the Subpoenas; none have merit. The Non-Parties all object on the following grounds: (i) the Subpoenas seek documents and information that are neither relevant nor proportional to the needs of the case; (ii) Plaintiffs failed to reduce the burden on the Non-Parties, and/or the Subpoenas are premature on that same basis; (iii) the Subpoenas seek information that is highly confidential, proprietary, and/or that contains trade secrets; (iv) the Subpoenas seek personal or private information of individuals other than Plaintiffs, *i.e.* members of the putative class; (v) the Relevant Time Period, as that term is defined in the Subpoenas, is overbroad and exceeds the statute of limitations; and (vi) the Subpoenas seek otherwise privileged information.

#### 1. The Subpoenas seek information that is not only relevant and proportional, but also critical, to the needs of the case

Under FRCP 26(b)(1) "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Foshee v. Mastec Network Solutions, Inc.*, 1:20-cv-00890-AWI-SAB, 2021 WL 5529891 at *2 (E.D. Cal. Nov. 24, 2021) (citing Fed. R. Evid. 401). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (internal citations omitted).

Here, the Subpoenas seek information that is plainly relevant to Plaintiffs' claim for invasion of privacy. "In analyzing reasonable expectations of privacy, courts look to the totality of the circumstances" and "'consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities.'" ECF No.

64, Apr. 3, 2024 Order re: Mot. to Dismiss, at 4 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020)). This Court found that Plaintiffs have plausibly alleged "that a user reasonably would have expected that ASOP would not engage in mass collection of their data to be sent to others," noting that "California courts have rejected the notion that disclosure to a third party automatically nullifies any expectation of privacy." *Id.* at 5, n.2.

The data and information sought by the Subpoenas, and indeed the mere fact that the Non-Parties possess such data, "has a tendency to make a fact," *i.e.* that Defendant invaded upon Plaintiffs' reasonable expectation of privacy and intruded upon seclusion by collecting, storing, and sending their internet browsing data to third parties, "more or less probable than it would be without the evidence." Fed. R. Evid. 401. The determination of this action hinges on proving that Plaintiffs' data was indeed transmitted by Defendant, and on testing Defendant's defenses to that claim.

Defendants have claimed that their collection of the cookie data was "happenstance," Hashmi Decl., Ex. B at 5, but Plaintiffs maintain that in collecting those URLs, Defendant could have excluded the Non-Parties' cookies from the network traffic back to Defendant's servers. Defendant chose not to do so. Then, Defendant reconfigured its servers in the last two months to exclude those cookies, and failed to disclose that information to Plaintiffs. Defendant's fact-based defenses and blanket assertions that they do not transmit user browsing data to third-parties should be tested and developed at this stage of the litigation. If the Non-Parties possess this data, that fact bears on both Plaintiffs' claim and Defendant's defenses to that claim, and is therefore plainly relevant and proportional to this dispute where the limited burden on the Non-Parties does not outweigh the importance of the privacy issues at stake and the importance of discovery in resolving this impasse.

**2. Subpoenas should be enforced where the likely benefit outweighs the burden on the Non-Parties**

Non-Parties contend that the Requests are unduly burdensome on two grounds: (1)

they seek information in the exclusive possession, custody, or control of Defendant; and (2) they require Non-Parties to search for documents and information that are more readily available from Defendant. In this specific context, neither has merit.

First, at least two of the Requests expressly seeks documents and information in the exclusive possession, custody, or control of the Non-Parties. Request for Production No. 4 seeks "DOCUMENTS sufficient to show YOUR past and present policy(ies) or practice(s) RELATING TO YOUR use, retention, and/or destruction of DATA YOU have received from AVAST other than web browsing information from the avast.com website," and No. 5 seeks "DOCUMENTS sufficient to show YOUR purposes for YOUR COOKIES on AOSP users' browsers and receiving DATA from AVAST other than from the avast.com website." *See* Curwick Decl., Exs. A, B. Plaintiffs cannot obtain this information from Defendant.

