LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Gen Digital Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GRACE LAU, CHRISTOPHER KARWOWSKI, MELODY KLEIN, MICHAEL MCBRIDE, and AIMEN HALIM, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GEN DIGITAL INC. a corporation,

Defendants.

Case No. 3:22-cv-08981-RFL-SK

**DEFENDANT GEN DIGITAL INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45**

Hon. Sallie Kim

## I. INTRODUCTION

Plaintiffs move to compel the production of documents from third parties Adobe and Meta that they have every reason to know do not exist. If the documents did exist, Gen Digital would have them. But they do not exist, because the Gen Digital brand at issue—Avast—does not do what Plaintiffs allege, as Gen Digital has repeatedly explained to Plaintiffs. Gen Digital submits this opposition to correct the factual mischaracterizations in Plaintiffs' motion and to otherwise oppose it, as Plaintiffs cannot meet the standard for seeking discovery from third parties, and moreover the discovery they seek is overbroad on its face. The motion should be denied.

## II. BACKGROUND

This case concerns a browser extension known as Avast Online Security & Privacy ("AOSP"), which users can install on their browsers to scan the web pages they visit for malicious threats. Plaintiffs' claims originally focused on allegations that AOSP unlawfully "intercepts" the URLs of web pages users visit, but the Court dismissed those allegations—twice—as nonsensical, given that AOSP's very purpose is to analyze those web pages. MTD I Order, Dkt. 45 at 13; MTD II Order, Dkt. 64 at 1-2. The only allegations that survived dismissal were an alternative theory pled in the Amended Complaint that AOSP somehow uses "cookies" to collect and transmit users' browsing histories to third parties for advertising purposes—a theory the Court acknowledged was "not a model of clarity" even while allowing it to proceed. MTD II Order at 4-5.

While Plaintiffs misleadingly suggest that Gen Digital's position has shifted over time, Mot. at 2-6, in fact it has consistently maintained that it does not engage in the alleged conduct. As Gen Digital stated in the Joint Case Management Statement, "AOSP does not use third-party cookies in any way, let alone to transfer user browsing data to third-party advertisers." Dkt. 73 at 5. Gen Digital stated that it "welcome[d] []appropriately tailored discovery, which will confirm that [Gen Digital] do[es] not engage in the conduct alleged." *Id.* at 9.[1] Plaintiffs' discovery has been far from tailored—they have promulgated over ***one hundred different discovery requests*** on

---

[1] This tailored approach was endorsed by the Court, which stated that any discovery not relevant to the "theory that the AOSP Program was sending data or selling information that it was gathering to third-party advertisers via [] cookies … obviously is beyond the scope of permissible discovery." Tr. dated May 1, 2024, Dkt. 80 at 3:19-4:4.

Gen Digital, nearly all of which are overbroad or wholly irrelevant—but in responding Gen Digital has reiterated, again and again, that no responsive documents would exist if the requests were appropriately narrowed, because Avast does not engage in the conduct alleged. In particular, Gen Digital has categorically stated that it "has no documents concerning its alleged 'use' of third-party advertising cookies 'associated with AOSP,' because Gen Digital does not in fact use any third-party advertising cookies in connection with AOSP, either to obtain information from users or to transmit data to third-party advertisers." Decl. of Serrin Turner ("Turner Decl.") ¶ 5. Following a meet-and-confer, Gen Digital clarified further that during the relevant timeframe it has not shared browsing data from AOSP with third-party advertisers through *any* means—whether via "cookies" or otherwise—and thus has no documents constituting or concerning such shared data. *Id.* ¶ 7.

