1  Laurie Edelstein (Bar No. 164466)
Paige Zielinski (Bar No. 318639)
2  JENNER & BLOCK LLP
525 Market Street, 29th Floor
3  San Francisco, California 94105
Telephone: (628) 267-6800
4  ledelstein@jenner.com
pzielinski@jenner.com
5
*Attorneys for Non-Party Meta Platforms, Inc.*
6

7

**UNITED STATES DISTRICT COURT**
8  **NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**
9

10  GRACE LAU, CHRISTOPHER KARWOWSKI,      Case No. 3:22-cv-08981-RFL-SK
MELODY KLEIN, MICHAEL MCBRIDE, and
11  AIMEN HALIM, individually and on behalf of all   **NON-PARTY META PLATFORMS,**
others similarly situated,                         **INC.'S MEMORANDUM OF POINTS**
12                                                  **AND AUTHORITIES IN OPPOSITION**
Plaintiffs,                          **TO PLAINTIFFS' MOTION TO**
13                                                  **COMPEL**
v.
14
GEN DIGITAL, INC. and JUMPSHOT, INC.,   Judge:   Hon. Rita F. Lin
15                                                  Magistrate Judge:   Hon. Sallie Kim
Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

---

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

        A.      Plaintiffs' Putative Class Action Complaint and Discovery from Gen Digital .......................................................................................................... 2

        B.      Plaintiffs' Subpoena to Meta ............................................................... 4

        C.      Meta's Need for Additional Information to Search for Data ................................. 7

        D.      Plaintiffs' Motion to Compel Compliance............................................................. 7

LEGAL STANDARD................................................................................................................. 8

ARGUMENT............................................................................................................................. 9

I.      PLAINTIFFS FAIL TO SHOW THEY ARE ENTITLED TO PURSUE DISCOVERY FROM THIRD PARTIES SUCH AS META............................................. 9

II.     PLAINTIFFS' REQUESTS IMPOSE AN UNDUE BURDEN ON META................... 12

III.    PLAINTIFFS HAVE FAILED TO CONFER IN GOOD FAITH ................................. 13

CONCLUSION......................................................................................................................... 15

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Athalonz, LLC* v. *Under Armour, Inc.*,
No. 23 Misc. 80324, 2024 WL 628846 (N.D. Cal. Feb. 14, 2024) ................................... 9, 10, 11

*Bahena v. Ramirez*,
No. 22 Civ. 3039, 2024 WL 3522054 (N.D. Cal. July 23, 2024)................................... 13, 14

*Dart* v. *Indus. Co., Inc.* v. *Westwood Chem. Co., Inc.*,
649 F.2d 646 (9th Cir. 1980) ............................................................... 8, 9

*Convolve, Inc.* v. *Dell, Inc.*,
No. 10 Civ. 80071, 2011 WL 1766486 (N.D. Cal. May 9, 2011) ............................... 9, 13

*Fed. Trade Comm'n* v. *DIRECTV, Inc.*,
No. 15 Civ. 1129, 2015 WL 8302932 (N.D. Cal. Dec. 9, 2015) ............................... 9, 13

*Glass Egg Digital Media* v. *Gameloft, Inc.*,
No. 17 Civ. 4165, 2020 WL 906714 (N.D. Cal. Feb. 25, 2020)....................................... 10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
No. 09 Civ. 1967, 2012 WL 4846522 (N.D. Cal. Aug. 7, 2012)....................................... 8

*Maplebear Inc.* v. *Uber Techs., Inc.*,
No. 21 Misc. 80007 (SK), 2021 WL 1845535 (N.D. Cal. Mar. 23, 2021) ................... 9

*Moon* v. *SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005)................................................................... 13

*Nidec Corp.* v. *Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007)................................................................... 9

*Software Rights Archive, LLC* v. *Google Inc.*,
No. 09 Misc. 017, 2009 WL 1438249 (D. Del. May 21, 2009)....................................... 11

*Suufi* v. *MediaLab.AI, Inc.*,
No. 22 Misc. 80205, 2022 WL 21815809 (Sept. 20, 2022)........................................... 9

*United States* v. *Columbia Broad. Sys., Inc.*,
666 F.2d 364 (9th Cir. 1982) ....................................................................... 9

*Updateme Inc.* v. *Axel Springer SE*,
No. 17 Civ. 5054, 2018 WL 5734670 (N.D. Cal. Oct. 31, 2018)............................... 9, 12

*Viacom Int'l, Inc.* v. *YouTube, Inc.*,
No. 08 Civ. 80129, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008)............................... 11

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................. 1, 2, 8, 12

Fed. R. Civ. P. 26(b)(2)(C)(i) .................................................................. 8, 9, 10

Fed. R. Civ. P. 26(b)(2)(C)(ii) ............................................................................................. 10

Fed. R. Civ. P. 34(c) ............................................................................................................ 14

Fed. R. Civ. P. 37(a)(1) ........................................................................................................ 14

Fed. R. Civ. P. 37(a)(3)(B)(iv) ............................................................................................. 14

Fed. R. Civ. P. 37(a)(4) ........................................................................................................ 14

