1  LATHAM & WATKINS LLP
   Michael H. Rubin (Bar No. 214636)
2   *michael.rubin@lw.com*
   Melanie M. Blunschi (Bar No. 234264)
3   *melanie.blunschi@lw.com*
   505 Montgomery Street, Suite 2000
4  San Francisco, California 94111
   Telephone: +1.415.391.0600
5
6  Serrin Turner (*pro hac vice*)
    *serrin.turner@lw.com*
7  1271 Avenue of the Americas
   New York, NY 10020
8  Telephone: +1.212.906.1200
9
   Margaret A. Upshaw (*pro hac vice*)
10   *maggie.upshaw@lw.com*
   555 Eleventh Street, NW, Suite 1000
11  Washington, D.C. 20004
   Telephone: +1.202.637.2200
12
13  *Attorneys for Defendant Gen Digital Inc.*

14                  UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                     SAN FRANCISCO DIVISION

17
18  CHRISTOPHER KARWOWSKI,            Case No. 3:22-cv-08981-RFL-SK
   MELODY KLEIN, MICHAEL
   MCBRIDE, and AIMEN HALIM,         **DEFENDANT GEN DIGITAL INC.'S REPLY**
19  individually and on behalf of all others   **MEMORANDUM OF POINTS AND**
   similarly situated,               **AUTHORITIES IN SUPPORT OF MOTION**
20                                   **FOR ATTORNEYS' FEES**
              Plaintiffs,
21                                   Hearing: January 14, 2025
   v.                               Time: 10:00 a.m.
22                                   Location: Courtroom 15—18th Floor
   GEN DIGITAL INC. a corporation,
23                                   Judge: Hon. Rita F. Lin
              Defendant.
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT........................................................................................................ 1

    A.    Fees Are Warranted Under Section 1927 and the Court's Inherent
         Authority ................................................................................................... 1

    B.    Fees Are Independently Warranted Under Rule 37 ................................. 6

    C.    Plaintiffs' Remaining Contentions Are Meritless ................................... 7

III.  CONCLUSION................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*B.K.B. v. Maui Police Dep't,*
    276 F.3d 1091 (9th Cir. 2002) ............................................................ 2

*Blixseth v. Yellowstone Mountain Club, LLC,*
    796 F.3d 1004 (9th Cir. 2015) ............................................................ 2

*Bonner v. Fuji Photo Film,*
    2008 WL 410260 (N.D. Cal. Feb. 12, 2008) ...................................... 9

*Coles v. Wonder,*
    283 F.3d 798 (6th Cir. 2002) .............................................................. 2

*Compass Bank v. Morris Cerullo World Evangelism,*
    104 F. Supp. 3d 1040 (S.D. Cal. 2015) .............................................. 9

*Day v. Forman Auto. Grp.,*
    2013 WL 5408576 (D. Nev. Sept. 25, 2013) ...................................... 7

*DeLew v. Nevada,*
    2010 WL 11636127 (D. Nev. Jan. 7, 2010) ........................................ 9

*E*Healthline.com, Inc. v. Pharmaniaga Berhad,*
    2023 WL 4564749 (E.D. Cal. July 17, 2023) ..................................... 9

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001) .............................................................. 2

*Fischer v. SJB-P.D. Inc.,*
    214 F.3d 1115 (9th Cir. 2000) ............................................................ 9

*Hahn v. Massage Envy Franchising, LLC,*
    2014 WL 12899320 (S.D. Cal. Aug. 22, 2014) .................................. 7

*Haynes v. City & Cnty. of San Francisco,*
    688 F.3d 984 (9th Cir. 2012) .............................................................. 1

*In re Facebook, Inc. Consumer Priv. User Profile Litig.,*
    655 F. Supp. 3d 899 (N.D. Cal. 2023) ............................................ 6, 7

*Kraszewski v. State Farm Gen. Ins.,*
    1984 WL 1027 (N.D. Cal. June 11, 1984) .......................................... 9

*Lahiri v. Universal Music & Video Distrib. Corp.,*
    606 F.3d 1216 (9th Cir. 2010) ............................................................ 2

