# EXHIBIT A

Jonathan M. Rotter (#234137)
  *jrotter@glancylaw.com*
David J. Stone (#208961)
  *dstone@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Ekwan E. Rhow - State Bar No. 174604
  *erhow@birdmarella.com*
Marc E. Masters - State Bar No. 208375
  *mmasters@birdmarella.com*
BIRD, MARELLA, RHOW, LINCENBERG,
DROOKS & NESSIM, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Korey A. Nelson (admitted pro hac)
  *knelson@burnscharest.com*
Amanda K. Klevorn (admitted pro hac)
  *aklevorn@burnscharest.com*
Claire Bosarge Curwick (admitted pro hac)
  *ccurwick@burnscharest.com*
Logan B. Fontenot (admitted pro hac)
  *lfontenot@burnscharest.com*
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHRISTOPHER KARWOWSKI, MELODY KLEIN, MICHAEL MCBRIDE, and AIMEN HALIM, individually and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> GEN DIGITAL INC., et al., <br><br> Defendants. | CASE NO. 3:22-cv-08981-RFL <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT GEN DIGITAL'S MOTION FOR ATTORNEYS' FEES** <br><br> Hearing: January 14, 2025 <br> Time: 10:00 a.m. <br> Location: Courtroom 15 – 18th Floor <br><br> Judge: Hon. Rita F. Lin |

# FILED UNDER SEAL

# TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................1

II.     BACKGROUND....................................................................................................2

      A.      The Court's Motion To Dismiss Orders..................................................2

      B.      Defendant's Shifting Excuses For Its Collection Of Cookie Data...........3

      C.      Plaintiffs Acted Reasonably In Discovery And In Dismissing The Case .................4

      D.      Defendant's Unnecessary Motion Concerning Plaintiff's Cookie Data ...................5

III.    LEGAL STANDARD ............................................................................................5

IV.     ARGUMENT ........................................................................................................5

      A.      Defendants Make No Argument for Rule 41 Fees ...................................6

      B.      There is No Basis For Rule 11 Fees.........................................................6

      C.      There Is No Basis For Section 1927 Or Inherent-Power Fees .................7

      D.      There Is No Basis For Rule 37 Fees.......................................................10

      E.      Defendant's Fee Request Overreaches And Is Noncompliant ................12

      F.      The Court Should Award Section 1927 Fees To Plaintiff .......................14

V.      CONCLUSION ...................................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

3
<u>CASES</u>

4
*Agena v. Cleaver-Brooks, Inc.*,
    2020 WL 6888725 (D. Haw. July 31, 2020) ........................................................ 10, 11

5

6
*Am. Unites for Kids v. Rousseau*,
    985 F.3d 1075 (9th Cir. 2021) .................................................................................... 7

7

8
*Blixseth v. Yellowstone Mountain Club, LLC*,
    796 F.3d 1004 (9th Cir. 2015) .................................................................................... 7

9
*Bonner v. Fuji Photo Film*,
    2008 WL 410260 (N.D. Cal. Feb. 12, 2008) .............................................................. 13

10

11
*Burnette v. Godshall*,
    828 F. Supp. 1439 (N.D. Cal. 1993) ........................................................................... 6

12

13
*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ....................................................................................................... 7

14

15
*Cmty. Ass'n for Restoration of the Env't, Inc. v. George & Margaret, LLC*,
    2014 WL 11516298 (E.D. Wash. Sept. 8, 2014) ...................................................... 12

16
*Dish Network L.L.C. v. Jadoo TV, Inc.*,
    2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ........................................................... 9

17

18
*Ellis v. Hobbs Police*,
    *Dep't*, 2018 WL 5044233 (D.N.M. Oct. 17, 2018) .............................................. 10, 11

19

20
*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ...................................................................................... 7

21
*Gaiardo v. Ethyl Corp.*,
    835 F.2d 479 (3rd Cir. 1987) ...................................................................................... 6

22

23
*Glass Egg Digital Media v. Gameloft, Inc.*,
    2019 WL 2499710 (N.D. Cal. June 17, 2019) .......................................................... 14

24
*Glass Egg Digital Media v. Gameloft, Inc.*,
    2019 WL 5963228 (N.D. Cal. Nov. 13, 2019) .......................................................... 13

25

26
*Gonzales v. Texaco Inc.*,
    344 F. App'x 304 (9th Cir. 2009) ................................................................................ 7

27

28

*Gonzalez v. Proctor & Gamble Co.*,
    2008 WL 612746 (S.D. Cal. Mar. 4, 2008).................................................................. 5, 6

*Graves v. Arpaio*,
    623 F.3d 1043 (9th Cir. 2010) ......................................................................................... 13

*Hahn v. Massage Envy Franchising, LLC*,
    2014 WL 12899320 (S.D. Cal. Aug. 22, 2014) ............................................................... 11

*Hamilton v. Willms*,
    2007 WL 2558615 (E.D. Cal. Sept. 4, 2007) .................................................................. 14

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005) ............................................................................................. 6

*Hyde & Drath v. Baker*,
    24 F.3d 1162 (9th Cir. 1994) .......................................................................................... 12

*In re Keegan Mgmt. Co., Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) .............................................................................................. 8

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    2012 WL 7783405 (C.D. Cal. Apr. 23, 2012).................................................................. 11