Second, the Federal Rules and the Scheduling Order contemplate non-party discovery and party discovery proceeding contemporaneously, not in separate stages. This district has very recently held that "Rule 45 does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty." *In re Uber Technologies, Inc.*, 2024 WL 3416644 at *3. "There is . . . 'no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession.'" *Id.* at *3 (quoting *Viacom*, 2008 WL 3876142, at *3). While Rule 45 seeks to avoid undue burden on non-parties in complying with subpoenas, Adobe's and Meta's own cases provide that this burden is outweighed where Plaintiffs are able to make "a convincing showing that the subpoena is likely to yield unique and material evidence from the third party[.]" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007). Plaintiffs have demonstrated a critical need for this information, and Defendant's conduct in the discovery phase of this litigation amplifies that need. As the Court recently explained:

> the court explained that when a requesting party seeks responsive documents from a nonparty which belong to a set of records that are not well-defined, i.e., whose completeness is not readily verifiable, and which a party may

> have never possessed or may no longer possess, requesting such information from the nonparty may be appropriate where the information is relevant and the request is not unduly burdensome.

*In re Uber*, 2024 WL 3416644 at *6 (quoting *Viacom*, 2008 WL 3876142, at *2. The Non-Parties' objections are contrary to Rule 45, which "does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty." *Id. See also Software Rights Archive, LLC*, 2009 WL 1438249 at *2 ("[T]here is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party." (citing *Coffewille Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*, No. 08–00017, 2008 U.S. Dist. LEXIS 91224, at *5 (E.D.Ark. Nov. 6, 2008); *Viacom*, 2008 WL 3876142, at *3.)).

Here, Defendant disclaims the existence of such documents, *see* Rotter Decl., ¶ 2, Ex. A; Hashmi Decl. Ex. B at 5, while Non-Parties simultaneously claims that such documents are more easily obtainable from Defendant. The Non-Parties' objections therefore suggest that such documents do in fact exist. Where Plaintiffs have made "a convincing showing that the subpoena is likely to yield unique and material evidence from the third party," the likely benefit of the subpoena plainly outweighs the limited burden on the Non-Parties. *Nidec Corp.*, 249 F.R.D. at 577. As set forth above, "the information in the possession of the [Non-Parties] appears to be . . . more accurate than the information in the possession of [Defendant]." *Gonzalez-Tzita v. City of Los Angeles*, No. CV 16-0194 FMO (Ex), 2018 WL 10111333 at *2 (C.D. Cal. Sep. 30, 2018) (citing *Viacom*, 2008 WL 3876142 at *3).

Moreover, Plaintiffs have propounded only five Requests to the Non-Parties. Such Requests are reasonably tailored to capture only those documents that would tend to reflect or bear on Defendant's transfer of AOSP user data to each of the Non-Parties. Defendant apparently disclaims the existence of these documents whatsoever, while the Non-Parties apparently believe that such documents are easily obtainable from Defendant. Finally,

Plaintiffs have conferred with the Non-Parties to explore narrowing the already narrow Requests so as to avoid unduly burdening the Non-Parties. *See* Curwick Decl., ¶¶ 5-8. The burden here at most involves searching data repositories for a limited set of parameters indicating that a particular transmission is received from Defendant's servers. Nonetheless, Non-Parties have failed to comply with the Subpoenas.