Not only has Gen Digital consistently denied engaging in the alleged conduct (or having documents relating to it), it has also provided detailed information to Plaintiffs to explain away their confused "cookie" theory. Notably, it took time to first get Plaintiffs to simply articulate what their theory even was: It was "not a model of clarity" in the Amended Complaint, so Gen Digital had to use contention interrogatories to require Plaintiffs to spell it out. *Id.* ¶ 8. After initially objecting to these interrogatories, Plaintiffs ultimately produced supplemental responses on July 12, 2024, which included a substantive explanation of their contentions. Plaintiffs stated that, when they looked at the communications being sent through their browsers from AOSP to urlite.ff.avast.com—which is an internal Avast service used to check whether a website is malicious (the "URLite Service")—Plaintiffs saw cookies included in the message headers. *Id.* ¶ 11. Plaintiffs assumed that this cookie data was "embedded" in the communications by AOSP, and they further believed, *based on "information and belief*," that Avast pairs unique identifiers in the cookies with the user's browsing activity collected through AOSP, and shares that data with third-party advertisers, who use the data in turn for targeted advertising. *Id*.

Finally armed with these details, Gen Digital was able to explain to Plaintiffs what they were seeing—and what they were confused about. Gen Digital did so initially on a call with Plaintiffs' counsel on July 23, and later in a detailed follow-up letter sent on August 16. Declaration of Atif Hashmi, Dkt. 97-2, Exhibit B (the "August 16 Letter"). Specifically, the August 16 Letter

explained that "the cookie data included in the headers of the[] transmissions [observed by Plaintiffs] is (a) not requested by [AOSP] and (b) not used after the transmissions are received by Avast servers." August 16 Ltr. at 1.

First, the August 16 Letter explained that the cookie data at issue is not requested by the AOSP application but is instead automatically appended *by the user's browser*—simply as a byproduct of how cookies work. Every cookie is associated with a domain, such that, whenever the browser communicates with that domain, it automatically appends any cookies associated to that domain to the communications, as a header to the message.[2] For example, if a cookie's domain is set to "example.com," then any time a user visits the example.com website, the browser will automatically include the cookie in the header of any communications it sends to example.com. Likewise, if the user visits a subdomain of example.com (e.g., "shop.example.com"), the browser will likewise append the cookie to the user's traffic. That is all that is happening here: Plaintiffs have evidently visited the Avast website and certain cookies used in operating the website were downloaded to their browsers, the domain for which is set to "avast.com." The only reason these cookies are being included in AOSP's communications to the URLite Service is that (a) AOSP is a browser extension, so it communicates through a user's browser, and (b) the URLite Service resides on an avast.com subdomain—urlite.ff.**avast.com**. Accordingly, when the browser sends the communication, it sees the communication is being sent to a server on the avast.com domain, checks for any cookies stored on the browser that are associated to that domain, finds the cookies in question, and appends them to the traffic. *See* Aug. 16 Ltr. at 3-5. Nothing *in the AOSP code* is calling for the cookies to be sent to the URL Service. These are all facts that should have been clear to Plaintiffs from reasonable investigation based on publicly available facts. *Id.*[3]

Second, the August 16 Letter explained that "Avast does not do anything with [this cookie data] when it is received by the URLite Service." *Id.* at 5. While the data is *sent* to the URLite

---

[2] A "header" is a form of metadata separate from the body of the communication, which is referred to as the "payload." Here, the payload is simply the URL sent to the URLite Service for analysis.

[3] Gen Digital explained that Plaintiffs could look at the AOSP code stored on their devices—which is publicly accessible—to confirm that the AOSP application itself does not make any call to the cookie data or otherwise cause it be transmitted to the URL service. *See id.* at 4-5.

Service, the URLite Service does not *ingest* it in any way. To demonstrate this, Gen Digital provided Plaintiffs with all portions of the URLite code reflecting any collection of header data from the communications it receives. None of these portions reference the cookie header; only other, unrelated headers are used by the code. In other words, "[t]he cookie data is simply ignored by the URLite Service, as it has nothing to do with the functioning of AOSP." *Id*. Plaintiffs' contentions otherwise have always rested on nothing more than their own unfounded conjecture.

In the August 16 Letter, Gen Digital offered to provide Plaintiffs with a sworn statement attesting to all of the above. *Id.* at 6. Plaintiffs did not take up this offer, but Gen Digital is submitting sworn declarations on the above with this motion, to leave no doubt about what the facts are. *See* Declaration of Jan Havelka; Declaration of Iskander Sanchez-Rola.