Fed. R. Civ. P. 45 ............................................................................................................... 8, 9

Fed. R. Civ. P. 45(d)(1) ......................................................................................... 1, 2, 8, 12, 15

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

**INTRODUCTION**

Meta Platforms, Inc. ("Meta") is not a party to this dispute. It has no stake in plaintiffs' lawsuit against Gen Digital, Inc. ("Gen Digital"). Plaintiffs' complaint does not even mention Meta. Plaintiffs allege that Gen Digital transmitted users' web browsing data to third parties without consent, but plaintiffs have presented no evidence that Gen Digital, in fact, transmitted that data to Meta or to any third party. Meta acted reasonably and in good faith and made every effort to cooperate with plaintiffs in responding to the subpoena that plaintiffs served. But plaintiffs failed to provide sufficient information for Meta even to assess whether it is feasible to conduct a reasonable search for any potentially responsive data, let alone to begin such a search. Meta informed plaintiffs several times that it needs to know how any data may have been transmitted to Meta to provide guidance as to where Meta might search for potentially responsive data. But instead of providing such information, plaintiffs informed Meta on August 21, 2024, during the *very first* meet and confer, that if Meta did not comply with plaintiffs' subpoena by August 26, 2024, plaintiffs were prepared to file a motion to compel. There is absolutely no basis for this motion, and the Court should deny it for several reasons.

*First*, plaintiffs have failed to show they are entitled to impose the burdens of discovery, especially vague and overbroad requests, on a non-party like Meta when they have failed to produce any evidence in support of their claims. Plaintiffs continue to speculate that Gen Digital may have transmitted user data to Meta even though Gen Digital has explained to the Court in detail why there is no evidentiary basis for plaintiffs' claim. *See* ECF No. 73. To the extent any question still exists whether user data was in fact transmitted to third parties, which plaintiffs concede is the "primary question being addressed in this phase of discovery," Pls.' Motion to Compel ("Motion") (ECF No. 97) at 2, plaintiffs should be required to pursue additional discovery first from Gen Digital, not Meta. The Federal Rules of Civil Procedure do not permit plaintiffs to seek discovery from a non-party in pursuit of a fishing expedition.

*Second*, plaintiffs have failed to provide Meta with the information necessary for Meta to determine whether it can conduct a reasonable search for any responsive data. Plaintiffs thus have failed to meet their obligations to "avoid imposing undue burden or expense" on Meta and to seek

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

only discovery that is "proportional to the needs of the case." *See* Fed. R. Civ. P. 45(d)(1), 26(b)(1). Meta has repeatedly informed plaintiffs that it needs to know how any data may have been transmitted to Meta—e.g., through the use of a particular Meta Business Tool—to allow Meta to assess whether it can conduct a reasonable search for user browsing and cookie data that may have been transmitted to Meta by Avast. But all plaintiffs have provided are the values of seven cookies purportedly found on an Avast server. Nothing more. That certain cookies may reside on an Avast server says nothing about whether or how such cookies may have been transmitted to Meta. Without such information, Meta simply does not know where to look.

*Third*, plaintiffs have failed to deal with Meta in good faith. Plaintiffs waited eighteen months to serve their subpoena. And then, during the *first* meet and confer when Meta explained it needed additional information to assess whether it could conduct a reasonable search, plaintiffs stated they intended to file a motion to compel three business days later—on August 26, 2024.

Plaintiffs' motion to compel Meta's compliance is baseless and should be denied.

## BACKGROUND

### A.   Plaintiffs' Putative Class Action Complaint and Discovery from Gen Digital

Plaintiffs' first amended complaint ("FAC") alleges that Gen Digital, as the successor company to security software company Avast, is liable for Avast's alleged practice of using its Avast Online Security & Privacy ("AOSP") browser extension to collect users' web browsing data and transmit the data to third-party advertising partners without users' consent. FAC (ECF No. 47) ¶ 80. Plaintiffs concede that the "determination of this action hinges on proving that plaintiffs' data was indeed transmitted by Defendant." Motion at 8. The FAC, however, does not explain how AOSP purportedly transmits data collected through AOSP to third parties or the basis for this allegation. Indeed, in ruling on Gen Digital's motion to dismiss, the Court found plaintiffs' allegations were "not a model of clarity." ECF No. 64 at 4.

Plaintiffs do not allege Meta violated any law or has any liability. Plaintiffs do not even allege any involvement of Meta. In fact, the FAC does not mention or reference Meta at all.