*Lewis v. Activision Blizzard, Inc.*,
   2014 WL 4953770 (N.D. Cal. Sept. 25, 2014) ................................................................. 2

*Molski v. Mandarin Touch Rest.*,
   347 F. Supp. 2d 860 (C.D. Cal. 2004) ............................................................................ 2

*Navarro v. Gen. Nutrition Corp.*,
   2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ................................................................. 2

*Oliver v. In-N-Out Burgers*,
   945 F. Supp. 2d 1126 (S.D. Cal. 2013) ........................................................................ 2, 8

*Pascual v. Wells Fargo Bank, N.A.*,
   2014 WL 582264 (N.D. Cal. Feb. 13, 2014) .................................................................... 8

*Radio City, Inc. v. Celestron Acquisition, LLC*,
   2023 WL 5519324 (N.D. Cal. Aug. 25, 2023) ................................................................. 9

*Stanley Black & Decker, Inc. v. D & L Elite Invs., LLC*,
   2013 WL 3799583 (N.D. Cal. July 19, 2013) .................................................................. 9

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) .......................................................................... 3

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
   875 F.3d 426 (9th Cir. 2017) .......................................................................................... 3

*United Nat'l Ins. v. R&D Latex Corp.*,
   242 F.3d 1102 (9th Cir. 2001) ....................................................................................... 2

*Welch v. Metro. Life Ins.*,
   480 F.3d 942 (9th Cir. 2007) .......................................................................................... 9

**RULES**

Fed. R. Evid. 408 .................................................................................................................... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

Defendant Gen Digital's Reply ISO Motion for
Attorneys' Fees
Case No. 3:22-cv-08981-RFL-SK

## I.    INTRODUCTION

Plaintiffs' opposition brief offers nothing but thin excuses for their counsel's conduct and pursuit of this litigation. The inescapable fact remains that Plaintiffs' counsel brought this case based on nothing more than reckless speculation about nefarious motives for benign facts. Only after saddling Gen Digital with hundreds of thousands of dollars in legal fees did Plaintiffs finally dismiss their case. This is not an instance of better-late-than-never: Plaintiffs' baseless allegations never justified dragging Gen Digital into court to begin with, let alone persisting in the litigation long after their speculation failed to pan out in discovery.

None of the arguments made in Plaintiffs' opposition have merit. The standard for imposing sanctions under Section 1927 or the Court's inherent authority is not impossibly high, as Plaintiffs suggest. Recklessness suffices, and it is the storyline here, notwithstanding Plaintiffs' attempts to distort the record. Sanctions for Plaintiffs' unjustified discovery motions are additionally available under Rule 37, notwithstanding Plaintiffs' tired arguments for those motions, which two judges have already rejected. Defendants' fee request is reasonable and adequately documented, reflecting the costs that Plaintiffs' counsel's conduct needlessly imposed on Gen Digital. Finally, Plaintiffs' suggestion that *they* deserve sanctions from Gen Digital is procedurally improper, patently frivolous, and yet another example of their counsel's recklessness.

Enough is enough. Rule 8's lenient pleading standard only works if plaintiffs' attorneys abide by their ethical obligations to reasonably investigate the facts and to heed obvious warning signs that their claims are unfounded. Plaintiffs' counsel disregarded those obligations here. Sanctions are warranted.

## II.    ARGUMENT

### A.    Fees Are Warranted Under Section 1927 and the Court's Inherent Authority

While Plaintiffs suggest that awarding fees under Section 1927 or the Court's inherent power is "an extraordinary remedy," the standard is not so "very high" as Plaintiffs hope. *See* Opposition to Gen Digital's Motion for Attorneys' Fees, Dkt. No. 141 ("Opp.") at 7. Instead, under Section 1927 "district courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir.

2012). Plaintiffs misrepresent the caselaw construing that standard. *Oliver v. In-N-Out Burgers* noted that "Section 1927 sanctions must be supported by a finding of bad faith *or* recklessness." 945 F. Supp. 2d 1126, 1129 (S.D. Cal. 2013) (emphasis added) (cited in Opp. at 7).[1] In other words, "[r]ecklessness suffices for § 1927 sanctions." *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010); *see also Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (explaining difference between standards for § 1927 and inherent power).