*Jordan v. Nationstar Mortg., LLC*,
    2017 WL 11688999 (E.D. Wash. May 31, 2017) ............................................................ 12

*Lahiri v. Universal Music & Video Distribution Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ......................................................................................... 13

*Love v. CHSP TRS San Francisco LLC*,
    2022 WL 597034 (N.D. Cal. Feb. 28, 2022).................................................................... 8

*Lu v. United States*,
    921 F.3d 850 (9th Cir. 2019) .............................................................................. 10, 12, 13

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013) ........................................................................................................... 5

*Mary Ann Pensiero, Inc. v. Lingle*,
    847 F.2d 90 (3rd Cir. 1988)......................................................................................... 5, 10

*Nat. Immunogenics Corp. v. Newport Trial Grp.*,
    2018 WL 6133721 (C.D. Cal. Jan. 24, 2018).................................................................. 12

*Navarro v. Gen. Nutrition Corp.*,
    2005 WL 2333803 (N.D. Cal. Sept. 22, 2005)................................................................. 7

*Nielsen v. Unum Life Ins. Co. of Am.*,
  2016 WL 1253871 (W.D. Wash. Mar. 8, 2016) ........................................................ 13

*Oliver v. In-N-Out Burgers*,
  945 F. Supp. 2d 1126 (S.D. Cal. 2013) ......................................................... 5, 7, 10

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
  210 F.3d 1112 (9th Cir. 2000) ................................................................................ 7

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
  306 F.3d 99 (2d Cir. 2002) ...................................................................................... 9

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  140 S. Ct. 1492 (2020) ............................................................................................ 7

*Stephens v. United Parcel Serv., Inc.*,
  2024 WL 1974548 (N.D. Cal. May 3, 2024) .......................................................... 6

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017) .................................................................................. 7

*United Nat'l Ins. Co. v. R&D Latex Corp.*,
  242 F.3d 1102 (9th Cir. 2001) .......................................................................... 7, 12

*User Profile Litig.*,
  655 F. Supp. 3d 899 (N.D. Cal. 2023) .................................................................. 10

*Westlands Water Dist. v. United States*,
  100 F.3d 94 (9th Cir. 1996) .................................................................................... 6

*Whatsapp Inc. v. NSO Grp. Techs. Ltd.*,
  2020 WL 1849707 (N.D. Cal. Apr. 13, 2020) ...................................................... 7

*Yphantides v. Cnty. of San Diego*,
  2022 WL 3362271 (S.D. Cal. Aug. 15, 2022) ..................................................... 12

STATUTES

28 U.S.C. § 1927 ......................................................................................... 5, 7, 8

RULES

Fed. R. Civ. P. 11(c)(2) .................................................................................. 6

Fed. R. Civ. P. 11(c)(3) .................................................................................. 7

Fed. R. Civ. P. 37 ................................................................................... *passim*

Fed. R. Civ. P. 41(a)(2) ................................................................................. 6

PLAINTIFFS' OPPOSITION TO DEFENDANT GEN DIGITAL'S MOTION FOR ATTORNEYS' FEES

## I.        Introduction

Plaintiffs commenced and prosecuted this action in good faith, relying on expert testing and analysis. That expert work established that Defendant's Avast Online Security and Privacy browser extension ("AOSP") transmitted to Defendant's server Plaintiffs' browsing data and third-party cookies that can be used to identify and track Plaintiffs across the web. After initially denying that it received the third-party cookies, Defendant now acknowledges that it receives the cookies, but maintains that the receipt is accidental and that it does nothing with them. But as described in the accompanying Declaration of Atif Hashmi, Ph.D, Defendant receives cookies because of deliberate programming choices it made, and Defendant has refused to produce sufficient information to establish that it does not use the cookies.

After Defendant successfully opposed Plaintiff's efforts to compel production of the source code that could prove or disprove that Defendant uses the cookies it receives, Plaintiffs offered to dismiss the case. Plaintiffs made that offer in good faith to avoid burdening the Court and the parties with a case that, as a result of the discovery ruling, Plaintiff would have needed to attempt to prove through circumstantial evidence. Defendant refused unless Plaintiffs agreed to pay $275,000 in attorneys' fees. Defendant then moved to compel production of Plaintiffs' cookie data, even though Plaintiffs already had agreed to produce it. That discovery dispute was briefed (ECF 130) and the law does not support even an adverse inference against Plaintiffs, much less the sanctions Defendant now seeks. One plaintiff produced cookie data, and there is circumstantial evidence for all Plaintiffs that the relevant cookies were transmitted to Defendant. As Plaintiffs' expert has shown, the browser extension transmits browsing data with cookie data from all AOSP users, and which particular cookies Defendant installed during the relevant period can be determined via Defendant's records.

After Plaintiffs successfully moved to dismiss their own case, Defendant brought this motion for nearly $1 million in fees based on mere allegations in an attorney declaration—allegations that Plaintiff rebuts with expert evidence. Defendant's motion runs roughshod over the Rule 11 and Rule 41 principles that view voluntary withdrawal as a worthy conservation of judicial resources, not an opportunity to launch burdensome collateral fee litigation. Rule 11's safe harbor provision requires the moving party to give the nonmoving party 21 days to withdraw the allegedly offending pleading.