In its responses and objections to Plaintiffs' subpoena, Adobe stated that "based on current information, it received no Data from Avast connected to AOSP on or after December 19, 2020 and therefore has no materials responsive to this Request in its possession, custody, or control." Curwick Decl., Ex. D, at 6-7, 9-11. However, at Plaintiffs' and Adobe's meet and confer regarding Plaintiffs' subpoena and Adobe's responses and objections, Adobe's counsel further qualified Adobe's response. Curwick Decl. ¶ 8. There, Adobe's counsel represented that Adobe receives data from Defendant Gen Digital, but not from Avast or the avast.com website. *Id.* Plaintiffs' subpoena's Request No. 1 explicitly seeks the data Adobe has admitted is within its possession, custody, or control: "ALL DATA YOU have received from AVAST other than web browsing information from the avast.com website." Curwick Decl., Ex. B, at 11. Adobe should be compelled to produce web browsing information from websites other than avast.com that Gen Digital transmits to it. As such, Adobe should also be compelled to search for and produce information responsive to Plaintiffs' Requests No. 2, 4 ,and 5, which Adobe objected to on the basis that it does not receive the data that it later admitted that it has within its possession, custody, or control.

Likewise at the meet and confer, Adobe's counsel represented that Gen Digital websites, but not Avast websites, use Adobe services. Curwick Decl. ¶ 8. First, Adobe's claim conflicts with the fact that Plaintiffs observed the Adobe cookies deployed on the avast.com website and in the web browsing traffic sent to Defendant via AOSP. And if, as Adobe claims, it is getting that data from Gen Digital but not from the avast.com website, then that is proof that Gen Digital is sending it via server-to-server communication. This suggests that Gen Digital has in fact agreed to share relevant data with Adobe. Adobe did

not deny the existence of agreements like this in its responses and objections to Plaintiffs' subpoena. Nor did it do so in its meet and confer with Plaintiffs. *Id.* Instead, as explained above, Adobe has only stated that it receives data from Gen Digital, just (again, improbably) not from Avast or avast.com websites, which again, is consistent with server-to-server communication of that data from Gen Digital to Adobe. *See generally* Shafiq Decl. Gen Digital's data sharing agreements with Adobe are responsive to Plaintiffs' subpoena's Request No. 3: "ALL DOCUMENTS sufficient to show YOUR representations to and agreements with AVAST RELATING TO YOUR receipt of DATA from AVAST other than web browsing information from the avast.com website." Curwick Decl., Ex. B, at 11. Adobe should be compelled to produce its data sharing agreements with Gen Digital.

In its responses and objections to Plaintiffs' subpoena, Meta likewise did not state that it does not receive data from Defendant Gen Digital or that it does not have agreements with Defendant Gen Digital related to receiving web browsing data. *See* Curwick Decl., Ex. C. At Plaintiffs' and Meta's meet and confer regarding Plaintiffs' subpoena and Meta's responses and objections, Meta's counsel represented that Plaintiffs did not provide sufficient information in their subpoena to allow Meta to determine whether performing a search for responsive information would be feasible. Curwick Decl. ¶ 5. There, too, Meta did not deny that it has received responsive data from Gen Digital or that Meta has or has had an agreement with Gen Digital in which Meta would receive web browsing data from Gen Digital. *Id.* Plaintiffs later provided more information to Meta to assist it in conducting a search for information responsive to Plaintiffs' subpoena. Curwick Decl., Ex. E at 3-4. In response, Meta's counsel again represented that the information Plaintiffs provided was insufficient for Meta to determine whether a search for responsive information would be feasible. Curwick Decl., Ex. E at 2. To date, Meta has never denied that it has received data from Gen Digital responsive to Plaintiffs' requests or that Meta has or has had an agreement with Gen Digital in which Meta would receive web browsing data from Gen Digital.

Further, Meta has failed to satisfy its obligations under the subpoena issued to it. Meta has admitted that it has not performed a reasonable search for information that may be responsive to Plaintiffs' requests. Instead, Meta maintains that it cannot search for potentially responsive information because it cannot determine whether a search is feasible. *Id.* This is no excuse for a highly sophisticated party like Meta. *See e.g. Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 682-83 (2006) (finding that Google failed to establish undue burden where the Government provided search terms and where Google "ha[d] not represented that it is unable to extract the information requested from its existing systems."). Meta should be compelled to perform a search using the information Plaintiffs have provided to it and produce responsive information to the extent it exists. And the request for contracts and policies does not require a sophisticated search at all.