Plaintiffs try to muddle the facts in their motion, but none of their points are cogent. They argue that it is "more or less probable" that Avast uses cookies to share browsing data with third parties, because "[c]ompanies do not typically incur the costs of collecting, processing, and storing data that they do not use." Mot. at 5. But Plaintiffs simply disregard Gen Digital's categorical denials that the URLite Service does *anything* with the cookie data appended to communications it receives from AOSP—meaning it does not "collect," "process," or "store" the cookie data in any way. *See* August 16 Letter at 5, 7; *see also* Havelka Decl. ¶ 5. Otherwise, Plaintiffs argue that Avast must have intended cookies to be appended to data sent to the URLite Service, because it could have could have configured the cookies only to be sent to servers on www.avast.com, not to avast.com *sub*domains like the one the URLite Server is on. Mot. at 4. But this ignores that the Avast website, like many websites, includes multiple subdomains (*e.g.*, forum.avast.com, store.avast.com, blog.avast.com), and some cookies may need to function across those various subdomains. It is common practice in such situations to set up a cookie so that all subdomains are covered. *See* Sanchez-Rola Decl. ¶ 10. That might mean the cookies could be sent to a server on a subdomain that does not actually need them—as with the URLite Service—but that is of no moment if the server does not do anything with them—as with the URLite Service. *See id*.[4]

[4] Plaintiffs also contend that Avast recently changed its practice so that its website cookies are now configured only to be sent to www.avast.com, Mot. at 4, but this assertion is baseless, in addition to being immaterial. *See id*. ¶ 11.

**III. ARGUMENT**

Particularly given the above facts, the motion to compel should be denied, for two reasons.

First, to the extent Plaintiffs' subpoenas seek any theoretically relevant records—including browsing and cookie data purportedly collected through AOSP and sent by Avast to Adobe and Meta—Plaintiffs cannot show why such records, *if they existed*, could not be obtained from Gen Digital as easily as they could from Adobe and Meta. *See Airwair Int'l Ltd. v. Zoetop Bus. Co., Ltd.*, 2021 WL 6091263, at *2 (N.D. Cal. Dec. 23, 2021) ("[A]ny party seeking third-party discovery must be able to explain not only why that discovery is relevant and proportional, but also why it could not be obtained from a party to the litigation."). The problem for Plaintiffs is that these records do *not* exist, because Avast does not do what they claim. Indeed, Plaintiffs have already served multiple document requests on Gen Digital encompassing the records sought, and Gen Digital has repeatedly told Plaintiffs that it has nothing responsive. Plaintiffs are not entitled to burden third parties like Meta and Adobe with searching for the same records when the only reason it has not been able to obtain them from Gen Digital itself is that they do not exist.

Second, the subpoenas are overbroad in certain respects. Among other things, as explained in Adobe's objections, due to the way in which the subpoenas define "DATA" and "AVAST," they technically cover data sent to Adobe as a result of Gen Digital's use of Adobe cookies on the Gen Digital website (gendigital.com), even though this data has nothing whatsoever to do with AOSP or Plaintiffs' claims. *See* Declaration of Claire Curwick, Dkt. 97-1, Exhibit D at 5-6. Further, the subpoenas seek records dating back to January 1, 2019, even though the Court has already held that conduct prior to December 19, 2020 is outside the applicable statute of limitations, *see* MTD II Order at 9. The subpoenas are therefore not narrowly tailored in a manner appropriate for third-party discovery. *See Airwair*, 2021 WL 6091263, at *2 ("[A]n important prerequisite for engaging in any kind of third-party discovery is to avoid saddling those third parties with an undue burden.").[5]

---

[5] Because the overbreadth of the Subpoenas means they implicate Gen Digital's confidential and proprietary information—specifically, cookie data sent to Adobe from the Gen Digital website—Gen Digital has standing to object to them. *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 2013 WL 1508894, at *2 (N.D. Cal. Apr. 10, 2013) (finding company had standing with respect to "confidential and proprietary information").

## IV. CONCLUSION

For the foregoing reasons, the motion to compel should be denied.

DATE: September 6, 2024

LATHAM & WATKINS LLP

By: /s/ *Serrin Turner*
Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Gen Digital Inc.*