Gen Digital represented to the Court in the parties' recent joint case management statement that plaintiffs' allegations and the basis for their suit are "utterly spurious" and explained that

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

1    "AOSP does not use third-party cookies in any way, let alone to transfer user browsing data to

2    third-party advertisers."  ECF No. 73 at 5.  Gen Digital urged the Court to set an expeditious

3    discovery schedule to allow the parties to engage in targeted discovery and a summary judgment

4    deadline prior to class certification.  The Court adopted Gen Digital's proposal, over plaintiffs'

5    objection, and determined "it makes sense to address summary judgment before class

6    certification." ECF No. 74.  The Court has ordered the parties to complete fact discovery related

7    to summary judgment by October 7, 2024 and set the summary judgment hearing for January 14,

8    2025.  *Id.*  The Court "will address whether fact discovery will be reopened after summary

9    judgment is resolved," and set a deadline of March 21, 2025 for a class certification motion.  *Id.*

10           On August 16, 2024, Gen Digital sent plaintiffs a letter explaining in detail the lack of

11   evidentiary basis for plaintiffs' claims regarding the AOSP browser extension and the alleged

12   transmission of user data to third parties.  Gen Digital demonstrated through a targeted review of

13   the relevant code that the cookie data plaintiffs "have observed being transmitted to the URLite

14   Service is extraneous data that is appended to the transmissions by the users' browsers, as mere

15   happenstance from the fact that the transmissions are being sent to a server on the avast.com

16   domain."  Decl. of A. Hashimi in Supp. of Pls.' Motion to Compel (ECF No. 97-2) ("Hashimi

17   Decl."), Ex. B at 5.  Gen Digital further demonstrated that Avast does not pair URL data collected

18   from AOSP with the cookie data in the HTTP header, and *it does not transmit the combined data*

19   *to third-party advertisers*.  *Id.*  Gen Digital offered to provide a sworn declaration attesting to these

20   facts and authenticating the evidence on which the facts are based.  It also stated it was willing to

21   consider narrowly focused discovery requests relating to the details of this evidence.  *Id.* at 6.

22           Plaintiffs continue to reject Gen Digital's explanation, but they have proffered no evidence

23   that contradicts the explanation or any evidence that cookie data on Avast's servers was

24   transmitted to Meta or any other third party.  Plaintiffs appear to speculate there may have been a

25   server-to-server communication from the Avast servers to Meta that sent user data to Meta.  *See*

26   Motion at 5; Decl. of Z. Shafiq in Supp. of Pls.' Motion to Compel (ECF No. 97-4) ("Shafiq

27   Decl.") ¶¶ 12-16, 19.  But plaintiffs have not presented any evidence of any such server-to-server

28   communication with Meta.

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**B.      Plaintiffs' Subpoena to Meta**

Apparently frustrated by their inability to adduce any support for their claims through discovery from Gen Digital, plaintiffs have turned to non-party discovery to try to salvage their claims.  On July 15, 2024, plaintiffs served a subpoena on Meta with four sweeping, ambiguously worded document demands (the "Demands").  *See* Decl. of C. Curwick in Supp. of Pls.' Motion to Compel (ECF No. 97-1) ("Curwick Decl.") at ECF Pages 20-31; Ex. C.  The subpoena demands:

- **Demand No. 1**:   ALL DATA [Meta has] received from AVAST other than web browsing information from the avast.com website.

- **Demand No. 2**: ALL DOCUMENTS and COMMUNICATIONS— including but not limited to DATABASES, DATA logs, datasets, and reports—RELATING TO DATA [Meta has] received from AVAST other than web browsing information from the avast.com website.

- **Demand No. 3**:   ALL DOCUMENTS sufficient to show [Meta's] representations to and agreements with AVAST RELATING TO [Meta's] receipt of DATA from AVAST other than web browsing information from the avast.com website.

- **Demand No. 4**: ALL DOCUMENTS sufficient to show [Meta's] past and present policy(ies) and practice(s) RELATING TO [Meta's] use, retention, and/or destruction of DATA [Meta has] received from AVAST other than web browsing information from the avast.com website.

*Id.* at ECF Page 31.  The subpoena defines "DATA" as "ANY and ALL digitally stored and transmitted information generated by browsing websites other than the avast.com website and packaged together with YOUR COOKIES that you receive from AVAST."  *Id.* at ECF Page 25.

On August 12, 2024, Meta served its response and objections to the subpoena.  Curwick Decl., Ex. C.  Among other objections, Meta objected to the subpoena's definition of "DATA" as vague, ambiguous, confusing, overly broad, unduly burdensome, and not proportional to the needs of the case. *Id.* at 2.  Meta explained it did not understand what plaintiffs mean by "ANY and ALL digitally stored and transmitted information generated by browsing websites other than the avast.com website and packaged together with YOUR COOKIES that you receive from AVAST." *Id.*  Meta also objected to Demand Nos. 1 and 2 to the extent they would require an overbroad disclosure of Avast users' data without their consent, including users whom plaintiffs do not represent at this time given that a class has not been certified.  *Id.* at 2-3.  And Meta objected to Demand Nos. 3 and 4 as irrelevant to plaintiffs' claims.  Meta explained that its actions—including

1    making any "representations" or entering into any "agreements" relating to its alleged receipt of

2    data—are not relevant to whether Avast violated plaintiffs' privacy by transmitting data without

3    their consent.  Meta's "use, retention, and/or destruction" of data likewise is irrelevant.  *Id.* at 3.