The Court's inherent authority similarly allows for sanctions for "conduct tantamount to bad faith … including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002). In fact, "bad faith … includes a broad range of willful improper conduct," *Fink*, 239 F.3d at 992, such as maintaining lawsuits for "the improper purpose of extorting a settlement," *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 865 (C.D. Cal. 2004); *see also Lewis v. Activision Blizzard, Inc.*, 2014 WL 4953770, at *3 (N.D. Cal. Sept. 25, 2014) (noting under similar fee shifting statute that "a court may consider whether 'the tactics and strategies pursued by the plaintiff' and her attorneys' were merely intended 'to force a settlement with a wealthy defendant with little or no basis for doing so'" (quoting *Coles v. Wonder,* 283 F.3d 798, 803 (6th Cir. 2002)).[2]

The conduct of Plaintiffs' counsel here meets these standards: They pursued their "cookie" theory based on mere speculation (even while pleading it as fact), and refused to let it go even after no supporting evidence materialized in discovery. To make matters worse, they brought suit without even bothering to check for the most basic evidence needed to support their claims—that the cookies at issue were actually installed on Plaintiffs' devices. All of this was reckless, as well as frivolous and done for an improper purpose—namely, to impose litigation costs on Gen Digital

---

[1] Notably, another case Plaintiffs rely on for the supposedly "very high" threshold (Opp. 7) found sanctions warranted where the attorneys "fail[ed] to defend many of the … frivolous accusations they raised" and one did "not retract his 'demonstrably inaccurate' statements to the court," *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015), much of which can be said about Plaintiffs' counsel here. Yet another found sanctions inappropriate only because the plaintiff "did not make any effort to oppose Defendants' dismissal" of a "patently frivolous" claim. *See Navarro v. Gen. Nutrition Corp.*, 2005 WL 2333803, at *22 (N.D. Cal. Sept. 22, 2005).

[2] Nor, contrary to Plaintiffs' suggestion (Opp. 7), is the misconduct here merely a "mode of advocacy," such as using strong language in a brief, to which the "most egregious situation" standard applies. *United Nat'l Ins. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001).

1  in order to exert pressure for a settlement. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875

2  F.3d 426, 443 (9th Cir. 2017) (affirming sanctions against a plaintiff "for not earlier dropping" a

3  claim that plaintiff "had no evidence to support" and nevertheless pursued through discovery).

4      Plaintiffs' revisionist history of the case does not withstand scrutiny. To begin, Plaintiffs'

5  arguments that they had evidentiary support for pleading their "cookie" theory are specious. They

6  contend they relied on "circumstantial evidence that Defendant sold [AOSP] data to the third

7  parties whose cookies are embedded with user data." Opp. at 8. But Plaintiffs had no evidence of

8  any sale of AOSP data, circumstantial or otherwise. The only fact they had observed was that

9  cookies associated to the "avast.com" domain were being appended to traffic sent from AOSP to

10  URLite. Plaintiffs should have easily figured out there was a benign explanation for this: The

11  cookies were designed to work across the avast.com website; and they were automatically being

12  appended by the browser because URLite is on the avast.com domain. Plaintiffs had no reason to

13  assume that Gen Digital was intentionally collecting the cookies through AOSP, let alone selling

14  AOSP data to anyone. That was nothing but their own speculation—even though it was pled *as*

15  *fact* in the Amended Complaint, which is itself evidence of bad faith.[3]

16      Plaintiffs' insistence that Gen Digital "could have configured" cookies or AOSP differently

17  (Opp. 3, 8) does nothing to justify their speculation, because it ignores a perfectly obvious

18  explanation for why things were configured the way they were, and Plaintiffs had no basis to infer

19  any other, insidious explanation. To the contrary, Plaintiffs' assertion that the cookies at issue

20  could have been configured so that they would only be sent back to the server that set them (*see*

21  Opp. 3; Hashimi Decl. ¶ 21) ignores basic realities about how cookies need to work on large

22  websites like Avast.com, where cookies need to work across multiple subdomains (e.g.,