Despite threatening a Rule 11 motion on August 16, 2024, Defendant failed to serve one, which mandates denial of its Rule 11 sanctions request. Further, Rule 41 voluntary dismissals with prejudice are responsible advocacy, and attorneys' fees are almost never awarded where such dismissals are granted. Nor are the facts here anywhere close to warranting Section 1927 sanctions because Plaintiffs prosecuted this action in good faith and with sound expert guidance. It is *Defendant's* Motion that unreasonably and vexatiously multiplies the proceedings, since it is based on factual assertions that Defendant should know to be incorrect. And Defendant's post-hoc Rule 37 arguments lack merit.

Even if Defendant was entitled to fees, which it is not, Defendants' request for nearly $1 million in fees is overreaching—particularly in light of Defendant's prior claim that it had expended $275,000 after August 16—and unsupported, and therefore should be denied in its entirety on those grounds as well.

## II.    Background

### A.    The Court's Motion To Dismiss Orders

Plaintiffs commenced this action because despite being advertised as a tool to protect users from having their Internet browsing activity tracked and their personal information collected, AOSP was in fact collecting users' browsing history. ECF 1. Judge Tigar granted in part Defendant's motion to dismiss, finding that Plaintiffs had given Defendant permission to intercept their browsing activity because such interception was necessary to AOSP's function. ECF 45. The Court noted that Plaintiffs could state a claim if they could allege that such interception was not necessary to AOSP's function. *Id*. at 6-8. And the Court denied the motion to dismiss Plaintiffs' claims arising out of the storage of Plaintiff's information. *Id*. at 9-10.

Plaintiffs amended their complaint accordingly. ECF 47 at ¶75. Plaintiffs alleged that other privacy browser extensions, including those owned and distributed by Defendant, provide the stated security functions without intercepting users' browsing activity. *Id.* ¶¶75-79. Plaintiffs also alleged that AOSP transmitted users' cookie data to Defendant which then sold the data to third-party advertisers. *Id.* ¶¶80-84.

The Court granted in part Defendant's second motion to dismiss, finding that the amended

1  complaint did not adequately allege that AOSP could provide its functions without intercepting

2  browsing activity. ECF 64 at 2-3. The Court preserved Plaintiffs' privacy claims concerning AOSP's

3  transmission of cookie data "on the theory that the [AOSP] Program was sending data or selling

4  information that it was gathering to third party advertisers via the cookies that were described in the

5  complaint." *Id.* at 3-7; *see also* Initial Case Management Conference Tr. at 3:23-4:1.

6  **B.    Defendant's Shifting Excuses For Its Collection Of Cookie Data**

7         Plaintiffs' expert evidence demonstrates that users installing AOSP are prompted to visit

8  Defendant's website to complete AOSP's installation process. Declaration of Atif Hashmi In

9  Support of Plaintiffs' Motion to Compel Compliance With Subpoenas, ECF No. 97-2 ¶6. When

10 users visit Defendant's website, the website automatically downloads third party cookies, like

11 Google and Facebook cookies, onto users' browsers. *Id.* ¶¶6-7. Afterward, while users' browsers

12 communicate with the servers associated with the web pages, AOSP transmits users' browsing data

13 along with the third party cookies installed on their device during AOSP's installation process back

14 to Defendant's URLite server. *Id.* ¶¶6-8.

15        Defendant initially denied that it received third-party cookies along with the web browsing

16 information sent by AOSP. Declaration of Jonathan Rotter submitted herewith, ¶¶5-6. Defendant

17 produced no evidence to support that assertion. Rotter Decl. ¶6. Defendant Gen Digital's Responses

18 and Objections to Plaintiffs' First Requests for Production ("First R&Os"). By contrast, Plaintiffs

19 provided evidence that Defendant did receive the cookies. Rotter Decl. ¶7, Ex. 2.

20        Faced with Plaintiffs' evidence, Defendant shifted its denials and contended that the

21 browser, not AOSP, appended cookie data to transmissions to Defendant's URLite server and that

22 the browser did so due to its inherent function. That assertion is incorrect. Dr. Hashmi explains that

23 (1) the AOSP extension, not the browser, controls whether cookies are sent to Defendant,  that

24 Defendant could have configured AOSP not to send cookies to Defendant, and (2) that

25 independently, Defendant could have configured the third-party advertiser cookies at issue to not be

26 sent back to Defendant's AOSP server. Declaration of Atif Hashmi submitted herewith, ¶¶8-25.

27        Defendant also asserted that, even if AOSP embedded cookies in transmissions of AOSP

28 users' data to the URLite server, the server ignored and did not ingest that cookie data. ECF 139-5.

To try to support that point, Defendant provided selected snippets of its URLite server's source code. But Plaintiffs' expert determined that this information *does not* establish Defendant's assertion. The three documents Defendant provided do not show that its URLite server does not ingest or use AOSP users' data. Hashmi Decl. ¶¶26-32.