The Non-Parties should be required to comply with the subpoenas because (1) Defendant disclaims the existence of such documents entirely, (2) Plaintiffs have presented evidence that Defendant packaged cookies together with browsing data, and that transmission of that package typically occurs in the industry in server-to-server communication, and (3) the Non-Parties do not disclaim receiving the cookies transmitted from Defendant's servers. Plaintiffs are entitled to assess all of the information necessary to evaluate the truth and validity of Defendant's denial.

**B. The Protective Order is sufficient to address Non-Party concerns**

Rule 45 contemplates issuance of a protective order to address a non-party's concerns relating to burden or relevance of the documents and information sought by the Subpoenas. *See Handloser v. HCL Am., Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) (internal citations omitted). This Court has already addressed the issue in *In re Uber*, 2024 WL 3416644 at *3, holding that "a party may seek to protect [its interests related to relevance and burden] through a protective order pursuant to Rule 26(c) regarding a subpoena issued to a nonparty if it believes its own interest is jeopardized by the discovery sought from that nonparty." The protective order in this case has specific designations for trade secret, proprietary, or commercially

sensitive information as Attorney's Eyes Only ("AEO"). Moreover, the Subpoenas do not seek specific personal identification information from users other than Plaintiffs, and to the extent such data is collected, it is afforded the same protections under the protective order. Therefore, the protective order should sufficiently address both Defendant's and the Non-Parties' alleged concerns regarding confidentiality and disclosure of the requested source code in particular.

**C. Defendant lacks standing to object to the Subpoenas directed to the Non-Parties**

To the extent that Defendant objects to the Subpoenas based on relevance or burden, Defendant lacks standing to do so. *See* Curwick Decl. ¶ 9, Exs. H, I. Generally, a party lacks standing to move to quash a subpoena served upon a nonparty absent "a personal right or privilege with respect to the documents requested in the subpoena." *Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-02865-EMC (PHK), 2023 WL 8714880 at *3 (N.D. Cal. Dec. 17, 2023) (citing *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 WL 2499710, at *5 (collecting cases); *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012)); *see also Handloser*, 2020 WL 4700989, at *4 ("[A] party has no standing to move to quash or for a protective order on the grounds that a subpoena seeks irrelevant information or would impose an undue burden on the non-party." (collecting cases)). Defendant should not be permitted to disclaim the existence of the documents sought from Non-Parties while also asserting a personal right or privilege with respect to the requested documents where there is a Protective Order in place to address those concerns.

Indeed, "[t]he rule that [Defendant] lacks standing to object on the grounds of burden or irrelevance . . . has particular force in this situation," where Non-Parties "have asserted their own objections to their respective subpoenas." *Kaiser Foundation Health Plan, Inc.*, 2023 WL 8714880, at *3-4. Non-Parties should be afforded the opportunity to "successfully negotiate a resolution of such issues with Plaintiffs in their direct negotiations." *Id.* at *3. Likewise, Plaintiffs are entitled to an opportunity to appropriately

address Non-Parties' concerns, which is "precisely what Rule 45 requires." *Id.* at *4 .

Finally, like the rest of its conduct to date, Defendant's objections to the subpoenas suggest that Defendant in fact sends the cookies to the third parties as alleged. *See* Curwick Decl. ¶ 9, Exs. H, I. If not, why go to great lengths to stop the third parties from responding?

**V. CONCLUSION**

For the foregoing reasons, the Motion to Compel Compliance with Subpoenas Pursuant to Federal Rule of Civil Procedure 45.

DATED: August 26, 2024

Ekwan E. Rhow
Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP

By: */s/ Ekwan E. Rhow*
Ekwan E. Rhow
Attorneys for Movants Grace Lau, Christopher Karwowski, Melody Klein, Michael McBride, and Aimen Halim