4    　　　On August 21, 2024, Meta met and conferred with plaintiffs.  *See* Curwick Decl., Ex. E at

5    ECF Page 52.  Plaintiffs represented that Gen Digital has denied AOSP sends *any* user browser

6    information to third parties, but plaintiffs nonetheless believe based on unspecified "testing" that

7    Gen Digital is sending data captured by AOSP, including cookies, to third-party advertisers that

8    may include Meta.  *Id.* at 53.  Plaintiffs admitted they do not know whether Gen Digital in fact

9    sent any data to Meta, what type of data Gen Digital may have sent to Meta, or how Gen Digital

10   would have sent this data to Meta.  *Id.*  Plaintiffs offered that "cookie IDs" may have been

11   transmitted to Meta, but plaintiffs could not provide a definition for "cookie IDs," the names of

12   the cookies that may have been sent, or the method in which they may have been transmitted to

13   Meta.  *Id.*  Plaintiffs speculated there may have been a "server to server" communication, but

14   plaintiffs could not identify how any data would have been transferred from server to server.  *Id.*

15   　　　Meta explained to plaintiffs during this August 21, 2024 meeting and restated in a follow-

16   up email to plaintiffs the same day that Meta needs additional information to assess whether it is

17   even feasible to search for any data that may be responsive to plaintiffs' subpoena.  *Id.*  This

18   information includes: (1) the type of "cookie IDs" or the values of the "cookie IDs" Plaintiffs

19   believe Gen Digital sent to Meta; and (2) the way in which plaintiffs alleged the data was

20   transmitted to Meta, i.e., whether plaintiffs allege Gen Digital transmitted data through one of

21   Meta's Business Tools—technologies Meta offers to help website owners and publishers share

22   data with Meta—or, if not through a Business Tool, how data was allegedly transmitted.  *Id.*

23   　　　On August 22, 2024, plaintiffs responded purporting to provide "additional information to

24   assist Meta in searching for information responsive to Plaintiffs' subpoena."  *Id.* at 50.  Plaintiffs

25   claimed to "have identified a specific Meta cookie, _fbp, in analyses of transmissions between

26   AOSP users' devices and Gen Digital's and AOSP's servers and database" and asserted that

27   "[b]rowsing data is packaged together with Meta's cookies."  *Id.* at 51.  Plaintiffs provided

28   examples of seven such cookies with associated dates and times.  *Id.*  Plaintiffs further asserted

*JENNER & BLOCK LLP*
*525 Market Street, 29th Floor*
*San Francisco, CA 94105*

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

1    that their "testing has shown that the urlite.ff.avast.com server receives Plaintiffs' data, together

2    with Meta's Cookie." *Id.*  Plaintiffs stated that "[s]uch browsing data from third-party websites

3    sent to you by Gen Digital/Avast together with Meta's cookie is what Plaintiffs' requests seek."

4    *Id.*   However, plaintiffs provided no information indicating that any such data was in fact

5    transmitted to Meta or how it may have been transmitted. *Id.*  Nonetheless, plaintiffs continued to

6    insist that Meta produce "browsing data from third-party websites sent to you by Gen Digital/Avast

7    together with Meta's cookie." *Id.*  They demanded Meta's compliance by August 26, 2024. *Id.* at

8    52.  Plaintiffs informed Meta they were prepared to file a motion to compel on that date. *Id.*

9              On August 23, 2024, Meta responded by explaining yet again that it needed additional

10    information to determine whether it could even conduct a search. *Id.* at 50.  Although plaintiffs

11    may have identified a specific Meta cookie on an Avast server, that information did not indicate

12    that this cookie or any user browser data was sent to Meta or the way in which the data allegedly

13    was transmitted to Meta. *Id.*

14             Rather than acknowledging the insufficiency of the information they provided to Meta, on

15    Friday, August 23, 2024 at 1:20 p.m. PT, plaintiffs sent an email to Meta proposing a stipulation

16    that purportedly would allow Meta "more time to conduct a search" by requesting that the Court

17    allow Meta and plaintiffs to bring any later-arising disputes to the Court pursuant to the Court's

18    discovery letter process generally applicable to parties.  Decl. of L. Edelstein in Opp. to Pls.'

19    Motion to Compel ("Edelstein Decl.") ¶ 5 & Ex. 1.  Plaintiffs, however, insisted they needed a

20    stipulation on file by 4:00 p.m. PT that day, August 23, 2024. *Id.*  In other words, plaintiffs gave

21    Meta *just 2½ hours* to decide whether to sign the stipulation.

22             On August 26, 2024, Meta informed plaintiffs that it did not need more time to conduct a

23    search.  Curwick Decl., Ex. F at 1.  Rather, Meta explained to plaintiffs for a fourth time that they

24    had failed to provide sufficient information for Meta to assess the feasibility of searching for any

25    potentially responsive data, let alone to begin such a search. *Id.*  Meta reiterated that plaintiffs had

26    provided no information indicating that any cookie or any user browser data was sent from Gen

27    Digital to Meta or the way in which any such data allegedly was transmitted to Meta. *Id.*  And

28    Meta emphasized that Gen Digital has represented to this Court that the AOSP extension does not

1    transmit user browser data to third parties.  *Id.*  That same day, plaintiffs filed a motion to enforce

2    compliance with their subpoena to Meta and Adobe, Inc., another non-party.