23  my.avast.com, support.avast.com, etc.) in order to provide a consistent user experience and useful

24  website analytics. Gen Digital's Motion for Attorneys' Fees, Dkt. No. 140-1 ("Mot.") at 5-6. In

---

[3] Plaintiffs' do not even address the argument that they were required to identify this allegation in the Amended Complaint as one for which they lacked specific factual support. Their non-response is a concession that this failure evidences bad faith. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

fact, the cookies at issue are *pre-configured* by third parties to operate that way—as, again, Plaintiffs would have known if they bothered to investigate their claims before pleading them. For example, Google's publicly accessible guidance explains that Google Tags (which were one of the cookies at issue) "[b]y default use automatic cookie domain configuration," meaning that "[c]ookies are set on the highest level of domain possible" and "activity is measured across subdomains without any extra configuration."[4] Likewise, while Plaintiffs' expert contends that a browser extension like AOSP can be specially programmed to prevent the browser from appending cookies to traffic sent by the extension, he acknowledges that "the default behavior" is for cookies to be appended to browser extension traffic. Hashimi Decl. ¶ 9. In short, even with the benefit of their expert's advice, Plaintiffs knew or should have known that what they observed in the operation of Avast's website and AOSP—cookies working across subdomains and cookies being included in browser extension traffic—is what happens *by default.* They had no reason to infer a secret plot must be afoot to sell AOSP data to third parties.[5]

Moreover, regardless of what Plaintiffs knew or should have known when they filed the Amended Complaint, it was independently reckless for them to continue pursuing their "cookie" theory after discovery quickly made clear that it lacked any grounding in reality. Plaintiffs have no answer to the point that, if Gen Digital actually paired cookies with AOSP data and transferred the combined data to third parties, *it would have records related to that data and those transfers*— yet Gen Digital's discovery responses in *early June* made clear that it had *nothing* responsive to Plaintiffs' requests for such documents. Mot. 3-4. Plaintiffs did not challenge those discovery

---

[4] Google for Developers, *Configure and customize cookies,* https://developers.google.com/tag-platform/security/guides/customize-cookies#gtag.js. Similar guidance is available for other of the cookies at issue. *See* Microsoft Advertising, *FAQ: Universal Event Tracking,* https://help.ads.microsoft.com/apex/index/3/en/53056/ (explaining that Microsoft's tracking cookies are "a mechanism for advertisers to report user activity on their websites to Microsoft Advertising by installing one *site-wide* tag." (emphasis added)); Meta Business Help Center, *Best practices for Meta Pixel traffic permissions,* https://www.facebook.com/business/help/267505221173979 ("If you add a top level domain to a [traffic allow] list, all subdomains are also included. For example, adding 'domain.com' also adds 'm.domain.com'").

[5] Plaintiffs' attempt to argue good faith by citing an FTC consent order that Gen Digital entered this year as to Jumpshot (Opp. 8) is also meritless. That order had nothing to do with Plaintiffs' "cookie" theory, but instead concerned distinct conduct by a former Avast subsidiary, which was shut down years ago—before Gen Digital even acquired Avast. Plaintiffs had no basis to infer from this stale conduct that Avast was now using cookies to sell AOSP data to third parties.

1  responses as insufficient or argue that Gen Digital failed to adequately search for documents. They

2  *accepted* that Gen Digital did not have the documents—yet they kept pursuing their claims

3  anyway. That alone provides a basis for sanctions. Mot. at 12-13 (citing cases imposing sanctions

4  where counsel continued pursuing claims even after discovery failed to turn up evidence).