Exhibit A to the letter reflects screen captures of custom search script across four version of the URLite server's source code and corresponding search results. *Id*. ¶28. But Defendant did not include any search terms related to cookies in its search script, so the search results in Exhibit A are incomplete and insufficient to conclude that the URLite server does not ingest or use AOSP users' cookie data. *Id.* And Defendant conspicuously omitted evidence for the period prior to August 6, 2021, *i.e., the first nine months* of the time period at issue. Hashmi Decl. ¶¶28

Exhibit B to the letter only describes the structure and content of data stored by the URLite server when it detects a malicious URL. *Id.* ¶29. It does not describe what data is stored by the URLite server when it *does not* detect a malicious URL. *Id.* Thus, Exhibit B is incomplete and insufficient to conclude that the URLite server does not ingest or use AOSP users' data. *Id.*

Exhibit C to the letter is insufficient for the same reasons. *Id.* ¶30.

### C.    Plaintiffs Acted Reasonably In Discovery And In Dismissing The Case

Plaintiffs served discovery on Defendant. Hashmi Decl. ¶¶ 33-47. When Defendant refused to produce responsive materials, Plaintiffs sought discovery from the third-party advertising companies whose cookies Defendant installs onto the browsers of avast.com visitors and which AOSP sends back to Avast. Hashmi Decl. ¶¶48-49. Plaintiffs also sought to review AOSP's source code, an analysis of which would have been dispositive of Plaintiffs' claims. ECF No. 97-2 ¶ 6; Hashmi Decl. ¶¶50-51.

The Magistrate Judge denied Plaintiffs' motions to compel. Without this evidence, Plaintiffs were left to prove their case with circumstantial evidence. Thus, on October 10, 2024, Plaintiffs offered to dismiss their remaining claims with prejudice. Rotter Decl., ¶17, Ex. 5. Defendant rejected Plaintiffs' offer unless Plaintiffs agreed to pay $275,000 in fees and costs associated with Defendant's litigation following its August 16 letter, Rotter Decl. at ¶19, even though "award[s] of costs and attorneys' fees should generally be denied if the voluntary dismissal is granted with

prejudice." *Gonzalez v. Proctor & Gamble Co.*, 2008 WL 612746, at *3 (S.D. Cal. Mar. 4, 2008).
Now, even after the Court dismissed this case with prejudice, Defendant seeks nearly $1 million for
its litigation of the entire case.

        **D.**     **Defendant's Unnecessary Motion Concerning Plaintiff's Cookie Data**

     *After* Plaintiffs offered to dismiss the case, and even though Plaintiffs had already produced
one Plaintiff's cookie data and had not refused to produce the others', Defendant moved to compel
production of Plaintiffs' cookie data. Rotter Decl. ¶¶16, 21 Plaintiffs had worked with forensic and
technical experts to extract the relevant information from Plaintiffs' devices, and by October 11,
had completed the process for Plaintiff McBride. Rotter Decl. ¶¶14-15. Defendant requested that
the Court take the hearing on the motion off calendar after the Court dismissed the case. Rotter Decl.
¶¶21.

## III.    Legal Standard

     It is a bedrock principle that each litigant pays its own attorney fees, unless a contract or
statute provides for fee-shifting. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). Although
FRCP 41 usually governs fee shifting following a voluntary dismissal, Defendant does not invoke
that rule here—presumably because the case doesn't meet the Rule 41 standard for fee-shifting.
Instead, Defendant seeks fees under Rule 37, 28 U.S.C. § 1927, Rule 11, and the court's inherent
discretion. None of those sources warrant a fee award here. And even if they did, the fee request
fails for lack of required support and for being unreasonably high.

## IV.    Argument

     Plaintiffs choice to abandon a claim in the circumstances they were faced with is
"responsible advocacy to be commended—not abuse of the court's process to be deterred. Courts
benefit when counsel reduce the issues in dispute by objectively reappraising the evolving strengths
of their positions throughout the course of litigation." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d
90 (3rd Cir. 1988). *See also Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1131 (S.D. Cal.
2013) (denying Defendant's request for sanctions where it "made a strategic decision to forgo jointly
dismissing the action so that it could pursue its motion for sanctions").

**A.     Defendants Make No Argument for Rule 41 Fees**

Defendants make no argument for Rule 41 fees because it is clear that they are not available. *Gonzalez v. Proctor and Gamble Co.*, 2008 WL 612746 (S.D. Cal. 2008). Courts determine entitlement to fees and costs following a voluntary dismissal under Rule 41. *See Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996) (a court can condition a dismissal [without prejudice] upon the payment of "appropriate costs and attorney fees."); *see* Fed. R. Civ. P. 41(a)(2). And "[a]n award of costs and attorneys' fees should generally be denied if the voluntary dismissal is granted **with** prejudice." *Gonzalez*, 2008 WL 612746 (S.D. Cal. 2008) (citing *Burnette v. Godshall*, 828 F. Supp. 1439 (N.D. Cal. 1993)).

**B.     There is No Basis For Rule 11 Fees**

Defendant suggests that Rule 11 sanctions are warranted (Mot. at 11) but states that it is not seeking them. *Id.* at 11, n.12. Under Rule 11's safe harbor provision, *see* Fed. R. Civ. P. 11(c)(2), parties filing [Rule 11] motions [must] give the opposing party 21 days first to withdraw or otherwise correct the offending paper." *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) (cleaned up). "The Ninth Circuit mandates strict compliance with Rule 11's safe harbor provision" and failure to do so "bars an award of sanctions." *Stephens v. United Parcel Serv., Inc.*, 2024 WL 1974548, at *6 (N.D. Cal. May 3, 2024) (cleaned up).