3         **C.    Meta's Need for Additional Information to Search for Data**

4         Meta repeatedly has explained it needs additional information to assess whether it can

5    conduct a reasonable search.  Businesses may share data with Meta about people's interactions

6    with their websites and apps via the Meta Business Tools, such as the Meta Pixel or Conversions

7    API.  Decl. of T. Wooldridge in Opp. to Pls.' Motion to Compel ("Wooldridge Decl.") ¶¶ 3, 4.  To

8    send this data to Meta, the transmission must include a dataset ID, such as a Pixel ID or App ID.

9    *Id.* ¶ 5.  For Meta to run a reasonable query for data that may have been received from a particular

10   business via a Business Tool, Meta needs to understand which Business Tool may have transmitted

11   the particular data and the dataset ID.  *Id.* ¶ 6.

12        Plaintiffs provided Meta the values for seven "_fbp" cookies plaintiffs claim were sent to

13   Avast servers from users' devices.  The mere existence of such cookie data on an Avast server,

14   however, does not indicate whether the data was transmitted to Meta or any other third party.  *Id.*

15   ¶ 7.  The existence of the cookie data on an Avast server also does not provide any information

16   concerning what Business Tool may have been used to transmit any such data to Meta, to the extent

17   it was transmitted.  *Id.*  Without knowing whether and how any data residing on Avast servers was

18   transmitted to Meta, Meta is not able to determine whether it can construct a reasonable search for

19   any data sent by the Avast servers to Meta.  *Id.* ¶ 8.

20        **D.    Plaintiffs' Motion to Compel Compliance**

21        Plaintiffs filed their motion to compel on August 26, 2024, only three business days after

22   plaintiffs and Meta first conferred about the subpoena.  Plaintiffs characterize their subpoena

23   requests as "carefully limited [in] scope . . . to avoid unnecessary burden" on non-parties such as

24   Meta, Motion at 5, but the text of the requests belies this characterization, particularly given that

25   plaintiffs have failed to provide any evidence that data was in fact transmitted to Meta or how.

26        Tellingly, the Motion focuses on Gen Digital's alleged noncompliance with its discovery

27   obligations, and plaintiffs base their motion to compel *Meta*'s compliance on plaintiffs'

28   dissatisfaction with *Gen Digital*'s responses to discovery.  Motion at 1.  For example, plaintiffs

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

1    complain that Gen Digital "has been uncooperative and has repeatedly presented Plaintiffs with

2    inaccurate information concerning the collection and transmission of "cookies" by and to

3    Defendant's servers." *Id.* Plaintiffs emphasize that Gen Digital has disclaimed the existence of

4    documents that would show the transmission of any such data. *Id.* at 1, 10, 13.

5          To the extent the Motion addresses Meta's obligations, plaintiffs simply insist without any

6    basis that Meta "should be compelled to perform a search using the information Plaintiffs have

7    provided," *id.* at 13, ignoring that Meta needs additional information about the way in which any

8    data was purportedly transmitted to Meta.  Plaintiffs provide no evidence that Meta would be able

9    to conduct a reasonable search based on the information they provided.  Indeed, plaintiffs' own

10   expert admits that to determine whether Avast's servers transmit data to third parties "*requires*

11   *review of the data transmitted to the identified third-party servers by Avast's servers*." Hashimi

12   Decl. ¶ 11.  In other words, it first must be established whether the Avast servers, in fact,

13   transmitted user browsing data to third parties.

                                    **LEGAL STANDARD**

15         Federal Rule of Civil Procedure 45 governs discovery from non-parties via subpoena.  In

16   determining whether a subpoena should be enforced, courts look to Rule 45, which provides that

17   a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense

18   on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  They also look to Rule 26, which

19   provides that a court must limit discovery if, among other things, "the discovery sought is

20   unreasonably cumulative or duplicative, or can be obtained from some other source that is more

21   convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Courts also must

22   limit the discovery sought if it is not "proportional to the needs of the case," taking into account

23   "the importance of the discovery in resolving the issues, and whether the burden or expense of the

24   proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

25         Rule 45 "imposes a mandatory responsibility on [the] court to protect nonparties from

26   unduly burdensome discovery." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,

27   No. 09 Civ. 1967, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012).  The Ninth Circuit long has

28   held that nonparties merit heightened protection from the burdens of discovery. *See Dart* v. *Indus.*

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

*Co., Inc.* v. *Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980); *United States* v. *Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982); *see also Maplebear Inc.* v. *Uber Techs., Inc.*, No. 21 Misc. 80007 (SK), 2021 WL 1845535, at *1 (N.D. Cal. Mar. 23, 2021).  Courts in this District thus have recognized that "permissible discovery from nonparties is narrower than that permitted from parties to the action."  *Fed. Trade Comm'n* v. *DIRECTV, Inc.*, No. 15 Civ. 1129, 2015 WL 8302932, at *4 (N.D. Cal. Dec. 9, 2015); *see also Convolve, Inc.* v. *Dell, Inc.*, No. 10 Civ. 80071, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011).  Non-parties "should not be burdened in discovery to the same extent as the litigants themselves," and "[r]equests to non-parties should be narrowly drawn to meet specific needs for information."  *Convolve*, 2011 WL 1766486, at *2; *see also Updateme Inc.* v. *Axel Springer SE*, No. 17 Civ. 5054, 2018 WL 5734670, at *3 (N.D. Cal. Oct. 31, 2018) (collecting cases).