5        That is also why Plaintiffs' complaints (Opp. 4) about the documents Gen Digital

6  *voluntarily* produced about how the URLite code works—as exhibits to its August 16 Letter

7  explaining why Plaintiffs' "cookie" theory was baseless—fall flat. Plaintiffs did not even need

8  those exhibits to know that Gen Digital was not using cookies to share AOSP data with third

9  parties; that was already evident from Gen Digital's lack of any documents reflecting such a

10  practice. But regardless, Plaintiffs' complaints are unfounded: Exhibit A to the August 16 Letter

11  provided all excerpts from the URLite code with calls to header data, which is how any data from

12  cookie headers would have been retrieved; and Exhibit B described the data URLite processed for

13  *all* URLs sent to it, not just ones deemed malicious.[6] Notably, Plaintiffs never asked for any more

14  specifics with respect to these exhibits, even though Gen Digital directly offered in the August 16

15  Letter to consider any "narrowly focused discovery requests [Plaintiffs] wish[ed] to make."[7]

16        Finally, Plaintiffs overlook the significance of their counsel's failure to preserve cookie

17  data on Plaintiffs' devices. That Plaintiffs brought and continued to pursue claims premised on

18  harm they supposedly suffered from having certain cookies installed on their devices—*without*

19  *even bothering to look for the cookies first*—only confirms that their "cookie" theory was never

20  based on any good-faith investigation, but was merely concocted as a way to keep their case alive

21  after their initial complaint was dismissed. Plaintiffs' suggestion that this evidence was irrelevant

22  because AOSP supposedly "transmits browsing data with cookie data from all AOSP users" (Opp.

23  1) is baseless. The cookies at issue would only be installed if a user visited the Avast website,

24  which was not necessary to install AOSP. Moreover, even if a user visited the Avast website,

25  cookie blockers or private browser modes could prevent cookies from being installed; or the user

---

[6] *See* August 16 Letter (Turner Decl. Ex. 4, Dkt. 139-5) at 5 (explaining code excerpts produced) and 7 (describing coding documentation that explained, among other things, the nature of the data collected with respect to "all URLs visited by users," not simply URLs flagged as malicious).

[7] *Id.* at 6.

1    or browser could delete the cookies afterwards, as Plaintiffs' expert himself points out. Hashimi

2    Decl. ¶¶ 53-55. It was therefore essential for Plaintiffs to have evidence of which if any of the

3    subject cookies were installed on their computers, and for how long, if they ever hoped to establish

4    standing and damages. That Plaintiffs failed to even check for such evidence before advancing

5    their "cookie" theory—and then delayed admitting that it did not exist throughout discovery—

6    speaks volumes to their bad faith.[8]

7        In short, Plaintiffs' conduct in this litigation is a far cry from "responsible advocacy to be

8    commended." Opp. at 10. Plaintiffs should have known from the time the Amended Complaint

9    was filed—based on publicly available information—that their "cookie" theory was baseless. At

10   the very least, the vapidity of their claims became undeniable after Plaintiffs quickly came up

11   empty in discovery—and when they knew they did not even have evidence that the cookies at issue

12   were on Plaintiffs' devices. Plaintiffs' counsel's pursuit of the "cookie" theory under these

13   circumstances was reckless, and they should bear the costs resulting from it.

14   **B.    Fees Are Independently Warranted Under Rule 37**

15       Plaintiffs also fail to show that their discovery motions were "substantially justified" under

16   Rule 37(a)(5)(B). They argue that "it would have been 'ridiculous' for Plaintiffs to 'take at face

17   value [Defendant's] assertions' that it did not share data with third parties." Opp. at 10-11 (quoting

18   *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 903 (N.D. Cal.

19   2023)). But Plaintiffs were not forced to take Gen Digital's assertions at face value before bringing

20   their discovery motions. They issued dozens of requests for records of Gen Digital's supposed

21   sharing of AOSP with third parties—which yielded no documents whatsoever. That *absence* of

22   responsive documents was itself *evidence supporting* Gen Digital's denials. Mot. at 3-4. Plaintiffs

23   simply refused to accept that evidence and instead pursued wholly unnecessary discovery—

24   including discovery against third parties (even though Gen Digital had no records of sharing AOSP

25

26   [8] Plaintiffs suggestion that Gen Digital had records of what cookies were installed on Plaintiffs' computers (Opp. 9-10) is baseless. Gen Digital does not have any such records, and even if it did
27   it would have no way to tell whether the cookies were subsequently deleted or whether cookie blockers prevented successful installation in the first place, either of which would prevent cookies
28   from causing Plaintiffs any of the alleged "harm." Plaintiffs cannot shift blame to Gen Digital for their own failure to search for and preserve relevant records before bringing suit.

data with those third parties) and vastly overbroad requests for Avast's entire source code (even though Gen Digital had already provided code pulling header data). The facts here thus stand in stark contrast to the *Facebook* case on which Plaintiffs attempt to rely (Opp. 10-11), where the defendant delayed the production of relevant documents. 655 F. Supp. 3d at 926-30.