It was wrong for Defendant to have threatened Rule 11 sanctions in the first place, particularly given Defendant's continued reliance on mere attorney argument in the face of Plaintiffs' expert evidence: "Threats of Rule 11 sanctions are improper where the other side's position is plausible (even if it is incorrect). Seeking sanctions under such circumstances is itself sanctionable conduct." Rule 11, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 17-B. "The use of Rule 11 … has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct." *Id.* (quoting *Gaiardo v. Ethyl Corp.* 835 F.2d 479, 485 (3rd Cir. 1987)).

In addition to lacking any factual support, *sua sponte* Rule 11 sanctions—which would be payable to the Court—would be procedurally improper because there has been no prior order to

1    show cause why counsel's conduct did not violate Rule 11. Fed. R. Civ. P. 11(c)(3); *Gonzales v.*

2    *Texaco Inc.*, 344 F. App'x 304, 309 (9th Cir. 2009). Thus, Defendant's quasi-request for Rule 11

3    sanctions should be disregarded.

4            **C.**      **There Is No Basis For Section 1927 Or Inherent-Power Fees**

5           Having failed to avail itself of Rule 11, Defendant seeks fees under 28 U.S.C. § 1927. But a

6    fee award under section 1927 is "an ***extraordinary*** remedy." *Whatsapp Inc. v. NSO Grp. Techs. Ltd.*,

7    2020 WL 1849707, at *4 (N.D. Cal. Apr. 13, 2020) (emphasis added). "Judges therefore should

8    impose sanctions on lawyers for their mode of advocacy only in the ***most egregious*** situations."

9    *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001) (emphasis added).

10           In the Ninth Circuit, Section 1927 sanctions must be supported by a finding of bad faith,

11    which is a very high threshold. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007

12    (9th Cir. 2015) (internal quotation marks omitted); *Oliver v. In-N-Out Burgers*, 945 F. Supp. at 1129.

13    "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument." *Id.*

14    (cleaned up). Conduct must exceed mere negligence in order to be knowing or reckless. *Pac. Harbor*

15    *Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). Sanctions based on

16    recklessness are only proper where accompanied by a finding of frivolousness or intention to harass.

17    *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017) ("Without more,

18    reckless, but nonfrivolous, filings may not be sanctioned."), *abrogated on other grounds by Romag*

19    *Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020)). In short, "[i]gnorance, negligence,

20    incompetence, or even a basic lack of professional courtesy do not constitute 'bad faith.'" *Navarro*

21    *v. Gen. Nutrition Corp.*, 2005 WL 2333803, at *22 (N.D. Cal. Sept. 22, 2005).

22           As with Section 1927, a court's inherent power to sanction "must be exercised with restraint

23    and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). In the Ninth Circuit, "mere

24    recklessness, without more, does not justify sanctions under a court's inherent power." *Fink v.*

25    *Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Instead, "the court must make an explicit finding that

26    the sanctioned party's conduct 'constituted or was tantamount to bad faith,'" which "requires proof

27    of bad intent or improper purpose." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir.

28    2021). "Even when a district court has described a litigant's behavior as 'totally frivolous,'

1   'outrageous,' and 'appalling,' the Ninth Circuit 'nonetheless has refused to equate this

2   characterization of conduct as synonymous with a finding of bad faith.'" *Love v. CHSP TRS San*

3   *Francisco LLC*, 2022 WL 597034, at *2 (N.D. Cal. Feb. 28, 2022).

4          Plaintiffs added the cookie allegations to the amended complaint in good faith, not, as

5   Defendant charges, to "avoid dismissal" of Plaintiffs' privacy claims "at any cost." Mot. at 10.

6   Specifically, Plaintiffs added the allegations, along with providing a comparison to the Norton

7   extension, to make it clearer that Defendant could not avail itself of the party exception to Plaintiffs'

8   wiretapping claims. Plaintiffs' addition of those allegations was not frivolous. Plaintiffs have

9   evidence that AOSP embedded third party cookies in transmissions of AOSP users' web browsing

10  data to Defendant's servers. *See supra* Section II(B). Plaintiffs' expert has shown that AOSP, not

11  web browsers, embeds third party cookies in transmissions to Defendant's URLite server and that

12  Defendant has always been able to, but chose not to, stop those transmissions. *Id.* This is

13  circumstantial evidence that Defendant sold the data to the third parties whose cookies are embedded

14  with user data.

15         Reinforcing the good-faith of Plaintiffs' amened allegations, Defendant entered into an order

16  with the FTC earlier this year arising out of Defendant having sold its users' data to third party

17  advertisers through its former subsidiary, Jumpshot. ECF 59-1. Defendant paid a $16.5 million fine

18  and agreed not to use users' data for advertising purposes without first obtaining their consent. *Id.*

19  The FTC ordered a ***twenty-year*** monitoring period, indicating that it is reasonable to think that

20  Defendant's 2020 shuttering of Jumpshot was not sufficient reassurance that Defendant will stop

21  misusing user data.