Although Rule 45 does not require that a party exhaust discovery from a party opponent before seeking discovery from a non-party, consistent with the responsibility to protect non-parties from unduly burdensome discovery, courts in this District prefer that parties obtain discovery from one another before burdening non-parties.  That is particularly true here, where a party opponent and the non-party may possess the same information or where the subpoenaing party has not established that the non-party has relevant information.  *See, e.g.*, *Athalonz, LLC* v. *Under Armour, Inc.*, No. 23 Misc. 80324, 2024 WL 628846, at *5-6 (N.D. Cal. Feb. 14, 2024); *Suufi* v. *MediaLab.AI, Inc.*, No. 22 Misc. 80205, 2022 WL 21815809, at *1-2 (Sept. 20, 2022); *Nidec Corp.* v. *Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); Fed. R. Civ. P. 26(b)(2)(C)(i).

## ARGUMENT

### I.   PLAINTIFFS FAIL TO SHOW THEY ARE ENTITLED TO PURSUE DISCOVERY FROM THIRD PARTIES SUCH AS META

Plaintiffs concede their suit "hinges on proving that Plaintiffs' data was indeed transmitted by Defendant, and on testing Defendant's defenses to that claim."  Motion at 8.  They also admit that the primary question in this phase of discovery is whether Avast, in fact, transmitted user browsing data and cookies to third parties.  *Id.* at 2.  Plaintiffs, however, have proffered no evidence of any transmission of data of cookie data from Avast's server to Meta or any other third party.

**JENNER & BLOCK LLP**
525 Market Street, 29th Floor
San Francisco, CA 94105

1    One of plaintiffs' experts merely states that "[t]he excerpts of source code provided by the

2    Defendant are insufficient to determine whether and how Avast uses the subject cookies," and Gen

3    Digital's "August 16 letter is incomplete or otherwise does not provide a full picture of Avast's

4    server activity as it relates to collection and storage of users' data and associated cookies."

5    Hashimi Decl. ¶ 12.  That same expert also admitted that to determine whether Avast's servers

6    transmit data to third parties "*requires review of the data transmitted to the identified third-party

7    servers by Avast's servers.*"  Hashimi Decl. ¶ 11 (emphasis added).  In other words, to the extent

8    any question still exists as to whether the Avast servers transmit user browsing data to third

9    parties—the threshold issue at this phase—*further examination of the Avast servers and server

10   code is necessary.*

11   But instead of pursuing additional narrowly tailored discovery from Gen Digital to

12   determine this threshold issue, as Gen Digital offered, *see* Hashimi Decl., Ex. B at 6, plaintiffs

13   seek to salvage their claims by trying to compel non-party Meta to provide information they

14   speculate Gen Digital is hiding.  Plaintiffs are not entitled to pursue discovery from a non-party

15   simply because they do not like the answers they have received from the defendant.  *See* Fed. R.

16   Civ. P. 26(b)(2)(C)(i) (court is required to limit discovery where it "can be obtained from some

17   other source that is more convenient, less burdensome"); Fed. R. Civ. P. 26(b)(2)(C)(ii) (court

18   must limit discovery where "the party seeking discovery has had ample opportunity to obtain the

19   information by discovery in the action").

20   In *Glass Egg Digital Media* v. *Gameloft, Inc.*, No. 17 Civ. 4165, 2020 WL 906714, at *5-

21   6, 10-11 (N.D. Cal. Feb. 25, 2020), for example, plaintiffs served a slew of third-party subpoenas

22   in pursuit of an alter-ego argument directed at two defendants.  The court, however, had already

23   rejected the alter-ego theory and limited the scope of jurisdictional discovery.  *Id.* at *5-6.  The

24   court thus quashed the subpoenas as "overly broad and needlessly burdensome and costly to third

25   parties."  *Id*. at *6.  The court also independently quashed the subpoenas "as unnecessarily

26   burdensome and overly broad" because plaintiffs had failed to pursue discovery from defendants

27   in the first instance or challenge defendants' rejection of their discovery requests.  *Id.*  The court

28   in *Athalonz*, 2024 WL 628846, at *5-8, similarly quashed a non-party subpoena because the

---

NON-PARTY META'S OPPOSITION TO MOTION TO COMPEL               CASE NO. 3:22-CV-08981-RFL-SK

1    plaintiff had failed to establish the non-party had relevant information or non-duplicative

2    documents.