Nor can Plaintiffs' counsel escape responsibility for the unjustified motions they filed by relying on their expert. Opp. at 11. No case stands for the proposition that discovery motions are substantially justified whenever a technical expert says so.[9] Regardless of what their expert thought, Plaintiffs' motion to compel against Adobe and Meta was unjustified given that those third parties told Plaintiffs they lacked any AOSP data or did not even understand what Plaintiffs' requests were about. And while Plaintiffs' expert now cites purported deficiencies in the code-related documents produced by Gen Digital, the purported deficiencies are not real, as explained above, and certainly would not have warranted production of Avast's entire source code. Notably, Plaintiffs never even specified these purported deficiencies in moving to compel production of Avast's source code; their expert merely made a conclusory assertion that the information Gen Digital had provided was "insufficient." Dkt. No. 97-2 ¶ 12.

At bottom, Plaintiffs' continued assertions that their discovery motions were substantially justified rest on the same arguments that Judge Kim and this Court already rejected in denying the motions. Dkt. Nos. 120, 128, 132. Repeating them here does not meet Plaintiffs' burden to avoid sanctions under Rule 37. *See Day v. Forman Auto. Grp.*, 2013 WL 5408576, at *2 (D. Nev. Sept. 25, 2013) ("Plaintiffs' reiteration of" previously rejected arguments from motion to compel "failed to carry their burden to demonstrate that their conduct was substantially justified or that an award of fees would be unjust"). Because the motions were not substantially justified, Gen Digital is entitled under Rule 37 to the full cost of defending them.

## C.    Plaintiffs' Remaining Contentions Are Meritless

### 1.    Plaintiffs' Reliance on Rule 41 and Rule 11 Is Misplaced

---

[9] *Hahn v. Massage Envy Franchising, LLC*, 2014 WL 12899320 (S.D. Cal. Aug. 22, 2014) (cited in Opp. 11), is not to the contrary. There, a disagreement between experts over the meaning of a certain term contributed to the court's finding that a discovery dispute was "genuine." *Id.* at *2. Here, Judge Kim found, and this Court agreed, that Plaintiffs' motions to compel were wholly meritless, regardless of anything Plaintiffs' expert might have said. *See* Dkt. Nos. 120, 128, 132.

1    Rule 41 is irrelevant here, and does not provide any basis for Plaintiffs to avoid sanctions.

2    Opp. at 6. As Gen Digital has already explained, the Rule 41 cases Plaintiffs rely on concern the

3    imposition of fees as a condition for granting a motion for voluntary dismissal without prejudice;

4    they do not imply that fees cannot be imposed on other grounds where a case is voluntarily

5    dismissed *with* prejudice. *See* Dkt. No. 133 at 2-4. Here, Plaintiffs moved for dismissal with

6    prejudice—even after the Court made clear that Gen Digital would be able to move for fees after

7    judgment was entered. Dkt. No. 134. That motion was granted, making any Rule 41 issue moot.[10]

8    Likewise, Gen Digital is not seeking Rule 11 fees, making Plaintiffs' extended discussion

9    of that issue irrelevant. Nevertheless, this Court is entitled to issue fees under that Rule of its own

10   accord, regardless of the safe harbor. Mot. at 11 n.12.