22         Further, Defendant now baselessly seeks fees going back to the beginning of the case,

23  including the motions to dismiss. But that the Court initially dismissed Plaintiffs' wiretapping claims

24  while sustaining their privacy claims—***even without the FAC's cookie allegations***, ECF 45 at 9-

25  10—and Defendant doesn't even make any argument that that the non-cookie allegations were in

26  bad faith. And because section 1927 concerns "multiplying" the proceedings, the filing of a

27  complaint may "not be sanctioned pursuant to § 1927." *In re Keegan Mgmt. Co., Sec. Litig.*, 78

28  F.3d 431, 435 (9th Cir. 1996).

PLAINTIFFS' OPPOSITION TO DEFENDANT GEN DIGITAL'S MOTION FOR ATTORNEYS' FEES

1    As to Plaintiffs' production of one Plaintiff's cookie data within the short discovery period

2    after Defendant reneged on an extension, that was not a "play[] for time." Mot. at 13. Indeed, as

3    Defendant (barely) acknowledges one of Plaintiff McBride's cookies predates the amended

4    complaint, meaning that, even though it is not required, there is forensic evidence showing that

5    McBride was subject to the data collection at issue. ECF 139-11. And more generally, Defendant's

6    complaints about the cookie data are a red herring. There are good reasons that cookie data once

7    present on devices might not be present on the date Plaintiffs brought the case. Hashmi Decl. ¶¶53-

8    55. And Defendant could have used information in its possession to determine what cookies were

9    installed on Plaintiffs' devices. Hashmi Decl. ¶¶37-38, 52 (explaining that Plaintiffs' discovery

10   requests sought documents and information from Defendant that would have allowed Plaintiffs'

11   expert to determine which cookies were installed on Plaintiffs' devices).

12    Nor could any failure to produce cookie data be the basis for sanctions. the 2015 amendment

13   to Federal Rule of Civil Procedure 37(e), "Failure to Preserve Electronically Stored Information,"

14   "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d

15   Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or

16   gross negligence." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. Accordingly,

17   Rule 37(e)(2) requires a finding that "that the party acted with the intent to deprive another party of

18   the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see Dish Network L.L.C. v. Jadoo

19   TV, Inc.*, 2022 WL 11270394, at *4 (N.D. Cal. Oct. 19, 2022) (refusing to find intent even where

20   facts arguably suggested negligence and gross negligence).

21    Defendant does not even suggest, much less show, that the status of Plaintiffs' cookie data

22   production is the result of willfulness, bad faith, or the fault of Plaintiffs, or that Plaintiffs have acted

23   with an intent to deprive Defendant of access to their cookie data. *See Dish Network L.L.C.*, 2022

24   WL 11270394, at *4 ("The moving party has the burden to establish intent to obtain the more severe

25   sanctions available under Rule37(e)(2)"). Plaintiffs produced what they could before Defendant

26   insisted on filing a discovery motion. Rotter Decl. ¶¶16, 21. And again, information in Defendant's

27   possession could have determined what cookies had been installed on Plaintiffs' devices. As

28   Plaintiffs' expert explained, Plaintiffs' Requests for Production 21-27 and 29-34 sought documents

and information related to Defendant's server configurations and database schema, which would have allowed Plaintiffs' expert to determine which cookies were installed on Plaintiffs' devices. Hashmi Decl. ¶¶37-38, 52.

Plaintiffs sought dismissal because they would have gone to summary judgment and trial with just circumstantial evidence of Defendant's transmissions of their browsing and cookie data to third parties, which Plaintiffs explained to Defendant **before** Defendant moved to compel Plaintiffs' cookie data. Rotter Decl. ¶17. Plaintiffs chose to dismiss their case rather than continuing to expend party and judicial resources on a case they were unlikely to win at the next stage. That is not indicative of bad faith. Rather, it is "responsible advocacy to be commended—not abuse of the court's process to be deterred" by levying sanctions. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3rd Cir. 1988); *see also Oliver v. In-N-Out Burgers*, 945 F. Supp. at 1131 (denying Defendant's request for sanctions where defendant "made a strategic decision to forgo jointly dismissing the action so that it could pursue its motion for sanctions").

### D.    There Is No Basis For Rule 37 Fees

Finally, Defendant seeks fees under Federal Rule of Civil Procedure 37(a)(5)(B), but a court "must not" order a fee award if discovery conduct is "substantially justified" or where there are "other circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). "Substantially justified, in the context of Rule 37, means … justified to a degree that could satisfy a reasonable person." *Ellis v. Hobbs Police Dep't*, 2018 WL 5044233, at *2 (D.N.M. Oct. 17, 2018) (cleaned up). More specifically, discovery conduct is "substantially justified" if it has a reasonable basis in law and fact. *Agena v. Cleaver-Brooks, Inc.*, 2020 WL 6888725, at *3 (D. Haw. July 31, 2020). If Rule 37 sanctions are proper, the amount awarded must be reasonable. *Lu v. United States*, 921 F.3d 850, 860 (9th Cir. 2019). Rule 37 fees will not be awarded "if the same work would have been done […] to contest the *non*-frivolous claims in the suit." *Id.* (cleaned up).

Defendant's Rule 37 fee request is premised entirely on the alleged lack of "substantial justification" for Plaintiffs' discovery motions. Mot. at 14. But according to district precedent, it would have been "ridiculous" for Plaintiffs to "take at face value [Defendant's] assertions" that it did not share data with third parties. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655

F. Supp. 3d 899, 903 (N.D. Cal. 2023). That is particularly so where Plaintiffs' expert determined that Defendant's shifting positions were factually inaccurate. *See supra* Section II.B., *Ellis*, 2018 WL 5044233, at *2 ("Substantially justified, in the context of Rule 37, means … justified to a degree that could satisfy a reasonable person.") (cleaned up).