3         The same result is warranted here. To the extent appropriate based on the record, plaintiffs

4    should be required to pursue additional discovery from Gen Digital to determine in the first

5    instance whether any user data was in fact transmitted to third parties. Gen Digital, *not Meta*, is

6    in the best position to address whether Avast servers did or *did not* send user information to third

7    parties. Plaintiffs should be required to pursue additional discovery from Gen Digital before

8    coming to Meta with sweeping discovery demands that have no evidentiary basis.

9         The cases on which plaintiffs rely do not support allowing discovery from third parties

10   where, as here, plaintiffs have failed to support their claims or pursue discovery first from the

11   defendant. *Viacom Int'l, Inc.* v. *YouTube, Inc.*, No. 08 Civ. 80129, 2008 WL 3876142, at *3 (N.D.

12   Cal. Aug. 18, 2008), does not stand for the proposition that where "there is reason to believe that

13   the files of the third party may contain' relevant information, Plaintiffs are entitled to pursue

14   discovery from the Non-Parties." Motion at 1 (quoting *Viacom*, 2008 WL 3876142, at *3). And

15   *Software Rights Archive, LLC* v. *Google Inc.*, No. 09 Misc. 017, 2009 WL 1438249 (D. Del. May

16   21, 2009), does not establish that "completeness of discovery is more likely to be achieved" by

17   "allowing for discovery from both the party and the non-party." Motion at 2. Both *Viacom* and

18   *Software Rights* merely say that discovery from a non-party may be appropriate *if* "there is reason

19   to believe that the files of the third party may contain *different versions of documents, additional*

20   *material, or perhaps, significant omissions*." *Viacom*, 2008 WL 3876142, at *3 (quotation and

21   citation omitted) (emphasis added); *Software Rights*, 2009 WL 1438249, at *2. In addition, in

22   *Software Rights*, the court found that the non-party had a stake in the underlying litigation. *Id.* at

23   *2. Neither circumstance is present here. Plaintiffs are seeking from Meta the same data Avast

24   purportedly transmitted to Meta. And Meta does not have a stake in the underlying litigation.

25        The real issue, however, is there is no evidence that any data was transmitted to Meta in

26   the first instance. Before plaintiffs may seek data from Meta, they should be required to provide

27   evidence that data was transmitted.

28

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

## II.   PLAINTIFFS' REQUESTS IMPOSE AN UNDUE BURDEN ON META

Not only are plaintiffs not entitled to pursue discovery from Meta, they have failed to provide the information Meta needs to assess the feasibility of a reasonable search for potentially responsive data.  Plaintiffs' demands thus are not "narrowly drawn to meet specific needs for information," *Updateme*, 2018 WL 5734670, at *3 (quotation omitted), as required when seeking information from a non-party.  Plaintiffs have not met their obligation to "avoid imposing undue burden or expense" on Meta, Fed. R. Civ. P. 45(d)(1), and have failed to show that "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1).

Plaintiffs attempt to defend their subpoena by claiming that "Meta has never denied" the possibility it may have information that may be responsive to plaintiffs' demands.  Motion at 12.  And they demand that "Meta should be compelled to perform a search [of user browsing and cookie data that Avast purportedly sent to Meta] using the information Plaintiffs have provided to it." *Id.* at 13.  But the only information plaintiffs have provided to Meta are examples of seven cookies they claim they found on an *Avast* server.  *See* Curwick Decl., Ex. E at ECF Page 51.  The mere presence of cookies on an Avast server tells Meta nothing.  *See* Wooldridge Decl. ¶ 7.

Plaintiffs speculate that a server-to-server communication could have transmitted this cookie data to Meta.  *See* Motion at 5; Shafiq Decl. ¶¶ 12-16, 19.  But plaintiffs have provided no information as to whether any such transmission actually occurred or how.  For Meta to run a reasonable query for data received from a particular business like Avast, Meta needs to understand which Business Tool may have transmitted the particular data and the dataset ID, such as a Pixel ID or App ID.  Wooldridge Decl. ¶ 6.  Plaintiffs have provided neither.

In addition, even if Meta were able to formulate a reasonable search, plaintiffs' demands are overbroad and unduly burdensome.  Plaintiffs assert they have limited the number of their non-party requests and "severely limit[ed] their scope." Motion at 6.  As plaintiffs concede, this phase of discovery is targeted at whether Gen Digital has transmitted cookies and associated browsing data to third parties.  *Id.* at 2.  Yet, Demand No. 1 seeks "ALL DATA [Meta has] received from AVAST other than web browsing information from the avast.com website," and Demand No. 2 seeks "ALL DOCUMENTS and COMMUNICATIONS" related to that data.  Curwick Decl. at

1    ECF Page 31.  Production of all data that Meta purportedly may have received from Avast—to the

2    extent any exists—is not necessary to determine whether Gen Digital transmitted cookies and

3    associated browsing data to third parties.  In addition, because no class has yet been certified,

4    plaintiffs' requests potentially would require an overbroad disclosure of Avast users' data without

5    their consent, including users whom plaintiffs do not represent at this time.