11   **2.    The Amount of the Fee Request Is Reasonable and Justified**

12   Gen Digital's fee request is proportionate to Plaintiffs' counsel's sanctionable conduct. The

13   fee request does not seek "all of [Defendant's] fees expended during the life of the case." Opp. at

14   12. Rather, it seeks fees that Gen Digital incurred *after* Plaintiffs asserted their baseless cookie

15   theory. An award of fees that begins with the filing of the Amended Complaint is appropriate

16   because that is when Plaintiffs chose—without adequate investigation—to prolong the litigation

17   by adding that theory, after their original claims were dismissed. Doing so "multiplied" the

18   proceedings, warranting sanctions under Section 1927. While Plaintiffs allege that the filing of a

19   complaint cannot trigger sanctions under Section 1927, they are simply wrong on that point; the

20   filing of an *amended* complaint can. *See, e.g.*, *Pascual v. Wells Fargo Bank, N.A.*, 2014 WL

21   582264, at *8 (N.D. Cal. Feb. 13, 2014) (holding that attorney's "actions in filing the First

22   Amended Complaint unreasonably and vexatiously multiplied the proceedings, such that he is

23   subject to sanctions under § 1927").[11]

24   _____

25   [10] Plaintiffs' reliance on *Oliver* to suggest that Gen Digital "made a strategic decision to forgo jointly dismissing the action," 945 F. Supp. 2d at 1131 (quoted in Opp. 10), is also misplaced. In

26   that case, the defendant *opposed* the motion to dismiss and pursued an additional six months of litigation afterwards. *Id.* Here, Gen Digital did not oppose Plaintiffs' motion to dismiss, which

27   Plaintiffs only made after the litigation costs Gen Digital now seeks were already incurred.

28   [11] Plaintiffs assert that Gen Digital's demand for all of its fees is "overreaching" given that Gen Digital previously made a demand for $275,000 based on the amount it had then spent on legal

1    Gen Digital's accounting of fees complies with both Local Rule 37-4(b)(3) and Section

2  1927. Opp. at 13. The declaration filed in support of Gen Digital's fee motion outlines how much

3  time its attorneys spent on what categories of work and when. Dkt. No. 139-1. This level of detail

4  is sufficient to grant an award of fees. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir.

5  2000) (finding that counsel can meet burden by "listing his hours" and "identifying the general

6  subject matter of his time expenditures")*; Kraszewski v. State Farm Gen. Ins.*, 1984 WL 1027, at

7  *7 (N.D. Cal. June 11, 1984) ("[Counsel's] documentary burden is satisfied by the production of

8  'fairly definite information' as to the hours logged, the 'general subject matter' of the work

9  performed, and in most cases, the approximate date of performance." (citations omitted));

10  *E*Healthline.com, Inc. v. Pharmaniaga Berhad*, 2023 WL 4564749, at *6 (E.D. Cal. July 17,

11  2023) (finding fees warranted based, in part, on declaration that broke down fees by general

12  category of work, the month the work was performed, and the seniority level of the person

13  performing the work); *DeLew v. Nevada*, 2010 WL 11636127, at *7 (D. Nev. Jan. 7, 2010) ("[A]

14  fee petition should include some fairly definite information as to the hours devoted to various

15  general activities, *e.g.*, pretrial discovery, settlement negotiations, and the hours spent by various

16  classes of attorneys, *e.g.*, senior partners, junior partners, associates."). Unlike in Plaintiffs' cited

17  cases, the declaration does not make it "difficult to determine how much time was spent" on which

18  case activities. *Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007); *cf. Bonner v. Fuji

19  Photo Film*, 2008 WL 410260, at *3 (N.D. Cal. Feb. 12, 2008) (discounting a lumpsum fee request

20  because the declaration and appended bills did not specify the number of hours spent on each case

21  activity). Nevertheless, Gen Digital is happy to provide a fuller accounting should the Court so

22  desire—a route that other courts have followed to set the amount of a fees sanction after granting

23  a motion. *See, e.g., Radio City, Inc. v. Celestron Acquisition, LLC*, 2023 WL 5519324, at *7 (N.D.

24  Cal. Aug. 25, 2023); *Stanley Black & Decker, Inc. v. D & L Elite Invs., LLC*, 2013 WL 3799583,

25  at *4 (N.D. Cal. July 19, 2013); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp.

26  3d 1040, 1062 (S.D. Cal. 2015).