Further, Plaintiffs' discovery requests and discovery motions were "substantially justified" because Plaintiffs relied on their expert. *Hahn v. Massage Envy Franchising, LLC*, 2014 WL 12899320, at *2 (S.D. Cal. Aug. 22, 2014) (finding discovery motion was substantially justified "in light of the parties' respective experts' disagreement" and where "the IT issues involved were complex"). As explained above, Plaintiffs' discovery requests sought information critical to Plaintiffs' expert's determination, which, in turn, was critical to proving Defendant's liability. Hashmi Decl. ¶¶33-47. Plaintiffs followed their expert's advice and served additional discovery on Defendant as well as on third parties to explore alternative ways of proving Defendant's liability. Hashmi Decl. ¶¶48-49. And when neither Defendant nor the third parties produced any discovery, Plaintiffs relied on their expert's guidance to seek to compel production of only dispositive evidence: AOSP's source code and the data Defendant shared with third parties. Hashmi Decl. ¶¶50-51. Thus, Plaintiffs' discovery requests and motions were substantially justified. *Hahn*, 2014 WL 12899320, at *2.

Plaintiffs' motions to compel were further justified by both law and fact, as explained here and in Plaintiffs' briefing on both. ECF 97, ECF 116 at 6, n. 8 (citing *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 2012 WL 7783405, at *1 (C.D. Cal. Apr. 23, 2012) ("[P]laintiff's counsel should have at least some access to the <u>entirety</u> of the source code" to understand what portions may be relevant.) (emphasis added)); *Agena v. Cleaver-Brooks, Inc.*, 2020 WL 6888725, at *3 (D. Haw. July 31, 2020) (discovery conduct is "substantially justified" where it has a reasonable basis in law and fact). And Defendant's August 16, 2024 proffer conspicuously omitted evidence for the period prior to August 6, 2021, *i.e., the first nine months* of the time period at issue. Hashmi Decl. ¶¶28.

Plaintiffs' discovery motions were reasonable because they sought information necessary for expert analysis, including of Defendant's claims about the data transmissions. Plaintiffs' expert has explained that Plaintiffs' discovery requests to Defendant and third parties sought information

PLAINTIFFS' OPPOSITION TO DEFENDANT GEN DIGITAL'S MOTION FOR ATTORNEYS' FEES

1  that would allow him to prove that Defendant used AOSP to collect Plaintiffs' data and share it with

2  third parties. Hashmi Decl. ¶¶33-49. And, when Defendant and the third parties produced nothing,

3  Plaintiffs' expert explained that Plaintiffs' motions to compel reasonably sought information

4  necessary to his determinations absent any other evidence. Hashmi Decl. ¶¶50-51.

5      Plaintiffs' discovery efforts were appropriate client advocacy. *United Nat'l Ins. Co. v. R&D*

6  *Latex Corp.*, 242 F.3d at 1115 (sanctions only warranted in most egregious situations "lest lawyers

7  be deterred from vigorous representation of their clients."). The fact that Plaintiffs' discovery

8  motions ultimately failed is not indicative of bad faith. *Jordan v. Nationstar Mortg., LLC*, 2017 WL

9  11688999, at *4 (E.D. Wash. May 31, 2017) (finding fee award inappropriate where nonmovant's

10  "argument simply did not prevail"); *Cmty. Ass'n for Restoration of the Env't, Inc. v. George &*

11  *Margaret, LLC*, 2014 WL 11516298, at *4 (E.D. Wash. Sept. 8, 2014) (same); *Nat. Immunogenics*

12  *Corp. v. Newport Trial Grp.*, 2018 WL 6133721, at *7 (C.D. Cal. Jan. 24, 2018); *Yphantides v. Cnty.*

13  *of San Diego*, 2022 WL 3362271, at *8 (S.D. Cal. Aug. 15, 2022) (denying fee motion based on an

14  unsuccessful motion to compel because "a reasonable attorney could believe that some type of" the

15  evidence requested "could be relevant and proportional"). Plaintiffs' discovery motions were

16  substantially justified as a "good faith discovery dispute." *Hyde & Drath v. Baker*, 24 F.3d 1162 at

17  1171 (9th Cir. 1994). Thus, Defendant's request for Rule 37 fees should be denied.

18      Finally, a Rule 37 fee award were proper (it is not), it would have to be limited to those costs

19  incurred as a result of the specifically sanctionable conduct. *Lu v. United States*, 921 F.3d 850, 860

20  (9th Cir. 2019) ("[T]he court can shift only those attorney's fees incurred because of the misconduct

21  at issue. […] If an expense would have been incurred even absent any bad faith conduct, it cannot

22  be part of a bad faith fee award.") (cleaned up). Defendant has not demonstrated what those costs

23  would be

24      **E.    Defendant's Fee Request Overreaches And Is Noncompliant**

25      Defendant's motion also fails because it fails to justify the *amount* of the fee request. In

26  particular, it suffers from several shortcomings.

27      First, in seeking *all* of its fees expended during the life of the case, the motion is untethered

28  to the specific conduct it complains of.