6           Further, Demand Nos. 3 and 4, which seek Meta's agreements with Avast relating to

7    Meta's receipt of data from Avast and Meta's policies and practice relating to Meta's use,

8    retention, and destruction of data received from Avast, have no bearing on plaintiffs' claims.  At

9    issue is whether Avast violated plaintiffs' privacy by transmitting their data without their consent.

10   Meta's actions—including making any "representations" or entering into any "agreements"

11   relating to its alleged receipt of data, the subject of Demand No. 3—are not relevant.  Meta's "use,

12   retention, and/or destruction" of data, the subject of Demand No. 4, likewise is irrelevant.

13          Although plaintiffs assert they have met their obligation under Federal Rule of Civil

14   Procedure 45 to take "reasonable steps to avoid imposing undue burden or expense" by limiting

15   the number of their non-party requests and "providing additional time to respond," Motion at 6-7,

16   the number of requests does not establish the level of burden on a non-party, or any party, in

17   responding to those requests.  And as Meta has explained to plaintiffs, Meta does not need more

18   time to respond but rather sufficient information to assess whether it is feasible for Meta to conduct

19   a search for any data that may be responsive to subpoena and to begin such a search.

20          Courts in the Ninth Circuit routinely decline to enforce compliance with subpoenas where,

21   as here, requests are not narrowly tailored to specific needs.  *See, e.g.*, *Convolve*, 2011 WL

22   1766486, at \*2; *DIRECTV, Inc.*, 2015 WL 8302932, at \*4; *Moon* v. *SCP Pool Corp.*, 232 F.R.D.

23   633, 637-38 (C.D. Cal. 2005).  The Court should do the same here.

24   **III.    PLAINTIFFS HAVE FAILED TO CONFER IN GOOD FAITH**

25          During the very first meet and confer concerning the subpoena, plaintiffs informed Meta

26   that they would move to compel if Meta did not comply with the subpoena by the following

27   Monday, August 26—three business days later.  Courts "are discouraged from considering a

28   motion to compel" where a moving party fails to "perform the obligation to confer or attempt to

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105

**JENNER & BLOCK LLP**
**525 Market Street, 29th Floor**
**San Francisco, CA 94105**

1    confer in good faith to resolve the discovery dispute without court intervention."  *Bahena* v.

2    *Ramirez*, No. 22 Civ. 3039, 2024 WL 3522054, at *2 (N.D. Cal. July 23, 2024).  Plaintiffs have

3    not satisfied this obligation, an independent reason for the Court to deny plaintiffs' motion.

4         Plaintiffs' passing reference to "meeting and conferring" with Meta omits that plaintiffs

5    demanded Meta comply immediately with unanswerable requests or else face court action.  *See*

6    Motion at 6-7; Curwick Decl., Ex. E at ECF Page 52.  Plaintiffs' effort to propose a stipulation

7    requesting that the Court allow plaintiffs and Meta to participate in the Court's discovery letter

8    process generally applicable to parties also should not be credited.  Plaintiffs gave Meta *just 2½*

9    *hours* to decide whether to sign the stipulation. Edelstein Decl., Ex. 1.  Further, as Meta explained

10   to plaintiffs, it did not need more time to conduct a search.  What Meta needs is additional

11   information from plaintiffs to assess whether it can conduct a search for the information plaintiffs

12   are demanding.

13        Plaintiffs' motion is not based on any refusal by Meta to engage in a good faith meet and

14   confer process or produce relevant, non-privileged documents.  *See* Fed. R. Civ. P. 37(a)(3)(B)(iv),

15   (a)(4); *see also* Fed. R. Civ. P. 34(c).  Rather, the timing of the motion is based on the fact discovery

16   deadline, as plaintiffs admit, *see* Curwick Decl., Ex. E at ECF Page 52, and on plaintiffs' failure

17   timely to pursue the discovery they believe they need to salvage their complaint.  To "accomplish

18   the underlying policy" of Rule 37(a)(1)'s requirement that motions to compel contain certifications

19   that the movant engaged in the meet and confer process, "the moving party must include more than

20   a cursory statement that he attempted to confer, and must adequately set forth in the motion

21   essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and

22   sincerity of the good faith conferment."  *Bahena*, 2024 WL 3522054, at *2 (quotation omitted).

23   Plaintiffs do not and cannot establish "the adequacy and sincerity" of their participation in good

24   faith conferment with Meta.  *See id.*

25        Plaintiffs' motion to compel Meta's compliance with plaintiffs' unduly burdensome

26   requests is without merit.  It should be denied.

27

28

---

**CONCLUSION**

For the foregoing reasons, the Court should deny plaintiffs' motion to compel compliance with Plaintiffs' subpoena to Meta for production of documents.  Meta reserves the right to seek costs in connection with the Motion, including reasonable attorney's fees under Rule 45(d)(1).  *See* Fed. R. Civ. P. Rule 45(d)(1).

Dated: September 6, 2024

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Laurie Edelstein*

Laurie Edelstein (Bar No. 164466)
Paige Zielinski (Bar No. 318639)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, California 94105
Telephone: (628) 267-6800
ledelstein@jenner.com
pzielinski@jenner.com

*Attorneys for Non-Party Meta Platforms, Inc.*

JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105