27

28
---
fees since the August 16 Letter. Opp. at 2. That was an offer in compromise, however, which
cannot be used as evidence to limit Plaintiffs' actual liability for fees. *See* Fed. R. Evid. 408.
Moreover, Gen Digital has had to incur additional expenses since its original demand was made.

1    Plaintiffs' complaint about the rate of Gen Digital's counsel is also misplaced. Opp. at 13.

2    Plaintiffs chose to levy brand-damaging accusations and plead baseless claims against Gen Digital

3    seeking hundreds of millions of dollars in damages. In response, Gen Digital appropriately sought

4    sophisticated and experienced counsel to defend against the lawsuit, at their standard market rate.[12]

5    That cost was created by Plaintiffs' counsel, and it is Plaintiffs' counsel who should bear it.

6                           **3.    Plaintiffs' Request for Sanctions Is Frivolous**

7    Finally, Plaintiffs' own request for fees is pure farce. As an initial matter, Local Rule 7-8

8    of the Northern District of California requires "[a]ny motion for sanctions, regardless of the

9    sources of authority invoked," to "be separately filed." Plaintiffs have not filed their own motion,

10   rendering their request for sanctions procedurally improper. In any event, Plaintiffs' argument that

11   Gen Digital should be sanctioned for "insert[ing] itself" into the litigation over their motion to

12   compel production from third parties (Opp. 14) is absurd, given that Judge Kim *expressly invited*

13   Gen Digital to submit an opposition to the motion, Dkt. No. 102. Moreover, Plaintiffs ignore that

14   the third-party subpoenas encompassed data pertaining to Gen Digital's websites—*besides*

15   avast.com (such as gendigital.com)—which gave Gen Digital standing to object. *See* Dkt. No. 104

16   at 5, Dkt. No. 111 at 8. Lastly, the idea that *Gen Digital* should be sanctioned for opposing a motion

17   that *Plaintiffs had every reason to know was pointless*—because Gen Digital itself had no records

18   of sharing AOSP data with third parties, and the subpoenaed third parties told Plaintiffs they did

19   not have any such records or did not understand what Plaintiffs' requests were about—borders on

20   delusional. Plaintiffs' pressing this meritless contention is yet another example of their

21   sanctionable conduct.

22   **III.    CONCLUSION**

23   For the foregoing reasons and the reasons argued in the Motion, the Court should grant

24   Gen Digital's request for attorneys' fees.

25

26   [12] The average blended fees rate charged by the top 100 US firms from January 1 to June 30, 2024 was approximately $1,057. *See* brightflag, Hourly Rates in Am Law 100 Firms: Increases and Key Drivers 5 (2024), https://4713142.fs1.hubspotusercontent-na1.net/hubfs/4713142/Resources/ 2024%20Am%20Law%20100%20Rates%20Report.pdf; *see also* Dan Roe, *What $1,000 an Hour Gets You in the Am Law 200 Today*, Am. Lawyer (Mar. 30, 2023), https://www.law.com/americanlawyer/2023/03/30/what-1000-an-hour-gets-you-in-the-am-law-200-today/?slreturn=2024112322634.

1    DATE: November 27, 2024                    LATHAM & WATKINS LLP

2                                               By: /s/ *Serrin Turner*

3                                                   Serrin Turner (*pro hac vice*)
                                                    serrin.turner@lw.com
4                                                   1271 Avenue of the Americas
                                                    New York, NY 10020
5                                                   Telephone: +1.212.906.1200

6                                                   Michael H. Rubin (Bar No. 214636)
                                                    michael.rubin@lw.com
7                                                   Melanie M. Blunschi (Bar No. 234264)
                                                    melanie.blunschi@lw.com
8                                                   505 Montgomery St., Suite 2000
                                                    San Francisco, CA 94111
9                                                   Telephone: +1.415.391.0600

10

11                                                  Margaret A. Upshaw (*pro hac vice*)
                                                    maggie.upshaw@lw.com
12                                                  555 Eleventh Street, NW, Suite 1000
                                                    Washington, D.C. 20004
13                                                  Telephone: +1.202.637.2200

14                                                  *Attorneys for Defendant Gen Digital Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28