Second, Defendant has not complied with Local Rule 37-4(b)(3), which conditions Rule 37 attorney fees on a declaration itemizing "with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed."

Defendant's counsels' declaration does not detail the work performed, who performed it, or how long it took. *Id.* at App'x A-C. The declaration does not even state the hourly rates charged by each attorney, paralegal, or other staff members. Instead, it merely claims that the rates charged "are comparable to those charged by other peer law firms in similar matters for attorneys with similar levels of experience and sophistication" and that "[t]he hours billed were reasonable in light of the various defense workstreams" the case necessitated. *Id.* ¶ 34. In fact, the average rate charged by Defendant's counsel was an eye-watering $1,117.35 per hour. Declaration of Claire Curwick submitted herewith at ¶6. The Motion's failure "to set forth a particularized itemization of the allegedly unnecessary expenses it has incurred, or a statement of the hourly rate(s) claimed, or an appropriate justification for such rate(s)" makes it "non-compliant with Local Rule 37-4(b)(3)." *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 5963228, at *1 (N.D. Cal. Nov. 13, 2019).

Third, Defendant's Motion lacks the requisite detail for a lodestar calculation pursuant to Section 1927. "[B]lock-billing 'render[s] it virtually impossible to break down hours, [...] [preventing] the Court [from] accurately discern[ing] whether a reasonable amount of time was spent on discrete tasks." *Bonner v. Fuji Photo Film*, 2008 WL 410260, at *3 (N.D. Cal. Feb. 12, 2008) (citation omitted). The *entirety* of Defendant's support for its request is block billed, ECF No.139-1 ¶34, App'x A-C, so even if the Court were to award some fees, which it should not, *all* of Defendant's charges must be reduced substantially. *Nielsen v. Unum Life Ins. Co. of Am.*, 2016 WL 1253871, at *2 (W.D. Wash. Mar. 8, 2016) (reducing or cutting block-billed entries related to Section 1927 fee request); *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) (affirming 30% reduction to the entirety of the 80% of hours that were block billed).

The reply will be too late to present the missing detail. *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam) ("[A]rguments raised for the first time in a reply brief are

waived"); *Hamilton v. Willms*, 2007 WL 2558615, at *11 (E.D. Cal. Sept. 4, 2007) ("The court cannot grant a motion on a new argument or new evidence presented for the first time in a reply brief.") (collecting cases). Because it has failed to adequately support its Motion, the Motion should be denied in its entirety.

### F. The Court Should Award Section 1927 Fees To Plaintiff

In bringing this motion, Defendant has unreasonably and vexatiously multiplied the proceedings. Plaintiffs always had good faith, expert-backed, bases for their allegations and discovery requests, which Defendant simply refuses to acknowledge. This motion is a gross misuse of judicial resources.

Further, Defendant itself multiplied the proceedings prior to this motion by opposing the motion to compel the third party subpoenas, which it had no standing to do in the first place. *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) ("Generally speaking, a party to an action does not have standing to move to quash a subpoena served upon a nonparty unless the party claims a personal right or privilege with respect to the documents requested in the subpoena."). The record belies Defendant's contention that "the subpoenas as written encompassed analytics data from the Gen Digital [www.avast.com] website these third parties may receive." Mot. at 8, n. 10. Plaintiffs' subpoenas sought data the third parties received from Defendant "**other than web browsing information from the avast.com website**." ECF 97-1 at 17 of 89. In other words, the subpoenas specifically avoided asking for the "analytics data from the Gen Digital [www.avast.com] website these third parties may receive." Defendant should not have inserted itself into motion practice concerning the subpoenas. Its actions in doing so unnecessarily multiplied the proceedings, and provided further support for Plaintiffs' belief that the evidence sought would have supported Plaintiff's claims.

Plaintiffs request that the Court sanction Defendant in the amount that it claims to have incurred to prepare this wasteful sanctions motion: $64,328.22. ECF 139-1 at 14.

### V. Conclusion

For the foregoing reasons, Defendant's Motion should be denied in its entirety and Defendant should be ordered to pay Plaintiffs' fees incurred in opposing this abusive Motion.

1      Respectfully submitted,

2
       DATED:  November 20, 2024       Ekwan E. Rhow
3                                      Marc E. Masters
                                       BIRD,  MARELLA,  BOXER,  WOLPERT,  NESSIM,
4                                      DROOKS, LINCENBERG & RHOW, P.C.

5

6
                                       By:  _____/s/ Ekwan E. Rhow_____
7                                                  Ekwan E. Rhow
                                           Attorneys for Plaintiffs
8
       DATED:  November 20, 2024       Jonathan M. Rotter
9                                      David J. Stone
                                       GLANCY PRONGAY & MURRAY LLP
10

11

12                                     By:  _____/s/ Jonathan M. Rotter_____
                                                 Jonathan M. Rotter
13                                         Attorneys for Plaintiffs

14
       DATED:  November 20, 2024       Korey A. Nelson
15                                     Amanda K. Klevorn
                                       Claire Bosarge Curwick
16                                     Logan B. Fontenot
                                       BURNS CHAREST LLP
17

18

19                                     By:  _____/s/ Korey A. Nelson_____
                                                  Korey A. Nelson
20                                         Attorneys for Plaintiffs

21

22

23

24

25

26

27

28